# EXHIBIT A



**CT Corporation**
**Service of Process Notification**
10/15/2025
CT Log Number 550365206

## Service of Process Transmittal Summary

**TO:**  Susan Clemson
Berkley Luxury Group
389 INTERPACE PKWY STE 550
PARSIPPANY, NJ 07054-1132

**RE:**  **Process Served in Delaware**

**FOR:**  Admiral Indemnity Company  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:**  FIRST SERVICE RESIDENTIAL ILLINOIS, INC. vs. Admiral Indemnity Company

**CASE #:**  2025CH07484

**NATURE OF ACTION:**  Insurance Litigation

**PROCESS SERVED ON:**  The Corporation Trust Company, Wilmington, DE

**DATE/METHOD OF SERVICE:**  By Traceable Mail on 10/15/2025

**JURISDICTION SERVED:**  Delaware

**ACTION ITEMS:**  SOP Papers with Transmittal, via  UPS Next Day Air

Image SOP

Email Notification,  Susan Clemson  sclemson@berkleyluxurygroup.com

Email Notification,  HOWARD RYERSON  hryerson@berkleyluxurygroup.com

**REGISTERED AGENT CONTACT:**  The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801
877-564-7529
MajorAccountTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Corporate Regulatory
pt of Insurance
Washington
1, IL 62767



9214 7969 0099 9790 1657 9483 32

Admiral Indemnity Company
1209 Orange Street
Wilmington, DE 19801

 **Illinois Department of Insurance**

**JB PRITZKER**
Governor

**ANN GILLESPIE**
Director

October 7, 2025

Admiral Indemnity Company
1209 Orange Street
Wilmington, DE 19801

Case Number: 2025CH07484

To whom it may concern,

     Enclosed please find a copy of a summons and complaint mailed to me as your agent for service of process and received in my Springfield Office on October 7, 2025 in the case of *First Service Residential Illinois, Inc. and Westfall Insurance Company v. your company et al.*

Sincerely,

Ann Gillespie
Director of Insurance

AG:AS:KS
Encl.

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

**Springfield Office**
320 W. Washington Street
Springfield, Illinois 62767
(217) 782-4515

**Chicago Office**
115 S. LaSalle Street, 13th Floor
Chicago, Illinois 60603
(312) 814-2420

Hearing Date: No hearing scheduled

This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.

Location: <<CourtRoomNumber>>

Forms are free at ilcourts.info/forms.

Judge Calendar, 10

| STATE OF ILLINOIS, CIRCUIT COURT | **SUMMONS** | For Court Use Only |
|---|---|---|
| Cook COUNTY | | FILED<br>10/2/2025 3:10 PM<br>Mariyana T. Spyropoulos<br>CIRCUIT CLERK<br>COOK COUNTY, IL<br>2025CH07484<br>Calendar, 10<br>34722983 |

FILED DATE: 10/2/2025 3:10 PM 2025CH07484

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | FIRST SERVICE RESIDENTIAL ILLINOIS, INC. RECEIVED<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. OCT 07 2025 |
| Below "Defendants/ Respondents," enter the names of all people you are suing. | **Defendants / Respondents** *(First, middle, last name)* STATE OF ILLINOIS<br>ADMIRAL INDEMNITY COMPANY DEPARTMENT OF INSURANCE<br>SPRINGFIELD<br>_____<br>_____ **Case Number** |
| Enter the Case Number given by the Circuit Clerk. | [X] **Alias Summons** (Check this box if this is not the 1st Summons issued for this Defendant.) |

## IMPORTANT: You have been sued.

- Read all documents attached to this *Summons*.

- You MUST file an official document with the court within the time stated on this *Summons* called an *Appearance* and a document called an *Answer/Response*. If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

- All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efiling. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.

- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees*.

- It is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

- Need help? Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents. You can also get free legal information and legal referrals at illinoislegalaid.org. All documents referred to in this Summons can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.

- ¿Necesita ayuda? Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.

### Plaintiff/Petitioner:

**Do not use this form** in these types of cases:

- All criminal cases
- Detinue
- Order of protection
- Divorce

- Administrative review cases
- Eviction
- Stalking no contact orders
- Paternity

- Adult guardianship
- Foreclosure
- Civil no contact orders
- Small Claims

For eviction, small claims, divorce, and orders of protection, use the forms available at ilcourts.info/forms. If your case is a detinue, visit illinoislegalaid.org for help.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk: _____

FILED DATE: 10/2/2025 3:10 PM   2025CH07484

| | |
|---|---|
| In **1a**, enter the name and address of the first Defendant/ Respondent you are serving. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:** <br><br> a.   Defendant/Respondent's primary address/information for service: <br> Name *(First, Middle, Last)*:   ADMIRAL INDEMNITY COMPANY <br> Registered Agent's name, if any: _____ <br> Street Address, Unit #:   320 W. WASHINGTON ST _____ <br> City, State, ZIP:   SPRINGFIELD, IL 62767 _____ <br> Telephone: _____   Email: _____ |

In **1b**, enter a second address for the first Defendant/ Respondent, if you have one.

b.   If you have more than one address where Defendant/Respondent might be found, list that here:
Name *(First, Middle, Last)*: _____
Street Address, Unit #: _____
City, State, ZIP: _____
Telephone: _____   Email: _____

In **1c**, check how you are sending your documents to this Defendant/ Respondent.

c.   Method of service on Defendant/Respondent:
☐ Sheriff         ☐ Sheriff outside Illinois: _____
                                                    *County & State*
☐ Special process server    ☐ Licensed private detective
                             X  Illinois Department of Insurance

Check here if you are serving more than 1 Defendant/ Respondent. Attach an *Additional Defendant/ Respondent Address and Service Information* form for each additional Defendant/Respondent and write the number of forms you attached.

☐ **I am serving more than 1 Defendant/Respondent.**

I have attached _____ *Additional Defendant/Respondent Address*
                        *Number*
*and Service Information* forms.

In **2a**, enter the amount of money owed to you. Check **2b** if you are asking for the return of tangible personal property.

**2.** **Information about the lawsuit:**
a.   Amount claimed:    $ _____
☐ b.   I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession).

In **3**, enter your complete address, telephone number, and email address, if you have one.

**3.** **Contact information for the Plaintiff/Petitioner:**
Name *(First, Middle, Last)*: Peter G. Syregelas, Lindsay, Pickett & Postel, LLC
Street Address, Unit #:   200 W. Madison St., Suite 3850 _____
City, State, ZIP:   Chicago, IL 60606 _____
Telephone:   (312) 970-5661 _____   Email:   psyregelas@lpplawfirm.com

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons.* To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: ilcourts.info/forms. |
|---|---|

Check **4a** or **4b**. If Defendant/ Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**.

**4.** **Instructions for person receiving this *Summons* (Defendant):**
☑ a.   To respond to this *Summons,* you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:
Address:   50 W. Washington St. _____
City, State, ZIP:   Chicago, IL 60602 _____

FILED DATE: 10/2/2025 3:10 PM   2025CH07484

| In 4a, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. |
|---|

☐ b. **Attend court:**

On: _____ at _____ ☐ a.m. ☐ p.m. in _____
         *Date*                    *Time*                   *Courtroom*

**In-person at:**

_____
*Courthouse Address*       *City*              *State*      *ZIP*

OR

**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):

| In 4b, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website.<br><br>All of this information is available from the Circuit Clerk. |
|---|

    By telephone: _____
                     *Call-in number for telephone remote appearance*

    By video conference: _____
                           *Video conference website*

    _____
    *Video conference log-in information (meeting ID, password, etc.)*

Call the Circuit Clerk _____ or visit their website
                     *Circuit Clerk's phone number*

at: _____ to find out more about how to do this.
    *Website*

| STOP!<br>The Circuit Clerk will fill in this section. |
|---|

**Witness this Date:** _____

**Clerk of the Court:** 10/2/2025 3:10 PM Mariyana T. Spyropoulos
_____

---

**STOP! The officer or process server will fill in the Date of Service**

**Note to officer or process server:**

- If 4a is checked, this *Summons* must be served within 30 days of the witness date.
- If 4b is checked, this *Summons* must be served at least 21 days before the court date, unless 2b is also checked.
  - If 4b and 2b are checked, the *Summons* must be served at least 3 days before the court date.

Date of Service: _____
                     *(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)*

Enter the Case Number given by the Circuit Clerk: _____

**This form is approved by the Illinois Supreme Court and must be accepted in all Illinois Courts.**
**Forms are free at ilcourts.info/forms.**

FILED DATE: 10/2/2025 3:10 PM   2025CH07484

| | | |
|---|---|---|
| **STATE OF ILLINOIS, CIRCUIT COURT**<br>Cook _____ **COUNTY** | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | *For Court Use Only* |

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | FIRST SERVICE RESIDENTIAL ILLINOIS, INC. |
| | **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/Respondents. | v.<br><br>ADMIRAL INDEMNITY COMPANY |
| | **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

**Case Number** _____

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form. Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent.\*\***

**My name is** _____ **and I state**
　　　　　　　*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

　　☐ Personally on the Defendant/Respondent:
　　　　☐ Male　☐ Female　☐ Non-Binary　Approx. Age: _____　Race: _____
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address, Unit#: _____
　　　　City, State, ZIP: _____

　　☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address, Unit#: _____
　　　　City, State, ZIP: _____
　　　　And left it with: _____
　　　　　　　　　　　　*First, Middle, Last*
　　　　☐ Male　☐ Female　☐ Non-Binary　Approx. Age: _____　Race: _____
　　　　and by sending a copy to this defendant in a postage-paid, sealed envelope to the above address on this date: _____ .

　　☐ On the Corporation's agent, _____
　　　　　　　　　　　　　　　　　*First, Middle, Last*
　　　　☐ Male　☐ Female　☐ Non-Binary　Approx. Age: _____　Race: _____
　　　　On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
　　　　Address: _____
　　　　City, State, ZIP: _____

☐ **I was not able to serve the** *Summons* **and Complaint/Petition on Defendant/Respondent:**

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

FILED DATE: 10/2/2025 3:10 PM    2025CH07484

1.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

2.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

3.  On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____
    Other information about service attempt: _____
    _____
    _____
    _____

| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the** *Proof of Service of Summons* **is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

_____
*Signature by:*  ☐ Sheriff
                 ☐ Sheriff outside Illinois:

                 _____
                 *County and State*
                 ☐ Special process server
                 ☐ Licensed private detective

_____
*Print Name*

**FEES**
Service and Return:  $ _____
Miles _____    $ _____
Total                $ _____

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

Hearing Date: 9/16/2025 10:30 AM
Location: Court Room 2302
Judge: Moreland, Caroline Kate

For updated information about your case, including hearings, subsequent filings
and other case information, please visit our Online Case Search
and search for your case: https://casesearch.cookcountyclerkofcourt.org

Firm ID No. 62461

FILED
7/18/2025 12:34 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH07484
Calendar, 10
33631243

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

RECEIVED

|  |  |  |
|---|---|---|
| FIRST SERVICE RESIDENTIAL | ) | OCT 07 2025 |
| ILLINOIS, INC. and WESTFIELD | ) |  |
| INSURANCE COMPANY, | ) | STATE OF ILLINOIS |
|  |  | DEPARTMENT OF INSURANCE |
| *Plaintiffs,* | ) | SPRINGFIELD |
|  | ) |  |
| v. | ) | Case No. 2025 CH 2025CH07484 |
|  | ) |  |
| ADMIRAL INDEMNITY COMPANY, | ) |  |
|  | ) |  |
|  | ) |  |
| *Defendant.* | ) |  |

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

## <u>COMPLAINT FOR DECLARATORY JUDGMENT</u>

NOW COME the Plaintiffs, FIRST SERVICE RESIDENTIAL ILLINOIS, INC. ("First Service") and WESTFIELD INSURANCE COMPANY ("Westfield"), by and through their attorneys, LINDSAY, PICKETT & POSTEL, LLC, and for their Complaint for Declaratory Judgment against the Defendant, ADMIRAL INDEMNITY COMPANY ("Admiral"), allege as follows:

### Introduction

1. First Service and Westfield seek a declaration that Admiral Indemnity Company is obligated to defend First Service on a primary basis against the action brought by Juan Herrera against First Service and others captioned *Juan E. Herrera v. CSR Roofing Contractors, Inc., et al.*, Cause No. 2024 L 12957 pending in the Law Division for the Circuit Court of Cook County, Illinois ("Underlying Action") (Ex. A).

2. Admiral has vexatiously and unreasonably taken a position directly contrary to Illinois law in denying its defense obligation after First Service made a targeted tender of the Underlying Action to Admiral. In spite of First Service's targeted tender to Admiral, Admiral

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

continues to maintain its position in direct contradiction to Illinois law. Admiral's conduct is vexatious and unreasonable, and First Service is entitled to recover under Section 155 of the Illinois Insurance Code (215 ILCS 5/155).

## THE PARTIES

3.      First Service is an Illinois corporation with its principal place of business in Hoffman Estates, Illinois.

4.      Westfield is an Ohio insurance corporation, headquartered in Westfield Center, Ohio, and duly licensed and authorized to issue insurance policies in the State of Illinois.

5.      Admiral is a Delaware corporation, headquartered in New Jersey, and duly licensed and authorized to issue insurance policies in the State of Illinois.

## THE UNDERLYING ACTION

8.      The Underlying Action is pending on a First Amended Complaint, filed January 15, 2025. (Ex. A).

9.      Generally, the Underlying Plaintiff claims that on January 21, 2023, he was injured while working on the roof a building owned by Grand Ohio Condominium Association, which is Admiral's named insured. *Id.*

10.     While not directly alleged by the Underlying Plaintiff, First Service is the property manager for the building. (Ex. B).

11.     The Underlying plaintiff claims he was working on water heaters and boilers on the roof of the building owned by Grand Ohio. He claims that First Service failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage and that he tripped as a result. The Underlying Plaintiff claims he was injured due to First Service's negligence. (See Ex. A).

2

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## THE ADMIRAL POLICY

12. Admiral issued a commercial package policy which contained commercial general liability coverage to Grand Ohio as named insured under policy CPP 21-21095212-40. The policy had a policy period of July 25, 2022 to July 25, 2023. (Ex. C).

13. Admiral does not dispute that First Service is an additional insured on the Admiral policy for purposes of the Underlying Action. (Ex. D).

14. Admiral does not dispute that if its policy is determined to be primary for the Underlying Action it has a duty to defend the Underlying Action. *Id.*

### ADMIRAL TAKES A COVERAGE POSITION DIRECTLY CONTRARY TO ILLINOIS LAW AND REFUSES TO DEFEND FIRST SERVICE

15. On May 6, 2025, Admiral advised First Service that it has no defense obligation for the Underlying Action based on the application of the "Other Insurance" clause in its policy. (Ex. E).

16. In response, First Service made a targeted tender of the Underlying Action to Admiral requesting that Admiral defend it on a primary basis. (Ex. F).

17. Admiral refused to accept the targeted tender asserting its policy is excess by operation of the "other insurance" clause in its policy. (Ex. G).

### COUNT I: ADMIRAL IS OBLIGATED TO DEFEND FIRST SERVICE AS A RESULT OF THE TARGETED TENDER OF THE UNDERLYING ACTION ON A PRIMARY AND NONCONTRIBUTORY BASIS

18. Plaintiffs hereby incorporate the allegations in Paragraphs 1 through 17 above as if fully set forth herein.

19. Admiral has admitted that it has a duty to defend First Service in the Underlying Action but for the "other insurance" clause in its policy, which Admiral asserts makes its policy excess.

3

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

20.     By operation of the targeted tender by First Service of the Underlying Action to Admiral, the Admiral policy is primary to the Westfield policy and Admiral has a duty to defend First Service on a primary, non-contributory basis. The targeted tender renders the "other insurance" clause in the Admiral policy ineffective.

21.     Westfield accepted the defense of First Service on a standby basis and was assigned First Service's rights to pursue Admiral for its duty to defend and indemnity, including but not limited to, the right to reimbursement of all fees and costs expended in the defense of First Service in the underlying litigation and all claims based on Admiral's wrongful refusal to defend.

22.     Upon information and belief, Admiral denies these allegations and, as such, a real and justiciable controversy exists among the parties sufficient to establish a right to relief pursuant to 735 ILCS 5/2-701.

WHEREFORE, the Plaintiffs, First Service and Westfield, pray that this Honorable Court enter an Order finding and declaring that Admiral is obligated to defend First Service on a primary and noncontributory basis in the Underlying Action and for such other and further relief as this Court deems appropriate and just under the circumstances.

### COUNT II: SECTION 155 DAMAGES (215 ILCS 5/155)

23.     Plaintiffs hereby incorporate the allegations in Paragraphs 1 through 22 above as if fully set forth herein.

24.     It is well established Illinois law that a targeted tender of a defense renders the "other insurance" clause in a policy inoperative as to the tendering party.

25.     Admiral's refusal to accept the targeted tender of the Underlying Action by First Service is directly contrary to Illinois law. Admiral's ongoing refusal to accept the tender where it

4

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

has acknowledged the Underlying Action triggers its duty to defend First Service and its only defense is a moot "other insurance" clause is vexatious and unreasonable.

26.     Admiral has violated Section 155 of the Illinois Insurance Code and First Service is entitled to recover damages as outlined in 215 ILCS 5/155.

WHEREFORE, the Plaintiffs, First Service and Westfield, pray that this Honorable Court find that Admiral has violated 215 ILCS 5/155 and award First Service and Westfield their attorney fees in this matter plus appropriate relief under 215 ILCS 5/155 as this Court deems just.

Respectfully submitted,
**LINDSAY, PICKETT & POSTEL, LLC**

By:     */s/ Peter G. Syregelas*
*For the Plaintiffs First Service Residential Illinois,*
*Inc. and Westfield Insurance Company*

Peter G. Syregelas
psyregelas@lpplawfirm.com
312-970-5661
David N. Larson
dlarson@lpplawfirm.com
312.800.6009
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison St., Suite 3850
Chicago, Illinois 60606
*Attorneys for Plaintiffs*

FILED
11/18/2024 4:32 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2024L012957
Calendar, A
30254922

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| JUAN E.HERRERA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No: 2024L012957 |
| | ) |
| CSR ROOFING CONTRACTORS, INC., | ) |
| GRAND OHIO CONDO ASSOCIATION, | ) |
| and FIRST SERVICE RESIDENTIAL | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT AT LAW

NOW COMES the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, and in his complaint at law against the Defendants, CSR ROOFING CONTRACTORS,INC., GRAND OHIO CONDO ASSOCIATION, and FIRST SERVICE RESIDENTIAL, hereby states as follows:

### COUNT I
### NEGLIGENCE AGAINST CSR ROOFING CONTRACTORS, INC.

1.    At all times relevant herein, the Plaintiff, JUAN E. HERRERA, was an Illinois resident with his principal residence located in the City of Chicago, State of Illinois.

2.    At all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS, INC., was an Illinois Corporation with its Principal Office located at 6720 W. Roosevelt Road, Oak Park, Illinois 60304 and was doing business in the State of Illinois.

3.    That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., individually, jointly, and collectively owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the property located at 211 E. Ohio Street, Chicago, Illinois 60611, specifically the rooftop maintenance zone ("Property").

1

FILED DATE: 7/18/2025 4:24:30 PM 2025L008072

4. That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was an employee and authorized and lawfully upon the Property.

5. That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., had owned, maintained, serviced, installed, repaired, constructed, contracted or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

6. That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., had designed, manufactured, produced, constructed, installed, maintained, serviced, or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

7. That on or prior to January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., knew or should have known about previous deficiencies to the roof or general issues pertaining to functionality and safety of the roof over the southside of the Property.

8. That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was working on the water heaters and boilers on the roof of the Property where the Defendant failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), which would allow Plaintiff to safely move around maintenance zone, and instead left the wires in disarray, where Plaintiff was then caused to fall.

9. That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., owned, maintained, possessed, repaired, and controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the Property.

10. That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., was responsible for the placement, installation, and

2

otherwise securing of the water heaters, boilers, work stie, work zone, drainage, and wires located on the Property.

11.     That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., had installed, conducted repairs to, cleaned, inspected, and serviced, and maintained the wires, drainage, work zone, and work site surrounding the water heaters and boilers located on the Property.

12.     That on or before January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., designed, set, left out, and placed the water heaters, boilers, drainage, work zone, work site, and wires located on the roof of the southside of the Property.

13.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., was responsible for maintaining, repairing, securing, and/or servicing the water heaters, boilers, drainage, work zone/site, and wires located on the roof of the southside of the Property.

14.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS INC., failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), located adjacent to the water heaters and boilers on the roof of the southside of the Property.

15.     That on or about January 21, 2023, the Defendant CSR ROOFING CONTRACTORS INC., had notice and knowledge of the improperly installed, unsecured, and malfunctioning water heaters and boilers, drainage, unsafe work site/zone, and uncovered wires located on the roof on the southside of the Property.

16.     That on or about January 21, 2023, the Defendant, CSR ROOFING

3

CONTRACTORS INC., failed to warn the Plaintiff of the dangerous and hazardous condition of the roof and wires on the Property.

17.     That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., by and through its agents, employees, workers, subcontractors/contractors or hires did not properly maintain, repair, and secure the roof for safe usage/passage by its employees, invitees, and customers walking within the Property.

18.     That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., failed to properly inspect the area surrounding the roofs water heaters and boilers to determine whether it was proper for safe usage by its employees, invitees, and customers walking within the Property.

19.     The Defendant, CSR ROOFING CONTRACTORS INC., was responsible for preventing the roof from being unsafe for usage by its employees, invitees, and customers walking within the Property.

20.     That on and prior to January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., had notice and knowledge of the failure to provide a proper drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters and boilers on the roof of the Property as being dangerous and hazardous and an unsafe work zone/area(s)and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

21.     That on and prior to January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being dangerous and hazardous and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

4

22.    That on and prior to January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being in a location where employees, patrons, and customers were present and was dangerous and hazardous.

23.    That on and prior to January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), and wires located on the roof on the southside of the Property, not having a proper drainage cover or a cap to cover the wires for the drainage on the Property where it was dangerous and hazardous.

24.    That it then and there became and was the duty of the Defendant, CSR ROOFING CONTRACTORS INC., to exercise reasonable care to maintain, monitor, repair, inspect, manage, clean, evaluate for safety, anchor, and construct the area surrounding the water heaters and boilers located on the Property in a reasonably safe condition for the safety of the general public, its employees, patrons, invitees, the Plaintiff, and those persons lawfully upon and around said Property.

25.    That not regarding its duty aforesaid, the Defendant, CSR ROOFING CONTRACTORS INC., by its duly authorized agents, servants and/or employees, was guilty of one or more of the following careless and negligent acts and/or omissions:

    a.  Improperly installed and secured the water heaters, boilers, drainage caps, work zone, and wires located on the roof on the southside of the Property;

    b.  Improperly maintained or controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property that as a direct and proximate cause thereof Plaintiff was injured;

    c.  Failed to react and prevent increased injury to Plaintiff following notification of failure to provide a proper drainage cover or a cap to cover the wires for the drainage on the Property;

    d.  Failed to supervise and monitor the condition of the roof on the Property;

5

e. Failed to inspect, repair and/or monitor the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property to ensure it was properly installed and secured;

f. Failed to properly provide a drainage cover or a cap to cover the wires for the drainage on the Property;

g. Failed to have the area of the roof operating in a safe and usable condition on the Property;

h. Failed to protect the Plaintiff from reasonable and foreseeable harm;

i. Failed to repair and/or maintain the roof where the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

j. Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

k. Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure a proper drainage cover or a cap to cover the wires for the drainage located on the Property;

l. Failed to inspect drainage cover or a cap to cover the wires for the drainage to ensure it worked properly;

m. Failed to secure, repair or maintain the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

n. Carelessly and negligently supervised, trained, or contracted with a third party to repair, clean, maintain, service, and inspect the Property and the water heaters, boilers and wires;

o. Carelessly and negligently installed, maintained, secured or positioned the drainage cover or cap to cover the wires which created a dangerous and hazardous condition;

p. Cleared the roof for usage when it was not safe to do so; and

q. Was otherwise careless and negligent in the installation, repair, maintenance, inspection, evaluation for safety, construction, securing, and operating condition of the roof of the Property.

26.     As a direct and proximate result, in whole or in part of one or more of the above-mentioned wrongful acts or omissions of the Defendant, CSR ROOFING CONTRACTORS INC., the Plaintiff, JUAN E. HERRERA, was greatly bruised and injured. Diverse bones, tissues, muscles and ligaments were torn, strained and injured. Said injuries will result in the permanent disability of the Plaintiff. These injuries caused the Plaintiff to experience the loss of his normal enjoyment of life. Plaintiff suffered pain, shock, and became sick and disabled during which time he was caused to expend a considerable sum of money for medicines and medical care and attention and will, in

the future, be obligated to pay out and expend large sums of money for care and attention. Plaintiff lost time and money from his employment as a result of the injury.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against Defendant, CSR ROOFING CONTRACTORS INC., for a sum of money in excess of FIFTY THOUSAND DOLLARS [$50,000.00], and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

## COUNT II
## CONSTRUCTION NEGLIGENCE AGAINST CSR ROOFING CONTRACTORS INC.

27.     At all times relevant herein, the Plaintiff, JUAN E. HERRERA, was an Illinois resident with his principal residence located in the City of Glendale Heights, State of Illinois.

28.     At all times relevant herein, the Defendant, CSR ROOFING CONTRACTORS, INC., was an Illinois Corporation with its Principal Office located at 6720 W. Roosevelt Road, Oak Park, Illinois 60304 and was doing business in the State of Illinois.

29.     That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., individually, jointly, and collectively owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the property located at 211 E. Ohio Street, Chicago, Illinois 60611, specifically the rooftop ("Property").

30.     That on or about January 21, 2023, the Defendant, CSR ROOFING CONTRACTORS INC., owned and/or was in charge of the erection, construction, installation, repairs, alteration, designing, inspecting, and/or upkeep of the Property.

31.     That at the aforesaid time and place and prior thereto, the Defendant, CSR ROOFING CONTRACTORS INC., individually and through its agents, servants, and employees, was present during the course of such erection, construction, repairs, alteration, and/or maintenance of the

7

FILED DATE: 7/18/2025 4:24:32 PM 2025L012054

drainage cover or cap to cover the wires for the drainage on the Property located adjacent to the water heaters and boilers on the roof of the Property. The Defendant, CSR ROOFING CONTRACTORS INC., participated in coordinating the work being done and designated various work methods, maintained and/or checked work progress and/or participated in the scheduling of the work and the inspection of the work. In addition, thereto, at that time and place, the Defendant, CSR ROOFING CONTRACTORS INC., had the authority to stop the work, refuse the work and materials, and/or order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason.

32.     That at the aforesaid time and place, and prior thereto, the Defendant, CSR ROOFING CONTRACTORS INC., erected, constructed, placed and/or operated, and/or caused to be erected, constructed, placed and/or operated, the drainage cover or caps to cover the wires for the drainage located on the roof of the Property that caused the Plaintiff to fall.

33.     That at all times material to this Complaint, the Defendant, CSR ROOFING CONTRACTORS INC., had a duty to exercise reasonable care in the erection, construction, placement, removal and/or upkeep of the drainage covers or caps to cover the wires for the drainage located on the roof of the Property for the Plaintiff and others then and there present.

34.     Notwithstanding its duty, at said time and place, the Defendant, CSR ROOFING CONTRACTORS INC., by and through its agents, servants, and employees, were then and there guilty of one or more of the following careless and negligent acts and/or omissions:

   a. Failed to make a reasonable inspection of the Property and the work being done thereon, when the Defendant, knew, or in the exercise of ordinary care should have known that said inspection was necessary to prevent injury to Plaintiff;
   b. Improperly operated, managed, maintained, and controlled the aforesaid Property, so that as a direct and proximate result thereof, the Plaintiff was injured;
   c. Failed to warn the Plaintiff of the dangerous conditions then and there existing, when Defendant, knew, or in the exercise of ordinary care should have known that said warning was necessary to prevent injury to the Plaintiff;

8

d. Failed to provide adequate safeguards to prevent the Plaintiff from injury while lawfully upon said Property;

e. Failed to supervise the work being done on the aforesaid Property; and/or

f. Allowed and permitted the design, construction, repair, maintenance and upkeep of the drainage cover or caps to cover the wires for the drainage located adjacent to the water heater and boilers located on the roof of the Property without being properly secured.

35.     That as a direct and proximate result of the aforesaid, the Plaintiff, JUAN E. HERRERA, suffered diverse injuries, both internally and externally, of a permanent and lasting nature, which have caused and will continue to cause pain in body and mind; and the Plaintiff, JUAN E. HERRERA, was caused to expend and in the future will be compelled to expend, large sums of money for medical care, treatment and services in endeavoring to be cured of said injuries; and the Plaintiff suffered and will continue to suffer in the future acute and prolonged physical and mental pain and suffering; the Plaintiff has suffered and will continue to suffer in the future permanent disfigurement and/or disability; the Plaintiff has experienced and will continue to experience in the future loss of a normal life; the Plaintiff was caused to and in the future will lose much time from his employment, thereby incurring losses of large sums of money and the Plaintiff has been and in the future will be prevented from attending to his usual affairs and duties.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against the Defendant, CSR ROOFING CONTRACTORS INC., for a sum of money in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

## COUNT III

### NEGLIGENCE AGAINST GRAND OHIO CONDO ASSOCIATION

36.     At all times relevant herein, the Plaintiff, JUAN E. HERRERA, was an Illinois resident with his principal residence located in the City of Chicago, State of Illinois.

37.     At all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, was an Illinois condo association located at 211 E. Ohio Street, Chicago, Illinois 60611.

38.     That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, individually, jointly, and collectively owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the property located at 211 E. Ohio Street, Chicago, Illinois 60611, specifically the rooftop maintenance zone ("Property").

39.     That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was an employee and authorized and lawfully upon the Property.

40.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, had owned, maintained, serviced, installed, repaired, constructed, contracted or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

41.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, had designed, manufactured, produced, constructed, installed, maintained, serviced, or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

42.     That on or prior to January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, knew or should have known, about previous deficiencies to the roof or general issues pertaining to functionality and safety of the roof over the southside of the Property.

43.     That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was working on the water heaters and boilers on the roof of the Property where the Defendant failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), which would allow Plaintiff to safely move around maintenance zone, and instead left the wires in disarray, where Plaintiff was then caused to fall.

44.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, owned, maintained, possessed, repaired, and controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the Property.

45.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, was responsible for the placement, installation, and otherwise securing of the water heaters, boilers, work stie, work zone, drainage, and wires located on the Property.

46.     That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, had installed, conducted repairs to, cleaned, inspected, serviced, and maintained the wires, drainage, work zone, and work site surrounding the water heaters and boilers located on the Property.

47.     That on or before January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, designed, set, left out, and placed the water heaters, boilers, drainage, work zone, work site, and wires located on the roof of the southside of the Property.

48.    That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, was responsible for maintaining, repairing, securing, and/or servicing the water heaters, boilers, drainage, work zone/site, and wires located on the roof of the southside of the Property.

49.    That on or about January 21, 2023, and at all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), located adjacent to the water heaters and boilers on the roof of the southside of the Property.

50.    That on or about January 21, 2023, the Defendant GRAND OHIO CONDO ASSOCIATION, had notice and knowledge of the improperly installed, unsecured, and malfunctioning water heaters and boilers, drainage, unsafe work site/zone, and uncovered wires located on the roof on the southside of the Property.

51.    That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, failed to warn the Plaintiff of the dangerous and hazardous condition of the roof and wires on the Property.

52.    That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, by and through its agents, employees, workers, subcontractors/contractors or hires did not properly maintain, repair, and secure the roof for safe usage/passage by its employees, invitees, and customers walking within the Property.

53.    That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, failed to properly inspect the area surrounding the roofs water heaters and boilers

to determine whether it was proper for safe usage by its employees, invitees, and customers walking within the Property.

54. The Defendant, GRAND OHIO CONDO ASSOCIATION, was responsible for preventing the roof from being unsafe for usage by its employees, invitees, and customers walking within the Property.

55. That on and prior to January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, had notice and knowledge of the failure to provide a proper drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters and boilers on the roof of the Property as being dangerous and hazardous and an unsafe work zone/area(s)and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

56. That on and prior to January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being dangerous and hazardous and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

57. That on and prior to January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being in a location where employees, patrons, and customers were present and was dangerous and hazardous.

58. That on and prior to January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property, not having a proper drainage cover or a cap to cover the wires for the drainage on the Property where it was dangerous

13



and hazardous.

59.    That it then and there became and was the duty of the Defendant, GRAND OHIO

CONDO ASSOCIATION, to exercise reasonable care to maintain, monitor, repair, inspect, manage,

clean, evaluate for safety, anchor, and construct the area surrounding the water heaters and boilers

located on the Property in a reasonably safe condition for the safety of the general public, its

employees, patrons, invitees, the Plaintiff, and those persons lawfully upon and around said

Property.

60.    That not regarding its duty aforesaid, the Defendant, GRAND OHIO CONDO

ASSOCIATION, by its duly authorized agents, servants and/or employees, was guilty of one or

more of the following careless and negligent acts and/or omissions:

a.   Improperly installed and secured the water heaters, boilers, drainage caps, work zone, and wires located on the roof on the southside of the Property;

b.   Improperly maintained or controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property that as a direct and proximate cause thereof Plaintiff was injured;

c.   Failed to react and prevent increased injury to Plaintiff following notification of failure to provide a proper drainage cover or a cap to cover the wires for the drainage on the Property;

d.   Failed to supervise and monitor the condition of the roof on the Property;

e.   Failed to inspect, repair and/or monitor the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property to ensure it was properly installed and secured;

f.   Failed to properly provide a drainage cover or a cap to cover the wires for the drainage on the Property;

g.   Failed to have the area of the roof operating in a safe and usable condition on the Property;

h.   Failed to protect the Plaintiff from reasonable and foreseeable harm;

i.   Failed to repair and/or maintain the roof where the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

j.   Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

k.   Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure a proper drainage cover or a cap to cover the wires for the drainage located on the Property;

FILED DATE: 7/18/2025 2:49:52 PM 2025L002854

l.  Failed to inspect drainage cover or a cap to cover the wires for the drainage to ensure it worked properly;

m.  Failed to secure, repair or maintain the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

n.  Carelessly and negligently supervised, trained, or contracted with a third party to repair, clean, maintain, service, and inspect the Property and the water heaters, boilers and wires;

o.  Carelessly and negligently installed, maintained, secured or positioned the drainage cover or cap to cover the wires which created a dangerous and hazardous condition;

p.  Cleared the roof for usage when it was not safe to do so; and

q.  Was otherwise careless and negligent in the installation, repair, maintenance, inspection, evaluation for safety, construction, securing, and operating condition of the roof of the Property.

61.    As a direct and proximate result, in whole or in part of one or more of the above-mentioned wrongful acts or omissions of the Defendant, GRAND OHIO CONDO ASSOCIATION, the Plaintiff, JUAN E. HERRERA, was greatly bruised and injured. Diverse bones, tissues, muscles and ligaments were torn, strained and injured. Said injuries will result in the permanent disability of the Plaintiff. These injuries caused the Plaintiff to experience the loss of his normal enjoyment of life. Plaintiff suffered pain, shock, and became sick and disabled during which time he was caused to expend a considerable sum of money for medicines and medical care and attention and will, in the future, be obligated to pay out and expend large sums of money for care and attention. Plaintiff lost time and money from his employment as a result of the injury.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against Defendant, GRAND OHIO CONDO ASSOCIATION, for a sum of money in excess of FIFTY THOUSAND DOLLARS [$50,000.00], and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

**COUNT IV**
**CONSTRUCTION NEGLIGENCE AGAINST GRAND OHIO CONDO ASSOCIATION**

62.     At all times relevant herein, the Plaintiff, JUAN E. HERRERA, was an Illinois resident with his principal residence located in the City of Glendale Heights, State of Illinois.

63.     At all times relevant herein, the Defendant, GRAND OHIO CONDO ASSOCIATION, was a condo association located at 211 E. Ohio Street, Chicago, Illinois 60611.

64.     That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION., individually, jointly, and collectively owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the property located at 211 E. Ohio Street, Chicago, Illinois 60611, specifically the rooftop ("Property").

65.     That on or about January 21, 2023, the Defendant, GRAND OHIO CONDO ASSOCIATION, owned and/or was in charge of the erection, construction, installation, repairs, alteration, designing, inspecting, and/or upkeep of the Property.

66.     That at the aforesaid time and place and prior thereto, the Defendant, GRAND OHIO CONDO ASSOCIATION, individually and through its agents, servants, and employees, was present during the course of such erection, construction, repairs, alteration, and/or maintenance of the drainage cover or cap to cover the wires for the drainage on the Property located adjacent to the water heaters and boilers on the roof of the Property. The Defendant, GRAND OHIO CONDO ASSOCIATION, participated in coordinating the work being done and designated various work methods, maintained and/or checked work progress and/or participated in the scheduling of the work and the inspection of the work. In addition, thereto, at that time and place, the Defendant, GRAND OHIO CONDO ASSOCIATION, had the authority to stop the work, refuse the work and materials, and/or order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason.

16

67.     That at the aforesaid time and place, and prior thereto, the Defendant, GRAND OHIO CONDO ASSOCIATION, erected, constructed, placed and/or operated, and/or caused to be erected, constructed, placed and/or operated, the drainage cover or caps to cover the wires for the drainage located on the roof of the Property that caused the Plaintiff to fall.

68.     That at all times material to this Complaint, the Defendant, GRAND OHIO CONDO ASSOCIATION, had a duty to exercise reasonable care in the erection, construction, placement, removal and/or upkeep of the drainage covers or caps to cover the wires for the drainage located on the roof of the Property for the Plaintiff and others then and there present.

69.     Notwithstanding its duty, at said time and place, the Defendant, GRAND OHIO CONDO ASSOCIATION, by and through its agents, servants, and employees, were then and there guilty of one or more of the following careless and negligent acts and/or omissions:

   a.  Failed to make a reasonable inspection of the Property and the work being done thereon, when the Defendant, knew, or in the exercise of ordinary care should have known that said inspection was necessary to prevent injury to Plaintiff;
   b.  Improperly operated, managed, maintained, and controlled the aforesaid Property, so that as a direct and proximate result thereof, the Plaintiff was injured;
   c.  Failed to warn the Plaintiff of the dangerous conditions then and there existing, when Defendant, knew, or in the exercise of ordinary care should have known that said warning was necessary to prevent injury to the Plaintiff;
   d.  Failed to provide adequate safeguards to prevent the Plaintiff from injury while lawfully upon said Property;
   e.  Failed to supervise the work being done on the aforesaid Property; and/or
   f.  Allowed and permitted the design, construction, repair, maintenance and upkeep of the drainage cover or caps to cover the wires for the drainage located adjacent to the water heater and boilers located on the roof of the Property without being properly secured.

70.     That as a direct and proximate result of the aforesaid, the Plaintiff, JUAN E. HERRERA, suffered diverse injuries, both internally and externally, of a permanent and lasting nature, which have caused and will continue to cause pain in body and mind; and the Plaintiff, JUAN E. HERRERA, was caused to expend and in the future will be compelled to expend, large sums of money for medical care, treatment and services in endeavoring to be cured of said injuries; and the

Plaintiff suffered and will continue to suffer in the future acute and prolonged physical and mental pain and suffering; the Plaintiff has suffered and will continue to suffer in the future permanent disfigurement and/or disability; the Plaintiff has experienced and will continue to experience in the future loss of a normal life; the Plaintiff was caused to and in the future will lose much time from his employment, thereby incurring losses of large sums of money and the Plaintiff has been and in the future will be prevented from attending to his usual affairs and duties.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against the Defendant, GRAND OHIO CONDO ASSOCIATION, for a sum of money in excess of FIFTY THOUSAND DOLLARS ($50,000.00), and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

<div align="center">

**COUNT V**
**WILLFUL AND WANTON AGAINST GRAND OHIO CONDO ASSOCIATION**

</div>

71.     That on or about January 21, 2023, and for a long time prior thereto, the Defendant, GRAND OHIO CONDO ASSOCIATION, collectively or individually owned, leased, operated, managed, maintained, conducted repairs to, constructed, possessed, and controlled the property located at 211 E. Ohio Street, Chicago, Illinois 60611, and specifically southside of the roof which contained a construction zone with water heaters, boilers, drainage, drainage cap(s), work zone, and wires the property("Property").

72.     At the aforementioned time and place and prior thereto, the Defendant, GRANDO OHIO CONDO ASSOCIATION, knowing its duty to maintain a safe Property for invitees, employees, and the public, carelessly and negligently caused and permitted said Property to become and remain in dangerous condition.

73.     The Defendant, GRAND OHIO CONDO ASSOCIATION, knew, or in the exercise

<div align="center">18</div>

of ordinary care, should have known, that the aforementioned Property was in disrepair and posed a danger to invitees, employees, the public, the Plaintiff, and those persons lawfully upon the Property.

74.     That on or about January 21, 2023, and for a long time prior thereto, the Defendant, GRAND OHIO CONDO ASSOCIATION, contracted with various subcontractors for construction, maintenance, cleaning, repair, work, and any other general maintenance and construction services to and for the Property.

75.     That on or about January 21, 2023, the Property was not secure or safe for use, had loose wiring, was inherently dangerous, violated OSHA safety standards, and/or created an unnecessarily dangerous environment for the Plaintiff, JUAN E. HERRERA.

76.     That on or about January 21, 2023, and at all relevant times, the Defendant, GRAND OHIO CONDO ASSOCIATION, had notice and knowledge or reasonably should have known that the Property was constructed, maintained, inspected, left, secured, and repaired in a negligent manner.

77.     That on or about January 21, 2023, and at all relevant times, it was foreseeable that an individual such as the Plaintiff, JUAN E. HERRERA, would be walking within and upon the Property.

78.     That it then and there became and was the duty of the Defendant, GRAND OHIO CONDO ASSOCIATION, to exercise reasonable care to design, maintain, monitor, repair, inspect, service, secure, and construct the Property in a reasonably safe condition for the safety of invitees, employees, the public, the Plaintiff, and those persons lawfully upon the Property.

79.     That it then and there became and was the duty of the Defendant, GRAND OHIO CONDO ASSOCIATION, to exercise reasonable care to maintain, monitor, repair, inspect, manage,

clean, securing, and service of the Property in a reasonably safe manner and condition for the safety

of invitees, employees, the public, the Plaintiff, and those persons lawfully upon the Property.

80.     That not regarding its duty aforesaid, the Defendant, GRAND OHIO CONDO

ASSOCIATION, was guilty of one or more of the following careless and negligent acts and/or

omissions:

a. Knowingly and intentionally failed to inspect said Property and maintain it in a safe condition;
b. Knowingly and intentionally permitted the Property to remain in an unreasonably dangerous condition, which the Defendant knew, or upon the reasonable exercise of care, would have known to have existed;
c. Knowingly and intentionally failed to warn patrons, including the Plaintiff, that the Property was hazardous because of exposed wire near the water heaters and boilers on the southside of the roof on the Property;
d. Knowingly and intentionally supervised the contractors or other third parties that maintained, inspected, repaired, secured, and/or constructed the Property;
e. Knowingly and intentionally failed to inspect the Property to secure the area where invitees and the Plaintiff were walking;
f. Knowingly and intentionally failed to properly clean, secure, repair, and maintain, exposed wiring near the water heaters and boilers on the southside of the roof the Property;
g. Knowingly and intentionally failed to repair the exposed wiring near the water heaters and boilers on the southside of the roof and the surrounding surface area in compliance with local, state, and municipal codes;
h. Knowingly and intentionally provided improper construction instructions in an area where employees such as the Plaintiff would be walking, making it a dangerous and hazardous condition to the Property;
i. Knowingly and intentionally failed to contact a third-party maintenance company within a reasonable period time despite knowledge of potentially dangerous condition;
j. Knowingly and intentionally failed to provide the Plaintiff with a safe access to and exit from the Property entrance;
k. Knowingly and intentionally failed to repair exposed wire near the water heaters and boilers on the southside of the roof which created a dangerous and hazardous condition on the Property;
l. Knowingly and intentionally trained and instructed its employees to disregard general safety standards and OSHA safety standards to save time while doing construction;
m. Knowingly and intentionally trained and instructed its employees to disregard OSHA safety standards to save time while doing construction despite notice of continuing violations and injuries; and
n. Knowingly and intentionally failed in the construction, installation, repair,

20

inspection, supervision of its employees, training of its employees and maintenance as to the repair of the broken concrete within the Property.

81.     That as a direct and proximate result of one or more of the aforesaid careless and negligent acts or omissions of the Defendant, GRAND OHIO CONDO ASSOCIATION, the Plaintiff, JUAN E. HERRERA, was caused to and did trip and fall to the ground below.

82.     That as a direct and proximate result of the aforesaid, the Plaintiff, JUAN E. HERRERA, suffered diverse injuries, both internally and externally, of a permanent and lasting nature, which have caused and will continue to cause pain in body and mind; and the Plaintiff, was caused to expend and in the future will be compelled to expend, large sums of money for medical care in endeavoring to be cured of said injuries; and the Plaintiff was caused to and did lose much time from his employment, thereby incurring losses of large sums of money; and the Plaintiff has been and in the future will be prevented from attending to his usual affairs and duties.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against the Defendant, GRAND OHIO CONDO ASSOCIATION, for a sum of money in excess of FIFTY THOUSAND DOLLARS [$50,000.00], and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

## COUNT VI
### NEGLIGENCE AGAINST FIRST SERVICE RESIDENTIAL

83.     At all times relevant herein, the Plaintiff, JUAN E. HERRERA, was an Illinois resident with his principal residence located in the City of Chicago, State of Illinois.

84.     At all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, was a company with its Principal Office located at 303 E. Wacker Drive Suite 1900, Chicago, Illinois 60601 and was doing business in the State of Illinois.

21

85.     That on or about January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, individually, jointly, and collectively owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the property located at 211 E. Ohio Street, Chicago, Illinois 60611, specifically the rooftop maintenance zone ("Property").

86.     That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was an employee and authorized and lawfully upon the Property.

87.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, had owned, maintained, serviced, installed, repaired, constructed, contracted or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

88.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, had designed, manufactured, produced, constructed, installed, maintained, serviced, or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the southside of the Property.

89.     That on or prior to January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, knew or should have known, about previous deficiencies to the roof or general issues pertaining to functionality and safety of the roof over the southside of the Property.

90.     That on or about January 21, 2023, the Plaintiff, JUAN E. HERRERA, was working on the water heaters and boilers on the roof of the Property where the Defendant failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), which would allow Plaintiff to safely move around maintenance zone, and instead left the wires in disarray, where Plaintiff was then caused to fall.

91.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, owned, maintained, possessed, repaired, and controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the Property.

92.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, was responsible for the placement, installation, and otherwise securing of the water heaters, boilers, work stie, work zone, drainage, and wires located on the Property.

93.     That on or about January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, had installed, conducted repairs to, cleaned, inspected, serviced, and maintained the wires, drainage, work zone, and work site surrounding the water heaters and boilers located on the Property.

94.     That on or before January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, designed, set, left out, and placed the water heaters, boilers, drainage, work zone, work site, and wires located on the roof of the southside of the Property.

95.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, was responsible for maintaining, repairing, securing, and/or servicing the water heaters, boilers, drainage, work zone/site, and wires located on the roof of the southside of the Property.

96.     That on or about January 21, 2023, and at all times relevant herein, the Defendant, FIRST SERVICE RESIDENTIAL, failed to provide the roof a proper drainage cover or a cap to cover the wires for the drainage (as per industry custom), located adjacent to the water heaters and boilers on the roof of the southside of the Property.

97.     That on or about January 21, 2023, the Defendant FIRST SERVICE RESIDENTIAL, had notice and knowledge of the improperly installed, unsecured, and malfunctioning water heaters and boilers, drainage, unsafe work site/zone, and uncovered wires located on the roof on the southside of the Property.

98.     That on or about January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, failed to warn the Plaintiff of the dangerous and hazardous condition of the roof and wires on the Property.

99.     That on or about January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, by and through its agents, employees, workers, subcontractors/contractors or hires did not properly maintain, repair, and secure the roof for safe usage/passage by its employees, invitees, and customers walking within the Property.

100.    That on or about January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, failed to properly inspect the area surrounding the roofs water heaters and boilers to determine whether it was proper for safe usage by its employees, invitees, and customers walking within the Property.

101.    The Defendant, FIRST SERVICE RESIDENTIAL, was responsible for preventing the roof from being unsafe for usage by its employees, invitees, and customers walking within the Property.

102.    That on and prior to January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, had notice and knowledge of the failure to provide a proper drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters and boilers on the roof of the Property as being dangerous and hazardous and an unsafe work zone/area(s)and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

24

103.    That on and prior to January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being dangerous and hazardous and susceptible to safety hazards, unsafe walking area(s) or becoming a slip/trip hazard(s).

104.    That on and prior to January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property as being in a location where employees, patrons, and customers were present and was dangerous and hazardous.

105.    That on and prior to January 21, 2023, the Defendant, FIRST SERVICE RESIDENTIAL, had notice and knowledge of the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property, not having a proper drainage cover or a cap to cover the wires for the drainage on the Property where it was dangerous and hazardous.

106.    That it then and there became and was the duty of the Defendant FIRST SERVICE RESIDENTIAL, to exercise reasonable care to maintain, monitor, repair, inspect, manage, clean, evaluate for safety, anchor, and construct the area surrounding the water heaters and boilers located on the Property in a reasonably safe condition for the safety of the general public, its employees, patrons, invitees, the Plaintiff, and those persons lawfully upon and around said Property.

107.    That not regarding its duty aforesaid, the Defendant, FIRST SERVICE RESIDENTIAL, by its duly authorized agents, servants and/or employees, was guilty of one or more of the following careless and negligent acts and/or omissions:

FILED DATE: 7/18/2025 4:43:03 PM 2025L007853

a. Improperly installed and secured the water heaters, boilers, drainage caps, work zone, and wires located on the roof on the southside of the Property;

b. Improperly maintained or controlled the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property that as a direct and proximate cause thereof Plaintiff was injured;

c. Failed to react and prevent increased injury to Plaintiff following notification of failure to provide a proper drainage cover or a cap to cover the wires for the drainage on the Property;

d. Failed to supervise and monitor the condition of the roof on the Property;

e. Failed to inspect, repair and/or monitor the water heaters, boilers, drainage, drainage cap(s), work zone, and wires located on the roof on the southside of the Property to ensure it was properly installed and secured;

f. Failed to properly provide a drainage cover or a cap to cover the wires for the drainage on the Property;

g. Failed to have the area of the roof operating in a safe and usable condition on the Property;

h. Failed to protect the Plaintiff from reasonable and foreseeable harm;

i. Failed to repair and/or maintain the roof where the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

j. Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

k. Improperly trained or supervised its employees or agents on how to repair, maintain, install, inspect, and/or secure a proper drainage cover or a cap to cover the wires for the drainage located on the Property;

l. Failed to inspect drainage cover or a cap to cover the wires for the drainage to ensure it worked properly;

m. Failed to secure, repair or maintain the drainage cover or a cap to cover the wires for the drainage located adjacent to the water heaters, boilers, drainage, drainage cap(s), work zone, and wires were located on the southside of the Property;

n. Carelessly and negligently supervised, trained, or contracted with a third party to repair, clean, maintain, service, and inspect the Property and the water heaters, boilers and wires;

o. Carelessly and negligently installed, maintained, secured or positioned the drainage cover or cap to cover the wires which created a dangerous and hazardous condition;

p. Cleared the roof for usage when it was not safe to do so; and

q. Was otherwise careless and negligent in the installation, repair, maintenance, inspection, evaluation for safety, construction, securing, and operating condition of the roof of the Property.

108.    As a direct and proximate result, in whole or in part of one or more of the above-mentioned wrongful acts or omissions of the Defendant, FIRST SERVICE RESIDENTIAL, the Plaintiff, JUAN E. HERRERA, was greatly bruised and injured. Diverse bones, tissues, muscles and

26

ligaments were torn, strained and injured. Said injuries will result in the permanent disability of the Plaintiff. These injuries caused the Plaintiff to experience the loss of his normal enjoyment of life. Plaintiff suffered pain, shock, and became sick and disabled during which time he was caused to expend a considerable sum of money for medicines and medical care and attention and will, in the future, be obligated to pay out and expend large sums of money for care and attention. Plaintiff lost time and money from his employment as a result of the injury.

WHEREFORE, the Plaintiff, JUAN E. HERRERA, by and through his attorneys, SHERWOOD LAW GROUP, LLC, hereby prays for judgment against Defendant, FIRST SERVICE RESIDENTIAL, for a sum of money in excess of FIFTY THOUSAND DOLLARS [$50,000.00], and such additional amounts as the jury and the Court shall deem proper and appropriate under the circumstances provided herein, inclusive of the costs of bringing this action.

Respectfully Submitted,

**SHERWOOD LAW GROUP, LLC**

Craig N. Ettinger / s

**CRAIG N. ETTINGER**
cne@sherwoodlawgroup.com

**JASON H. SHERWOOD**
**CRAIG N. ETTINGER**
**SHERWOOD LAW GROUP, LLC**
218 N. Jefferson, Suite #401
Chicago, Illinois 60661
Phone: 312.627.1650
Fax: 312.648.9503
Attorney No. 47294

27

FILED DATE: 7/18/2025 12:34 PM    2025CH07484



**FirstService**
RESIDENTIAL

MANAGEMENT AGREEMENT

BETWEEN THE

BOARD OF DIRECTORS

OF THE

THE GRAND OHIO CONDOMINIUM ASSOCIATION

AND

FIRSTSERVICE RESIDENTIAL



**FirstService**
RESIDENTIAL

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## MANAGEMENT AGREEMENT

This Management Agreement (the "Agreement") is made and entered into this _7TH_ day of ___MAY___, 2019 by and between the Board of Directors (hereinafter referred to as the "Board" or "Party") of **The Grand Ohio Condominium Association** (the "Association" or "Condominium"), a Condominium Association with a principal place of business located in **Chicago, IL 60611**, and on behalf of the owners of the Association (the "Owners") and all of the Members of the Association, and FirstService Residential as Managing Agent (hereinafter referred to as "Agent", "Management Agent" or "Party") (the Association, Board, Owners and Agent shall be collectively referred to herein as the "Parties").

### WITNESSETH:

**WHEREAS,** the Agent is engaged in the management and operation of real estate, more particularly, the management and operation of condominium buildings in the Chicago, Illinois area on behalf of the condominium associations organized or incorporated to meet the needs of the individuals who reside in the condominium buildings that the Agent manages. In the course of its business, the Agent has experience managing and operating residential real estate and condominium buildings in all phases of management and operation, including, but not limited to, the day-to-day operations, accounting, budgeting, financing, integration and development of various types of building systems, construction, energy conservation, personnel development and the general administration of the condominium building on behalf of the Owners and the Owner's respective condominium associations;

**WHEREAS,** the Owners hold legal title to the property commonly known as The Grand Ohio Condominium Association and all of the personal property located thereon (the real property, Condominium and improvements located on said real property is referred to herein as the "Property");

**WHEREAS,** under the provisions of the Declaration of Condominium Ownership and the By-Laws required under the provisions of the subject state Condominium Property Act (the "Act"), the Board is authorized to engage a Management Agent on behalf of the Owners; and

**WHEREAS,** the duly elected Board on behalf of the Association and its members desires to employ the Agent to manage the Condominium and the Agent desires to be employed to manage the Condominium.

NOW, THEREFORE, in consideration of the foregoing and of the terms and conditions hereinafter set forth, the Parties hereto agree as follows:

1.   **Employment of Agent.** The Board, on behalf of the Owners, hereby employs the Agent solely and exclusively to manage the Condominium for a period of <u>one year</u> beginning on the 6th day of May, 2019 and ending on the 30th day of April 2020, and year to year thereafter.

     If neither party has given the other 60 days prior written notice of its desire to terminate at the end of the initial term, then the Agreement shall automatically be renewed for an additional one year term,

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

and such renewals shall continue each year, on a year to year basis, unless 60 days written notice is given by either party prior to the expiration of any term. The Association acknowledges that Agent is succeeding to the management of the Association and will be relying on information provided by Association and third parties.

Notwithstanding the foregoing, the both Parties may terminate this agreement for cause by sending notice at least 60 days prior to the termination date, while also giving the other the right to cure the violation of the Agreement within 30 days after notice. For purposes of this provision, for cause shall mean, but not be limited to, sale of Agent's business, or, either party's cessation of operations, election to dissolve, insolvency, filing of any petition of bankruptcy, or breach of a material term or condition of this Agreement. Upon termination, all obligations hereunder shall cease except liabilities or claims, which occurred or arose prior to such termination.

In the event the Association approves to sell the building in compliance with Section 15 of the Illinois Condominium Property Act (the ICPA), Association may terminate this agreement upon 60 day written notice. In such case, Agent may charge their standard rate to process all requests related to section 22.1 of the ICPA, including but not limited to processing paid assessment letters, and reconciling final accounting ledgers and statements.

2. The Agent agrees to manage the Condominium to the extent, for the period, and upon the terms herein provided.

3. More particularly, the Agent shall, without limiting its general obligations to perform the normal and routine management functions and coordinate the day-to-day business of the Property, perform the following services in the name of and on behalf of the Owners, and the Board hereby gives the Agent the authority and powers required to perform these services.

   A. **Collections.** The Agent shall assist with the collection of all monthly assessments and other charges due to the Association for the operation of the Condominium as well as all rental or other payments from all unit owners and tenants provided that the Agent shall have no responsibility for collection of delinquent assessments or other charges except sending notices of delinquency and forwarding collection to any attorney or collection agency the Board chooses to use. On or before the 15th day of each calendar month, Agent shall provide the Board with a comprehensive report and listing of all unit owners or tenants who are delinquent in the payment of assessments and other charges due the Association as of the end of the preceding month. Postage for collection of delinquency notices, assessment statements, and the Association's bills and invoices shall be at the expense of the Association. The Agent shall charge the individual owners for issuing collection, demand, intent to lien letters, and all clerical work associated with collecting past due accounts. In the event Agent is required to testify at legal proceedings, the Agent shall charge the Association $125.00 per hour.

   B. **Records: Statements.** The Agent shall maintain records showing all of its receipts and expenditures relating to the Condominium and shall by the 15th day of the following month submit to the Board a cash receipts and disbursements statement for the preceding month. This service shall not be construed as requiring the Agent to supply an audit of the Association's accounts.

   C. **Budget Preparation.** The Agent shall prepare and submit to the Board, on or before 60 days prior to the start of each fiscal year a recommended budget for the next year showing anticipated receipts and expenditures for each year.

D. **Annual Statement.** Within thirty (30) days after the end of each f i s c a l / calendar year, the Agent shall submit to the Board a summary of all receipts and expenditures relating to the Condominium for the preceding year, provided that this service shall not be construed to require the Agent to supply an audit. Any audit required by the Owners shall be prepared at their expense by accountants of their selection.

E. **Maintenance of the Common Elements and Limited Common Elements.** Subject to the direction of the Board and at the expense of the Association, the Agent shall cause the common elements and limited common elements of the Condominium (the terms "Common Elements" and "Limited Common Elements", as used herein, shall have the same meaning as the term is defined in the Association's Declaration of Condominium and By-Laws and the Act) to be maintained according to appropriate standards of maintenance consistent with the character of the Condominium, including cleaning, painting, decorating, and such other annual maintenance and repair work as may be necessary.

F. **Employees and Other Personnel.** On the basis of the budget, job standards, and wage rates previously approved by the Board and Association members, the Agent shall, as necessary, have the power and authority, with the Board's prior approval, to select, hire, pay, supervise, negotiate collective bargaining agreements with and supervise engineers, janitors, and other personnel required to maintain and operate the Condominium properly. All personnel, except the on-site manager and any other management office personnel will be employees of the Association or an outside contractor, and not of the Agent. All salaries, taxes, fringe benefits and other expenses payable on account of such personnel, employees and/or contractors shall be operating expenses of the Condominium and Association and shall be paid by the Association directly or by reimbursement to the Agent. Agent shall provide payroll services, workers compensation insurance coverage, benefits, and all other fees and expenses for all such Association employees, at the Association's expense, as needed.

The on-site management staff shall be employees of FirstService Residential, and entitled to participate in the health, life, disability insurance and 401-K benefits offered by the Agent. The Agent shall be reimbursed for all salaries, taxes, and other expenses payable on account of such staff, and such reimbursement shall be operating expenses of the Association.

G. **Returns and Reports.** The Agent shall execute and file all returns and other instruments and do and perform all acts required of the Board or Association as an individual taxpayer or employer under the Federal Insurance Contributions Act; the Federal Unemployment Tax Act, Subtitle C of the Internal Revenue Code of 1954; and the Federal and Local Income Tax Act with respect to wages paid by the Agent on behalf of the Owners and under any similar Federal, State or Municipal law now or hereafter in force (and in connection therewith, the Board agrees upon request to execute and deliver promptly to the Agent all necessary powers of attorney, notices of appointment and the like in connection with the foregoing). All costs of preparation of tax returns shall be borne by Association.

H. **Utilities and Other Services for the Property.** Agent shall, on behalf of and as Agent for the Association, negotiate and execute contracts for services, improvements, maintenance, utilities, and repairs, as well as contracts for water, electricity, gas, oil,

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

telephone, insurance, utilities and such other services for the Common Elements and Limited Common Elements of the Condominium as may be necessary or advisable in accordance with Paragraph 4 and such prior approval of the Board shall only be required if the contractual obligation at issue exceeds One Thousand Five Hundred Dollars and 00/100 ($1,500.00). Agent shall provide competitive pricing and services through preferred vendors and contractors. One (1) or more of these vendors may have a relationship with the Agent that provides a direct or indirect procurement fee and in such case Agent shall disclose such relationship. All purchase discounts and rebates shall flow directly to the Association. The Agent shall also purchase, on behalf of the Association, such equipment, tools, appliances, materials and supplies as are necessary for the proper operation and maintenance of the Condominium and the Common Elements and Limited Common Elements of the Condominium. All such purchases and contracts shall be in the name and at the expense of the Association. All equipment, tools, appliances, materials and supplies purchased with Association funds shall be used exclusively for Association purposes and for no other purpose whatsoever.

I.   **Payment of Items.** The Agent shall pay from the funds of the Association all taxes, building and inspection fees, water rates, and other governmental charges, and all other charges or obligations incurred by the Association with respect to the maintenance or operation of the Condominium or incurred by the Agent on behalf of the Association pursuant to the terms of this Agreement or pursuant to other authority granted by the Board.

J.   **Insurance Placement Records and Claims.** At the direction and subject to the prior approval of the Board, the Agent shall maintain insurance coverages on behalf of the Association consistent with the Illinois Condominium Property Act. The Agent shall maintain appropriate records of all insurance coverage carried by the Association. The Agent shall cooperate with the Board in investigating and reporting all accidents or claims for damage relating to the ownership, operation and maintenance of the Common Elements and Limited Common Elements of the Condominium including any damage or destruction to them. Further, the Agent shall review periodically the insurance coverage with competent insurance specialists and make recommendations to the Board consistent with the Declaration of the Condominium, provided, however, that the Board shall be solely responsible for selecting or determining the form, amount, and types of insurance coverage maintained from time to time by the Association.

K.   **Contractors and Workmen Insurance.** At the sole cost of the contractors and/or workmen, Agent will require that all contractors and/or workmen employed by the Association show evidence of proper insurance, in accordance with Agent's insurance standards for vendors, prior to the commencement of work. Agent may use a third party vendor to verify vendor insurance compliance. All such policies of insurance shall name the Association, its Board of Directors and FirstService Residential as additional insureds.

L.   **Claim Reporting.** Agent shall promptly investigate and make full written reports to the Board as to all accidents and claims for damage relating to personal injury or property damage in the Common Elements and Limited Common Elements of the Condominium of which Agent becomes aware and, unless otherwise directed by the Board, shall cooperate and promptly make any and all reports required by the Association's insurance companies in connection therewith. Agent shall advise the Board as to any correspondence or notification received from any governmental body with respect to the Condominium.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

M,   **Owner and Tenant Records.** Agent shall use its best efforts to obtain the names, home and business telephone numbers and addresses of all owners and tenants and shall maintain complete records thereof. At the expense of the requesting Unit owner, Agent shall furnish all information required by law in connection with the resale or refinance of any Units in the Condominium on forms submitted by the Board. Any expenses incurred shall be solely the expenses of the requesting Unit owner and in no event shall Agent charge the Association of any expenses incurred in connection with the resale or refinance of any Units. Agent shall assist the Board in connection with the review and processing of leases and prospective lessees including but not limited to distributing and processing application forms and collecting any applicable fees. Agent shall be compensated $15.00 per unit to collect and monitor homeowner insurance compliance throughout the year, if such service is requested by the Association.

N.   **Bankruptcy or Insolvency.** If the Agent shall be adjudicated as bankrupt or insolvent and such adjudication is not vacated within thirty (30) days, or if a receiver or trustee shall not be vacated within thirty (30) days, or if a corporate reorganization of Agent or any arrangement by statute shall be filed, or if Agent shall make an assignment for the benefit of its creditors, then the same shall be cause for termination of this Agreement by the Association, effective upon service of notice of such termination.

If the Association shall be adjudicated as bankrupt or insolvent and such adjudication is not vacated within thirty (30) days, or if a receiver or trustee shall not be vacated within thirty (30) days, or if a corporate reorganization of Association or any arrangement by statute shall be filed, or if Association shall make an assignment for the benefit of its creditors, then the same shall be cause for termination of this Agreement by the Agent, effective upon service of notice of such termination.

O.   **Termination.** Within fifteen (15) days following the Initial Termination Date, Continuing Termination Date or termination of this Agreement for any reason, Agent shall submit to the Association all original books, records, vouchers, contracts, notices and other documents pertaining to the Association in the Agent's possession or control, and shall immediately return to the Association's direct control all funds of the Association then held by the Agent. Notwithstanding anything to the contrary herein, such termination shall not release the Association or the Agent from their respective indemnities under Paragraphs 9 and 10 hereof.

P.   **Signage.** The Agent shall have the right, at its expense, to place on the Premises signs stating that the Premises are managed by the Agent, provided that it obtains the Board's prior written approval as to size and location, which approval shall not be unreasonably withheld or delayed. Upon expiration of any Term, without renewal, or other termination of this Agreement, Agent shall promptly remove all signage from the Association's building and restore the affected portion of the building to the condition it was in immediately prior to installing the signage.

Q.   **Amicable Relationships.** The Agent agrees to reasonably assist the Association in maintaining amicable relations with the owners of other property adjacent to the Condominium.

R.   **Moves into and Out of Building.** Agent shall supervise the moving in and out of Unit owners, tenants and subtenants and, as practicable, arrange the dates of such moves to

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

minimize disturbances to the operation of the Condominium and inconvenience to other Unit owners, tenants and subtenants. Agent shall also perform and document move in/out damage inspections and manage the collection and release of moving damage deposits.

S. **Registration with City of Chicago.** Agent shall, at its sole cost and expense, file with the City of Chicago, such documentation as may be required to designate Agent as the Association's managing agent and point of contact for notices from the City of Chicago and its various departments, including the Department of Buildings. Agent shall meet and confer, as needed, with governmental inspectors for government-mandated inspections and tests.

T. **Cooperation with Association's Counsel.** Agent shall cooperate with the Association's counsel in prosecuting all legal matters on behalf of the Association including but not limited to communicating with the Board, providing documents in a timely manner and attending depositions and court appearances if and when required.

U. **Association Contracts and Other Agreements.** Agent shall maintain a listing of all Association contracts and agreements referencing commencement and termination dates and automatic renewal dates.

4. In discharging its responsibilities under Paragraph 3 hereof, the Agent shall not make any expenditure nor incur any non-recurring contractual obligation exceeding One Thousand Five Hundred and 00/100 Dollars ($1,500.00) without the prior written or verbal consent of the Board, provided that no such consent shall be required to repay the advances made by the Agent under the terms of Paragraph 5. Notwithstanding the limitations imposed by the preceding sentence, the Agent may, on behalf of the Owners, without prior consent, expend any amount, or incur a contractual obligation in any amount, required to deal with emergency conditions which may involve a danger to life or property or may threaten the safety of the Condominium or the Owners and the occupants or may threaten the suspension of any necessary service to the Condominium. Agent shall promptly inform the Board Representative of any such action within twenty four (24) hours.

5. A. The Agent agrees that all monies collected by it on behalf of the Association shall be deposited in an interest bearing custodial account, of agent's choosing, in a state or national bank where deposits are insured by the Federal Deposit Insurance Corporation separate and apart from Agent's own funds and the funds of any other entities.

B. All expenses of operation and management may be paid from the Association's funds held by the Agent, and the Agent is authorized to pay any amounts owed to the Agent by the Association from such account at any time without prior notice to the Association. The Agent shall have no obligation to advance funds to the Association for any purpose whatsoever.

C. The Agent agrees that, at Agent's sole cost and expense, all its employees who handle or are responsible for the safekeeping of any monies of the Association shall be covered by a fidelity bond protecting the Association; such bond to be in an amount not less than the minimum amount required by the Illinois Condominium Property Act and the Illinois Community Association Manager Licensing and Disciplinary Act, and with a company determined by the Agent.

6. The Association shall pay the Agent a management fee equal to **Five Thousand Nine Hundred**

7 | P a g e

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**Fifty Dollars and No/100 ($5,950.00)** per month for the period of May 6, 2019 – April 30, 2020. The management fee will increase to **Seven Thousand One Hundred Forty Dollars and 00/100 ($7,140.00)** for the period of May 1, 2020 – April 30, 2021. The management fee shall increase each subsequent renewal year in accordance with the terms of this Paragraph 6 (the initial management fee and any subsequent increase shall be referred to herein as the "Management Fee"). After the initial term of this Agreement, the monthly Management Fee shall be adjusted annually on the anniversary date of this Agreement by multiplying such fee by a factor which shall have as its numerator the twelve (12) month average of the U.S. Consumer Price Index, All Urban Consumers Chicago area only, for the first twelve (12) months immediately preceding the month of adjustment and as its denominator, the twelve (12) month average immediately preceding the period used in the numerator, or by an amount of not more than three (3%) percent of the monthly Management Fee, whichever is greater. The Management Fee shall be paid in advance on the first day of the month for services to be performed.

Actual expenses incurred by Agent for copying, printing, mailing (including postage and delivery), production and circulation of notices and newsletters and general correspondence of the Board, shall be at the expense of the Association, as will the cost postage and delivery of billing statements for owners or tenants. The Agent is hereby authorized to withdraw the amount of such costs and expenses from the funds of the Association held by the Agent in the Custodial Account. Agent shall not be entitled to any additional fees for performing the aforementioned clerical services.

It is expressly understood that in the event that the Association requires the Agent to perform duties not now in practice or anticipated at the inception of this Agreement, which duties would require additional management supervision, an additional service fee or additional accounting entries, the Association shall pay the Agent the additional compensation therefore on a basis that will reimburse the Agent for the time spent by its personnel (computed on the basis of their regular hourly wages or salaries) and for equipment usage, and materials and supplies provided. Agent shall not be entitled to payment of any additional fees unless the Board has previously agreed in writing to engage Agent for the performance of such additional services and the Board and the Agent have agreed upon the additional fees to be billed to the Association for such additional services. In all such cases, the Board shall enter into an Additional Services Agreement (hereinafter referred to as the "Additional Services Agreement") with the Agent.

Agent shall charge individual unit owners for services beyond the scope of this Agreement. These charges may include but are not limited to charges for the issuance of paid assessment letters in conjunction with the required paperwork for individual unit owner sales, refinances, processing leases, and for reviewing individual condominium unit renovation plans to establish that the renovation is in compliance with the Association's governing documents. The fees for these and other services shall be presented to the owner at the time of their individual request for service. The Agent reserves the right to withhold these types of services to individual unit owners should the fees not be paid or the unit owner refuses to compensate for these services.

Agent shall charge a unit owner of the Condominium Fifty Dollars and No/100 ($50.00) if a check or other type of payment to the Association is returned for insufficient funds.

7.    The Agent agrees that it shall designate an on-site property manager, assistant property manager, and administrative assistant for the Condominium (the "managers team"). The management team shall work at the Association on a time basis as agreed to between the Board and Agent (not less than forty (40) hours per week) provided, however, that the management team may be off the Condominium property to conduct Association business, for professional training, for meetings with Agent and the like. The members of the management team shall be replaced if his/her

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

working relationship with the Board is unsatisfactory. The Board shall notify Agent of management team's unsatisfactory working relationship with the Board by serving Notice to the Agent in accordance with Paragraph 13 of this Agreement below.

The Association shall, at its sole cost and expense, provide the management team and staff with an appropriately furnished and equipped office. The cost of telephone service, office supplies, maintenance and other utilities for this office shall be part of the Association expense.

Agent shall designate one of its employees to serve as the Supervisory Property Manager assigned to the Association. The Supervisory Property Manager shall be promptly replaced at the Board's request if his/her working relationship with the Board is deemed by the Board to be unsatisfactory. Every person serving as the Property Manager and the Supervisory Property Manager will at all times satisfy all of the licensing and other standards for a community association manager required by applicable law. The Property Manager and the Supervisory Property Manager shall attend twelve meetings of the Board annually and the annual meeting of the Unit Owners at no additional cost to the Association. In the event of additional meetings, or meetings in excess of two (2) hours, the Association shall pay the agent an amount equal to $125.00 per hour per person.

The Association and Board acknowledge that Agent has invested substantial time, effort and resources in the development and training of the Management Staff to enable him or her to provide the level of support, installation skills and services required by this Agreement. During the term of this Agreement and for one year after this Agreement is terminated, the Association and Board agree to not hire, employ, accept as a volunteer or receive any type of services from any of Agent's employees or former employees of the preceding one year, including but not limited to the Property Manager and the Supervisory Property Manager, without Agent's express written permission.

The Association further acknowledges that Agent is committed to providing a work environment that is free from all forms of discrimination. The Association shall ensure a work environment that is free from discrimination, sexual harassment, harassment of any kind, or a hostile work environment created by, by not limited to, association employees, vendors, residents or board members.

8.      The Board shall designate one individual (the "Board's Representative"), who shall be authorized to deal with the Agent on behalf of the Board on any matter relating to the day-to-day management of the Condominium.   The Board may designate one individual (the "Board's Alternate Representative") who, solely in the absence of the Board's Representative, shall exercise such authority on behalf of the Board. The Agent is directed not to accept directions or instructions with regard to the day-to-day management of the Condominium from anyone else. In the absence of any other designation by the Board, the President of the Board shall be the Board's Representative. Where Board approval is required under this Agreement, and except as otherwise provided in Paragraph 3 hereof, the Agent may act upon the verbal or written approval of the Board or its authorized representative.

9.   A.     The Agent shall have no authority to make any structural changes in the Condominium or to make any other major alterations or additions in or to any building or equipment therein, except such emergency repairs as may be required because of danger to life and/or property or which are immediately necessary for the preservation and safety of the Condominium or the safety of the Owners and occupants or are required to avoid the suspension of any necessary service to the Condominium.   Agent shall promptly



inform the Board Representative of any such action within 24 hours.

B.    The Agent is given no responsibility for compliance of the Condominium or any of its equipment with the requirements of any ordinances, laws, rules, or regulations (including those relating to the disposal of solid, liquid, and gaseous wastes) of the City, County, State, or Federal Government, or <u>any</u> public authority or official thereof having jurisdiction over it, except to notify the Board promptly, or forward to the Board promptly, any complaints, warning notices, or summons received by it relating to such matters.

C.    The Board represents that to the best of their knowledge the Condominium complies with all such requirements, and authorizes the Agent to disclose the ownership of the Condominium to any such officials, and agrees to indemnify and hold harmless the Agent, its representatives, servants and employees of, and from all loss, cost, expense and liability whatsoever which may be imposed on them or any of them by reason of any present or future violation or alleged violation of such laws, ordinances, rules or regulations.

10.    To the extent legally permissible, the Board and Association agree to indemnify Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) and hold Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless in accordance with the provisions of this Paragraph. The Board and Association further agree:

A.    To indemnify, defend, and save the Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from and against any and all loss, assessments, obligations, debts, fees, fines, penalties, demands, injuries, charges, expenses (including, but not limited to, fees and expenses of attorneys, expert witnesses, architects, engineers and other consultants), interest, judgments, costs, claims, damages, liabilities, liens, other claims, suits and/or the like of any and every kind, nature and description whatsoever, in any way involving, arising from or out of, relating to or in connection with the Board, Property or Condominium, including, but not limited to, claims for construction defects, environmental clean-up, nuisance, personal injury or property damage, except direct claims by the Association for breach of this Agreement and except to the extent that any claims, whether direct or third-party, allege willful misconduct, criminal misconduct, gross negligence or derogation of legal written instructions from the Board. The Agent shall be reimbursed at a fee of One Hundred Twenty Five Dollars and 00/100 (**$125.00/hr**) per hour for court appearances, depositions, etc. in relationship to suits pertaining to the subjects noted in Paragraphs 10A, 10B, and 10C of this Agreement.

B.    To indemnify, defend, and save the Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from and against any and all loss, assessments, obligations, debts, fines, fees, penalties, demands, injuries, charges, expenses (including, but not limited to, fees and expenses of attorneys, expert witnesses, architects, engineers and other consultants), interest, judgments, costs, damages and/or liabilities arising from or out of, in connection with, or relating to any claims, suits, causes of action and actions involving the violation of the Fair Housing Act, Fair Employment Act, Equal Employment Opportunity Act, Environmental Protection Act, and other similar federal, state and local laws, statutes,

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

ordinances and regulations unless it is determined that such violation resulted from the actions or omissions of Agent, without the specific direction of the Board, contrary to such laws, statutes, ordinances and regulations. In the event that the Association and the Agent agree to settle any such claim, suit, cause of action or action prior to such a final determination, but the parties cannot agree on an allocation of the costs of settlement among such parties the issue shall be submitted to the Chicago, Illinois office of American Arbitration Association for arbitration pursuant to its commercial arbitration rules then in effect; and the arbitrator shall be specifically authorized and directed to allocate the costs of such settlement upon the basis of the extent to which such arbitrator finds that the acts or omissions of Agent have been in violation of the aforesaid laws, statutes, ordinances or regulations or that the Board specifically directed the Agent to act in violation thereof. The costs of such arbitration shall be borne by the parties in the same ratio as they bear the costs of such settlement pursuant to the decision of the arbitrator.

C.      To indemnify, defend and save the Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from all claims, investigations and suits with respect to any alleged or actual violation of local, state or federal labor laws including, but not limited to, the following: gender, age and other types of discrimination; sexual harassment; wrongful termination or discipline; negligent compensation, promotion or hiring decisions; breach of contract for employment; emotional distress or mental anguish; invasion of privacy, libel or slander; employee benefits or mismanagement; Family Medical Leave Act and Americans With Disabilities Act. The Association's obligation under this Paragraph 10(C) shall include the payment of all settlements, judgments, damages, liquidated damages, penalties forfeitures, back pay awards, court costs, litigation expenses and attorneys' fees.

D.      Notwithstanding anything to the contrary contained in the foregoing or any other provision of this Agreement pertaining to the indemnification of Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) by the Association, Agent shall not be entitled to indemnification for any loss, cost, damage, liability or expense (including attorneys' fees) arising from, in connection with, or relating to any claims, suits, causes of action or actions arising from (a) any action or omission of Agent or its employees constituting gross negligence, willful misconduct or criminal conduct or in derogation of the instructions of the Board; or (b) any action or omission constituting a breach of this Agreement. Agent shall indemnify, defend and hold this Association and its members, officers, and directors harmless in connection with, or relating to any claims, suits, causes of action or actions arising from (a) any action or omission of Agent or its employees constituting gross negligence, willful misconduct or criminal conduct or in derogation of the instructions of the Board; or (b) any action or omission constituting a breach of this Agreement. Agent shall indemnify, defend and hold this Association and its members, officers, directors and employees harmless from and against any such claim, suit, damage, loss or liability which may be suffered by the Association as a result of the matters set forth above in Subparagraphs (a) and (b).

11.     **General Indemnity Insurance.** The Board and Association shall carry general indemnity insurance and employment practice liability insurance that shall protect, indemnify, defend and hold Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from and against any and all loss, assessments, obligations, debts, fees, fines, penalties, demands, injuries, charges, expenses

**11 | P a g e**

(including, but not limited to, fees and expenses of attorneys, expert witnesses, architects, engineers and other consultants), interest, judgments, costs, claims, damages, liabilities, liens, other claims, suits and/or the like of any and every kind, nature and description whatsoever, including all indemnities referenced above in Paragraph 10, and in any way involving, arising from or out of, relating to or in connection with any claims, suits, causes of action and actions involving the Board, the Association or the Owners.

If applicable, the Association shall procure and carry, at its own expense, without any gaps in coverage, for the term of this Agreement and any renewal of this Agreement, general indemnity insurance, employment practice liability insurance, boiler and machinery insurance, property insurance, comprehensive general liability insurance, comprehensive public liability insurance, elevator liability insurance (if elevators are part of the equipment of the Condominium or Property), fidelity and workers' compensation insurance, any insurance policy necessary to cover the indemnification obligations outlined above in Paragraphs 10(a), (b) and (c) and directors and officers insurance (collectively, the "Complete Insurance Coverage") adequate to protect the interests of the Agent, Board, and Association, and in compliance with the requirements of the Declaration, By-Laws, this Agreement and the Act. All such insurance shall include the Agent and the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies as additional named insureds. The Complete Insurance Coverage shall be adequate to protect the Agent's interests and the interests of the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies and the Complete Insurance Coverage shall be in the form, substance and amounts reasonably satisfactory to the Agent. The Complete Insurance Coverage must be issued with a waiver of subrogation in favor of the Agent and the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies. The Association shall furnish certificates of insurance for the Complete Insurance Coverage and all required insurance under this Agreement, the Declaration, By-Laws and the Act within thirty (30) days from the date of this Agreement.

The company with which the insurance is placed shall be given a policy holder rating of not less than A VII using the most recent edition of the A.M. Best Company's Key Rating Guide and a financial category rating of not less than Class X by the A.M. Best Company and shall be placed with companies qualified to do business within the state where the Condominium is located. Copies of all insurance policies or certificates of insurance shall be provided to Agent. If the Association fails to place and maintain insurance for Agent as herein provided, the Agent may, but is not obligated to, obtain such insurance, charge the Association for same, and make payment from the funds of the Association.

**B. General Indemnity Insurance.** The Agent shall carry general indemnity insurance and employment practice liability insurance that shall protect, indemnify, defend and hold Board, Owners and Association (and their employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from and against any and all loss, assessments, obligations, debts, fees, fines, penalties, demands, injuries, charges, expenses (including, but not limited to, fees and expenses of attorneys, expert witnesses, architects, engineers and other consultants), interest, judgments, costs, claims, damages, liabilities, liens, other claims, suits and/or the like of any and every kind, nature and description whatsoever, including all indemnities referenced above in Paragraph 10, and in any way involving, arising from or out of, relating to or in connection with any claims, suits, causes of action and actions involving the Agent.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

If applicable, the Agent shall procure and carry, at its own expense, without any gaps in coverage, for the term of this Agreement and any renewal of this Agreement, general indemnity insurance, employment practice liability insurance, comprehensive general liability insurance, comprehensive public liability insurance, fidelity and workers' compensation insurance, any insurance policy necessary to cover the indemnification obligations outlined above in Paragraphs 10(a), (b) and (c) and directors and officers insurance (collectively, the "Complete Insurance Coverage") adequate to protect the interests of the Owner, Board, and Association. All such insurance shall include the Board, Owner and Association and the Board, Owner and Association's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies as additional named insureds. The Complete Insurance Coverage shall be adequate to protect the Board, Owner and Association's interests and the interests of the Board, Owner and Association's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies and the Complete Insurance Coverage shall be in the form, substance and amounts reasonably satisfactory to the Board. The Complete Insurance Coverage must be issued with a waiver of subrogation in favor of the Board, Owner and Association and the Board, Owner and Association's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies. The Agent shall furnish certificates of insurance for the Complete Insurance Coverage and all required insurance under this Agreement within thirty (30) days from the date of this Agreement.

The company with which the insurance is placed shall be given a policy holder rating of not less than A VII using the most recent edition of the A.M. Best Company's Key Rating Guide and a financial category rating of not less than Class X by the A.M. Best Company and shall be placed with companies qualified to do business within the state where the Condominium is located. Copies of all insurance policies or certificates of insurance shall be provided to Agent. If the Agent fails to place and maintain insurance for Board, Owner and Association as herein provided, the Board, Owner and Association may, but is not obligated to, obtain such insurance, charge the Agent for same.

12.    In the event it is alleged or charged that the Condominium or any equipment therein or any act or failure to act by the Board with respect to the Condominium or the sale, rental or other disposition thereof, or the hiring of employees to manage it, fails to comply with, or is in violation of, any of the requirements of any constitutional provision, statute, ordinance, law or regulation of any governmental body or any order or ruling of any public authority or official thereof having or claiming to have jurisdiction thereover, and the Agent in its sole and absolute discretion considers that the action or position of the Board with respect thereto may result in damage or liability to the Agent, the Agent shall have the right to cancel this Agreement at any time upon sixty (60) days written notice to the Board of its election to do so provided, however, that the Association shall have the right to cure such Default within said sixty (60) day period and, if within such sixty (60) days the Association cures such Default, this Agreement may not be cancelled by Agent. Such cancellation shall not release the indemnities of the Board set forth in Paragraphs 9, 10 and 11 above and shall not terminate any liability or obligation of the Board to the Agent for any payment, reimbursement or other sum of money then due and payable to the Agent hereunder.

In the event of a breach or default by the Board and/or the Association of any provision of this Agreement, the Board and/or the Association shall have thirty (30) business days after receiving Notice from Agent to cure any default (the "Notice of Default"). Agent shall send any Notice of Default to the Board in accordance with Paragraph 13 of this Agreement. In the event the Board and/or Association fails to cure said default/breach then Agent may utilize any and all available remedies of equity and law, including filing a lawsuit against the Board and/or Association for

13 | P a g e

breach of contract. Agent and its members, managers, directors, officers, employees, shareholders, agents, subsidiaries and affiliates shall have no personal liability under this Agreement.

The Board, Association and Agent agree in advance to the liquidated damage clause, as set forth above, and to the settlement of damages that might arise from the breach of this Agreement. The amount of liquidated damages is reasonable at the time this Agreement is executed and has some relation to the damages which might be sustained by Agent. The actual amount of damages is uncertain at the time this Agreement is executed and difficult to prove or calculate. In addition, by signing this Agreement, the Board, Association and Agent understand, acknowledge and agree that: (a) Agent's future lost profits can be determined with a reasonable degree of certainty at the time this Agreement is being executed; (b) in the event the Board breaches or otherwise terminates this Agreement prior to the any Termination Date or otherwise fails to comply with the terms of Paragraph 1, then the Board shall cause Agent to experience a loss in its profits; and (c) the loss in profits is reasonably within the contemplation of the Association and the Board at the time this Agreement is being signed.

In the event of a breach or default by the Agent of any provision of this Agreement, the Agent shall have thirty (30) business days after receiving written Notice from Board and/or Association to cure any default (the "Notice of Default"). Board and/or Association shall send any Notice of Default to the Agent in accordance with Paragraph 13 of this Agreement. In the event the Agent fails to cure said default/breach then Board and/or Association, this Agreement shall, at the election of the Board and/or Association, immediately terminate with no further penalty of payment required by the Board and/or Association and the Board and/or Association may utilize any and all available remedies of equity and law, including filing a lawsuit against the Agent for breach of contract. The Association's unit owners and its members, managers, directors, officers, employees, shareholders, agents, subsidiaries and affiliates shall have no personal liability under this Agreement.

13.   Any notice required or permitted to be served hereunder may be served by United States Postal Service, Certified Mail, and Return Receipt Requested or in person as follows (the "Notice"):

A.   If to the Agent:

Asa Sherwood
President
FirstService Residential
303 East Wacker Drive, Suite 1900
Chicago, Illinois 60601

With a copy to Agent's counsel:

Steven P. Rouse, Esq. Molzahn,
Rocco, Reed & Rouse, LLC
20 North Clark Street, Suite 2300
Chicago, Illinois 60602

B.   If to Association: To the then Board President at his or her home address.

With a copy to the Association's Counsel:

William J. Lapelle

Law Offices of William J. Lapelle, PC
One Northfield Plaza #528
Northfield, Illinois 60093

Either Party may change the address for Notice by Notice to the other Party. Notice served by registered or certified mail shall be deemed to have been served two (2) days following postmark.

14. **Amendment and Modification.** This Agreement and any incorporated Exhibits and schedules attached hereto and made a part hereof, if any, may be modified, amended, altered or revoked, in whole or in part, only by written instrument or other form of modification executed by authorized representatives of the Parties hereto and signed by both Parties hereto. This Agreement and any incorporated Exhibits and schedules attached hereto and made a part hereof, if any, may not be modified, amended, altered or revoked, in whole or in part, by any oral agreements, by any implied agreement or custom, or by any waiver of any of its terms unless in writing.

15. **Successors.** This Agreement and any Exhibits or schedules referred to and incorporated herein, if any, and all indemnities, covenants and agreements, representations and warranties contained herein shall be binding on and shall operate to the benefit of the Parties hereto, and to their respective successors in interest, assigns, heirs, executors, administrators, legal representatives and any other party claiming an interest by, through or under them. Notwithstanding the preceding sentence, the Agent shall not assign its interest under this Agreement except in connection with the sale of all or substantially all the assets of its business as may be approved in writing by the Association. In the event of such sale, Agent shall be released from all liability hereunder upon the express assumption of such liability by its assignee. Agent shall give the Association not less than sixty (60) days' advance written notice of any sale of all or substantially all of Agent's assets which will result in the Agent's assignment of the Agreement

16. **Governing Law.** This Agreement shall be construed, governed and enforced in accordance with the laws of the State of Illinois, and the exclusive venue for the enforcement of this Agreement and/or litigation between the Parties shall be in the Circuit Court of Cook County, Illinois.

17. **Compliance with Law.** Association and the Board represent and warrant that they are and shall be in compliance with all applicable federal, state and local laws and regulations, including, but not limited to, all regulations, rules and/or laws as required by the Federal Occupational Safety and Health Act (OSHA), the Illinois Department of Labor (IDOL), the U.S. Department of Labor (USDOL), U.S. Equal Employment Opportunity Commission (EEOC), the Illinois Department of Human Rights, Americans With Disabilities Act, Family Medical Leave Act and/or the Human Rights Commission and all applicable local and state Ordinances and Codes (collectively, the "Laws"). To the fullest extent permitted by law, the Association and the Board shall indemnify, defend, and hold harmless Agent (and its officials, officers, members, directors, stockholders, employees, agents, affiliated and related agents and affiliated and related companies) from loss or damage, including, but not limited to attorneys' fees and other costs of defense by reason of actual or alleged violation of any Laws or Law. This obligation shall survive the expiration and/or termination of this Agreement.

18. **Permits and Licenses.** Association and Agent shall obtain all permits and licenses required by any local, state or federal authority relative to the work and services performed at the Property or Condominium, and the costs of such permits, licenses and any other requirements imposed hereunder shall be borne by the Board and Association.

19. **Entire Agreement.** This Agreement and all Exhibits and schedules referred to herein are hereby expressly incorporated herein and made a part hereof. This Agreement contains all of the

15 | P a g e

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

agreements, conditions and understandings of the Association and Agent and supersedes and merges all prior negotiations, representations or agreements between them, whether oral or written, relating to the subject matter hereof between the Association and Agent. In the event of a conflict between the terms of this Agreement and any other documents, including the Exhibits and schedules to which this Agreement may refer, if any, the terms and conditions of this Agreement shall apply. To the extent the practices, policies, or procedures of the Association or the Board, now or in the future, are inconsistent with the terms of this Agreement, the provisions of this Agreement shall control. This Agreement shall be construed as a whole, according to its fair meaning, and not in favor of or against the Association, the Board or Agent. Sections, Paragraphs, captions and headings are used for reference purposes only and should be ignored in the interpretation of this Agreement. The terms "Section", "Paragraph", "Caption" and "Heading" shall refer to the same concept and may be used interchangeably. The Parties to this Agreement explicitly acknowledge, understand and agree that neither has relied on any earlier or outside representations, agreements and understandings other than those contained within this Agreement. The Parties further understand, acknowledge and agree that neither shall rely on any information from any source, unless the information is included in this Agreement.

20. **No Third Parties, Waiver Generally and/or Waiver of Statutory Immunities.** Notwithstanding any provision herein to the contrary, this Agreement is entered into solely for the benefit of the contracting Parties, and nothing in this Agreement is intended, either expressly or impliedly, to provide any right or benefit of any kind whatsoever to any person and/or entity who is not a party to this Agreement. Nothing herein shall be construed as an express and/or implied waiver of any common law and/or statutory immunities and/or privileges of the Association or Board and/or its respective officials, officers, employees, volunteers and/or agents. The failure of the Agent to insist upon strict performance by the Board and/or Association of any of the covenants or agreements of this Agreement shall not be deemed a waiver of any of Agent's rights or remedies and shall not be deemed a waiver of any subsequent breach or default by the Board or Association in any of the covenants and agreements to this Agreement. No waiver of any provision of this Agreement or attached and incorporated Exhibits, if any, shall be implied by any failure of the Board, Association or Agent to enforce any remedy on account of the violation of this Agreement, even if such violation be continued or repeated; no express waiver by the Board, Association or Agent shall be valid unless in writing and then only to the extent specified in such waiver. No receipt of monies by the Board, Association or Agent from the other after the termination of this Agreement shall in any way alter the length of the term of this Agreement or Agent's remedies hereunder. After the service of notice, commencement of a suit, or taking of a judgment, Agent may receive and collect any amount due and owing under the terms of this Agreement, if any, without affecting said notice, suit or judgment.

21. **Conflicting Terms.** In the event of any conflict between the terms and conditions of this Agreement and the terms and conditions of the Exhibits attached hereto, if any, the most stringent requirements shall control to the extent of such conflict or inconsistency.

22. **Dispute Resolution.** In the instance of a dispute between the Parties that is incapable of being resolved by them to their mutual satisfaction, after good faith resolution negotiations, and within ten (10) days of the formal notification from one Party to the other of such dispute, the complaining Party shall have the right to seek such remedies as are available at law and in equity, as shall the responding Party. It is understood and agreed that money damages may not be a sufficient remedy for any breach of this Agreement and that the Parties may be entitled to equitable relief without obligation to post bond, including injunction and specific performance, as a remedy for any such breach. Such remedies shall not be deemed the exclusive remedies for a

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

breach of this Agreement but shall be in addition to all other remedies available at law or equity, as limited by the applicable statutes and applicable laws.

23. **Attorney's Fees.**
In the event of any action or proceeding brought by either of the Parties against the other under this Agreement, the prevailing Party shall be entitled to recover the fees of its attorneys in such action or proceeding, including costs of appeal, if any, in such amount as the court may adjudge reasonable. In addition, should it be necessary for Agent to employ legal counsel to enforce any of the provisions herein contained, Association and the Board agree to pay all attorneys' fees and court costs reasonably incurred.

24. **Partial Invalidity and Severability.** In the event any term, section, subsection, part, condition, paragraph, subparagraph or provision of this Agreement is invalid or unenforceable for any reason (or the application of such term, section, subsection, part, condition, paragraph, subparagraph or provision to persons or circumstances other than those in respect of which it is invalid or unenforceable), the remainder of this Agreement shall continue and not be affected thereby, and each and every term, section, subsection, part, condition, paragraph, subparagraph and provision of this Agreement shall be deemed valid and enforceable to the fullest extent possible permitted by law.

25. **Counterparts and Signatures.** This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

26. **Survival of Obligations.** Except as otherwise provided, any obligations and duties which by their nature extend beyond the expiration or termination of this Agreement, including, without limitation, sections pertaining to Indemnity, shall survive the expiration of this Agreement.

27. **Authority.** Each Party to this Agreement represents and warrants to the other that the person(s) signing this Agreement below has authority to bind the Party to this Agreement and that this Agreement will legally bind the Board, Association and Agent in accordance with the terms of this Agreement. In addition, the individuals executing this Agreement on behalf of the Association warrant and represent that the Board has the proper authority to enter into this Agreement with Agent and execute this Agreement as such authority is granted pursuant to the Declaration of Condominium of the Association, as amended from time to time. The Association will agree and warrant that it will take all necessary steps to ratify this Agreement with the Board and the Members of the Association.

28. **Reasonableness and Good Faith.** Notwithstanding anything to the contrary contained in this Contract, all consents and approvals of the Board, Association and Agent as set forth herein shall be reasonable, exercised in good faith and not unreasonably withheld.

29. **Limitation to Authority.** Notwithstanding any other provisions of this Agreement, Agent shall not have any power or authority greater than that given to the Board of Directors under the Declaration and By-Laws of the Condominium. All discretionary decisions of the Agent involving the operation of the Association shall be subject to the direction and control of the Board of Directors.

IN WITNESS HEREOF, the parties have executed this agreement on the date and year first written above.

ASSOCIATION:

BOARD OF DIRECTORS OF THE
THE GRAND OHIO CONDOMINIUM ASSOCIATION

By Rachad El-Moussaoui, not individually,          5/9/19
but as President of the Board of Directors          Date:

AGENT:

FIRSTSERVICE RESIDENTIAL

By Asa Sherwood, not individually,          5/9/19
but as President          Date:

18 | P a g e

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## Management Pricing for The Grand Ohio Condominium Association

| Services | FirstService Residential |
|---|---|
| Monthly Management Fee | $5,950.00 |
| Financial Statement Preparation | Included in fee |
| Hard Copy Record Storage (if at corporate office) | $50.00 per box/year |
| Connect™ Web Communication Application | Included in fee |
| Unit Owners Direct Debit | Included in fee |
| IT Support (if non-FirstService system or machine) | $125.00 / hr |
| Community Website (Connect™) | Included in fee |
| Regional Director Weekly Visit to Property | Included in fee |
| Regional Director Mileage & Parking | Included in fee |
| ADP fees for processing payroll | At cost and billed directly to the Association |
| Postage | At current US Postage rate |
| Banking fees including lockbox | Discounted rate of $38/month billed directly to the Association |
| Blk&Wht Copying/Scanning (if done at corporate office) | $.20 p/page |
| Color Copying/Scanning (if done at corporate office) | $.40 p/page |
| General Office Supplies for Regional Director | Included in fee |
| Board Meeting Minute Production (if produced by corporate office) | $140.00 |
| Attend Board Meetings & Annual Meetings | Included in fee |
| Tabulate Annual Meeting Voting (if completed by corporate office) | $250.00 |
| Process Leases (charged to unit owner) | $115.00 |
| 24 Hour Emergency On-Call | Included in fee |
| Charge Unit Owner Late Fees | Included in fee |
| Process Sales (charged to unit owner) | Refer to Welcome Link |
| Process Refinances (charged to unit owner) | Refer to Welcome Link |
| NSF (charged to unit owner) | $50.00 |
| Annual Jenark License Fee | Included in fee |
| Notary services | Included in fee |

*Pricing subject to change

19 | P a g e

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

NAMED INSURED:   THE GRAND OHIO
CONDOMINIUM
ASSOCIATION
POLICY NUMBER:   21-21095212-40

## ADMIRAL INDEMNITY COMPANY

UNDERWRITTEN BY:



**Berkley**
Luxury Real Estate Specialists
A division of Berkley Luxury Group
a Berkley Company

301 ROUTE 17 NORTH, SUITE 900 | RUTHERFORD, NJ 07070
PHONE:  (201) 518-2500 | FAX: (201) 342-6381 | WEBSITE: WWW.BERKLEYLUXURYGROUP.COM

 Berkley Luxury Group

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

07/25/2022        **INSTALLMENT SCHEDULE**        Insured Copy

Policy Number:     CPP 21-21095212-40

**Insured**
The Grand Ohio Condominium Association
211 E Ohio St
Chicago, IL 60611

**Agency**
Alliant Mesirow Insurance
353 N. Clark Street
10th Floor
Chicago, IL 60654
(312) 595-8135

| **Transaction:** | Renewal |
|---|---|
| **Effective Date:** | 07/25/2022 |
| **Process Date:** | 07/25/2022 |

**Premium Installment Schedule:**

| Due Date | Original Installment | | Transaction Amt | | New Installment |
|---|---|---|---|---|---|
| 07/25/2022 | $ | 0.00 | $ | 37,016.00 | $ 37,016.00 |
| 09/25/2022 | $ | 0.00 | $ | 37,016.00 | $ 37,016.00 |
| 11/25/2022 | $ | 0.00 | $ | 37,015.00 | $ 37,015.00 |
| 01/25/2023 | $ | 0.00 | $ | 37,015.00 | $ 37,015.00 |
| | | | | | |
| Total | $ | 0.00 | $ | 148,062.00 | $ 148,062.00 |

**Breakdown of New Installments:**

| | PR - Premium |
|---|---|
| 07/25/2022 | $37,016.00 |
| 09/25/2022 | $37,016.00 |
| 11/25/2022 | $37,015.00 |
| 01/25/2023 | $37,015.00 |
| | |
| Total | $148,062.00 |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG PN 83 02 01 22

# CYBER INCIDENT EXCLUSION ENDORSEMENT
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. It provides information concerning the following new exclusion which applies to your renewal policy being issued by us. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

## EXCLUSION - CYBER INCIDENT

This is to notify you that when your policy renews, the following exclusion will be attached to your policy:

**SP 361 - Exclusion - Cyber Incident**

When the Cyber Incident exclusion is attached to your policy, all damages, costs and expenses, either directly or indirectly because of, caused by or arising out of a cyber incident are excluded.  This exclusion replaces the **CG 21 06**, **CG 21 07** or **CG 21 08** that may be attached to your current policy and extends these exclusions to include Cyber Incidents.

A Cyber Incident includes, but is not limited to:

1. Unauthorized access to any person(s) or organization(s) confidential information.
2. Data-related Liability.
3. Denial of service attack on, or denial of access to any computer system.
4. Malicious code, virus or any other harmful code that is directed at and introduced into electronic data or a computer system and damages, destroys or disrupts its' normal functioning.
5. Transfer, payment or delivery of money or any form of currency, including virtual currency, in response to a fraudulent instruction or demand.
6. Demand for a ransom payment (in money, or any form of currency, including virtual currency, or property or services), made in connection with the actual or threatened perpetuation of that which is described in **1.** through **5.** above.

**PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY TO DETERMINE WHAT IS CONSIDERED A CYBER INCIDENT.**

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, payment card replacement costs forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or arising from a cyber incident.

This exclusion applies to any liability, damages, costs or expenses either directly or indirectly because of, caused by, or arising out of any failure (including, but not limited to, failure to timely or properly act) to notify of, disclose, prepare for, respond to, protect against, remediate, mitigate or comply with any statutory, regulatory, contractual, common law or other legal obligation relating to a cyber incident.

This exclusion applies regardless of culpability or intent, or whether the claim alleges negligence or other wrongdoing, in whole or in part, arising out of hiring, placing, managing, supervising, employing, training or monitoring of others, or the maintenance or security of any premises.

If there is any duty or obligation to defend or pay for a defense in the policy to which this endorsement is attached, the duty or obligation will not apply to any claim, suit or proceeding that alleges or is, directly or indirectly, in whole or in part, caused by, resulting from or relating to a cyber incident.

Under personal and advertising injury, oral or written publication, in any manner, of material that violates a person's right of privacy has been removed from the definition and is no longer covered.

If **CG 21 06 - Exclusion - Access or Disclosure of Confidential or Personal Information and Data-Related Liability - With Limited Bodily Injury Exception** endorsement was on your prior policy, it contained a limited bodily injury exception which has been removed.  No bodily injury coverage exists under the Cyber Incident Exclusion endorsement.

If **CG 21 08 - Exclusion - Access or Disclosure of Confidential or Personal Information (Coverage B Only)** endorsement was on your prior policy, the exclusion only applied to personal and advertising injury.  In addition to personal and advertising injury, no bodily injury or property damage coverage exists under the Cyber Incident Exclusion endorsement.



COMMERCIAL PROPERTY
CP PN 83 03 01 22

# CYBER INCIDENT EXCLUSION ENDORSEMENT
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

This Notice provides information concerning the following new exclusion which applies to your renewal policy being issued by us.

**SP 359 - Cyber Incident Exclusion**

When this exclusion is attached to your policy, it generally excludes direct physical loss of or damage to Covered Property resulting from a cyber incident; however, if a cyber incident as described in this exclusion results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion subject to the applicable limits of insurance.

Cyber incident means:

1.  Unauthorized access to or use of any computer system (including electronic data).

2.  Malicious code, virus or any other harmful code that is directed at, uploaded, downloaded, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

3.  Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

This exclusion does not apply to the extent that coverage is provided in any of the following Additional Coverage(s) or Coverage Extension(s):

- Computer Fraud and Funds Transfer Fraud; or
- Computer Coverage Endorsement.

However, an annual aggregate limit of $25,000 will apply. This is the most we will pay in any one policy term regardless of the number of "Cyber Incident(s)" that may occur during the policy term or the number of Additional Coverages or Coverage Extensions where coverage may apply.

**SP 355 - Spoilage Coverage Amendment**

This endorsement expressly states that the Cyber Incident Exclusion applies to such Spoilage coverage.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL DS 83 00 06 20

Issuing Company: Admiral Indemnity Company

# COMMERCIAL LINES POLICY
# COMMON POLICY DECLARATIONS

## Renewal

| | |
|---|---|
| **Policy No.: 21-21095212 - 40** | Billing Method: Agency |
| Previous Policy No.: 21-21095212-39 | Payment Plan: 4 Pay |

| **Named Insured Name and Address** | **Agency Name and Address** | 6006 |
|---|---|---|
| The Grand Ohio Condominium Association | (312)595-8135 | |
| Attn: Management Office | Alliant Mesirow Insurance | |
| 211 E Ohio St | 353 N. Clark Street, 10th Floor | |
| Chicago, IL 60611 | Chicago, IL 60654-4704 | |

**POLICY PERIOD**

Policy Period: From 07/25/2022 to 07/25/2023 at 12:01 A.M. Standard Time at your mailing address shown above.

**Business Description:** Condominium Apt Bldg., with Mercantile

**Form of Business:** Condominium or Townhouse Association

IN RETURN FOR YOUR PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

**THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | **Premium** |
|---|---|---|
| Commercial Property Coverage Part | $ | Included |
| Commercial General Liability Coverage Part | $ | Included |
| Commercial Auto Coverage Part Premium | $ | Included |
| **TOTAL:** | $ | 148,062.00 |

**FORMS APPLICABLE TO ALL COVERAGE PARTS**

*See attached "Schedule of Forms and Endorsements"*

THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGES FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.

Countersigned: *Maureen E. Hackett*     By *[signature]*

_____
Authorized Representative

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



CL LOC 09 08

# LOCATION SCHEDULE

Location # 1          211 E Ohio St
Chicago, IL 60611-3262

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL COMMON POLICY
CL IL FS 01 09 08

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

Policy Number: **21-21095212 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Common Policy

| Number | Edition | Description |
|---|---|---|
| BLG PHN 001 | 02-2018 | Claims Reporting - Notice to Policyholders |
| CL IL FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| CL LOC | 09-2008 | Location Schedule |
| IL 00 17 | 11-1998 | Common Policy Conditions |
| IL DS 77 00 BLG | 06-2020 | Policy Ending Form |
| IL DS 83 00 | 06-2020 | Commercial Lines Policy Common Policy Declarations |
| IL HPJ 01 BLG | 02-2018 | Policy Jacket (Habitational) |
| IL N 175 | 11-2011 | Illinois Notice to Policyholders Regarding the Religious Freedom Protection and Civil Union Act |
| IL P 001 | 01-2004 | U.S. Treasury Departments Office of Foreign Assets Control (OFAC) Advisory Notice to Policyholders |

## Commercial Auto Coverage Part

| Number | Edition | Description |
|---|---|---|
| IL 00 03 | 09-2008 | Calculation of Premium |
| IL 00 21 | 09-2008 | Nuclear Energy Liability Exclusion Endorsement - Broad Form |
| IL 01 47 | 09-2011 | Illinois Changes - Civil Union |
| IL 01 62 | 10-2013 | Illinois Changes - Defense Costs Endorsement |

## Commercial General Liability Coverage Part

| Number | Edition | Description |
|---|---|---|
| IL 00 03 | 09-2008 | Calculation of Premium |
| IL 00 21 | 09-2008 | Nuclear Energy Liability Exclusion Endorsement - Broad Form |
| IL 01 47 | 09-2011 | Illinois Changes - Civil Union |
| IL 01 62 | 10-2013 | Illinois Changes - Defense Costs Endorsement |
| IL 09 85 | 12-2020 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| TRIA DISCL D | 07-2020 | Disclosure Notice - Exhibit D |

## Commercial Property Coverage Part

| Number | Edition | Description |
|---|---|---|
| CL MA SCH | 08-2012 | Managing Agent Schedule |
| CW 25 31 | 10-2011 | Policyholder Notice Mechanical, Electrical and Pressure Systems Breakdown Added Coverage |
| IL 00 03 | 09-2008 | Calculation of Premium |
| IL 01 18 | 02-2017 | Illinois Changes |
| IL 01 62 | 10-2013 | Illinois Changes - Defense Costs Endorsement |
| IL 02 84 | 01-2018 | Illinois Changes - Cancellation And Nonrenewal |
| IL 09 35 | 07-2002 | Exclusion of Certain Computer Related Losses |
| IL 09 85 | 12-2020 | Disclosure Pursuant to Terrorism Risk Insurance Act |
| IL 09 86 | 01-2015 | Exclusion Of Certified Acts Of Terrorism Involving Nuclear, Biological, Chemical Or Radiological Terrorism; Cap On Covered Certified Acts Losses |
| IL CCN | 06-2020 | Advisory Notice To Our Policyholders And Your Insurance Brokers Illinois Consumer Complaint Notification |
| TRIA DISCL D | 07-2020 | Disclosure Notice - Exhibit D |
| IL N 175 | 11-2011 | Illinois Notice to Policyholders Regarding the Religious Freedom Protection and Civil Union Act |

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

© ISO Properties, Inc., 2004

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

BLG PHN 001 02 18

# CLAIMS REPORTING

# ADVISORY NOTICE TO POLICYHOLDERS

If you have an emergency or need to report a catastrophic claim after our normal business hours, please contact our Emergency Call Center at the following toll-free number:

(866) 338-3098

You can also submit a new claim report via our First Notice of Loss on-line mailbox:

firstreports@berkleyluxurygroup.com

Please refer to our website as an additional source of information in advance of, and during, a catastrophic event as well as for important claims contact information.

www.berkleyluxurygroup.com

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

CL MA SCH 08 12

Policy Number: 21-21095212

# MANAGING AGENT SCHEDULE

**Managing Agent Name and Address:**

First Service Residential
303 E. Wacker Dr. Suite 1900
Chicago, IL 60601

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL PROPERTY**
**CW 25 31 10 11**

Insured:  The Grand Ohio Condominium Association
Policy Number:  21-21095212

# POLICYHOLDER NOTICE

# Mechanical, Electrical and Pressure Systems Breakdown Added Coverage

Your policy contains broadened coverage for the perils of mechanical breakdown, electrical breakdown and pressure systems breakdown for an additional premium charge.

Subject to the terms and conditions of your property policy and your mechanical breakdown endorsement, coverage includes the following:

- Damage to covered equipment that is insured as part of your building and business personal property.

- Loss of Income and Extra Expense when this coverage is included in your Property policy.

- Coverage is provided at the same limits and deductible as your Building and Personal Property coverage and your Loss of Income and Extra Expense coverage.

In cases where you have a pressure vessel that requires an inspection by your State or City we provide this service at no additional cost.  If you have questions about this service or require a jurisdictional inspection, **PLEASE CALL** (approximately 60 days prior to the certificate expiration):

Mutual Boiler Re
101 Lindenwood Drive
Suite 400
Malvern, PA  19355
(800) 814-4458 Ext. 7807

**If you have any questions, please contact your broker.**

**CW 25 31 10 11**                                                           **Page 1 of 1**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL 00 03 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    EQUIPMENT BREAKDOWN COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

    a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

    a. Make inspections and surveys at any time;

    b. Give you reports on the conditions we find; and

    c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

    a. Are safe or healthful; or

    b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.** The insurance does not apply:

**A.** Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

**(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

**(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

- **(a)** Any "nuclear reactor";
- **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

- **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

- **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2007
IL 00 21 09 08

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

IL 01 18 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to Standard Property Policy **CP 00 99,** the terms Coverage Part and Coverage Form in this endorsement are replaced by the term Policy.

**B.** The following is added to the **Legal Action Against Us** Condition:

The two year period for legal action against us is extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part.

**C.** If this policy covers:

**1.** The following in **a.** and **b.,** then Paragraphs **2.** and **3.** apply:

   **a.** Real property used principally for residential purposes up to and including a four family dwelling; or

   **b.** Household or personal property that is usual or incidental to the occupancy of any premises used for residential purposes.

**2.** The second paragraph of the **Appraisal** Condition is deleted and replaced by the following:

   **a.** Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally, except as provided in **b.** below.

   **b.** We will pay your appraiser's fee and the umpire's appraisal fee, if the following conditions exist:

      **(1)** You demanded the appraisal; and

      **(2)** The full amount of loss, as set by your appraiser, is agreed to by our appraiser or by the umpire.

**3.** The **Concealment, Misrepresentation Or Fraud** Condition is replaced by the following:

   **Concealment, Misrepresentation Or Fraud**

   **a.** This Coverage Part or Coverage Form is void if you or any insured ("insured") commit fraud or conceal or misrepresent a fact in the process leading to the issuance of this insurance, and such fraud, concealment or misrepresentation is stated in the policy or endorsement or in the written application for this policy and:

      **(1)** Was made with actual intent to deceive; or

      **(2)** Materially affected either our decision to provide this insurance or the hazard we assumed.

      However, this condition will not serve as a reason to void this Coverage Part or Coverage Form after the Coverage Part or Coverage Form has been in effect for one year or one policy term, whichever is less.

   **b.** We do not provide coverage under this Coverage Part or Coverage Form to you or any other insured ("insured") who, at any time subsequent to the issuance of this insurance, commit fraud or intentionally conceal or misrepresent a material fact relating to:

      **(1)** This Coverage Part or Coverage Form;

      **(2)** The Covered Property;

      **(3)** Your interest in the Covered Property; or

      **(4)** A claim under this Coverage Part or Coverage Form.

   **c.** Notwithstanding the limitations stated in **3.a.** above, we may cancel the Coverage Part or Coverage Form in accordance with the terms of the Cancellation Condition.

    © Insurance Services Office, Inc., 2016

**D.** For the Commercial Property Coverage Part and the Standard Property Policy, the following exclusion and related provisions are added to Paragraph **B.2.** Exclusions in the Causes of Loss Forms and to any Coverage Form or policy to which a Causes of Loss Form is not attached:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **D.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**E.** The **Intentional Loss Exclusion** in the Causes of Loss Form – Farm Property, Mobile Agricultural Machinery And Equipment Coverage Form and Livestock Coverage Form is replaced by the following:

**1.** We will not pay for loss ("loss") or damage arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss ("loss").

In the event of such loss ("loss"), no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss ("loss").

**2.** However, this exclusion will not apply to deny payment to an innocent co-"insured" who did not cooperate in or contribute to the creation of the loss ("loss") if:

**a.** The loss ("loss") arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss ("loss") is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **E.2.,** our payment to the "insured" is limited to that "insured's" insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

**F.** The **Intentional Loss Exclusion** in the Capital Assets Program (Output Policy) Coverage Part, is replaced by the following:

**1.** We will not pay for loss or damage arising out of any act an insured commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no insured is entitled to coverage, even insureds who did not commit or conspire to commit the act causing the loss.

**2.** However, this exclusion will not apply to deny payment to an innocent co-insured who did not cooperate in or contribute to the creation of the loss if:

**a.** The loss arose out of a pattern of criminal domestic violence; and

**b.** The perpetrator of the loss is criminally prosecuted for the act causing the loss.

**3.** If we pay a claim pursuant to Paragraph **F.2.,** our payment to the insured is limited to that insured's insurable interest in the property less any payments we first made to a mortgagee or other party with a legal secured interest in the property. In no event will we pay more than the Limit of Insurance.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

© Insurance Services Office, Inc., 2016    **IL 01 18 02 17**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL 01 47 09 11

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CIVIL UNION

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The term "spouse" is replaced by the following:

Spouse or party to a civil union recognized under Illinois law.

**B.** Under the Commercial Auto Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to the:

**1.** Individual Named Insured by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of such Named Insured's household, including a ward or foster child; or

**2.** Individual named in the Schedule by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of the individual's household, including a ward or foster child, if the Drive Other Car Coverage – Broadened Coverage For Named Individual Endorsement is attached.

**C.** With respect to coverage for the ownership, maintenance, or use of "covered autos" provided under the Commercial Liability Umbrella Coverage Part, the term "family member" is replaced by the following:

"Family member" means a person related to you by blood, adoption, marriage or civil union recognized under Illinois law, who is a resident of your household, including a ward or foster child.

IL 01 62 10 13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – DEFENSE COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART – LEGAL LIABILITY COVERAGE FORM
COMMERCIAL PROPERTY COVERAGE PART – MORTGAGEHOLDERS ERRORS AND OMISSIONS
COVERAGE FORM
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK COVERAGE PART

**A.** The provisions of Paragraph **B.** are added to all Insuring Agreements that set forth a duty to defend under:

  **1.** Section **I** of the Commercial General Liability, Commercial Liability Umbrella, Employment-related Practices Liability, Farm, Liquor Liability, Owners And Contractors Protective Liability, Pollution Liability, Products/Completed Operations Liability, Product Withdrawal, Medical Professional Liability, Railroad Protective Liability, Underground Storage Tank Coverage Parts, Auto Dealers Coverage Form and the Farm Umbrella Liability Policy;

  **2.** Section **II** under the Auto Dealers, Business Auto and Motor Carrier Coverage Forms;

  **3.** Section **III** under the Auto Dealers and Motor Carrier Coverage Forms;

  **4.** Section **A.** Coverage under the Legal Liability Coverage Form; and

  **5.** Coverage **C** – Mortgageholder's Liability under the Mortgageholders Errors And Omissions Coverage Form.

Paragraph **B.** also applies to any other provision in the policy that sets forth a duty to defend.

**B.** If we initially defend an insured ("insured") or pay for an insured's ("insured's") defense but later determine that the claim(s) is (are) not covered under this insurance, we will have the right to reimbursement for the defense costs we have incurred.

The right to reimbursement for the defense costs under this provision will only apply to defense costs we have incurred after we notify you in writing that there may not be coverage, and that we are reserving our rights to terminate the defense and seek reimbursement for defense costs.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

IL 02 84 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy by mailing written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs **8.** and **9.** below, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. You have violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

f. A determination by the Director that the continuation of the policy could place us in violation of the insurance laws of this State.

   If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, together with our reason for cancellation, at your last mailing address known to us. Proof of mailing will be sufficient proof of notice.

5. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the mortgagee or lienholder listed on the policy.

6. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

© Insurance Services Office, Inc., 2017

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**8. Real Property Other Than Residential Properties Occupied By Four Families Or Less**

The following applies only if this policy covers real property other than residential property occupied by four families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

**a.** After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

**b.** The building has been unoccupied 60 or more consecutive days. This does not apply to:

**(1)** Seasonal unoccupancy; or

**(2)** Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

**c.** The building has:

**(1)** An outstanding order to vacate;

**(2)** An outstanding demolition order; or

**(3)** Been declared unsafe in accordance with the law.

**d.** Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named insured(s).

**9. Residential Properties Occupied By Four Families Or Less**

The following applies if this policy covers residential properties occupied by four families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

**a.** Nonpayment of premium;

**b.** The policy was obtained by misrepresentation or fraud; or

**c.** Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

**10.** For insurance provided under the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, the following applies:

**Grain In Public Grain Warehouses**

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

**a.** The other; and

**b.** The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

**B.** The following is added:

**Nonrenewal**

**1.** If we decide not to renew or continue this policy, we will mail you written notice, stating the reason for nonrenewal. Proof of mailing will be sufficient proof of notice.

**2.** Except as provided in Paragraph **6.** below, we will mail you notice of nonrenewal at least 60 days before the end of the policy period.

**3.** If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

**4.** If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

**5.** The following provision applies to policies other than those described in Paragraph **6.**:

Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and the mortgagee or lienholder listed on the policy.

© Insurance Services Office, Inc., 2017

**IL 02 84 01 18**



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

6. The following provision applies only if this policy covers residential properties occupied by four families or less:

a. If this policy has been issued to you and in effect with us for five or more years, we may not fail to renew this policy unless:

(1) The policy was obtained by misrepresentation or fraud and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above;

(2) The risk originally accepted has measurably increased and we mail you notice of nonrenewal at least 30 days before the end of the policy period as provided in **1.** above; or

(3) You received 60 days' notice of our intent not to renew as provided in **1.** above.

b. If this policy has been issued to you and in effect with us for less than five years, we may not fail to renew this policy unless you received 30 days' notice as provided in **1.** above.

c. Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known, and to the last known mortgagee or lienholder.

d. The nonrenewal shall not become effective until at least 30 days from the proof of mailing date of the notice to you.

IL 09 35 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

      **a.** Any of the following, whether belonging to any insured or to others:

         **(1)** Computer hardware, including microprocessors;

         **(2)** Computer application software;

         **(3)** Computer operating systems and related software;

         **(4)** Computer networks;

         **(5)** Microprocessors (computer chips) not part of any computer system; or

         **(6)** Any other computerized or electronic equipment or components; or

      **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

     due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

   **1.** In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

      **a.** In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss – Special Form; or

      **b.** In a Covered Cause of Loss under the Causes Of Loss – Basic Form or the Causes Of Loss – Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

---

      © ISO Properties, Inc., 2001           ☐



POLICY NUMBER: CPP 21-21095212 - 40

**IL 09 85 12 20**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

### THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT.  THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

**SCHEDULE**

| SCHEDULE - PART I |
|---|
| **Terrorism Premium (Certified Acts) $**      6,345 |
| **This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(ies):** |
| |
| **Additional information, if any, concerning the terrorism premium:** |
| |

| SCHEDULE - PART II |
|---|
| **Federal share of terrorism losses: 80%** |
| (Refer to Paragraph **B.** in this endorsement.) |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

.

.

.

.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals a percentage (as shown in Part **II** of the Schedule of this endorsement or in the policy Declarations) of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2020

IL 09 85 12 20

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

IL 09 86 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL TERRORISM; CAP ON COVERED CERTIFIED ACTS LOSSES

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

## SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph C) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| Illinois | CP |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**LIMITED EXCLUSION OF CERTIFIED ACTS OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But this exclusion applies only when one or more of the following are attributed to such act:

1. The terrorism is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the terrorism was to release such material; or

3. The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical material; or

4. Pathogenic or poisonous biological or chemical material is released, and it appears that one purpose of the terrorism was to release such material.

When this terrorism exclusion applies in accordance with the terms of Paragraph **B.1.** or **B.2.**, the terrorism exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Part or Policy.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" excluded under Paragraph **B.** results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**D. Cap On Certified Terrorism Losses**

The following limitation applies to coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of the exclusion in Paragraph **B.** and to any loss or damage that is covered and to which the exception in Paragraph **C.** applies:

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

This Paragraph, **D.**, does not apply to insurance provided under the Crime And Fidelity Coverage Part.

**E. Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the non-applicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the War And Military Action Exclusion.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

© Insurance Services Office, Inc., 2015

**IL 09 86 01 15**



**COMMERCIAL PROPERTY**

**ADVISORY NOTICE TO**
**OUR POLICYHOLDERS AND YOUR INSURANCE BROKERS**

# ILLINOIS – CONSUMER COMPLAINT NOTIFICATION

This notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

1)   Admiral Indemnity Company
    301 Route 17 North, Suite 900
    Rutherford, NJ  07070

    Attn: Paul Gerber, Vice President – Claims
        E-mail:     pgerber@berkleyluxurygroup.com
        Telephone: (201) 518-2500
        Toll Free:  (800) 504-7012
        Fax:       (201) 342-6381

                or

2)   Illinois Department of Insurance
    Consumer Division or Public Services Section
    Springfield, IL  62767

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**IL CCN 06 20**

IL N 175 11 11

# ILLINOIS NOTICE TO POLICYHOLDERS REGARDING THE RELIGIOUS FREEDOM PROTECTION AND CIVIL UNION ACT

Dear Policyholder:

This is to provide notice that, pursuant to Illinois Department of Insurance Company Bulletin 2011-06 (CB 2011-06), this policy is in compliance with the Illinois Religious Freedom Protection and Civil Union Act ("the Act", 750 ILL. COMP. STAT. 75/1). The Act, which became effective on June 1, 2011, creates a legal relationship between two persons of either the same or opposite sex who establish a civil union.

The Act provides that parties to a civil union are entitled to the same legal obligations, responsibilities, protections and benefits that are afforded or recognized by the law of Illinois to spouses, whether they are derived from statute, administrative rule, policy, common law or any source of civil or criminal law. In addition, this law requires recognition of a same-sex civil union, marriage, or other substantially similar legal relationship, except for common law marriage, legally entered into in other jurisdictions. The Act further provides that "party to a civil union" shall be included in any definition or use of the terms "spouse", "family", "immediate family", "dependent", "next of kin" and other terms descriptive of spousal relationships as those terms are used throughout the law. According to CB 2011-06, this includes the terms "marriage" or "married" or any variations thereof. CB 2011-06 also states that if policies of insurance provide coverage for children, the children of civil unions must also be provided coverage.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## POLICYHOLDER DISCLOSURE
## NOTICE OF TERRORISM
## INSURANCE COVERAGE

Coverage for acts of terrorism, as defined in the Terrorism Risk Insurance Act, as amended, (the "Act"), is included in your policy. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. Under your coverage, any losses resulting from certified acts of terrorism may be partially reimbursed by the United States Government under a formula established by the Act. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 80% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The Act contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

The portion of your annual premium that is attributable to coverage for acts of terrorism, as defined in the Act, is $ 6,345, and does not include any charges for the portion of losses covered by the United States government under the Act.

Name of Insurer: Admiral Indemnity Company

Policy Number: 21-21095212-40

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
CP DS 83 00 04 10

Issuing Company: **Admiral Indemnity Company**
301 Route 17 North, Suite 900, Rutherford, NJ 07070

# COMMERCIAL PROPERTY DECLARATIONS

**Policy No.:** 21-21095212 - 40
Previous Policy No.: 21-21095212-39

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 6006 |
|---|---|---|
| The Grand Ohio Condominium Association | (312)595-8135 | |
| Attn: Management Office | Alliant Mesirow Insurance | |
| 211 E Ohio St | 353 N. Clark Street, 10th Floor | |
| Chicago, IL 60611 | Chicago, IL 60654-4704 | |

**POLICY PERIOD**

Policy Period: From 07/25/2022 to 07/25/2023 at 12:01 A.M. Standard Time at your mailing address shown above.

| TOTAL ADVANCE PREMIUM | Included |
|---|---|

**DESCRIPTION OF PREMISES AND COVERAGES PROVIDED**

The Agreed Value provisions expire 07/25/2023.

| Description Of Property | Limit | Cause Of Loss | Coinsurance | Valuation | Inflation Guard |
|---|---|---|---|---|---|
| **LOCATION: # 1** | **Deductible:** | **See Form SP 110** | | | |
| 211 E Ohio St | | | | | |
| Chicago, IL 60611-3262 | | | | | |
| **BUILDING # 1** | | | | | |
| 27 Story Fire Resistive Building | | | | | |
| Condominiums - residential (association risk only) - with mercantile occupancies - Over 30 units | | | | | |
| Building | 181,144,550 | SPECIAL | AV | RC / AV | 4% |
| Business Personal Property | 183,943 | SPECIAL | AV | RC / AV | 4% |
| Business Personal Property of Others | 25,000 | SPECIAL | AV | RC / AV | 4% |
| Business Income Including Extra Expense | Period of Restoration (ALS-18 Months) | SPECIAL | No Coinsurance | | |
| Business Income Waiting Period: | 0 - No Waiting Period | | | | |

KEY:  ACV = Actual Cash Value   ALS = Actual Loss Sustained   AV = Agreed Value   FBV = Functional Building
Valuation   RC = Replacement Cost   MR = Monthly Reporting

**COVERAGES APPLICABLE TO ALL LOCATIONS**

**MORTGAGE HOLDER(S)**

**FORMS APPLICABLE**

*See attached "Schedule of Forms and Endorsements"*

**CP DS 83 00 04 10**     Includes material copyrighted by Insurance Services Office, Inc., with its permission     **Page 1 of 1**



COMMERCIAL PROPERTY
CL CP FS 01 09 08

Policy Number: **21-21095212 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial Property

| Number | Edition | Description |
|--------|---------|-------------|
| CP DS 83 00 | 04-2010 | Commercial Property Declarations |
| CL CP FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| TOC-HC | 04-2017 | Condominium Association Policy Table of Contents |
| CSMC 00 17 | 01-2015 | Condominium Association Coverage Form |
| CSMH 00 30 | 01-2015 | Business Income (And Extra Expense) Coverage Form |
| CSMH 10 30 | 01-2015 | Cause of Loss - Special Form |
| CP 00 90 | 07-1988 | Commercial Property Conditions |
| CP 01 40 | 07-2006 | Exclusion of Loss Due to Virus or Bacteria |
| CP 01 49 | 06-2007 | Illinois Changes - Artificially Generated Electrical Current Exclusion |
| CP 12 18 | 06-2007 | Loss Payable Provisions |
| CP 15 31 | 04-2002 | Ordinance Or Law - Increased Period Of Restoration |
| SP 110 | 01-2017 | Multiple Deductible Form Enhanced Coverage Endorsement |
| SP 157HIL | 01-2018 | Equipment Breakdown Enhancement Endorsement - Illinois |
| SP 314 | 01-2015 | Flood Coverage Schedule |
| SP 315 | 01-2014 | Ordinance or Law Coverage Endorsement |
| SP 317 | 01-2018 | Flood Coverage Endorsement |
| SP 318 | 01-2018 | Earthquake & Volcanic Eruption Endorsement (Sub-Limit Form) |
| SP 319 | 01-2020 | Earthquake & Volcanic Eruption Coverage Schedule |
| SP 320 | 01-2014 | Period Of Restoration Changes Endorsement |
| SP 335IL | 01-2018 | Habitational Coverage Changes Endorsement - Illinois |
| SP 359 | 01-2022 | Cyber Incident Exclusion |
| SP 640 | 01-2016 | Electronic Data-Changes Endorsement |
| SP 641 | 01-2016 | Interruption of Computer Operations-Changes Endorsement |
| SP 901 | 01-2018 | Platinum Property Endorsement |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

# CONDOMINIUM ASSOCIATION POLICY
# TABLE OF CONTENTS

| SECTION NAME | PAGE # |
|---|---|
| **CONDOMINIUM ASSOCIATION COVERAGE FORM** | |
| A.  Coverage | CAC-1 |
| B.  Exclusions And Limitations | CAC-18 |
| C.  Limits of Insurance | CAC-18 |
| D.  Deductible | CAC-19 |
| E.  Loss Conditions | CAC-19 |
| F.  Additional Conditions | CAC-21 |
| G.  Optional Coverages | CAC-23 |
| H.  Definitions | CAC-25 |
| **BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM** | |
| A.  Coverage | BI-1 |
| B.  Limits of Insurance | BI-7 |
| C.  Loss Conditions | BI-7 |
| D.  Additional Condition | BI-8 |
| E.  Optional Coverages | BI-10 |
| F.  Definitions | BI-11 |
| **CAUSES OF LOSS – SPECIAL FORM** | |
| A.  Covered Causes Of Loss | COL-1 |
| B.  Exclusions | COL-1 |
| C.  Limitations | COL-5 |
| D.  Additional Coverage – Collapse | COL-6 |
| E.  Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria | COL-7 |
| F.  Additional Coverage Extensions | COL-8 |
| G.  Definitions | COL-9 |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
CSMC 00 17 01 15

# CONDOMINIUM ASSOCIATION COVERAGE FORM

(CP 00 17 06 07)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H.,** Definitions.

**A. Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this Coverage Part, means the type of property described in this section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

    **a. Building,** meaning the building or structure described in the Declarations, including:

      **(1)** Completed additions;

      **(2)** Fixtures, outside of individual units, including outdoor fixtures;

      **(3)** Permanently installed:

        **(a)** Machinery; and

        **(b)** Equipment;

      **(4)** Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

        **(a)** Fire-extinguishing equipment;

        **(b)** Outdoor furniture;

        **(c)** Floor coverings; and

        **(d)** Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering that are not contained within individual units;

      **(5)** If not covered by other insurance:

        **(a)** Additions under construction, alterations and repairs to the building or structure;

        **(b)** Materials, equipment, supplies, and temporary structures, on or within 1,000 feet of the described premises, used for making additions, alterations or repairs to the building or structure;

        **(c)** Building materials and supplies of others that are:

          **(i)** Owned by others;

          **(ii)** In your care, custody or control;

          **(iii)** Located in or on the building described in the Declarations, or within 1,000 feet of its premises;

          **(iv)** Intended to become a permanent part of the building.

        Our payment for loss or damage to property of others will not exceed $25,000 excess over any specific insurance for the benefit of the owner of the materials and supplies;

      **(6)** Any of the following types of property contained within a unit, regardless of ownership, if your Condominium Association Agreement requires you to insure it:

        **(a)** Fixtures, improvements and alterations that are a part of the building or structure; and

        **(b)** Appliances, such as those used for refrigerating, ventilating, cooking, dishwashing, laundering, security or housekeeping; and

      **(7)** Building valuation includes necessary and incurred architectural, engineering, consulting and construction management fees related to the construction and repair of the lost or damaged building.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

But Building does not include personal property owned by, used by or in the care, custody or control of a unit-owner except for personal property listed in Paragraph **A.1.a.(6)** above.

**b.** **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following:

**(1)** Personal property owned by you or owned indivisibly by all unit-owners;

**(2)** Your interest in the labor, materials or services furnished or arranged by you on personal property of others;

**(3)** Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property Of Others.

But Your Business Personal Property does not include personal property owned only by a unit-owner.

**c.** **Personal Property Of Others** that is:

**(1)** In your care, custody or control; and

**(2)** Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**2.** **Property Not Covered**

Covered Property does not include:

**a.** Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

**b.** Animals, unless owned by others and boarded by you;

**c.** Automobiles held for sale;

**d.** Bridges, roadways, walks, patios or other paved surfaces.

However, this paragraph does not apply to loss caused by the following perils: Fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, theft or attempted theft, or collapse of a building that is insured under this Coverage form if the collapse is caused by one of these causes of loss.

**e.** Contraband, or property in the course of illegal transportation or trade;

**f.** The cost of excavations, grading, backfilling or filling;

However, these costs are only covered when made necessary due to repair of buildings insured under this policy from a Covered Cause of Loss.

**g.** Foundations of buildings, structures, machinery or boilers if their foundations are below:

**(1)** The lowest basement floor; or

**(2)** The surface of the ground if there is no basement;

However, this paragraph does not apply to loss caused by the following perils: Fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, theft or attempted theft, or collapse of a building that is insured under this Coverage form if the collapse is caused by one of these causes of loss.

**h.** Land (including land on which the property is located), water, growing crops or lawns;

**i.** Personal property while airborne or waterborne;

**j.** Bulkheads, pilings, piers, wharves or docks;

**k.** Property that is covered under this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

**l.** Retaining walls that are not part of a building.

However, this paragraph does not apply to loss caused by the following perils: Fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, theft or attempted theft, or collapse of a building that is insured under this Coverage form if the collapse is caused by one of these causes of loss;



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**m.** Underground pipes, flues or drains;

However, this paragraph does not apply to loss caused by the following perils: Fire, lightning, explosion, windstorm or hail, smoke, aircraft or vehicles, riot or civil commotion, vandalism, theft or attempted theft, or collapse of a building that is insured under this Coverage form if the collapse is caused by one of these causes of loss;

**n.** Electronic data, except as provided under the Additional Coverage, Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data;

**o.** Vehicles or self-propelled machines (including aircraft or watercraft) that:

**(1)** Are licensed for use on public roads; or

**(2)** Are operated principally away from the described premises.

This paragraph does not apply to:

**(a)** Vehicles or self-propelled machines or autos you manufacture or warehouse;

**(b)** Vehicles or self-propelled machines, other than autos, you hold for sale;

**(c)** Rowboats or canoes out of water at the described premises; or

**(d)** Trailers, but only to the extent provided for in the Coverage Extension for Non-owned Detached Trailers;

**p.** The following property while outside of buildings:

**(1)** Grain, hay, straw or other crops; or

**(2)** The lead-in wiring, masts or towers of outdoor radio or television antennas (including satellite dishes), trees, shrubs, or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

**3. Covered Causes Of Loss**

See applicable Causes Of Loss Form as shown in the Declarations.

**4. Additional Coverages**

**a. Debris Removal**

**(1)** Subject to Paragraphs **(3)** and **(4)**, we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

**(2)** Debris Removal does not apply to costs to:

**(a)** Extract "pollutants" from land or water; or

**(b)** Remove, restore or replace polluted land or water.

**(3)** Subject to the exceptions in Paragraph **(4)**, the following provisions apply:

**(a)** The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

**(b)** Subject to **(a)** above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

**(4)** We will pay up to an additional $500,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

**(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $500,000.

**(5)** We will also pay up to $1,000 for the cost you incur at each premises to remove debris of outdoor trees, shrubs or plants that are blown into your premises by wind.

**(6) Examples**

The following examples assume that there is no Coinsurance penalty.

**EXAMPLE #1**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 1,250,000 |
| Amount of Deductible: | $ | 10,000 |
| Amount of Loss: | $ | 500,000 |
| Amount of Loss Payable: | $ | 490,000 |
| | ($500,000 - $10,000) | |
| Debris Removal Expense: | $ | 100,000 |
| Debris Removal Expense Payable: | $ | 100,000 |

($100,000 is 20% of $500,000.)

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($490,000 + $100,000 = $590,000) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph **(3)**.

**EXAMPLE #2**

| | | |
|---|---|---|
| Limit of Insurance: | $ | 1,250,000 |
| Amount of Deductible: | $ | 10,000 |
| Amount of Loss: | $ | 1,100,000 |
| Amount of Loss Payable: | $ | 1,090,000 |
| | ($1,100,000 - $10,000) | |
| Debris Removal Expense: | $ | 500,000 |
| Debris Removal Expense Payable | | |
| Basic Amount: | $ | 160,000 |
| Additional Amount: | $ | 250,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $1,100,000 ($1,090,000 + $10,000) x .25 = $275,000; capped at $160,000. The cap applies because the sum of the loss payable ($1,090,000) and the basic amount payable for debris removal expense ($160,000) cannot exceed the Limit of Insurance ($1,250,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($500,000) exceeds 25% of the loss payable plus the deductible ($500,000 is 45.5% of $1,100,000), and because the sum of the loss payable and debris removal expense ($1,090,000 + $500,000 = $1,590,000) would exceed the Limit of Insurance ($1,250,000). The additional amount of covered debris removal expense is $250,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $410,000; $90,000 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary for you to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 180 days after the property is first moved.

**CSMC 00 17 01 15**   Includes copyrighted material of Insurance Services Office, Inc. with its permission   **PAGE CAC-4**



c. **Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $25,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

d. **Pollutant Clean-up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $250,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12-month period of this policy.

e. **Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in **e.(3)** through **e.(9)** of this Additional Coverage.

**(3)** The ordinance or law referred to in **e.(2)** of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

**(4)** Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

**(a)** You were required to comply with before the loss, even when the building was undamaged; and

**(b)** You failed to comply with.

**(5)** Under this Additional Coverage, we will not pay for:

**(a)** The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**(b)** Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**(6)** The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable Coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

**(7)** With respect to this Additional Coverage:

**(a)** We will not pay for the Increased Cost of Construction:

**(i)** Until the property is actually repaired or replaced, at the same or another premises; and

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

    **(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

  **(b)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the same premises.

  **(c)** If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of **e.(6)** of this Additional Coverage, is the increased cost of construction at the new premises.

**(8)** This Additional Coverage is not subject to the terms of the Ordinance Or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

**(9)** The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in **e.(6)** of this Additional Coverage, is not subject to such limitation.

**f. Electronic Data**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Property Not Covered, Electronic Data.

**(2)** Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

**(3)** The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage, Electronic Data, subject to the following:

  **(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage, Electronic Data, is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

  **(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage, Electronic Data, includes Collapse as set forth in that form.

  **(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage, Electronic Data.

  **(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage, Electronic Data, is $1,000,000 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

**g. Accidental Chemical Extinguishing System Discharge**

**(1)** We will pay costs you incur to:

  **(a)** Make "chemical extinguishing systems" fully operational;

  **(b)** Refill "chemical extinguishing systems";

  **(c)** Reset automatic fuel shutoff devices;

**(d)** Remove debris of Covered Property; and

**(e)** Clean up chemical agents discharged from "chemical extinguishing systems";

only if an accident occurs to "chemical extinguishing systems" causing it to discharge. Accident, as used in this coverage, does not include any Covered Cause of Loss that is otherwise covered under this Coverage Part.

**(2)** "Chemical extinguishing systems" means fixed automatic fire extinguishing systems that protect cooking equipment and related hoods and ducts.

**(3)** The most we will pay under this coverage for each occurrence (or accident) is $100,000.

**h. Accounts Receivable (including Credit Cards)**

**(1)** We will pay for Accounts Receivable loss you incur caused by a Covered Cause of Loss:

  **(a)** At a described premises or in or on a vehicle in transit between described premises; or

  **(b)** If the records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss, while the Accounts Receivable are:

    **(i)** At a safe place away from your described premises; or

    **(ii)** Being taken to and returned from that place; or

  **(c)** In transit, including registered shipments by mail.

**(2)** The amount of your Accounts Receivable loss includes:

  **(a)** All amounts due from your customers that you are unable to collect;

  **(b)** Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts.

  **(c)** Collection expenses in excess of your normal collection expenses that are made necessary by the loss; and

  **(d)** Other reasonable expenses that you incur to reestablish your records of Accounts Receivable,

that result from direct physical damage by any Covered Cause of Loss to your records of Accounts Receivable, including credit or charge card slips and invoices and accounting records on electronic data processing media, used to control and document the collection of money due from customers.

**(3)** Accounts Receivable loss payment will be determined as follows:

  **(a)** If you cannot accurately establish the amount of accounts receivable outstanding as of the time of loss, the following method will be used:

    **(i)** Determine the total of the average monthly Amounts Receivable for the 12 months immediately preceding the month in which the loss occurs; and

    **(ii)** Adjust that total for any normal fluctuations in the amount of Accounts Receivable for the month in which the loss occurred or for any demonstrated variance from the average of that month.

  **(b)** The following will be deducted from the total amount of accounts receivable, however that amount is established:

    **(i)** The amount of the accounts for which there is no loss; and

    **(ii)** The amount of the accounts that you are able to reestablish or collect; and

    **(iii)** An amount to allow for probable bad debts that you are normally unable to collect.

  **(c)** You will pay us the amount of all recoveries you receive for a loss paid by us. But any recovery in excess of the amount we have paid belong to you.

**(4)** Exclusions

  **(a)** We will not pay for a loss caused by or resulting from any of the following:

    **(i)** Alteration, falsification, concealment or destruction of records of Accounts Receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

    **(ii)** Bookkeeping, accounting or billing errors or omissions.

  **(b)** We will not pay for a loss that requires any audit of records or any inventory computation to prove its actual existence.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(5)** The most we will pay under this Additional Coverage is $1,000,000, except $500,000 for transit loss covered in paragraph **(1)(c)** above.

**i.   Employee Theft**

**(1)**  We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from "theft" committed by an "employee" whether identified or not, acting alone or in collusion with other persons.

For the purposes of this Insuring Agreement, "theft" shall also include "forgery".

**(2)**  The most we will pay for all loss resulting directly from an "occurrence" is $100,000.

**(3)**  This insurance does not cover:

**(a)**  Loss resulting from "theft" or any other dishonest act committed by:

**(i)**  You; or

**(ii)**  Any of your partners or "members,"

whether acting alone or in collusion with other persons.

**(b)**  Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

**(c)**  Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

**(i)**  An inventory computation; or

**(ii)**  A profit and loss computation.

However, where you establish wholly apart from such computations that you have sustained a loss, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

**(4)**  We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

**(a)**  No later than 1 year from the date of that cancellation.  However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**(b)**  No later than 1 year from the date of that cancellation with regard to any "employee benefit plans".

**(5)**  We will pay only for loss you sustain through an "occurrence" that occurs during the Policy Period.  Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**(6)**  The Insuring Agreement terminates as to any "employee":

**(a)**  As soon as:

**(i)**  You; or

**(ii)**  Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

learn of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

**(b)**  On the date specified in a notice mailed to the first Named Insured.  That date will be at least 30 days after the date of mailing.

We will mail or deliver our notice to the first Named Insured's last mailing address known to us.  If notice is mailed, or proof of mailing will be sufficient proof of notice.

**(7)**  Definitions

**(a)**  "Discover" or "discovered" means the time when you first become aware of facts which could cause a reasonable person to assume that a loss of a type covered by this insurance has been or will be incurred, regardless of when the act or acts causing or contributing to such loss occurred, even though the exact amount or details of loss may not then be known.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

"Discover" or "discovered" also means the time when you first receive notice of an actual or potential claim in which it is alleged that you are liable to a third party under circumstances which, if true, would constitute a loss under this insurance.

**(b)** "Employee" means:

Any natural person:

**(i)** While in your service and for the first 30 days immediately after termination of service, only when such termination is not due to "theft" or any dishonest act committed by the "employee";

**(ii)** Who you compensate directly by salary, wages or commissions;

**(iii)** Who you have the right to direct and control while performing services for you;

**(iv)** Who is your managing agent;

**(v)** Who is a trustee, officer, employee, administrator or manager, except an administrator or manager who is an independent contractor, of any "employee benefit plan";

**(vi)** Who is a director or trustee of yours while that person is engaged in handling "funds" or "other property" of any "employee benefit plan";

**(vii)** Who is a former "employee", "partner", "member", "manager", director or trustee retained as a consultant while performing services for you; and

**(viii)** Any of your "managers", directors or trustees while:

**(a)** Performing acts within the scope of the usual duties of an "employee"; or

**(b)** Acting as a member of any committee duly elected or appointed by resolution of your board of directors or board of trustees to perform specific, as distinguished from general, directorial acts on your behalf.

**(c)** "Employee benefit plan" means any welfare or pension benefit plan that you sponsor and which is subject to the Employee Retirement Income Security Act of 1974 (ERISA) and any amendments thereto.

**(d)** "Manager" means a person serving in a directorial capacity for a limited liability company.

**(e)** "Member" means an owner of a limited liability company represented by its membership interest, who also may serve as a "manager".

**(f)** "Money" means:

**(i)** Currency, coins and bank notes in current use and having a face value; and

**(ii)** Travelers checks, register checks and money orders held for sale to the public.

**(g)** For purposes of this coverage, "Occurrence" means:

**(i)** An individual act;

**(ii)** The combined total of all separate acts whether or not related; or

**(iii)** A series of acts whether or not related;

committed by an "employee" acting alone or in collusion with other persons, during the Policy Period.

**(h)** "Other property" means any tangible property other than "money" and "securities" that has intrinsic value. "Other property" does not include computer programs, electronic data or any property specifically excluded under this insurance.

**(i)** "Securities" means negotiable and nonnegotiable instruments or contracts representing either "money" or property and includes:

**(i)** Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

**(ii)** Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money".

**(j)** "Theft" means the unlawful taking of property to the deprivation of the Insured.

**(8)** For this Employee Theft Coverage, "money" and "securities" are removed from paragraph **a.** of **A.2.** Property Not Covered of the Building and Personal Property Coverage Form.

**(9)** Paragraph **f.** of **B.2.** Exclusions of the Causes of Loss – Special Form is removed.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**j.   Money and Securities**

**(1)** We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

   **(a)** Theft, meaning any act of stealing;

   **(b)** Disappearance; or

   **(c)** Destruction.

**(2)** In addition to the Limitations and Exclusions applicable, we will not pay for loss:

   **(a)** Resulting from accounting or arithmetical errors or omissions;

   **(b)** Resulting from any dishonest or criminal act committed by any of your employees, directors, trustees or authorized representatives:

      **(i)** Acting alone or in collusion with other persons; or

      **(ii)** While performing services for you or otherwise.

   **(c)** Due to the giving or surrendering of property in any exchange or purchase; or

   **(d)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device

**(3)** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**(4)** The most we will pay for loss in any one occurrence is:

   **(a)** $25,000 for loss Inside the Premises for "money" and "securities" while:

      **(i)** In or on the described premises; or

      **(ii)** Within a bank or savings institution; and

   **(b)** $15,000 for loss Outside the Premises for "money" and "securities" while anywhere else.

**(5)** All loss:

   **(a)** Caused by one or more persons; or

   **(b)** Involved a single act or series of related acts;

   is considered one occurrence.

**(6)** Item **2.a.** of Property Not Covered does not apply to this Additional Coverage.

**k.   Money Orders and Counterfeit Paper Currency**

**(1)** We will pay for loss due to the good faith acceptance of:

   **(a)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

   **(b)** Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

**(2)** The most we will pay for any loss under this Additional Coverage is $5,000.

**l.   Forgery and Alteration**

**(1)** We will pay for loss resulting directly from "forgery" or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money," that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money," on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

**(3)** The most we will pay for any loss, including legal expenses, under this Additional Coverage is $100,000.

**(4)** "Forgery" means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**m. Lost Key Consequential Loss**

    **(1)** We will pay for consequential loss to locks or keys if a master or grand master key is lost or damaged.  This coverage does not apply to keys left in the possession of former employees.

    **(2)** We will pay for:

        **(a)** The actual cost of keys; and

        **(b)** Adjustment of locks to accept new keys, or

        **(c)** If required, new locks, including the cost of their installation.

    **(3)** The most we will pay for loss or damage under this Additional Coverage is $50,000.

**n. Computer Fraud and Funds Transfer Fraud**

    **(1)** We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises"; and for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account":

        **(a)** To a person (other than a "messenger") outside those "premises"; or

        **(b)** To a place outside those "premises".

    **(2)** The most we will pay for all loss resulting directly from an "occurrence" is $100,000.

    **(3)** This insurance does not cover:

        **(a)** Loss resulting from "theft" or any other dishonest act committed by:

            **(i)** You; or

            **(ii)** Any of your partners or "members,"

        whether acting alone or in collusion with other persons.

        **(b)** Loss caused by an "employee" if the "employee" had also committed "theft" or any other dishonest act prior to the effective date of this insurance and you or any of your partners, "members", "managers", officers, directors or trustees, not in collusion with the "employee", learned of that "theft" or dishonest act prior to the Policy Period shown in the Declarations.

        **(c)** Loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

            **(i)** An inventory computation; or

            **(ii)** A profit and loss computation.

        However, where you establish wholly apart from such computations that you have sustained a loss then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

        **(d)** Loss resulting from:

            **(i)** The unauthorized disclosure of your confidential information including, but not limited to, patents, trade secrets, processing methods or customers lists; or

            **(ii)** The unauthorized use or disclosure of confidential information of another person or entity which is held by you including, but not limited to, financial information, personal information or similar non-public information.

            **(iii)** The use or purported use of credit, debit, charge, access, convenience, identification, stored-value or other cards of the information contained on such cards.

    **(4)** We will pay for loss that you sustained prior to the effective date of cancellation of this insurance, which is "discovered" by you:

        **(a)** No later than 1 year from the date of that cancellation.  However, this extended period to "discover" loss terminates immediately upon the effective date of any other insurance obtained by you, whether from us or another insurer, replacing in whole or in part the coverage afforded under this insurance, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

        **(b)** No later than 1 year from the date of that cancellation with regards to any "employee benefit plans".

**(5)** We will pay only for loss you sustain through an "occurrence" that occurs during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year to period to period.

**(6)** This Insuring Agreement terminates as to any "employee":

  **(a)** As soon as:

  **(i)** You; or

  **(ii)** Any of your partners, "members", "managers", officers, directors, or trustees not in collusion with the "employee";

  learn of "theft" or any dishonest act committed by the "employee" whether before or after becoming employed by you; or

  **(b)** On the date specified in a notice mailed to the first Named Insured. That date will be at least 30 days after the date of mailing.

  We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

**(7)** We will cover loss that you sustain resulting from an "occurrence" taking place anywhere in the world.

**(8)** Definitions

In addition to the definitions in **A.4.i.** above, the following definitions apply to this Computer Fraud and Funds Transfer Fraud coverage:

  **(a)** "Banking premises" means the interior of that portion of any building occupied by a banking institution or similar safe depository.

  **(b)** "Fraudulent instruction" means:

  **(i)** An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent;

  **(ii)** A written instruction (other than those described in **A.4.I. – Forgery and Alteration**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently issued without your knowledge or consent; or

  **(iii)** An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.

  **(c)** "Funds" means "money" and "securities".

  **(d)** "Messenger" means you, or a relative of yours, or any of your partners or "members", or any "employee" while having care and custody of property outside the "premises".

  **(e)** For purposes of this coverage, "occurrence" means:

  **(i)** An individual act;

  **(ii)** The combined total of all separate acts or events whether or not related; or

  **(iii)** A series of acts or events whether or not related;

  committed by a person acting alone or in collusion with other persons, or not committed by any person, during the Policy Period shown in the Declarations.

  **(f)** "Premises" means the interior of that portion of any building you occupy in conducting your business.

  **(g)** "Transfer account" means an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds":

  **(i)** By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or

  **(ii)** By means of written instructions (other than those described in **A.4.I. – Forgery and Alteration**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(9)** For this Computer Fraud and Funds Transfer Fraud coverage, "money" and "securities" are removed from paragraph **a.** of **A.2. Property Not Covered** of the Building and Personal Property Form.

**(10)** For this Computer Fraud and Funds Transfer Fraud coverage, Paragraph **g.** of **B.2. Exclusions** is removed from the Causes of Loss – Special Form.

**o.  Fine Arts**

**(1)** We will pay for direct physical loss or damage to Fine Arts meaning paintings, etchings, pictures, tapestries, art glass windows, valuable rugs, statuary, marbles, bronzes, antique furniture, rare books, antique silver, manuscripts, porcelains, rare glassware, bric-a-brac and similar property of art rarity, antiquity, historical value or artistic merit, not to exceed $1,000,000 in any one occurrence.

**(2)** We will pay for direct physical loss or damage to newly acquired Fine Arts at the premises shown in the Declarations or at newly acquired premises caused by or resulting from a Covered Cause of Loss, not to exceed $25,000.

This coverage applies until the first of the following occurs:

  **(a)** You report the value of the newly acquired Fine Arts at the premises shown in the Declarations or at the newly acquired premises to us;

  **(b)** 180 days pass from the date you acquire the Fine Arts; or

  **(c)** This policy expires.

**(3)** We will pay for direct physical loss or damage to Fine Arts in transit, including registered shipments by mail, caused by or resulting from a Covered Cause of Loss, not to exceed $500,000.

**(4)** If loss or damage applies to Fine Arts, the basis of the adjustment will be as follows:

  **(a)** The Limit of Insurance shown on a schedule for each Fine Arts item.  This will be the agreed value for each item;

  **(b)** If the item is newly acquired, the value will be the fair market value; or

  **(c)** The most we will pay in the event of loss or damage to unscheduled Fine Arts items is the least of the following:

    **(i)** The cost of restoring the property to its condition immediately before the loss or damage;

    **(ii)** The cost of replacing the property with substantially identical property; or

    **(iii)** The fair market value.

    All at the time and place of the loss or damage.

**(5)** Limitation **C.2.b.** of the Causes of Loss – Special Form does not apply to this Additional Coverage.

**p.  Contamination**

**(1)** We will provide coverage for loss or damage which results from contamination, meaning loss or damage to stock caused by a foreign substance accidentally entering or coming into contact with the stock.

**(2)** The insurance provided by this coverage form applies to loss or damage to "stock" owned by you or by others in your care, custody and control at:

  **(a)** Your described premises;

  **(b)** Premises of a cold storage warehouse; or

  **(c)** Premises of a consignee;

**(3)** For purposes of this Additional Coverage, contamination does not include:

  **(a)** The wrongful addition or omission of ingredients or substances as part of the production process; nor improper processing or preparation; or

  **(b)** Loss or damage resulting from "Equipment Breakdown".

**(4)** Exclusion **B.1.e.** of the Causes of Loss – Special Form does not apply to this Additional Coverage Extension.

**(5)** The most we will pay under this coverage for each occurrence is $25,000.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**q.  Leasehold Interest Improvements and Betterments**

(1)  We will pay for the value of undamaged improvements and betterments when your lease is canceled by:

(a)  The lessor; and

(b)  Pursuant to a valid condition of your lease

due to direct physical loss or damage to Building or Business Personal Property caused by or resulting from a Covered Cause of Loss at the premises shown in the Declarations.

(2)  When you rent the building, we will pay only if:

(a)  At least 25% of the above building has been damaged; or

(b)  A minimum of six months remains in your lease and at least six months is required to repair building for your occupancy.

(3)  When you rent a portion of the building, we will pay only if:

(a)  A minimum of six months remains in your lease; and

(b)  At least six months is required to repair the building for your occupancy.

(4)  The most we will pay under this Additional Coverage is $1,000,000.

**r.  Utility Services - Direct Damage**

(1)  We will pay, not to exceed $1,000,000 per "occurrence" for loss of or damage to a covered Building caused by the interruption of service to the described premises.  The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the following property, not on the described premises.

(a)  **Water Supply Services**, meaning the following types of property supplying water to the described premises:

(i)  Pumping stations; and

(ii)  Water mains.

(b)  **Communication Supply Services**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

(i)  Communication transmission lines, including optic fiber transmission lines:

(ii)  Coaxial cables; and

(iii) Microwave radio relays except satellites.

(c)  **Power Supply Services**, meaning the following types of property supplying electricity, steam or gas to the described premises:

(i)  Utility generating plants;

(ii)  Switching stations;

(iii) Substations;

(iv) Transformers; and

(v)  Underground transmission lines.  This coverage does not apply to overhead transmission and distribution lines.

(2)  The Utility Services Limit of Insurance is part of, not in addition to, the Limit of Insurance stated in the Declarations.

**s.  Tenant Move Back Coverage**

(1)  We will pay expenses incurred by you for Covered Move Back Costs of tenants who temporarily vacate a portion of a Covered Building at the premises described in the Declarations.  The vacancy must have occurred while the portion of the Covered Building rented by the tenant could not be occupied due to direct physical loss or damage to your Covered Property caused by or resulting from a Covered Cause of Loss.  The move back must take place within 60 days after the portion of the Covered Building rented by the tenant has been repaired or rebuilt and is ready for occupancy.

(2)  We will pay for Covered Move Back Costs whether or not the tenant(s) move back before the expiration date of this Coverage Part.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **(3)** Covered Move Back Costs under this endorsement means documented, reasonable and necessary:

      **(a)** Costs of packing, insuring and carting business personal property;

      **(b)** Costs of re-establishing electric utility services, less refunds from discontinued services;

      **(c)** Costs of assembling and setting up fixtures and equipment; and

      **(d)** Costs to unpack and reshelve stock and supplies.

    **(4)** Covered Move Back Costs do not include:

      **(a)** Loss caused by the termination of a lease or other agreement; or

      **(b)** Security deposits or other payments, forfeitures or penalties made to the landlord or lessor of other premises.

    **(5)** The most we will pay for Covered Move Back Costs under this endorsement is $250,000 resulting from any one occurrence. The number of tenants requiring relocation will not affect this Limit of Insurance.

  **t.** **Arson and Theft Reward**

    **(1)** We will pay a reward of 25% of an incurred claim up to a maximum of $5,000 for information leading to:

      **(a)** An arson conviction in connection with a covered fire or explosion loss; or

      **(b)** A theft conviction in connection with a covered theft loss.

    This amount is additional insurance.

**5.** **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

Unless otherwise indicated, the policy deductible applies to all of the following Coverage Extensions on a per location basis.

If a Coinsurance percentage of 80% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

  **a.** **Newly Acquired Or Constructed Property**

    **(1) Buildings**

      You may extend the insurance that applies to Building to apply to:

      **(a)** Your new buildings while being built on the described premises; and

      **(b)** Buildings you acquire at locations, other than the described premises, intended for:

        **(i)** Similar use as the building described in the Declarations; or

        **(ii)** Use as a warehouse.

      The most we will pay for loss or damage under this Extension is $5,000,000 at each building.

    **(2) Your Business Personal Property**

      **(a)** If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

        **(i)** Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

        **(ii)** Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

        **(iii)** Business personal property that you newly acquire, located at the described premises.

      The most we will pay for loss or damage under this Extension is 25% of the limit of insurance for Your Business Personal Property shown in the Declarations, but not more than $500,000 at each building.

      **(b)** This Extension does not apply to:

        **(i)** Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

        **(ii)** Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

    **(3) Period Of Coverage**

    With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

    **(a)** This policy expires;

    **(b)** 180 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

    **(c)** You report values to us.

    We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

    **(a)** The most we will pay for loss or damage under paragraph **(1)** is $25,000 at each described premises.

    **(b)** With respect to property covered under paragraph **(1)**, the deductible applicable to Your Business Personal Property does not apply.

**(2)** Personal property of others in your care, custody or control.

    **(a)** The most we will pay for loss or damage under paragraph **(2)** is $25,000 at each described premises.

    **(b)** With respect to property covered under paragraph **(2)**, the deductible applicable to Your Business Personal Property does not apply.

    **(c)** Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**(3)** Personal Effects and Property of Others is valued on the same basis as Your Business Personal Property, but we will pay no more than the amount for which you are legally liable.

**c. Valuable Papers And Records (Other Than Electronic Data)**

**(1)** We will pay for Valuable Papers and Records loss you incur caused by a Covered Cause of Loss:

    **(a)** At a described premises or in or on a vehicle in transit between described premises; or

    **(b)** If the Valuable Papers and Records must be removed from a described premises to protect them from the threat of a Covered Cause of Loss,

    We will pay for loss while they are:

        **(i)** At a safe place away from your described premises; or

        **(ii)** Being taken to and returned from that place; or

    **(c)** In transit, including registered shipments by mail.

**(2)** Valuable Papers and Records means those that are your property or property of others in your care, custody or control:

    **(a)** Inscribed, printed or written documents, manuscripts or records, including abstracts, books, deeds, drawings, films, maps or mortgages.

    **(b)** But "Valuable Papers and Records" does not mean money or securities, converted data, programs or instructions used in your data processing operations, including the materials on which the data is recorded.

**(3)** Valuable Papers and Records loss payment will be determined as follows:

    **(a)** The full cost of replacement or reproduction at the time of direct physical loss or damage when they are actually replaced or reproduced; or

    **(b)** If not replaced or reproduced, the value based on the cost of blank materials.

    **(c)** If either you or we recover any property after loss settlement, that party must give prompt notice.  At your option, the property will be returned to you.  If so, your loss will be readjusted

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

based on the amount you received for the property recovered, with allowance for recovery expenses incurred.

**(4)** The most we will pay under this Coverage Extension is $1,000,000, except $500,000 for transit loss covered in paragraph **(1)(c)** above.

**d. Property Off-premises**

**(1)** We will pay for direct physical loss or damage to your Business Personal Property at unspecified premises, caused by or resulting from a Covered Cause of Loss, not to exceed $500,000.

**(2)** This Additional Coverage does not apply to:

**(a)** Personal Property at a newly acquired premises;

**(b)** Personal Property at a job site or temporarily warehoused elsewhere awaiting installation at the job site; or

**(c)** Personal Property while in transit.

**e. Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion;

**(5)** Aircraft;

**(6)** Vehicle Collision;

**(7)** Theft;

**(8)** Vandalism and Malicious Mischief; or

The most we will pay for loss or damage under this Extension is $500,000, but not more than $2,500 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

**f. Non-owned Detached Trailers**

**(1)** You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

**(a)** The trailer is used in your business;

**(b)** The trailer is in your care, custody or control at the premises described in the Declarations; and

**(c)** You have a contractual responsibility to pay for loss or damage to the trailer.

**(2)** We will not pay for any loss or damage that occurs:

**(a)** While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

**(b)** During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

**(3)** The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

**(4)** This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

**g. Loss Data Preparation Costs**

**(1)** We will pay up to $10,000 for reasonable costs you incur in preparing loss data required by policy conditions after a covered loss.  This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss.

**(2)** We will not pay for any loss data preparation expenses:

**(a)** Billed by and payable to:

**(i)** Independent or public adjusters or for expenses;

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

    **(ii)** Any Managing Agent; or

    **(iii)** Any other party under contract to receive fees for preparing loss data after a covered loss; or

  **(b)** To prepare claims not covered by this Coverage Part.

**(3)** The $10,000 limit is an annual aggregate limit and is the most we will pay for the total of all loss data preparation costs incurred in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one claim made for loss data preparation costs during that time.

**h. Exterior Glass**

**(1)** We will pay for direct physical loss of or damage to glass that is part of the exterior of a covered building or structure at the described premises, including lettering, and ornamentation, provided the glass is owned by you, or owned by others but in your care, custody or control.

**(2)** We will also pay for necessary:

  **(a)** Expenses incurred to put up temporary plates or board up openings;

  **(b)** Repair or replacement of encasing frames; and

  **(c)** Expenses incurred to remove or replace obstructions.

**(3)** Section **B. Exclusions** does not apply to this Coverage Extension except for:

  **(a)** Paragraph **B.1.c. Governmental Action;**

  **(b)** Paragraph **B.1.d. Nuclear Hazard**; and

  **(c)** Paragraph **B.1.f. War and Military Action.**

**(4)** We will not pay for loss or damage caused by or resulting from wear and tear.

**(5)** This Coverage Extension supersedes all Limitations in this policy that apply to exterior glass.

**(6)** No deductible applies to this Coverage Extension.

**i. Interior Glass**

**(1)** We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is owned by you, or owned by others but in your care, custody or control.

**(2)** We will also pay for necessary:

  **(a)** Expenses incurred to put up temporary plates or board up openings;

  **(b)** Repair or replacement of encasing frames; and

  **(c)** Expenses incurred to remove or replace obstructions.

**(3)** Section **B. Exclusion** does not apply to this Coverage Extension, except for:

  **(a)** Paragraph **B.1.c. Governmental Action;**

  **(b)** Paragraph **B.1.d. Nuclear Hazard**; and

  **(c)** Paragraph **B.1.f. War and Military Action.**

**(4)** We will not pay for loss or damage caused by or resulting from wear and tear.

**(5)** This Coverage Extension supersedes all Limitations in this policy that apply to interior glass.

**(6)** No deductible applies to this Coverage Extension.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

**B. Exclusions And Limitations**

See applicable Causes Of Loss Form as shown in the Declarations.

**C. Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

The amounts of insurance stated in the following Additional Coverages apply in accordance with the terms of such coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage:

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

1.  Fire Department Service Charge;
2.  Pollutant Clean-up And Removal;
3.  Increased Cost Of Construction; and
4.  Electronic Data.

Payments under the Preservation Of Property Additional Coverage will not increase the applicable Limit of Insurance.

**D. Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

If one occurrence results in loss or damage at more than one location, the applicable deductible will apply separately to loss or damage at each location that has sustained loss or damage.

**EXAMPLE #1**

(This example assumes there is no Coinsurance penalty.)

| Deductible: | $ | 25,000 |
|---|---|---|
| Limit of Insurance: | $ | 6,000,000 |
| Amount of Loss: | $ | 6,010,000 |

The amount of loss ($6,010,000) is less than the sum ($6,025,000) of the Limit of Insurance plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Building #1:

| $ | 6,010,000 | |
|---|---|---|
| - | 25,000 | |
| $ | 5,985,000 | Loss Payable |

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1.  **Abandonment**

    There can be no abandonment of any property to us.

2.  **Appraisal**

    If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    a.  Pay its chosen appraiser; and

    b.  Bear the other expenses of the appraisal and umpire equally.

    If there is an appraisal, we will still retain our right to deny the claim.

3.  **Duties In The Event Of Loss Or Damage**

    a.  You must see that the following are done in the event of loss or damage to Covered Property:

        (1) Notify the police if a law may have been broken.

        (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

        (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

        (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**CSMC 00 17 01 15**    Includes copyrighted material of Insurance Services Office, Inc. with its permission    **PAGE CAC-19**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to b. below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

If you name an insurance trustee, we will adjust losses with you, but we will pay the insurance trustee. If we pay the trustee, the payments will satisfy your claims against us.

**h.** A party wall is a wall that separates and is common to adjoining buildings that are owned by different parties. In settling covered losses involving a party wall, we will pay a proportion of the loss to the party wall based on your interest in the wall in proportion to the interest of the owner of the adjoining building. However, if you elect to repair or replace your building and the owner of the adjoining building elects not to repair or replace that building, we will pay you the full value of the loss to the party wall, subject to all applicable policy provisions including Limits of Insurance, the Valuation and Coinsurance Conditions and all other provisions of this Loss Payment Condition. Our payment under the provisions of this paragraph does not alter any right of subrogation we may have against any entity, including the owner or insurer of the adjoining building, and does not alter the terms of the Transfer Of Rights Of Recovery Against Others To Us Condition in this policy.

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

5. **Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

6. **Unit-owner's Insurance**

A unit-owner may have other insurance covering the same property as this insurance. This insurance is intended to be primary, and not to contribute with such other insurance.

7. **Vacancy**

   a. **Description Of Terms**

   **(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

   **(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

   **(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

   **(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

   **(ii)** Used by the building owner to conduct customary operations.

   **(2)** Buildings under construction or renovation are not considered vacant.

   b. **Vacancy Provisions**

   If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

   **(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

   **(a)** Vandalism;

   **(b)** Sprinkler leakage, unless you have protected the system against freezing;

   **(c)** Building glass breakage;

   **(d)** Water damage;

   **(e)** Theft; or

   **(f)** Attempted theft.

   **(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

8. **Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

   a. At actual cash value as of the time of loss or damage, except as provided in **b.** and **c.** below.

   b. If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

   The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

   c. Glass at the cost of replacement with safety-glazing material if required by law.

9. **Waiver Of Rights Of Recovery**

We waive our rights to recover payment from any unit-owner of the condominium that is shown in the Declarations.

F. **Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

1. **Coinsurance**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies.

   **a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

   Instead, we will determine the most we will pay using the following steps:

   **(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

   **(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

   **(3)** Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and

   **(4)** Subtract the deductible from the figure determined in Step **(3)**.

   We will pay the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**EXAMPLE #1 (UNDERINSURANCE)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 100,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

Step **(1):**  $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):**  $100,000 ÷ $200,000 = .50

Step **(3):**  $40,000 x .50 = $20,000

Step **(4):**  $20,000 - $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**EXAMPLE #2 (ADEQUATE INSURANCE)**

| When: | The value of the property is: | $ | 250,000 |
|---|---|---|---|
| | The Coinsurance percentage for it is: | | 80% |
| | The Limit of Insurance for it is: | $ | 200,000 |
| | The Deductible is: | $ | 250 |
| | The amount of loss is: | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

   **b.** If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**EXAMPLE #3**

| When: | The value of the property is: | | |
|---|---|---|---|
| | Building at Location #1: | $ | 75,000 |
| | Building at Location #2: | $ | 100,000 |
| | Personal Property at Location #2: | $ | 75,000 |
| | | $ | 250,000 |
| | The Coinsurance percentage for it is: | | 90% |
| | The Limit of Insurance for Buildings and Personal Property at Locations #1 and #2 is: | $ | 180,000 |
| | The Deductible is: | $ | 1,000 |
| | The amount of loss is: | | |
| | Building at Location #2: | $ | 30,000 |

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

|  | Personal Property at Location #2: | $ | 20,000 |
|---|---|---|---|
|  |  | $ | 50,000 |

**Step (1):** $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

**Step (2):** $180,000 ÷ $225,000 = .80

**Step (3):** $50,000 x .80 = $40,000

**Step (4):** $40,000 - $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

    **a.** The term mortgageholder includes trustee.

    **b.** We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

    **c.** The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this Coverage Part will then apply directly to the mortgageholder.

    **e.** If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

        **(1)** The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

        **(2)** The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

    At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mort gage debt to us.

    **f.** If we cancel this policy, we will give written notice to the mortgageholder at least:

        **(1)** 10 days before the effective date of cancellation if we cancel for your non-payment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    **g.** If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

The following Optional Coverages apply separately to each item whether or not shown as applicable in the Declarations.

**1. Agreed Value**

    **a.** The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property in the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

    **b.** If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

    **c.** The terms of this Optional Coverage apply only to loss or damage that occurs:

        **(1)** On or after the effective date of this Optional Coverage; and

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(2)** Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

    **a.** The Limit of Insurance for property to which this Optional Coverage applies will automatically increase by the annual percentage shown in the Declarations.

    **b.** The amount of increase will be:

        **(1)** The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

        **(2)** The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 3% is .03), times

        **(3)** The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**EXAMPLE**

| If: | | |
|---|---|---|
| The applicable Limit of Insurance is: | $ | 100,000 |
| The annual percentage increase is: | | 3% |
| The number of days since the beginning of the policy year (or last policy change) is: | | 146 |
| The amount of increase is: | | |
| $100,000 x .03 x 146 ÷ 365 = | $ | 1,200 |

**3. Replacement Cost**

    **a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

    **b.** This Optional Coverage does not apply to:

        **(1)** Personal property of others;

        **(2)** Contents of a residence; or

    Under the terms of this Replacement Cost Optional Coverage, personal property owned indivisibly by all unit-owners, and the property covered under Paragraph **A.1.a.(6)** of this Coverage Form, are not considered to be the personal property of others.

    **c.** You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

    **d.** We will not pay on a replacement cost basis for any loss or damage:

        **(1)** Until the lost or damaged property is actually repaired or replaced; and

        **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

    **e.** We will not pay more for loss or damage on a replacement cost basis than the least of **(1), (2)** or **(3),** subject to **f.** below:

        **(1)** The Limit of Insurance applicable to the lost or damaged property;

        **(2)** The cost to replace the lost or damaged property with other property:

            **(a)** Of comparable material and quality; and

            **(b)** Used for the same purpose; or

        **(3)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

    If a building is rebuilt at a new premises, the cost described in **e.(2)** above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

    **f.** The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**4. Extension Of Replacement Cost To Personal Property Of Others**

    **a.** If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable,

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

then Paragraph **3.b.(1)** of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

**b.** With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

## H. Definitions

**1.** "Equipment Breakdown" as used herein means:

**a.** Physical Loss or damage both originating within:

**(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

**(a)** waste disposal piping;

**(b)** any piping forming part of a fire protective system;

**(c)** furnaces; and

**(d)** any water piping other than:

**(i)** boiler feed water piping between the feed pump and the boiler;

**(ii)** boiler condensate return piping; or

**(iii)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

**(2)** All mechanical, electrical, electronic or fiber optic equipment; and

**b.** Caused by, resulting from, or consisting of:

**(1)** Mechanical breakdown;

**(2)** Electrical or electronic breakdown; or

**(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "Equipment Breakdown" will not mean:

Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

**(1)** Wear and Tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any other quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

**(6)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;

**(7)** Scratching and marring;

**(8)** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freeze, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

**2.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

3.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

COMMERCIAL PROPERTY
CSMH 00 30 01 15

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

(CP 00 10 06 07)

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **F.**, Definitions.

**A. Coverage**

   **1. Business Income**

     Business Income means the:

     **a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

     **b.** Continuing normal operating expenses incurred, including payroll.

     For manufacturing risks, Net Income includes the net sales value of production.

     Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

       **(1)** Business Income Including "Rental Value".

       **(2)** Business Income Other Than "Rental Value".

       **(3)** "Rental Value".

     If option **(1)** above is selected, the term Business Income will include "Rental Value". If option **(3)** above is selected, the term Business Income will mean "Rental Value" only.

     If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

     We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 1,000 feet of the site at which the described premises are located.

     With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

       **(a)** The portion of the building which you rent, lease or occupy; and

       **(b)** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

   **2. Extra Expense**

     **a.** Extra Expense Coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income Coverage applies at that premises.

     **b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

     We will pay any Extra Expense (other than the expense to repair or replace property) to:

       **(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

       **(2)** Minimize the "suspension" of business if you cannot continue "operations".

     We will also pay Extra Expense to repair or replace property.

   **3. Covered Causes Of Loss, Exclusions And Limitations**

     See applicable Causes Of Loss Form as shown in the Declarations.

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

4. **Additional Limitation - Interruption Of Computer Operations**

   a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage - Interruption Of Computer Operations.

   b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage - Interruption Of Computer Operations.

   c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

5. **Additional Coverages**

   a. **Civil Authority**

      In this Additional Coverage - Civil Authority, the described premises are premises to which this Coverage Form applies, as shown in the Declarations.

      When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

      (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and

      (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

      Civil Authority Coverage for Business Income will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will apply for a period of up to sixty consecutive days from the date on which such coverage began.

      Civil Authority Coverage for Extra Expense will begin immediately after the time of the first action of civil authority that prohibits access to the described premises and will end:

      (1) Sixty consecutive days after the date of that action; or

      (2) When your Civil Authority Coverage for Business Income ends;

      whichever is later.

   b. **Alterations And New Buildings**

      We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

      (1) New buildings or structures, whether complete or under construction;

      (2) Alterations or additions to existing buildings or structures; and

      (3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

         (a) Used in the construction, alterations or additions; or

         (b) Incidental to the occupancy of new buildings.

      If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

   c. **Extended Business Income**

      (1) **Business Income Other Than "Rental Value"**

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

**(a)** Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** **"Rental Value"**

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

**(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

**(ii)** 180 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d.** **Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation - Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss - Special Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss - Broad Form applies, coverage under this Additional Coverage - Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage - Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

**(4)** The most we will pay under this Additional Coverage - Interruption of Computer Operations is $1,000,000 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy Fyear in which the interruption began.

**(5)** This Additional Coverage - Interruption in Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in **(4)** above has not been exhausted.

**6. Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**NEWLY ACQUIRED LOCATIONS**

**a.** You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

**b.** The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

**c.** Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

**(1)** This policy expires;

**(2)** 180 days expire after you acquire or begin to construct the property; or

**(3)** You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

The Additional Condition, Coinsurance, does not apply to this Extension.

**7. Utility Services - Time Element**

**a.** We will pay, not to exceed $1,000,000 per "occurrence" no matter how many buildings are involved, for loss of Business Income or Extra Expense at the described premises caused by the interruption of service to the described premises. The interruption must result from direct physical loss or damage by a Covered Cause of Loss to the property described in paragraph **b.** and is located outside of a covered building described in the Declarations.

**b. Utility Services**

**(1) Water Supply Services**, meaning the following types of property supplying water to the described premises:

**(a)** Pumping stations; and

**(b)** Water mains.

**(2) Communication Supply Services**, meaning property supplying communication services, including telephone, radio, microwave or television services, to the described premises, such as:

**(a)** Communication transmission lines, including optic fiber transmission lines;

**(b)** Coaxial cables; and

**(c)** Microwave radio relays except satellites.

**(3) Power Supply Services**, meaning the following types of property supplying electricity, steam or gas to the described premises:

**(a)** Utility generating plants;

**(b)** Switching stations;

**(c)** Substations;

**(d)** Transformers; and



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **(e)** Underground transmission lines. This coverage does not apply to overhead transmission and distribution lines.

**8. In Transit**

    **a.** We will pay for the actual Business Income loss and Extra Expense you incur due to the actual or potential impairment of your "operations" during the "period of restoration."

    **b.** This actual potential impairment of "operations" must be caused by or result from direct physical loss or damage by a Covered Cause of Loss to Business Personal Property while in transit, including registered shipments by mail or salespersons samples.

    **c.** This additional coverage does not apply:

        **(1)** To any property while in transit to or from any exhibition, fair or trade show;

        **(2)** When you are acting as a carrier for hire; or

        **(3)** If you have purchased separate ocean marine insurance, which covers any property in transit.

**9. Business Income from Dependent Properties**

    **a.** We will pay for the actual loss of Business Income or Extra Expense you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." "The suspension" must be caused by direct physical loss of or damage to "dependent property" caused by or resulting from any Covered Cause of Loss. The name, occupancy and location of Leader Location(s), as defined in paragraph **e.(1)(d)** below, must be specifically identified in a separate endorsement for this coverage to apply there.

    **b.** The provisions of the Business Income and Extra Expense Coverage Form respecting direct physical loss or damage at the described premises will apply separately to each premises described in the Declarations.

    **c.** But we will not pay more than $1,000 for each day's "suspension" of "operations" due to loss arising from any one "Leader Location" and no more than 30 consecutive days after the direct physical loss or damage.

    **d.** Under the Loss Determination Loss Condition, the following is added to the Resumption Of Operations Provision:

    We will reduce the amount of your Business Income loss, other than Extra Expense, to the extent you can resume "operation", in whole or in part, by using any other available:

        **(1)** Source of materials; or

        **(2)** Outlet for your products

    **e.** The following is added to the Definitions Section:

        **(1)** "Dependent Property" means property operated by others whom you depend on to:

            **(a)** Deliver materials or services to you, or to others for your account (Contributing Locations). With respect to Contributing Locations, services does not mean water, communication or power supply services;

            **(b)** Accept your products or services (Recipient Locations);

            **(c)** Manufacture products for delivery to your customers under contract of sale (Manufacturing Locations); or

            **(d)** Attract customers to your business (Leader Locations).

        **(2)** "Period of Restoration", with respect to "dependent property", means the period of time that:

            **(a)** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the premises of the "dependent property"; and

            **(b)** Ends on the date when the property at the premises of the "dependent property" should be repaired, rebuilt or replaced with reasonable speed and similar quality, but not for more than 30 consecutive days after the direct physical loss or damage.

        Period of restoration" does not include any increased period required due to the enforcement of any increase period required due to the enforcement of any ordinance or law that:

            **(a)** Regulates the construction, use or repair, or requires the tearing down of any property; or

            **(b)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

        The expiration date of this policy will not cut short the "period of restoration".

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**10. Auditors Fees**

   **a.** We will pay for reasonable fees you are obligated to pay your accountants or auditors following a loss covered by this Coverage Part when we require your accountants or auditors to certify your expenses, profit or loss, not to exceed $10,000.

   **b.** This additional coverage applies only at the premises for which you have incurred a loss covered by this contract.

   **c.** We will not pay for any expenses billed by and payable to independent or public adjusters or for expenses to prepare claims not covered by this Coverage Part.

**11. Pollutant Cleanup and Removal**

   **a.** We will pay for the actual Business Income loss you incur due to the actual impairment of your "operations" during the "period of restoration," not to exceed $10,000.

   **b.** The actual impairment of "operations" must be caused by or result from the enforcement of any ordinance or law that requires you to clean up or remove pollutants from land or water as a result of direct physical loss or damage by a Covered Cause of Loss to Building or your Business Personal Property at the premises shown in the Declarations.

**12. Expediting Expense**

   **a.** We will pay for reasonable and necessary extra costs of temporary repair and extra costs of expediting permanent repair or replacement, whichever is less, for loss of or damage to Covered Property. The Expediting Expenses must result from direct physical loss or damage by a Covered Cause of Loss.

   **b.** Expediting Expenses include overtime wages and extra cost of express or other rapid means of Transportation.

   **c.** Expediting Expenses do not include:

      **(1)** Expenses recoverable elsewhere in this Coverage Form;

      **(2)** Temporary rental; or

      **(3)** "Objects" as defined in a Boiler & Machinery or Systems Breakdown policy issued to the Insured.

**13. Lost Lease Coverage – Lessors Interest**

   **a.** We will pay for loss you sustain due to cancellation of lease contracts by your tenants caused by or resulting from direct physical loss or damage to Covered Property by a Covered Cause of Loss.

   **b.** Lost Lease Coverage means the difference between rent you were collecting at the described premises prior to the loss or damage and "Rental Value" of the premises after loss or damage has been repaired or rebuilt.

   **c.** Lost Lease Coverage does not include any loss caused by:

      **(1)** Your canceling the lease;

      **(2)** Suspension, lapse or cancellation of any license;

      **(3)** Any other consequential loss; or

      **(4)** Refunds or rebates of:

         **(a)** Prepaid rent;

         **(b)** Security or other deposits made by tenants;

         **(c)** Insurance, taxes or other payments made on your behalf by tenants.

   **d.** The most we will pay for this Additional Coverage is the least of:

      **(1)** Your Lost Lease Coverage for the 12 months immediately following the "period of restoration";

      **(2)** Your Lost Lease Coverage for the period beginning with the end of the "period of restoration" and ending with the normal expiration period of each cancelled lease; or

      **(3)** $250,000.

      The number of tenants who cancel leases will not increase this Limit of Insurance nor will it increase the Limit of Insurance otherwise afforded by this Coverage Part. The expiration date of this Coverage Part will not cut short the duration of coverage provided by this Additional Coverage.

**14. Property at Any Other Location**

   **a.** You may extend your Business Income Coverage to apply to property at any location other than described premises or newly acquired locations.

   **b.** The most we will pay for loss under this Extension is $25,000 at each location.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**B. Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

Payments under the following coverages will not increase the applicable Limit of Insurance:

**1.** Alterations And New Buildings;

**2.** Civil Authority;

**3.** Extra Expense; or

**4.** Extended Business Income.

The amounts of insurance stated in the Interruption Of Computer Operations Additional Coverage and the Newly Acquired Locations Coverage Extension apply in accordance with the terms of those coverages and are separate from the Limit(s) of Insurance shown in the Declarations for any other coverage.

**C. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.

The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Loss**

**a.** You must see that the following are done in the event of loss:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(6)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(7)** Cooperate with us in the investigation or settlement of the claim.

**(8)** If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

3. **Loss Determination**

   a. The amount of Business Income loss will be determined based on:

      (1) The Net Income of the business before the direct physical loss or damage occurred;

      (2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

      (3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

      (4) Other relevant sources of information, including:

         (a) Your financial records and accounting procedures;

         (b) Bills, invoices and other vouchers; and

         (c) Deeds, liens or contracts.

   b. The amount of Extra Expense will be determined based on:

      (1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

         (a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

         (b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

      (2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

   c. **Resumption Of Operations**

      We will reduce the amount of your:

      (1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

      (2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

   d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

4. **Loss Payment**

   We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

   a. We have reached agreement with you on the amount of loss; or

   b. An appraisal award has been made.

D. **Additional Condition**

   **COINSURANCE**

   If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

   We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

   1. The Coinsurance percentage shown for Business Income in the Declarations; times

   2. The sum of:

      a. The Net Income (Net Profit or Loss before income taxes), and

      b. Operating expenses, including payroll expenses,

      that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

   Instead, we will determine the most we will pay using the following steps:

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

Step **(1):** Multiply the Net Income and operating expense for the 12 months following the inception, or last previous anniversary date, of this policy by the Coinsurance percentage;

Step **(2):** Divide the Limit of Insurance for the described premises by the figure determined in Step **(1)**; and

Step **(3):** Multiply the total amount of loss by the figure determined in Step **(2)**.

We will pay the amount determined in Step **(3)** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

**(1)** Prepaid freight - outgoing;

**(2)** Returns and allowances;

**(3)** Discounts;

**(4)** Bad debts;

**(5)** Collection expenses;

**(6)** Cost of raw stock and factory supplies consumed (including transportation charges);

**(7)** Cost of merchandise sold (including transportation charges);

**(8)** Cost of other supplies consumed (including transportation charges);

**(9)** Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

**(10)** Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

**(11)** All ordinary payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

**(12)** Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion - not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

## EXAMPLE #1 (UNDERINSURANCE)

| When: | | |
|---|---|---|
| The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ | 400,000 |
| The Coinsurance percentage is: | | 50% |
| The Limit of Insurance is: | $ | 150,000 |
| The amount of loss is: | $ | 80,000 |

Step **(1):** $400,000 x 50% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step **(2):** $150,000 ÷ $200,000 = .75

Step **(3):** $80,000 x .75 = $60,000

We will pay no more than $60,000. The remaining $20,000 is not covered.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**EXAMPLE #2 (ADEQUATE INSURANCE)**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been: | $ 400,000 |
|---|---|---|
| | The Coinsurance percentage is: | 50% |
| | The Limit of Insurance is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense Coverage.

E. **Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

1. **Maximum Period Of Indemnity**

    a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    b. The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

    (1) The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

    (2) The Limit of Insurance shown in the Declarations.

2. **Monthly Limit Of Indemnity**

    a. The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

    b. The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

    (1) The Limit of Insurance, multiplied by

    (2) The fraction shown in the Declarations for this Optional Coverage.

**EXAMPLE**

| When: | The Limit of Insurance is: | $ 120,000 |
|---|---|---|
| | The fraction shown in the Declarations for this Optional Coverage is: | 1/4 |
| | The most we will pay for loss in each period of 30 consecutive days is: | $ 30,000 |
| | ($120,000 x 1/4 = $30,000) | |
| | If, in this example, the actual amount of loss is: | |
| | Days 1-30: | $ 40,000 |
| | Days 31-60: | $ 20,000 |
| | Days 61-90: | $ 30,000 |
| | | $ 90,000 |
| | We will pay: | |
| | Days 1-30: | $ 30,000 |

**CSMH 00 30 01 15**   Includes copyrighted material of Insurance Services Office, Inc. with its permission   **PAGE BI-10**

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

| Days 31-60: | $ 20,000 |
| Days 61-90: | $ 30,000 |
| | $ 80,000 |

The remaining $10,000 is not covered.

3. **Business Income Agreed Value**

    **a.** To activate this Optional Coverage:

        **(1)** A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

            **(a)** During the 12 months prior to the date of the Work Sheet; and

            **(b)** Estimated for the 12 months immediately following the inception of this Optional Coverage.

        **(2)** The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

            **(a)** The Coinsurance percentage shown in the Declarations; multiplied by

            **(b)** The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

    **b.** The Additional Condition, Coinsurance, is suspended until:

        **(1)** 12 months after the effective date of this Optional Coverage; or

        **(2)** The expiration date of this policy;

    whichever occurs first.

    **c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

        **(1)** Within 12 months of the effective date of this Optional Coverage; or

        **(2)** When you request a change in your Business Income Limit of Insurance.

    **d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

        **(1)** The Business Income Limit of Insurance; divided by

        **(2)** The Agreed Value.

**EXAMPLE**

| When: | The Limit of Insurance is: | $ 100,000 |
| | The Agreed Value is: | $ 200,000 |
| | The amount of loss is: | $ 80,000 |

Step **(1)**: $100,000 ÷ $200,000 = .50

Step **(2)**: .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

    4. **Extended Period Of Indemnity**

        Under Paragraph **A.5.c., Extended Business Income**, the number 30 in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

    1. "Finished stock" means stock you have manufactured.

    "Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

    "Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

2. "Operations" means:

   **a.**  Your business activities occurring at the described premises; and

   **b.**  The tenantability of the described premises, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

3. "Period of restoration" means the period of time that:

   **a.**  Begins:

      **(1)**  72 hours after the time of direct physical loss or damage for Business Income Coverage; or

      **(2)**  Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

   **b.**  Ends the earlier of:

      **(1)**  The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

      **(2)**  The date when business is resumed at a new permanent location.

   "Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

      **(1)**  Regulates the construction, use or repair, or requires the tearing down, of any property; or

      **(2)**  Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

   The expiration date of this policy will not cut short the "period of restoration".

4. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. "Rental Value" means Business Income that consists of:

   **a.**  Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

   **b.**  Continuing normal operating expenses incurred in connection with that premises, including:

      **(1)**  Payroll; and

      **(2)**  The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

6. "Suspension" means:

   **a.**  The slowdown or cessation of your business activities; or

   **b.**  That a part or all of the described premises is rendered untenantable, if coverage for Business Income Including "Rental Value" or "Rental Value" applies.

7. "Money" means:

   **a.**  Currency, coins and bank notes in current use and having a face value; and

   **b.**  Travelers checks, register checks and money orders held for sale to the public.

8. "Occurrence" means all loss, damage or sequence of loss or damage, casualties or disasters arising from a single happening or event.

9. "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

   a.  Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

   **b.**  Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you; but does not include "money,"

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
CSMH 10 30 01 15

# CAUSES OF LOSS – SPECIAL FORM

(CP 10 30 06 07)

Words and phrases that appear in quotation marks have special meaning. Refer to Section **G.**, Definitions.

**A. Covered Causes Of Loss**

Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.**, Exclusions; or

**2.** Limited in Section **C.**, Limitations;

that follow.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(a)** An ordinance or law that is enforced even if the property has not been damaged; or

**(b)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in **b.(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic Action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic Action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

This exclusion applies regardless of whether any of the above, in Paragraphs **b.(1)** through **(5)**, are naturally occurring or due to man-made or other artificial causes.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

CSMH 10 30 01 15          Includes copyrighted material of Insurance Services Office, Inc. with its permission          COL-1

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Utility Services**

The failure of power, communication, water or other utility service supplied to the described premises, however caused, if the failure:

**(1)** Originates away from the described premises; or

**(2)** Originates at the described premises, but only if such failure involves equipment used to supply the utility service to the described premises from a source away from the described premises.

Failure of any utility service includes lack of sufficient capacity and reduction in supply.

Loss or damage caused by a surge of power is also excluded, if the surge would not have occurred but for an event causing a failure of power.

But if the failure or surge of power, or the failure of communication, water or other utility service, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

Communication services include but are not limited to service relating to Internet access or access to any electronic, cellular or satellite network.

**f. War And Military Action**

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

**(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not (including storm surge);

**(2)** Mudslide or mudflow;

**(3)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1)**, or material carried or otherwise moved by mudslide or mudflow.

This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(3)**, is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water.

But if any of the above, in Paragraphs **(1)** through **(3)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage (if sprinkler leakage is a Covered Cause of Loss).

**h. "Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

**1.** When "fungus", wet or dry rot or bacteria results from fire or lightning; or

**2.** To the extent that coverage is provided in the Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

---

**CSMH 10 30 01 15**      Includes copyrighted material of Insurance Services Office, Inc. with its permission      **COL-2**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical, magnetic or electromagnetic energy that damages, disturbs, disrupts or otherwise interferes with any:

(1) Electrical or electronic wire, device, appliance, system or network; or

(2) Device, appliance, system or network utilizing cellular or satellite technology.

For the purpose of this exclusion, electrical, magnetic or electromagnetic energy includes but is not limited to:

(a) Electrical current, including arcing;

(b) Electrical charge produced or conducted by a magnetic or electromagnetic field;

(c) Pulse of electromagnetic energy; or

(d) Electromagnetic waves or microwaves.

But if fire results, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Settling, cracking, shrinking or expansion;

(4) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

(5) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(6) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in 2.c.(1) through (6) results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

d. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

f. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

g. Collapse, including any of the following conditions of property or any part of the property:

(1) An abrupt falling down or caving in;

(2) Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

(3) Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to g.(1) or (2) above.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion, **g.**, does not apply:

    **(a)** To the extent that coverage is provided under the Additional Coverage - Collapse; or

    **(b)** To collapse caused by one or more of the following:

        **(i)** The "specified causes of loss";

        **(ii)** Breakage of building glass;

        **(iii)** Weight of rain that collects on a roof; or

        **(iv)** Weight of people or personal property.

  **h.** Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **h.**, does not apply to damage to glass caused by chemicals applied to the glass.

  **i.** Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

**3.** We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

  **a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

  **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

  **c.** Faulty, inadequate or defective:

    **(1)** Planning, zoning, development, surveying, siting;

    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    **(3)** Materials used in repair, construction, renovation or remodeling; or

    **(4)** Maintenance;

  of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

  **a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

  **(1)** Any loss caused by or resulting from:

    **(a)** Damage or destruction of "finished stock"; or

    **(b)** The time required to reproduce "finished stock".

This exclusion does not apply to Extra Expense.

  **(2)** Any loss caused by or resulting from direct physical loss or damage to the lead-in wiring, masts or towers of outdoor radio or television antennas (including satellite dishes).

  **(3)** Any increase of loss caused by or resulting from the suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

  **(4)** Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

  **(5)** Any other consequential loss.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **b. Leasehold Interest Coverage Form**

      **(1)** Paragraph **B.1.a.,** Ordinance Or Law, does not apply to insurance under this Coverage Form.

      **(2)** We will not pay for any loss caused by:

        **(a)** Your cancelling the lease;

        **(b)** The suspension, lapse or cancellation of any license; or

        **(c)** Any other consequential loss.

    **c. Legal Liability Coverage Form**

      **(1)** The following exclusions do not apply to insurance under this Coverage Form:

        **(a)** Paragraph **B.1.a.,** Ordinance Or Law;

        **(b)** Paragraph **B.1.c.,** Governmental Action;

        **(c)** Paragraph **B.1.d.,** Nuclear Hazard;

        **(d)** Paragraph **B.1.e.,** Utility Services; and

        **(e)** Paragraph **B.1.f.,** War And Military Action.

      **(2)** The following additional exclusions apply to insurance under this Coverage Form:

        **(a) Contractual Liability**

          We will not defend any claim or "suit", or pay damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

          **(i)** Your assumption of liability was executed prior to the accident; and

          **(ii)** The building is Covered Property under this Coverage Form.

        **(b) Nuclear Hazard**

          We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

**5. Additional Exclusion**

The following provisions apply only to the specified property.

**LOSS OR DAMAGE TO PRODUCTS**

We will not pay for loss or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance or quality of the product. But if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**C. Limitations**

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

  **1.** We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

    **a.** Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

    **b.** Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

      **(1)** The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

      **(2)** The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **d.** Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

**2.** We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

    **a.** Animals, and then only if they are killed or their destruction is made necessary.

    **b.** Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

        **(1)** Glass; or

        **(2)** Containers of property held for sale.

**3.** The special limit shown for each category, **3.a.** through **3.d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

    **a.** $2,500 for furs, fur garments and garments trimmed with fur.

    **b.** $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

    **c.** $2,500 for patterns, dies, molds and forms.

    **d.** $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

This limitation, **C.3.,** does not apply to Business Income Coverage or to Extra Expense Coverage.

**4.** We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire-extinguishing equipment if the damage:

    **a.** Results in discharge of any substance from an automatic fire protection system; or

    **b.** Is directly caused by freezing.

However, this limitation does not apply to Business Income Coverage or to Extra Expense Coverage.

**D. Additional Coverage - Collapse**

The coverage provided under this Additional Coverage - Collapse applies only to an abrupt collapse as described and limited in **D.1.** through **D.7.**

**1.** For the purpose of this Additional Coverage - Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**2.** We will pay for direct physical loss or damage to Covered Property, caused by abrupt collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if such collapse is caused by one or more of the following:

    **a.** Building decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

    **b.** Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

    **c.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of the construction, remodeling or renovation.

    **d.** Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

        **(1)** A cause of loss listed in **2.a.** or **2.b.**;

        **(2)** One or more of the "specified causes of loss";

        **(3)** Breakage of building glass;

        **(4)** Weight of people or personal property; or

        **(5)** Weight of rain that collects on a roof.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

3.  This **Additional Coverage - Collapse** does **not** apply to:

    a.  A building or any part of a building that is in danger of falling down or caving in;

    b.  A part of a building that is standing, even if it has separated from another part of the building; or

    c.  A building that is standing or any part of a building that is standing, even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

4.  With respect to the following property:

    a.  Outdoor radio or television antennas (including satellite dishes);

    b.  Awnings, gutters and downspouts;

    c.  Yard fixtures;

    d.  Outdoor swimming pools;

    e.  Fences;

    f.  Piers, wharves and docks;

    g.  Beach or diving platforms or appurtenances;

    h.  Retaining walls; and

    i.  Walks, roadways and other paved surfaces;

    if an abrupt collapse is caused by a cause of loss listed in **2.a.** through **2.d.**, we will pay for loss or damage to that property only if:

    **(1)** Such loss or damage is a direct result of the abrupt collapse of a building insured under this Coverage Form; and

    **(2)** The property is Covered Property under this Coverage Form.

5.  If personal property abruptly falls down or caves in and such collapse is not the result of abrupt collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

    a.  The collapse of personal property was caused by a cause of loss listed in **2.a.** through **2.d.**;

    b.  The personal property which collapses is inside a building; and

    c.  The property which collapses is not of a kind listed in **4.**, regardless of whether that kind of property is considered to be personal property or real property.

    The coverage stated in this Paragraph **5.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

6.  This Additional Coverage - Collapse does not apply to personal property that has not abruptly fallen down or caved in, even if the personal property shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

7.  This Additional Coverage - Collapse will not increase the Limits of Insurance provided in this Coverage Part.

8.  The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in **D.1.** through **D.7.**

E.  **Additional Coverage - Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1.  The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

    a.  A "specified cause of loss" other than fire or lightning; or

    b.  Flood, if the Flood Coverage Endorsement applies to the affected premises.

2.  We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

    a.  Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

    b.  The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **c.** The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

**3.** The coverage described under **E.2.** of this Limited Coverage is limited to $25,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $25,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

**4.** The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

**5.** The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes Of Loss Form or under the Additional Coverage - Collapse.

**6.** The following, **6.a.** or **6.b.**, applies only if Business Income and/or Extra Expense Coverage applies to the described premises and only if "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense Coverage Form.

    **a.** If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

    **b.** If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F.** **Additional Coverage Extensions**

  **1.** **Property In Transit**

    **a.** This Extension applies only to your Business Personal Property to which this form applies.

    **b.** We will cover your Business Personal Property and property for which you are liable while it is in transit. Such property is covered while it is:

      **(1)** In, on, connected to or being towed by a vehicle you own, operate or lease; or

      **(2)** In transit in the custody of carriers for hire.

    **c.** For purposes of this Extension, Paragraph **2.** Property Not Covered of section **A.1.b.** Your Business Personal Property of the Building and Personal Property Coverage Form is amended as follows:

      **(1)** Paragraph **i.** is deleted in its entirety;

      **(2)** The following items are added:

        **(a)** Shipments covered by Ocean Marine Insurance; and

        **(b)** Exports.

    **d.** The following coverages have their own Transit sub-limits in this form and, therefore, are not subject to this Extension.

      **(1)** Accounts Receivable

      **(2)** Fine Arts

      **(3)** Valuable Papers



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **e.** The most we will pay under this Extension of coverage for any one "occurrence" is $500,000. This limit also applies to Business Income and Extra Expense coverage, but not to exceed a combined sum of $500,000 in a single "occurrence".

**2. Water Damage, Other Liquids, Powder Or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

**3. Glass**

    **a.** We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

    **b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.**, does not increase the Limit of Insurance.

**G. Definitions**

**1.** "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

**2.** "Specified causes of loss" means the following: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire-extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

    **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

        **(1)** The cost of filling sinkholes; or

        **(2)** Sinking or collapse of land into man-made underground cavities.

    **b.** Falling objects does not include loss or damage to:

        **(1)** Personal property in the open; or

        **(2)** The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

    **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.



# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

## A. CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A claim under this Coverage Part.

## B. CONTROL OF PROPERTY

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

## C. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## D. LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

## E. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

## F. NO BENEFIT TO BAILEE

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

## G. OTHER INSURANCE

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## H. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part:

1. We cover loss or damage commencing:
    a. During the policy period shown in the Declarations; and
    b. Within the coverage territory.
2. The coverage territory is:
    a. The United States of America (including its territories and possessions);
    b. Puerto Rico; and
    c. Canada.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**I. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    **a.** Someone insured by this insurance;

    **b.** A business firm:

        **(1)** Owned or controlled by you; or

        **(2)** That owns or controls you; or

    **c.** Your tenant.

This will not restrict your insurance.



**COMMERCIAL PROPERTY**
**CP 01 40 07 06**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in Paragraph **B.** applies to all coverage under all forms and endorsements that comprise this Coverage Part or Policy, including but not limited to forms or endorsements that cover property damage to buildings or personal property and forms or endorsements that cover business income, extra expense or action of civil authority.

**B.** We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from "fungus", wet rot or dry rot. Such loss or damage is addressed in a separate exclusion in this Coverage Part or Policy.

**C.** With respect to any loss or damage subject to the exclusion in Paragraph **B.**, such exclusion supersedes any exclusion relating to "pollutants".

**D.** The following provisions in this Coverage Part or Policy are hereby amended to remove reference to bacteria:

**1.** Exclusion of "Fungus", Wet Rot, Dry Rot And Bacteria; and

**2.** Additional Coverage – Limited Coverage for "Fungus", Wet Rot, Dry Rot And Bacteria, including any endorsement increasing the scope or amount of coverage.

**E.** The terms of the exclusion in Paragraph **B.**, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded under this Coverage Part or Policy.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484



COMMERCIAL PROPERTY
CP 01 49 06 07

# ILLINOIS CHANGES – ARTIFICIALLY GENERATED ELECTRICAL CURRENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART
STANDARD PROPERTY POLICY

**A.** The exclusion set forth in:

**1.** Paragraph **B.2.a.** of the Standard Property Policy, the Causes Of Loss – Basic Form, the Causes Of Loss – Broad Form and the Causes Of Loss – Special Form; and

**2.** Paragraph **B.2.b.** of the Mortgageholders Errors And Omissions Coverage Form

is replaced by the following exclusion:

We will not pay for loss or damage caused by or resulting from artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

COMMERCIAL PROPERTY
CP 12 18 06 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE PROVISIONS

This endorsement modifies insurance provided under the following:

    BUILDING AND PERSONAL PROPERTY COVERAGE FORM
    BUILDERS' RISK COVERAGE FORM
    CONDOMINIUM ASSOCIATION COVERAGE FORM
    CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
    STANDARD PROPERTY POLICY

## SCHEDULE

| Premises Number:<br>ALL | | Building Number:<br>ALL | | Applicable Clause<br>(Enter C., D., E., or F.):  D | |
|---|---|---|---|---|---|
| **Description Of Property:**  Building<br>**Loss Payee Name:**      Barrington Bank & Trust N.A<br>**Loss Payee Address:**  9801 W Higgins Rd., 4th Floor<br>                          Rosemont IL 60018 | | | | | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | | |

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

            © ISO Properties, Inc., 2007             

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**A.** When this endorsement is attached to the Standard Property Policy **CP 00 99,** the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** Nothing in this endorsement increases the applicable Limit of Insurance. We will not pay any Loss Payee more than their financial interest in the Covered Property, and we will not pay more than the applicable Limit of Insurance on the Covered Property.

The following is added to the **Loss Payment** Loss Condition, as indicated in the Declarations or in the Schedule:

**C. Loss Payable Clause**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

**1.** Adjust losses with you; and

**2.** Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

**D. Lender's Loss Payable Clause**

**1.** The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgageholder or trustee, whose interest in Covered Property is established by such written instruments as:

**a.** Warehouse receipts;

**b.** A contract for deed;

**c.** Bills of lading;

**d.** Financing statements; or

**e.** Mortgages, deeds of trust, or security agreements.

**2.** For Covered Property in which both you and a Loss Payee have an insurable interest:

**a.** We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.

**b.** The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.

**c.** If we deny your claim because of your acts or because you have failed to comply with the terms of the Coverage Part, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

**(1)** Pays any premium due under this Coverage Part at our request if you have failed to do so;

**(2)** Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

**(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Coverage Part will then apply directly to the Loss Payee.

**d.** If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

**(1)** The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and

**(2)** The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

**3.** If we cancel this policy, we will give written notice to the Loss Payee at least:

**a.** 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**4.** If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

   © ISO Properties, Inc., 2007   CP 12 18 06 07

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**E. Contract Of Sale Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is a person or organization you have entered a contract with for the sale of Covered Property.

2. For Covered Property in which both you and the Loss Payee have an insurable interest we will:

   a. Adjust losses with you; and

   b. Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

3. The following is added to the **Other Insurance** Condition:

   For Covered Property that is the subject of a contract of sale, the word "you" includes the Loss Payee.

**F. Building Owner Loss Payable Clause**

1. The Loss Payee shown in the Schedule or in the Declarations is the owner of the described building, in which you are a tenant.

2. We will adjust losses to the described building with the Loss Payee. Any loss payment made to the Loss Payee will satisfy your claims against us for the owner's property.

3. We will adjust losses to tenants' improvements and betterments with you, unless the lease provides otherwise.



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL PROPERTY**
**CP 15 31 04 02**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ORDINANCE OR LAW – INCREASED PERIOD OF RESTORATION

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM

**A.** If a Covered Cause of Loss occurs to property at the premises described in the Declarations, coverage is extended to include the amount of actual and necessary loss you sustain during the increased period of "suspension" of "operations" caused by or resulting from the enforcement of any ordinance or law that:

**1.** Regulates the construction or repair of any property;

**2.** Requires the tearing down of parts of any property not damaged by a Covered Cause of Loss; and

**3.** Is in force at the time of loss.

However, coverage is not extended under this endorsement to include loss caused by or resulting from the enforcement of any ordinance or law which requires:

**1.** The demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**2.** Any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**B.** The **Period of Restoration** definition is replaced by the following:

**3.** "Period of Restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" includes any increased period required to repair or reconstruct the property to comply with the minimum standards of any ordinance or law, in force at the time of loss, that regulates the construction or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration".

**C.** The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

   © ISO Properties, Inc., 2001     □



COMMERCIAL PROPERTY
SP 110 01 17

**POLICY NUMBER:** 21-21095212-40          **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022

(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

# MULTIPLE DEDUCTIBLE FORM

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - SPECIAL FORM
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM

***NOTE:*** *IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE(S) SHOWN BELOW WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

### DEDUCTIBLES

| LOCATION NUMBER | WATER DAMAGE | | ALL OTHER PERILS (except where no deductible applies) |
|---|---|---|---|
| | INTERIOR WATER DAMAGE (No Exterior Damage) *** | ALL OTHER WATER DAMAGE | |
| 1 | $25,000 | $25,000 | $10,000 |

\*\*\*  Loss to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, when the building or structure has NOT first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



**COMMERCIAL PROPERTY**
**SP 157HIL 01 18**

**POLICY NUMBER:** 21-21095212-40          **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing
address shown in the Declarations.)

### THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT - ILLINOIS

As respects this **Equipment Breakdown Enhancement Endorsement**, this endorsement changes coverage provided by the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS - SPECIAL FORM

Read the entire endorsement carefully to determine rights, duties and what is and is not covered.

### SCHEDULE

| LOCATION NO. | BUILDING NO. | ADDRESS |
|---|---|---|
| 1 | 1 | 211 E Ohio St<br>Chicago, IL 60611-3262 |

The following changes apply to the locations included in the **SCHEDULE** above:

**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

**A.    Coverage**

**4.    Additional Coverages**

With respect to this endorsement only, the following **Additional Coverages** are added as a part of and not in addition to the limit per loss:

**u.  Pollutant Clean Up and Removal**

We will pay for the Pollutant Clean Up and Removal for loss resulting from an "equipment breakdown". The most we will pay for the Pollutant Clean Up and Removal is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached.  In that case, whichever limit is greater will apply.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

**v.  Expediting Expenses**

We will pay for the expediting expense loss resulting from an "equipment breakdown" with respect to your damaged Covered Property. We will pay the "reasonable extra cost" to:

**(1)** Make temporary repairs;

**SP 157HIL 01 18**                                                                                   **Page 1 of 6**



**(2)** Expedite permanent repairs; and

**(3)** Expedite permanent replacement

"Reasonable extra cost" shall mean the extra cost of temporary repair and of expediting the repair of such damaged equipment of the insured, including overtime and the extra cost of express or other rapid means of transportation.

**w. Refrigerant Contamination**

We will pay the loss from contamination by refrigerant used in refrigerating, cooling or humidity control equipment at the described premises as a result of an "equipment breakdown".

The most we will pay for Refrigerant Contamination is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached. In that case, whichever limit is greater will apply.

**x. Spoilage**

We will pay for loss of "perishable goods" due to spoilage resulting from lack of power, light, heat, steam or refrigeration caused by an "equipment breakdown" to Covered Property.

However, we will not pay for any loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

The most we will pay for loss for Spoilage is $250,000 unless another limit is provided by an endorsement to the property form for which this endorsement is attached. In that case, whichever limit is greater will apply.

**y. Temperature Fluctuation**

We will pay for loss of "perishable goods" only caused by or resulting from any condition or event to Covered Property that can be resolved by calibrating, resetting, tightening, adjusting or cleaning.

However, we will not pay for loss of "perishable goods" as a result of resetting the power supply to the Covered Property containing the "perishable goods".

The most we will pay for this Temperature Fluctuation is $5,000, including any insurance provided for Business Income or Extra Expense.

**z. CFC Refrigerants**

We will pay for the additional cost to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances caused by an "equipment breakdown".

Additional costs mean those in excess of what would have been required to repair or replace covered property, had no CFC refrigerant been involved. We also pay for additional loss as described under the Spoilage or Loss of Income Coverages provided by this endorsement, caused by the presence of a refrigerant containing CFC substances.

We pay no more than the least of the following:

**(1)** The cost to repair the damaged property and replace any lost CFC refrigerant;

**(2)** The cost to repair the damaged property, retrofit the system to accept a non-CFC refrigerant, and charge the system with a non-CFC refrigerant; or

**(3)** The cost to replace the system with one using a non-CFC refrigerant.

**aa. Computer Equipment**

We will pay for loss or damage to your "computer equipment" caused by an "equipment breakdown".

**bb. Unauthorized Instruction**

We will pay for loss or damage to your "computer equipment" caused by an "unauthorized instruction" which results in an "equipment breakdown".

"Unauthorized instruction" means a virus, harmful code or similar instruction introduced into or enacted on a computer system or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation.

**cc. Service Interruption**



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

Any insurance provided for Business Income, Extra Expense, Spoilage or Electronic Data is extended to apply to your loss, damage or expense caused by an "equipment breakdown" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks, data transmission or "cloud computing". The equipment must meet the definition of "equipment breakdown" except that it is not Covered Property.

**dd. Risk Improvement**

If Covered Property suffers direct physical loss or damage due to an "equipment breakdown", we will pay for the insured to improve the "power quality" of the electrical system or equipment at the loss location where the "equipment breakdown" occurred. "Power quality" means the conditions that allow electrical systems or equipment to operate as intended by limiting voltage fluctuations and other power influences that would adversely affect the operational performance and/or reduce the reliability, or the life-span of the electrical system.

We will pay the reasonable extra cost to improve "power quality" for the following electrical systems and/or equipment improvements:

**(1)** Installation of surge protection devices (SPDs) which are installed at the loss location's line disconnect, load disconnect, or on specific pieces of equipment and that are certified by Underwriter Laboratories (UL) or has an equivalent certification.

However, SPDs do not include any SPDs which are cord-connected surge strips, direct plug-in SPDs or receptacle SPDs;

**(2)** An upgrade and/or replacement of electrical panels, switchgear and/or circuit breakers; or

**(3)** Electrical wiring and wiring improvements which include installation of flexible conduit, junction boxes and/or ground wiring.

We will not pay more than 10%, to a maximum limit of $10,000, of the loss amount paid. An invoice for implementation of this Additional Coverage must be sent to us within 180 days after the payment of the loss is received.

## F. Additional Conditions

With respect to this endorsement only, the following **Additional Conditions** are added:

**3. Suspension**

Whenever Covered Property is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss to that Covered Property for the perils covered by this endorsement. Coverage can be suspended and possibly reinstated by delivering or mailing a written notice of suspension / coverage reinstatement to:

**(a)** Your last known address; or

**(b)** The address where the property is located.

If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**4. Jurisdictional Inspections**

If any Covered Property under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

**5. Environmental, Safety and Efficiency Improvements**

If Covered Property requires replacement due to an "equipment breakdown", we will pay your additional cost to replace with equipment that is better for the environment, safer, or more energy efficient than the equipment being replaced.

However, we will not pay more than 150% of what the cost would have been to repair or replace with like kind and quality. This Condition does not apply to any property to which Actual Cash Value applies.

**6. Green Environmental and Efficiency Improvements**

If Covered Property requires repair or replacement due to an "equipment breakdown", we will pay;

**(a)** The lesser of the reasonable and necessary additional cost incurred by the insured to repair or replace physically damaged Covered Property with equipment of like kind and quality which qualifies as "green". Like kind and quality includes similar size and capacity.

**(b)** The additional reasonable and necessary fees incurred by the insured for an accredited professional certified by a "green authority" to participate in the repair or replacement of physically damaged Covered Property as "green".

**(c)** The additional reasonable and necessary cost incurred by the insured for certification or recertification of the repaired or replaced Covered Property as "green".

**(d)** The additional reasonable and necessary cost incurred by the insured for "green" in the removal, disposal or recycling of damaged Covered Property.

**(e)** The business interruption (if covered within the Policy to which this Equipment Breakdown Enhancement Endorsement is attached) loss during the additional time required for repair or replacement of Covered Property, consistent with "green", in the coverages above.

We will not pay more than 150%, to a maximum limit of $100,000, of what the cost would have been to repair or replace with equipment of like kind and quality inclusive of fees, costs, and any business interruption loss incurred as stated above.

**Green Environmental and Efficiency Improvements** does not cover any of the following:

**(a)** Covered Property does not include stock, raw materials, finished goods, "production machinery", merchandise, electronic data processing equipment not used in the functional support of the real property, process water, molds and dies, property in the open, property of others for which the insured is legally liable, or personal property of others.

**(b)** Any loss adjusted on any valuation basis other than a repair or replacement basis as per the Valuation section of this policy.

**(c)** Any loss covered under any other section of this policy.

**(d)** Any cost incurred due to any law or ordinance with which the insured was legally obligated to comply prior to the time of the "equipment breakdown".

These **Additional Conditions** will be a part of, and not an addition to, the limit of liability per loss or any other sub-limits of liability of this Policy.

## H. Definitions

With respect to this endorsement only, the following **Definitions** are added:

**5.** "Equipment breakdown" as used herein means:

**a.** Physical loss or damage both originating within:

  **(1)** Boilers, fired or unfired pressure vessels, vacuum vessels, and pressure piping, all normally subject to vacuum or internal pressure other than static pressure of contents, excluding:

   **(a)** waste disposal piping;

   **(b)** any piping forming part of a fire protective system;

   **(c)** furnaces; and

   **(d)** any water piping other than:

    **(i)** boiler feed water piping between the feed pump and the boiler;

    **(ii)** boiler condensate return piping; or

    **(iii)** water piping forming part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes.

  **(2)** All mechanical, electrical, fiber optic equipment or "electronic equipment"; and

**b.** Caused by, resulting from, or consisting of:

  **(1)** Mechanical breakdown;

  **(2)** Electrical or electronic breakdown and "electronic equipment deficiency"; or

  **(3)** Rupture, bursting, bulging, implosion, or steam explosion.

However, "equipment breakdown" will not mean:

**a.** Physical loss or damage caused by or resulting from any of the following; however if loss or damage not otherwise excluded results, then we will pay for such resulting damage:

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **(1)** Wear and Tear;

    **(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect, mold or any other quality in property that causes it to damage or destroy itself;

    **(3)** Smog;

    **(4)** Settling, cracking, shrinking or expansion;

    **(5)** Nesting or infestation, or discharge or release of waste products or secretions, by birds, rodents or other animals;

    **(6)** Any accident, loss, damage, cost, claim, or expense, whether preventative, remedial, or otherwise, directly or indirectly arising out of or relating to the recognition, interpretation, calculation, comparison, differentiation, sequencing, or processing of data by any computer system including any hardware, programs or software;

    **(7)** Scratching and marring;

  **b.** Loss, damage, cost or expense directly caused by, contributed to by, resulting from or arising out of the following causes of loss:

    Fire, lightning, combustion explosion, windstorm or hail, weight of snow, ice or sleet, freezing, falling objects, smoke, aircraft or vehicles, riot or civil commotion, vandalism, sinkhole collapse, volcanic action, leakage from fire extinguishing equipment, water, water damage, earth movement or flood.

**6.** "Electronic equipment" means devices which operate using many small electrical parts such as, but not limited to, microchips, transistors or circuits.

**7.** "Electronic equipment deficiency" means the quality or condition inside of "electronic equipment" which renders this equipment unexpectedly inoperable and which is operable again once a piece of "electronic equipment" has been replaced.

However, "electronic equipment deficiency" will not include replacement of "electronic equipment" for any condition that would have been resolved without replacement of the "electronic equipment" including, but not limited to, "computer equipment" maintenance or the reinstallation or incompatibility of software.

**8.** "Perishable goods" means stock preserved maintained under controlled conditions for its preservation and susceptible to loss or damage if the controlled conditions change.

**9.** "Green" means products, materials, methods and processes certified by a "green authority" that conserve natural resources, reduce energy or water consumption, avoid toxic or other polluting emissions or otherwise minimize environmental impact.

**10.** "Green Authority" means an authority on "green" buildings, products, materials, methods or processes certified and accepted by Leadership in Energy and Environmental Design (LEED®), "green" Building Initiative Green Globes®, Energy Star Rating System or any other recognized "green" rating system.

**11.** "Production machinery" means any machine which processes, forms, shapes, or transports raw materials, materials in process, waste materials or finished products.

**12.** "Cloud computing" means on-demand network access to a shared pool of computing resources via networks, servers, storage, applications and services provided by an organization with whom you have a contract with using the following service models: Software as a Service (SaaS), Platform as a Service (PaaS), and Infrastructure as a Service (IaaS) on the following deployment models: public cloud, community cloud, hybrid cloud and private clouds.

**13.** "Computer equipment" means Covered Property that is electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and electronic media and records.

## CAUSES OF LOSS – SPECIAL FORM

### A. Covered Causes of Loss

With respect to this endorsement only, **Covered Causes of Loss** also means "equipment breakdown".

### B. Exclusions

**1.** With respect to this endorsement only, all **Exclusions** apply except: **B.2.c.(5)** and **B.2.d.**;

**2.** With respect to this endorsement only, **Exclusion B.2.a.** is deleted in its entirety and replaced by the following:

We will not pay for loss or damage caused by or resulting from artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances, wires, systems or networks.

However, if damage results causing an "equipment breakdown", we will pay for the loss or damage caused by that "equipment breakdown".

**C. Limitations**

With respect to this endorsement only, all **Limitations** apply except **C.1.a.** and **C.1.b.**

**G. Definitions**

With respect to this endorsement only, the following is added to the "Specified Causes of Loss" definition:

"Specified Causes of Loss" also means "equipment breakdown".


All other terms and conditions of this policy remain unchanged.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL PROPERTY**
**SP 314 01 15**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE SCHEDULE

This endorsement provides supplementary information to be used with the following:

FLOOD COVERAGE ENDORSEMENT

**Inception Date Of Flood Coverage Endorsement** 07/25/2022.

**NOTE:** There is no coverage for a Flood that begins before or within 72 hours after this date. Refer to Section **D.5.a.** of the Endorsement for additional information.

Description Of Premises Or Location(s)

### SCHEDULE

| Location No. | Building No. | Address | Flood Deductible * |
|---|---|---|---|
| 1 | 1 | 211 E Ohio St, Chicago, IL 60611-3262 | $ 25,000 |

\*   *IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

**Description Of Personal Property In The Open, If Covered For Flood:**

| |
|---|
| **All Personal Property** |

**No-Coinsurance Option**  ☒

**Other Flood Insurance, if any (Identify insurer and policy number):**

| Location No. | Building No. | Insurer | Policy Number | Effective Date |
|---|---|---|---|---|
| | | | | |

**Underlying Insurance Waiver**    ☒
**NOTE:** Refer to Section **H.1.** of the Endorsement for an explanation of this option.

**Annual Aggregate Limit - Flood Coverage Endorsement:**    $  5,000,000
**NOTE:** Refer to the Limit of Insurance provisions in the Endorsement for an explanation.

**Policy No.:**     21-21095212 - 40

**Flood Limit of Insurance - Single Occurrence:**

Enter the Limit(s) in Section **A** and/or **B** of this Schedule.  Refer to the Limit of Insurance provisions in the Endorsement for an explanation.

**A.  Blanket Limit     $  5,000,000**

The above Blanket Limit applies to all Locations and Buildings listed in the Schedule above. If a separate Blanket Limit(s) applies at other Locations or Buildings, then a separate Schedule will be used to enter the Blanket Limit(s) for those Locations or Buildings.

Check applicable Covered Property/Coverage(s) for Blanket Limit (**NOTE:** Information required to complete this section, if not shown below, will be shown in the Declarations):

☐     Building

☐     Building Personal Property

☐     Business Income (and Extra Expense) Coverage Form (CP 00 30)

☐     Business Income (without Extra Expense) Coverage Form (CP 00 32)

☐     Extra Expense Coverage Form (CP 00 50)

☐     Other _____

The Blanket Limit shown above does not apply separately to the Locations, Buildings, Covered Property or Coverages listed. The Blanket Limit is the most we will pay for all loss or damage to the indicated Covered Property/Coverages at the Locations and Buildings listed, subject to all other applicable provisions of the Limit of Insurance section in the Flood Coverage Endorsement.

**B.  Separate Limits**

If a separate Limit of Insurance is entered in this section of the Schedule, **B.**, for a particular Covered Property/Coverage, that Covered Property/Coverage should NOT be included under a Blanket Limit.

| LOCATION No. | | BUILDING No. | |
|---|---|---|---|
| **COVERAGE** | | **LIMIT OF INSURANCE** | **DEDUCTIBLE** |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form (CP 00 30) | | | |
| Business Income (without Extra Expense) Coverage Form (CP 00 32) | | | |
| Extra Expense Coverage Form (CP 00 50) | | | |
| Other | | | |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
SP 315 01 14

**POLICY NUMBER:** 21-21095212-40                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**   The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ORDINANCE OR LAW COVERAGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

**SCHEDULE\***

| Premises No. | Building No. | Coverage A | Coverage B Limit of Insurance | Coverage C Limit of Insurance | Coverages B and C Combined Limit of Insurance ** |
|---|---|---|---|---|---|
| 1 | 1 | ☒ | | | $5,000,000 |
| \*     Information required to complete the Schedule, if not shown in this endorsement, will be shown in the Declarations. | | | | | |
| \*\*   **DO NOT** enter a combined limit of insurance if individual limits are selected for Coverages **B** and **C**. | | | | | |

**A.** Each Coverage - Coverage **A**, Coverage **B** and Coverage **C** - is provided under this endorsement only if that Coverage(s) is chosen by entry in the above Schedule and then only with respect to the premises/building identified for that Coverage(s) in the Schedule.

**B.** **Coverage**

    **1.** **Coverage A - Coverage For Loss To The Undamaged Portion Of The Building**

    With respect to the building identified in the Schedule that has sustained direct physical damage caused by a Covered Cause of Loss, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

    Coverage **A** is included within the Limit of Insurance shown in the Declarations as applicable to the covered building. Coverage A does not increase the Limit of Insurance.

    **2.** **Coverage B - Demolition Cost Coverage**

    With respect to the building that has sustained direct physical damage caused by a Covered Cause of Loss, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

    The Coinsurance Additional Condition does not apply to Demolition Cost Coverage.

    **3.** **Coverage C - Increased Cost Of Construction Coverage**

       **a.** With respect to the building that has sustained direct physical damage caused by a Covered Cause of Loss, we will pay the increased cost to:

**(1)** Repair or reconstruct damaged portions of that building; and/or

**(2)** Reconstruct or remodel undamaged portions of that building, whether or not demolition is required;

when the increased cost is a consequence of enforcement of the minimum requirements of the ordinance or law.

However:

**(1)** This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

**(2)** We will not pay for the increased cost of construction until the property is actually repaired, reconstructed or remodeled and unless the premises or building is repaired, reconstructed or remodeled within two years after the loss.

The Coinsurance Additional Condition does not apply to Increased Cost of Construction Coverage.

**b.** When a building is damaged or destroyed and Coverage **C** applies to that building in accordance with **3.a.** above, coverage for the increased cost of construction also applies to repair or reconstruction of the following, subject to the same conditions stated in **3.a.**:

**(1)** The cost of excavations, grading, backfilling and filling;

**(2)** Foundation of the building;

**(3)** Pilings; and

**(4)** Underground pipes, flues and drains.

The items listed in **b.(1)** through **b.(4)** above are deleted from Property Not Covered, but only with respect to the coverage described in this Provision, **3.b.**

**C. Application Of Coverage(s)**

The Coverage(s) provided by this endorsement apply only if both **C.1.** and **C.2.** are satisfied and are then subject to the qualifications set forth in **C.3.**

**1.** The ordinance or law:

**a.** Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

**b.** Is in force at the time of loss.

But coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

**2. a.** The building sustains direct physical damage by a Covered Cause of Loss under this policy and such damage results in enforcement of the ordinance or law; or

**b.** The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and the building damage in its entirety results in enforcement of the ordinance or law.

**c.** But if the building sustains direct physical damage that is not caused by a Covered Cause of Loss under this policy, and such damage results in the enforcement of the ordinance or law, then there is no coverage under this endorsement even if the building has also sustained direct physical damage caused by a Covered Cause of Loss.

**3.** In the situation described in **C.2.b.** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A**, **B**, and/or **C** of this endorsement. Instead, we will pay a proportion of such loss; meaning the proportion that the covered direct physical damage caused by a Covered Cause of Loss bears to the total direct physical damage.

(Section **H.** of this endorsement provides an example of this procedure.)

However, if the direct physical damage caused by a Covered Cause of Loss, alone, would have resulted in enforcement of the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages A, B and/or C of this endorsement.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



**D.** We will not pay under Coverage **A, B** or **C** of this endorsement for:

    **1.** Enforcement of any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

    **2.** The costs associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**E. Loss Payment**

    **1.** All following loss payment Provisions, **E.2.** through **E.5.**, are subject to the apportionment procedures set forth in Section **B.3.** of this endorsement.

    **2.** When there is a loss in value of an undamaged portion of a building to which Coverage **A** applies, the loss payment for that building, including damaged and undamaged portions, will be determined as follows:

        **a.** If the Replacement Cost Coverage Option applies and the property is being repaired or replaced, on the same or another premises, we will not pay more than the lesser of:

            **(1)** The amount you would actually spend to repair, rebuild or reconstruct the building, but not for more than the amount it would cost to restore the building on the same premises and to the same height, floor area, style and comparable quality of the original property insured; or

            **(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

        **b.** If the Replacement Cost Coverage Option applies and the property is not repaired or replaced, or if the Replacement Cost Coverage Option does not apply, we will not pay more than the lesser of:

            **(1)** The actual cash value of the building at the time of loss; or

            **(2)** The Limit of Insurance shown in the Declarations as applicable to the covered building.

    **3.** Unless Paragraph **E.5.** applies, loss payment under Coverage **B** - Demolition Cost Coverage will be determined as follows:

    We will not pay more than the lesser of the following:

        **a.** The amount you actually spend to demolish and clear the site of the described premises; or

        **b.** The applicable Limit of Insurance shown for Coverage **B** in the Schedule above.

    **4.** Unless Paragraph **E.5.** applies, loss payment under Coverage **C** - Increased Cost of Construction Coverage will be determined as follows:

        **a.** We will not pay under Coverage **C**:

            **(1)** Until the property is actually repaired or replaced, at the same or another premises; and

            **(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

        **b.** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay under Coverage **C** is the lesser of:

            **(1)** The increased cost of construction at the same premises; or

            **(2)** The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

        **c.** If the ordinance or law requires relocation to another premises, the most we will pay under Coverage **C** is the lesser of:

            **(1)** The increased cost of construction at the new premises; or

            **(2)** The applicable Limit of Insurance shown for Coverage **C** in the Schedule above.

    **5.** If a **Combined** Limit of Insurance is shown for Coverages **B** and **C** in the Schedule above, Paragraphs **E.3.** and **E.4.** of this endorsement do not apply with respect to the building that is subject to the Combined Limit, and the following loss payment provisions apply instead:

    The most we will pay, for the total of all covered losses for Demolition Cost and Increased Cost of Construction, is the Combined Limit of Insurance shown for Coverages **B** and **C** in the Schedule above. Subject to this Combined Limit of Insurance, the following loss payment provisions apply:

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

   **a.** For Demolition Cost, we will not pay more than the amount you actually spend to demolish and clear the site of the described premises.

   **b.** With respect to the Increased Cost of Construction:

     **(1)** We will not pay for the increased cost of construction:

      **(a)** Until the property is actually repaired or replaced, at the same or another premises; and

      **(b)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

     **(2)** If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the same premises.

     **(3)** If the ordinance or law requires relocation to another premises, the most we will pay for the increased cost of construction is the increased cost of construction at the new premises.

**F.** The terms of this endorsement apply separately to each building to which this endorsement applies.

**G.** Under this endorsement we will not pay for loss due to any ordinance or law that:

   **1.** You were required to comply with before the loss, even if the building was undamaged; and

   **2.** You failed to comply with; or

   **3.** Requires any Insured or others to test elevator, plumbing, gas or other building systems for integrity or condition, unless there is first direct physical damage to the system itself by a Covered Cause of Loss. Nor will we pay for the costs of making repairs necessitated to pass the test.

   The purpose of this item **G.3.** is to clarify the following issues:

   **a.** in the absence of direct physical damage to the system itself by a Covered Cause of Loss, an occurrence in the building, which does not damage the system, will not be considered the proximate cause of testing and repairs, even if the system was operating satisfactorily before the testing.

   **b.** We will not pay for routine maintenance and repairs of systems that have such defects as erosion of sealants, use of ineffective technology, installation errors, or other defects due to the passage of time; and

**H.** Example of Proportionate Loss Payment for Ordinance Or Law Coverage Losses (procedure as set forth in Section **B.3.** of this endorsement.)

Assume:

- Wind is a Covered Cause of Loss; Flood is an excluded Cause of Loss

- The building has a value of $200,000

- Total direct physical damage to building: $100,000

- The ordinance or law in this jurisdiction is enforced when building damage equals or exceeds 50% of the building's value

- Portion of direct physical damage that is covered (caused by wind): $30,000

- Portion of direct physical damage that is not covered (caused by flood): $70,000

- Loss under Ordinance Or Law Coverage C of this endorsement: $60,000

Step **1**:

   Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

     $30,000 ÷ $100,000 = .30

Step **2**:

   Apply that proportion to the Ordinance or Law loss.

     $60,000 x .30 = $18,000



In this example, the most we will pay under this endorsement for the Coverage C loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**Note**: The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

I. The following definition is added:

"Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL PROPERTY**
**SP 317 01 18**

**POLICY NUMBER:**  21-21095212-40                    **ENDORSEMENT NUMBER:**

**ISSUED TO:**  The Grand Ohio Condominium Association

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**  07/25/2022
                                                        (12:01 A.M. Standard time at your mailing address
                                                        shown in the Declarations)

<div align="center">

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# FLOOD COVERAGE ENDORSEMENT

</div>

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** This endorsement applies solely to the Covered Property and Coverages for which a Flood Limit of Insurance is shown in the Flood Coverage Schedule or in the Declarations. This endorsement does not apply to any newly acquired or constructed property, unless such property is shown as Covered Property in the Flood Coverage Schedule.

**B.** **Additional Covered Cause Of Loss**

The following is added to the Covered Causes Of Loss:

Flood, meaning a general and temporary condition of partial or complete inundation of normally dry land areas due to:

**1.** The overflow of inland or tidal waters;

**2.** The unusual or rapid accumulation or runoff of surface waters from any source; or

**3.** Mudslides or mudflows which are caused by flooding as defined in **B.2.** above. For the purpose of this Covered Cause Of Loss, a mudslide or mudflow involves a river of liquid and flowing mud on the surface of normally dry land areas as when earth is carried by a current of water and deposited along the path of the current.

All flooding in a continuous or protracted event will constitute a single flood.

**C.** **Exclusions, Limitations And Related Provisions**

**1.** The Exclusions and Limitation(s) sections of the Causes Of Loss Form apply to coverage provided under this endorsement except as provided in **C.2.** and **C.3.** below.

**2.** To the extent that a part of the Water Exclusion conflicts with coverage provided under this endorsement, that part of the Water Exclusion does not apply.

**3.** To the extent that a tsunami causes the overflow of tidal waters, the exclusion of earthquake, in the Earth Movement Exclusion, does not apply.

**4.** The **Ordinance Or Law** Exclusion in this Coverage Part continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

**5.** The following exclusions and limitations are added and apply to coverage under this endorsement:



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

**a.** **(1)** We will not pay for any loss or damage caused by or resulting from any Flood that begins before or within 72 hours after the inception date of this endorsement. However, this limitation does not apply to a particular location if Flood coverage was in effect for that location for at least 72 hours immediately prior to the inception date of this endorsement, under a policy issued by us or by another insurer, and this policy replaces the previous policy without a lapse in coverage.

**(2)** If you request and we provide an increase in the stated Limit of Insurance for Flood during the term of this policy, with the exception of an increase at the time of renewal of the policy, the increase will not apply to loss or damage from any Flood that begins before or within 72 hours after your request was made.

**(3)** If the Flood is due to the overflow of inland or tidal waters, then the Flood is considered to begin when the water first overflows its banks.

**b.** We will not pay for loss or damage caused by or resulting from destabilization of land arising from the accumulation of water in subsurface land areas.

**c.** Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land due to the collapse or sinking of land caused by or resulting from Flood. However, coverage under this endorsement includes damage to the covered portions of the building and to covered personal property, caused by collapse or sinking of land along the shore of a body of water as the result of erosion or undermining caused by Flood.

**d.** Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Flood Coverage:

**(1)** Property Not Covered includes any building or other property that is not eligible for flood insurance pursuant to the provisions of the Coastal Barrier Resources Act, 16 U.S.C. 3501 *et seq.* and the Coastal Barrier Improvement Act of 1990, Pub. L. 101-591, 16 U.S.C. 3501 *et seq.*

**(2)** Property Not Covered includes boat houses and open structures, and any property in or on the foregoing, if the structure is located on or over a body of water.

**(3)** If bulkheads, pilings, piers, wharves, docks, or retaining walls that are not part of a building, have been removed from Property Not Covered and added as Covered Property by separate endorsement, this Flood Coverage Endorsement does not apply to such property.

**(4)** The following are removed from Property Not Covered and are therefore Covered Property:

**(a)** Foundations below the lowest basement floor or the subsurface of the ground; and

**(b)** Underground pipes, flues and drains.

**D. Additional Coverages And Coverage Extensions**

**1.** With respect to Flood Coverage under this endorsement, the Debris Removal Additional Coverage (and any additional limit for Debris Removal under a Limit Of Insurance clause or an endorsement) is not applicable and is replaced by the following:

**DEBRIS REMOVAL**

**a.** We will pay the reasonable cost to remove debris of Covered Property and other debris that is on the described premises, when such debris is caused by or results from Flood. However, we will not pay to remove deposits of mud or earth from the grounds of the described premises.

**b.** We will also pay the reasonable cost to remove debris of Covered Property that has floated or been hurled off the described premises by Flood.

**c.** This coverage for Debris Removal, as set forth in **D.1.a.** and **D.1.b.** above, does not increase the applicable Limit of Insurance for Flood. Therefore, the most we will pay for the total of debris removal and loss or damage to Covered Property is the Limit of Insurance for Flood that applies to the Covered Property at the affected scheduled location or described premises covered under this endorsement.

**2.** With respect to any applicable Additional Coverages and Coverage Extensions in the Coverage Form to which this endorsement is attached, other than Debris Removal, addressed in **D.1.** above, amounts payable under such other provisions, as set forth therein, do not increase the Limit of Insurance for Flood.

**E. Coinsurance**

1. The **Coinsurance** Condition, if any, in the applicable Coverage Form applies to the coverage provided under this endorsement, unless the No-Coinsurance Option, in the Flood Coverage Schedule or in the Declarations, is specified as being applicable.

2. Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, require coinsurance. If the No-Coinsurance Option applies, then the coinsurance requirement for such Coverage Extensions is eliminated.

## F. Limit Of Insurance

### 1. General Information

Flood Coverage may be written at a Limit of Insurance that is equal to or less than the Limit of Insurance which applies to other Covered Causes of Loss (e.g., Fire), and is reflected either on the Declarations Page or on a separate Location Schedule, under this Commercial Property Coverage Part.

The Limit of Insurance for Flood is shown in the Flood Coverage Schedule.

### 2. Application Of Limit And Aggregate

The Limit of Insurance for Flood is the most we will pay in a single occurrence of Flood for loss or damage caused by the Flood. If there is more than one Flood in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Flood is the amount that is identified as the Annual Aggregate for Flood as shown in the Flood Coverage Schedule or the Declarations.

If the Limit of Insurance and the Annual Aggregate amount are the same, or if there is no amount stated as an Annual Aggregate, then the Limit of Insurance is the most we will pay for the total of all loss or damage that is caused by Flood in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one occurrence of Flood during that period of time. Thus, if the first Flood does not exhaust the applicable Limit of Insurance, then the balance of that Limit is available for a subsequent Flood(s).

If a single occurrence of Flood begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance or Annual Aggregate applicable to the following annual policy period will not apply to that Flood.

### 3. Ensuing Loss

In the event of covered ensuing loss, for example, loss caused by Fire, Explosion and/or Sprinkler Leakage which results from the Flood, the most we will pay, for the total of all loss or damage caused by flood, fire, explosion and sprinkler leakage, is the Limit of Insurance applicable to Fire. We will not pay the sum of the Fire and Flood Limits.

### 4. Business Income

If the Coverage Part to which this endorsement is attached includes coverage for both Property Damage and Business Interruption, the most we will pay for loss or damage resulting from Flood, regardless of whether the loss involves Property Damage alone or both Property Damage and Business Interruption, is the Limit of Insurance for Flood reflected on the Flood Coverage Schedule.

## G. Deductible

1. The Deductible for coverage provided under this endorsement is the Deductible applicable to Flood as shown in the Flood Coverage Schedule or in the Declarations.

2. We will not pay that part of the loss that is attributable to any Deductible(s) in the National Flood Insurance Program policy.

3. If Flood results in another Covered Cause of Loss and if both Covered Causes of Loss cause loss or damage, then only the higher deductible applies (e.g., the Flood deductible or the Fire deductible).

## H. Other Insurance

The **Other Insurance** Commercial Property Condition is replaced by the following with respect to the coverage provided under this endorsement:

1. If the loss is also covered under a National Flood Insurance Program (NFIP) policy, or if the property is eligible to be written under an NFIP policy but there is no such policy in effect, then we will pay only for the amount of loss in excess of the maximum limit that can be insured under that policy. This provision applies whether or not the maximum NFIP limit was obtained or maintained, and whether or not you can collect on



the NFIP policy. We will not, under any circumstances, pay more than the applicable Limit of Insurance for Flood as stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

However, this Provision **H.1.** does not apply under the following circumstances:

**a.** At the time of loss, the property is eligible to be written under an NFIP policy but such policy is not in effect due solely to ineligibility of the property at the time this Flood Coverage Endorsement was written; or

**b.** An NFIP policy is not in effect because we have agreed to write this Flood Coverage Endorsement without underlying NFIP coverage. There is such an agreement only if the Flood Coverage Schedule or the Declarations indicate that the Underlying Insurance Waiver applies.

**2.** If there is other insurance covering the loss, other than that described in **H.1.** above, we will pay our share of the loss. Our share is the proportion that the applicable Limit of Insurance under this endorsement bears to the total of the applicable Limits of Insurance under all other such insurance. But we will not pay more than the applicable Limit of Insurance stated in the Flood Coverage Schedule or the Declarations of this Coverage Part.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

COMMERCIAL PROPERTY
SP 318 01 18

**POLICY NUMBER:** 21-21095212-40                    **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# EARTHQUAKE & VOLCANIC ERUPTION ENDORSEMENT
# (SUB-LIMIT FORM)

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** This endorsement applies solely to the Covered Property and Coverages for which an Earthquake – Volcanic Eruption Limit of Insurance is shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations.  This endorsement does not apply to any newly acquired or constructed property, unless such property is shown as Covered Property in the Earthquake – Volcanic Eruption Coverage Schedule.

**B. Additional Covered Causes Of Loss**

    **1.** The following are added to the Covered Causes of Loss:

        **a.** Earthquake.

        **b.** Volcanic Eruption, meaning the eruption, explosion or effusion of a volcano.

    **2.** If the Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that this endorsement covers Earthquake-Sprinkler Leakage Only, then the Covered Causes of Loss in Paragraph **B.1.** of this endorsement do not apply, and the following apply instead:

        **a.** Sprinkler Leakage resulting from Earthquake.

        **b.** Sprinkler Leakage resulting from Volcanic Eruption.

    All Earthquake shocks or Volcanic Eruptions that occur within any 168-hour period will constitute a single occurrence. The expiration of this policy will not reduce the 168-hour period.

**C. Exclusions, Limitations And Related Provisions**

    **1.** The Exclusions and Limitation(s) sections of the Causes of Loss – Special Form, apply to coverage provided under this endorsement, except as provided in **C.2.** and **C.3.** below.

    **2.** To the extent that the Earth Movement Exclusion might conflict with coverage provided under this endorsement, the Earth Movement Exclusion does not apply.

    **3.** The exclusion of Collapse, in the Causes of Loss-Special Form, does not apply to collapse caused by Earthquake or Volcanic Eruption.

    **4.** The Additional Coverage – Collapse, in the Causes of Loss – Broad Form and Causes of Loss – Special Form, does not apply to the coverage provided under this endorsement. This endorsement includes coverage for collapse caused by Earthquake or Volcanic Eruption.

SP 318 01 18          Includes copyrighted material of Insurance Services Office, Inc. with its permission          **Page 1 of 4**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

5. We will not pay for loss or damage caused directly or indirectly by tidal wave or tsunami, even if caused by or resulting from an Earthquake or Volcanic Eruption.

6. We will not pay for loss or damage caused by or resulting from any Earthquake or Volcanic Eruption that begins before the inception of this insurance.

7. The Ordinance Or Law Exclusion in the Causes of Loss Form continues to apply with respect to any loss under this Coverage Part including any loss under this endorsement, unless Ordinance Or Law Coverage is added by endorsement.

8. We will not pay for loss of or damage to exterior masonry veneer (except stucco) on wood frame walls caused by or resulting from Earthquake or Volcanic Eruption. The value of such veneer will not be included in the value of Covered Property or the amount of loss when applying the Property Damage Deductible applicable to this endorsement.

   This limitation, **C.8.**, does not apply if:

   a. The Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that the "Including Masonry Veneer" option applies; or

   b. Less than 10% of the total outside wall area is faced with masonry veneer (excluding stucco).

9. Under this Coverage Part, as set forth under Property Not Covered in the Coverage Form to which this endorsement is attached, land is not covered property, nor is the cost of excavations, grading, backfilling or filling. Therefore, coverage under this endorsement does not include the cost of restoring or remediating land.

10. We will not pay for loss or damage caused by or resulting from any Earthquake which occurs due to man-made or other artificial causes.

11. Property Not Covered, in the Coverage Form to which this endorsement is attached, is amended and supplemented as follows with respect to Earthquake & Volcanic Eruption Coverage:

    a. The following are removed from Property Not Covered and are therefore Covered Property:

       **(1)** Foundations below the lowest basement floor or the subsurface of the ground; and

       **(2)** Underground pipes, flues and drains.

## D. No Coinsurance

The Coinsurance Condition in this policy, if any, does not apply to the coverage provided under this endorsement.

Various Coverage Extensions, in the Coverage Form to which this endorsement is attached, may require coinsurance. The coinsurance requirement for such Coverage Extensions does not apply to the coverage provided under this endorsement.

## E. Limit Of Insurance

### 1. General Information

The term Limit of Insurance means the Limit of Insurance applicable to Earthquake – Volcanic Eruption for the Covered Property or Coverage under which loss or damage is sustained.

The Earthquake – Volcanic Eruption Coverage Schedule or the Declarations provide information on the Limit of Insurance applicable to Covered Property and Coverages for Earthquake – Volcanic Eruption.

### 2. Annual Aggregate Limit

The Limit of Insurance for Earthquake – Volcanic Eruption is an annual aggregate limit and as such is the most we will pay for the total of all loss or damage that is caused by Earthquake or Volcanic Eruption in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one Earthquake or Volcanic Eruption during that period of time. Thus, if the first Earthquake or Volcanic Eruption does not exhaust the Limit of Insurance, then the balance of that Limit is available for a subsequent Earthquake(s) or Volcanic Eruption(s).

If a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance applicable to the following annual policy period will not apply to such Earthquake or Volcanic Eruption.

### 3. Increased Annual Aggregate Limit Option

If the Earthquake – Volcanic Eruption Coverage Schedule or the Declarations indicate that the Increased Annual Aggregate Limit Option applies, then the following applies instead of Paragraph **E.2.** above:

The Limit of Insurance for Earthquake – Volcanic Eruption is the most we will pay in a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) for loss or damage caused by the Earthquake or Volcanic Eruption. If there is more than one Earthquake or Volcanic Eruption in a 12-month period (starting with the beginning of the present annual policy period), the most we will pay for the total of all loss or damage sustained during that period of time and caused by Earthquake or Volcanic Eruption is two times the Limit of Insurance.

If a single Earthquake or Volcanic Eruption (as defined in Section **B.** of this endorsement) begins during one annual policy period and ends during the following annual policy period, any Limit of Insurance applicable to the following annual policy period will **not** apply to such Earthquake or Volcanic Eruption.

**4. Additional Coverages And Coverage Extensions**

Amounts payable under an Additional Coverage or Coverage Extension, as set forth in the applicable Coverage Form, do not increase the Limit of Insurance for Earthquake – Volcanic Eruption.

**5. Limitation**

For property or coverage that is subject to a Blanket Limit on Earthquake – Volcanic Eruption (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations), we will not pay more than we would pay in the absence of such Blanket Limit. Therefore, the maximum amount payable for any such item of property or coverage is the Limit of Insurance or stated value (as shown in a Statement of Values on file with us) specific to that item of property or coverage for Covered Causes of Loss other than Earthquake – Volcanic Eruption.

**6. Ensuing Loss**

If a Cause of Loss (such as fire) is covered by means of an exception to the Earth Movement Exclusion, in the Causes of Loss Form, we will also pay for the loss or damage caused by that other Covered Cause of Loss. But the most we will pay, for the total of all loss or damage caused by the Earthquake, Volcanic Eruption and other Covered Cause of Loss, is the Limit of Insurance applicable to such other Covered Cause of Loss. We will not pay the sum of the two Limits.

**F. Deductible**

The Deductible, if any, in this Coverage Part is replaced by the following with respect to Earthquake and Volcanic Eruption:

**1. All Policies**

   **a.** The Deductible provisions apply to each Earthquake or Volcanic Eruption.

   **b.** We will not pay for loss or damage until the amount of loss or damage exceeds the applicable Deductible. We will then pay the amount of loss or damage in excess of that Deductible, up to the applicable Limit of Insurance.

   **c.** If there is loss or damage caused by Earthquake or Volcanic Eruption, and loss or damage caused by a Cause of Loss (e.g., fire) that is covered by means of an exception to the Earth Movement Exclusion, then the only applicable Deductible provisions are those stated in this endorsement.

**2. Calculation Of The Deductible – Specific Insurance Other Than Builders Risk**

   **a. Property Not Subject To Value Reporting Forms**

      In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is that shown in the most recent Statement of Values on file with us.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



**b. Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is the latest value shown in the most recent Report of Values on file with us.

**3. Calculation Of The Deductible – Blanket Insurance Other Than Builders Risk**

**a. Property Not Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is that shown in the most recent Statement of Values on file with us.

**b. Property Subject To Value Reporting Forms**

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of that property as of the time of loss or damage.

**4. Calculation Of The Deductible – Builders Risk Insurance**

**a. Builders Risk Other Than Reporting Form**

In determining the amount, if any, that we will pay for property that has sustained loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the actual cash value of that property as of the time of loss or damage.

**b. Builders Risk Reporting Form**

In determining the amount, if any, that we will pay for loss or damage, we will deduct an amount equal to the deductible (as shown in the Earthquake – Volcanic Eruption Coverage Schedule or in the Declarations, concerning the Earthquake – Volcanic Eruption Deductible) from the value of the property that has sustained loss or damage. The value to be used is the actual cash value shown in the most recent Report of Values on file with us.

**G. Business Income And Extra Expense Period Of Restoration**

This Section, **G.**, is applicable only to the Coverage Forms specified below:

**1.** Business Income (And Extra Expense) Coverage Form;

**2.** Business Income (Without Extra Expense) Coverage Form;

**3.** Extra Expense Coverage Form.

The "period of restoration" definition stated in the Coverage Form, or in any endorsement amending the beginning of the "period of restoration", applies to each Earthquake or Volcanic Eruption. A single Earthquake or Volcanic Eruption is defined in Section **B.** of this endorsement.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**COMMERCIAL PROPERTY**
**SP 319 01 20**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EARTHQUAKE & VOLCANIC ERUPTION COVERAGE SCHEDULE

This endorsement provides supplementary information to be used with the following:

EARTHQUAKE AND VOLCANIC ERUPTION ENDORSEMENT (SUB-LIMIT FORM)

Description of Covered Property:

**SCHEDULE**

| LOCATION No. | BUILDING No. | ADDRESS | DEDUCTIBLE *# |
|---|---|---|---|
| 1 | 1 | 211 E Ohio St, Chicago, IL 60611-3262 | $        25,000 |

\*  *IF ONE "OCCURRENCE" RESULTS IN LOSS OR DAMAGE AT MORE THAN ONE LOCATION, THE APPLICABLE DEDUCTIBLE WILL APPLY SEPARATELY TO LOSS OR DAMAGE AT EACH LOCATION THAT HAS SUSTAINED LOSS OR DAMAGE.*

\#  *EARTHQUAKE DEDUCTIBLES APPLY SEPARATELY TO EACH BUILDING AND TO PERSONAL PROPERTY IN EACH BUILDING.*

Earthquake - Sprinkler Leakage Only ☐

Increased Annual Aggregate Limit Option:   ☐ YES   ☒ NO

**Earthquake - Volcanic Eruption Limit(s) of Insurance**
The Limit(s) of Insurance shown in Section **A** and/or **B** of this Schedule is an annual aggregate limit(s). Refer to the Limit Of Insurance Provisions in the Earthquake And Volcanic Eruption Endorsement (Sub-Limit Form) for an explanation.

**A.  Blanket Limit**   $   5,000,000

The above Blanket Limit applies to all Locations and Buildings listed in the Schedule above. If a separate Blanket Limit(s) applies at other Locations or Buildings, then a separate page(s) of this Schedule will be used to enter the Blanket Limit(s) for such Locations or Buildings.

Check applicable Covered Property/Coverage(s) for Blanket Limit (**NOTE:** Information required to complete this section, if not shown below, will be shown in the Declarations):

☐  Building
☐  Business Personal Property
☐  Business Income (and Extra Expense) Coverage Form
☐  Business Income (without Extra Expense) Coverage Form
☐  Extra Expense Coverage Form
☐  Other _____

The Blanket Limit shown above does not apply separately to the Locations, Buildings, Covered Property or Coverages listed. The Blanket Limit is the most we will pay for all loss or damage to the indicated Covered

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**Policy No.:**    21-21095212 - 40

Property/Coverages at the Locations and Buildings listed, subject to all other applicable provisions of the Limit of Insurance section in the Earthquake And Volcanic Eruption Endorsement (Sub-Limit Form).

**B. Separate Limits**

If a separate Limit of Insurance is entered in this section of the Schedule, **B.**, for a particular Covered Property/Coverage, that Covered Property/Coverage should NOT be included under a Blanket Limit.

| LOCATION NO. | | BUILDING NO. | |
|---|---|---|---|
| **COVERAGE** | | **LIMIT OF INSURANCE** | **DEDUCTIBLE** |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form | | | |
| Business Income (without Extra Expense) Coverage Form | | | |
| Extra Expense Coverage Form | | | |
| Other _____ | | | |

| LOCATION NO. | | BUILDING NO. | |
|---|---|---|---|
| **COVERAGE** | | **LIMIT OF INSURANCE** | **DEDUCTIBLE** |
| Building | | | |
| Business Personal Property | | | |
| Business Income (and Extra Expense) Coverage Form | | | |
| Business Income (without Extra Expense) Coverage Form | | | |
| Extra Expense Coverage Form | | | |
| Other _____ | | | |

COMMERCIAL PROPERTY
SP 320 01 14

**POLICY NUMBER:** 21-21095212-40                    **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# PERIOD OF RESTORATION CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Paragraph. **3.** of Section **F. Definitions** is deleted in its entirety and replaced by the following:

**3.** "Period of restoration" means the period of time that:
  **a.** Begins:
    **(1)** 0 hours after the time of direct physical loss or damage for Business Income Coverage; or
    **(2)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
    caused by or resulting from any Covered Cause of Loss at the described premises; and
  **b.** Ends on the earlier of:
    **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality;
    **(2)** The date when business is resumed at a new permanent location; or
    **(3)** The date at the end of ALS-18 Months consecutive months after the direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:
    **(1)** Regulates the construction, use or repair, or requires the tearing down, of any property; or
    **(2)** Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
SP 335IL 01 18

**POLICY NUMBER:** 21-21095212-40          **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing address shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

# HABITATIONAL COVERAGE CHANGES ENDORSEMENT – ILLINOIS

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
CAUSES OF LOSS – SPECIAL FORM

**A. CHANGES TO THE CAUSES OF LOSS – SPECIAL FORM**

  **1.** Paragraph **1.c.** of section **C. Limitations** is deleted in its entirety and replaced by the following:

    **c.** The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from sand or dust, whether driven by wind or not, unless the building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the sand or dust enters.

**B. CHANGES TO THE BUILDING AND PERSONAL PROPERTY COVERAGE FORM** and the **CONDOMINIUM ASSOCIATION COVERAGE FORM**

  **1.** Paragraph **5.** of **Coverage Extensions** of section **A. Coverage** is amended as follows:

    **a.** Paragraph **d. Property Off-Premises** is deleted in its entirety and replaced by the following:

      **d. Property Off-premises**

      We will pay for direct physical loss or damage to your Business Personal Property at unspecified premises, caused by or resulting from a Covered Cause of Loss, not to exceed $500,000, subject to the following:

      **(1)** This Additional Coverage does not apply to:

        **(a)** Personal Property at a newly acquired premises;

        **(b)** Personal Property while in transit; or

        **(c)** Personal Property that is covered under another coverage form of this or any other policy in which it is more specifically described.

      **(2)** Personal Property at a job site or temporarily warehoused elsewhere awaiting installation at the job site is subject to a sublimit of $10,000.

    **b.** Paragraph **g. Loss Data Preparation Costs** is deleted in its entirety and replaced by the following:

      **g. Loss Data Preparation Costs**

      **(1)** We will pay up to $10,000 for reasonable costs you incur in preparing loss data required by policy conditions after a covered loss. This includes the cost of taking inventory, making appraisals and preparing other data to determine the extent of your loss.

      **(2)** We will not pay for any loss data preparation expenses:

        **(a)** Billed by and payable to:

SP 335IL 01 18                                                                 **Page 1 of 2**

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

        **(i)** Independent or public adjusters or for expenses;

        **(ii)** Any Managing Agent; unless we have given our written consent prior to such expenses being incurred; or

        **(iii)** Any other party under contract to receive fees for preparing loss data after a covered loss; or

    **(b)** To prepare claims not covered by this Coverage Part.

  **(3)** The $10,000 limit is an annual aggregate limit and is the most we will pay for the total of all loss data preparation costs incurred in a 12-month period (starting with the beginning of the present annual policy period), even if there is more than one claim made for loss data preparation costs during that time.

**c.** The following is added at the end thereof:

  **j.** **Interior of Building**

    **a.** We will pay for loss to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet or ice, whether driven by wind or not, whether or not the building or structure first sustains damage by a Covered Cause of Loss through which the rain, snow, sleet or ice enters.

    **b.** In the event of a loss covered under **a.** above:

      **(1)** When the building or structure has NOT first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters, we will subtract from the amount of loss or damage in any one "occurrence" the specific deductible applicable to this coverage and shown as the "Water Damage – Interior Water Damage" deductible on the Multiple Deductible Form (SP 110); or

      **(2)** When the building or structure has first sustained damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet or ice enters, we will subtract from the amount of loss or damage in any one "occurrence" the specific deductible applicable to this coverage and shown as the "All Other Perils" deductible on the Multiple Deductible Form (SP 110).

## C.  CHANGES TO THE CONDOMINIUM ASSOCIATION COVERAGE FORM

**1.** Under section **C. Limits of Insurance**, the following provision is deleted in its entirety:

The most we will pay for loss or damage to outdoor signs, whether or not the sign is attached to a building, is $2,500 per sign in any one occurrence.

**2.** Section **H. Definitions** is amended to include the following at the end thereof:

  **4.** "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

All other terms and conditions of this policy remain unchanged.

**COMMERCIAL PROPERTY**
**SP 359 01 22**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CYBER INCIDENT EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The exclusion set forth in Paragraph **B.** below applies to all coverage under all forms and endorsements that comprise this Coverage Part , including but not limited to forms or endorsements that cover loss of or damage to buildings or business personal property, forms or endorsements that cover business income, extra expense or action of civil authority, and any Additional Coverages or Coverage Extensions in this Coverage Part or Endorsement(s) attached to this Coverage Part .

**B.** The following exclusion is added to the Commercial Property Coverage Part:

We will not pay for loss, damage, costs, or expenses caused directly or indirectly by a "Cyber Incident" as defined herein. Such loss, damage, cost or expense is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, costs, or expenses.

**C. Exceptions And Limitations**

   **1. Cyber-specific Endorsements**

     If the policy to which this endorsement attaches includes any of the following cyber-specific endorsements, the exclusion in paragraph **B.** above does not apply to the extent that first-party coverage is provided in any of the following endorsements:

     **a.** Data Compromise Coverage;

     **b.** CyberOne Coverage; or

     **c.** Cyber Suite Coverage Endorsement.

   **2. Fire Or Explosion**

     If a "Cyber Incident" results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion, subject to all applicable terms and conditions of this Coverage Part.

   **3. Additional Coverages, Coverage Extensions and Endorsements**

     **a.** The exclusion in paragraph **B.** above does not apply to the extent that coverage is provided in the following Additional Coverages, Coverage Extensions and Endorsements:

       **(1)** Computer Fraud and Funds Transfer Fraud; or

       **(2)** Computer Coverage Endorsement.

     **b.** The most we will pay for loss, damage, costs or expenses under **C.3.a.** above caused by any "Cyber Incident(s)" that occur during the policy term is an annual aggregate limit of $25,000. This is the most we will pay in any one policy term regardless of the number of "Cyber Incident(s)" that may occur during the policy term or the number of Additional Coverages, Coverage Extensions or Endorsements where coverage may apply.

       This limit supersedes and replaces the limit shown in the Declarations or any Property Schedule within this Coverage Part for the Additional Coverages, Coverage Extensions and Endorsements.

       This limit is part of, and not in addition to, the limit shown in the Declarations or any Property Schedule within this Coverage Part for the Additional Coverages, Coverage Extensions and Endorsements.

   However, the exception(s) in **C.1.** and **C.3.a.** above do not apply if such coverage is not included or attached in this Coverage Part, or Endorsement(s) or such coverage is excluded under any other part of this Coverage Part or Endorsement(s).

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

**E. Vandalism**

The following is added to Vandalism, if Vandalism coverage is not otherwise excluded under this Coverage Part and if applicable to the premises described in the Declarations:

Vandalism does not include a "Cyber Incident" as described in Paragraph **B.** of this Exclusion.

**F. Definitions** is amended to add the following:

"Cyber Incident" means:

1. Unauthorized access to or use of any computer system (including electronic data).

2. Malicious code, virus or any other harmful code that is directed at, uploaded, downloaded, enacted upon or introduced into any computer system (including electronic data) and is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use or prevent or restrict access to or the use of any part of any computer system (including electronic data) or otherwise disrupt its normal functioning or operation.

3. Denial of service attack which disrupts, prevents or restricts access to or use of any computer system, or otherwise disrupts its normal functioning or operation.

**G.** The terms of the exclusion in Paragraph **B.** of this Exclusion, or the inapplicability of this Exclusion to particular loss, damage, costs, or expenses do not serve to create coverage for any loss, damage, cost or expense that would otherwise not be covered under this Coverage Part to which this Exclusion is attached.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



**COMMERCIAL PROPERTY**
**SP 640 01 16**

**POLICY NUMBER:** 21-21095212–40                **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
                    (12:01 A.M. Standard time at your mailing
                    address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ELECTRONIC DATA - CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

**A.** Under section **A. Coverage, 4. Additional Coverages, f. Electronic Data**, paragraph **(3)(d)** is deleted in its entirety.

All other provisions remain unchanged.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL PROPERTY
**SP 641 01 16**

**POLICY NUMBER:** 21-21095212-40        **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
                                   (12:01 A.M. Standard time at your mailing
                                   address shown in the Declarations)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# INTERRUPTION OF COMPUTER OPERATIONS - CHANGES ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**A.** Under section **A. Coverage**, **5. Additional Coverages**, **d. Interruption of Computer Operations**, paragraph **(3)(d)** is deleted in its entirety.

All other provisions remain unchanged.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



COMMERCIAL PROPERTY
SP 901 01 18

**POLICY NUMBER:** 21-21095212-40          **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PLATINUM PROPERTY ENDORSEMENT

### SCHEDULE

| Location No. | Building No. | Address |
|---|---|---|
| 1 | | 211 E Ohio St<br>Chicago  IL  60611-3262 |

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
CAUSES OF LOSS – SPECIAL FORM

## A. CHANGES TO THE BUILDING AND PERSONAL PROPERTY COVERAGE FORM and the CONDOMINIUM ASSOCIATION COVERAGE FORM

1. Paragraph **A.1.a.(5)(c)** is deleted in its entirety and replaced by the following:
   **(c)** Building materials and supplies of others that are:
   **(i)** Owned by others;
   **(ii)** In your care, custody or control;
   **(iii)** Located in or on the building described in the Declarations, or within 1,000 feet of its premises;
   **(iv)** Intended to become a permanent part of the building.
   Our payment for loss or damage to property of others will not exceed $75,000 excess over any specific insurance for the benefit of the owner of the materials and supplies;
2. Paragraph **A.4.a.(4)** is deleted in its entirety and replaced by the following:
   **(4)** We will pay up to an additional $1,000,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:
   **(a)** The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.
   **(b)** The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

Therefore, if **(4)(a)** and/or **(4)(b)** apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $1,000,000.

**3.** Paragraph **A.4.c.** is deleted in its entirety and replaced by the following:

**c.  Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $50,000, unless a higher limit is shown in the Declarations, for your liability for fire department service charges:

**(1)**  Assumed by contract or agreement prior to loss; or

**(2)**  Required by local ordinance.

No Deductible applies to this Additional Coverage.

**4.** Paragraph **A.4.m.** is deleted in its entirety and replaced by the following:

**m.  Lost Key Consequential Loss**

**(1)**  We will pay for consequential loss to locks or keys if a master or grand master key is lost or damaged.  This coverage does not apply to keys left in the possession of former employees.

**(2)**  We will pay for:

**(a)**  The actual cost of keys; and

**(b)**  Adjustment of locks to accept new keys, or

**(c)**  If required, new locks, including the cost of their installation.

**(3)**  The most we will pay for loss or damage under this Additional Coverage is $75,000.

No Deductible applies to this Additional Coverage.

**5.** Paragraph **A.4.s.** is deleted in its entirety and replaced by the following:

**s.  Tenant Move Back Coverage**

**(1)**  We will pay expenses incurred by you for Covered Move Back Costs of tenants who temporarily vacate a portion of a Covered Building at the premises described in the Declarations.  The vacancy must have occurred while the portion of the Covered Building rented by the tenant could not be occupied due to direct physical loss or damage to your Covered Property caused by or resulting from a Covered Cause of Loss.  The move back must take place within 60 days after the portion of the Covered Building rented by the tenant has been repaired or rebuilt and is ready for occupancy.

**(2)**  We will pay for Covered Move Back Costs whether or not the tenant(s) move back before the expiration date of this Coverage Part.

**(3)**  Covered Move Back Costs under this endorsement means documented, reasonable and necessary:

**(a)**  Costs of packing, insuring and carting business personal property;

**(b)**  Costs of re-establishing electric utility services, less refunds from discontinued services;

**(c)**  Costs of assembling and setting up fixtures and equipment; and

**(d)**  Costs to unpack and reshelve stock and supplies.

**(4)**  Covered Move Back Costs do not include:

**(a)**  Loss caused by the termination of a lease or other agreement; or

**(b)**  Security deposits or other payments, forfeitures or penalties made to the landlord or lessor of other premises.

**(5)**  The most we will pay for Covered Move Back Costs under this endorsement is $500,000 resulting from any one occurrence. The number of tenants requiring relocation will not affect this Limit of Insurance.

**6.** Paragraph **A.5.b.** is deleted in its entirety and replaced by the following:

**b.  Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)**  Personal effects owned by you, your officers, your partners or members, your managers or your employees. This Extension does not apply to loss or damage by theft.

**(a)**  The most we will pay for loss or damage under paragraph **(1)** is $75,000 at each described premises.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

       **(b)** With respect to property covered under paragraph **(1)**, the deductible applicable to Your Business Personal Property does not apply.

    **(2)** Personal property of others in your care, custody or control.

       **(a)** The most we will pay for loss or damage under paragraph **(2)** is $75,000 at each described premises.

       **(b)** With respect to property covered under paragraph **(2)**, the deductible applicable to Your Business Personal Property does not apply.

       **(c)** Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

    **(3)** Personal Effects and Property of Others is valued on the same basis as Your Business Personal Property, but we will pay no more than the amount for which you are legally liable.

**7.** Paragraph **A.5.d.** is deleted in its entirety and replaced by the following:

  **d.** **Property Off-premises**

    We will pay for direct physical loss or damage to your Business Personal Property at unspecified premises, caused by or resulting from a Covered Cause of Loss, not to exceed $500,000, subject to the following:

    **(1)** This Additional Coverage does not apply to:

       **(a)** Personal Property at a newly acquired premises;

       **(b)** Personal Property while in transit; or

       **(c)** Personal Property that is covered under another coverage form of this or any other policy in which it is more specifically described.

    **(2)** Personal Property at a job site or temporarily warehoused elsewhere awaiting installation at the job site is subject to a sublimit of $25,000.

**8.** Paragraph **A.5.e.** is deleted in its entirety and replaced by the following:

  **e.** **Outdoor Property**

    You may extend the insurance provided by this Coverage Form to apply to your trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

    **(1)** Fire;

    **(2)** Lightning;

    **(3)** Explosion;

    **(4)** Riot or Civil Commotion;

    **(5)** Aircraft;

    **(6)** Vehicle Collision;

    **(7)** Theft;

    **(8)** Vandalism and Malicious Mischief; or

    The most we will pay for loss or damage under this Extension is $1,000,000, but not more than $5,000 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

## B. CHANGES TO THE BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

**1.** Paragraph **A.13.** is deleted in its entirety and replaced by the following:

  **13. Lost Lease Coverage – Lessors Interest**

    **a.** We will pay for loss you sustain due to cancellation of lease contracts by your tenants caused by or resulting from direct physical loss or damage to Covered Property by a Covered Cause of Loss.

    **b.** Lost Lease Coverage means the difference between rent you were collecting at the described premises prior to the loss or damage and "Rental Value" of the premises after loss or damage has been repaired or rebuilt.

    **c.** Lost Lease Coverage does not include any loss caused by:

       **(1)** Your canceling the lease;

       **(2)** Suspension, lapse or cancellation of any license;

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

        **(3)** Any other consequential loss; or

        **(4)** Refunds or rebates of:

            **(a)** Prepaid rent;

            **(b)** Security or other deposits made by tenants;

            **(c)** Insurance, taxes or other payments made on your behalf by tenants.

    **d.** The most we will pay for this Additional Coverage is the least of:

        **(1)** Your Lost Lease Coverage for the 12 months immediately following the "period of restoration";

        **(2)** Your Lost Lease Coverage for the period beginning with the end of the "period of restoration" and ending with the normal expiration period of each cancelled lease; or

        **(3)** $500,000.

        The number of tenants who cancel leases will not increase this Limit of Insurance nor will it increase the Limit of Insurance otherwise afforded by this Coverage Part. The expiration date of this Coverage Part will not cut short the duration of coverage provided by this Additional Coverage.

## C. CHANGES TO THE CAUSES OF LOSS – SPECIAL FORM

  **1.** Paragraph **E.3.** is deleted in its entirety and replaced by the following:

    **3.** The coverage described under **E.2.** of this Limited Coverage is limited to $100,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $100,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.



<div align="right">

**COMMERCIAL GENERAL LIABILITY**
**CG DS 83 00 04 10**

</div>

**Issuing Company: Admiral Indemnity Company**

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**Policy No.:** 21-21095212 - 40
Previous Policy No.: 21-21095212-39

| **NAMED INSURED AND ADDRESS** | **AGENCY NAME AND ADDRESS** | 6006 |
|---|---|---|
| The Grand Ohio Condominium Association | (312)595-8135 | |
| Attn: Management Office | Alliant Mesirow Insurance | |
| 211 E Ohio St | 353 N. Clark Street, 10th Floor | |
| Chicago, IL 60611 | Chicago, IL 60654-4704 | |

| POLICY PERIOD |
|---|

Policy Period: From 07/25/2022 to 07/25/2023 at 12:01 A.M. Standard Time at your mailing address shown above.

| TOTAL ADVANCE PREMIUM | Included |
|---|---|

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| Each Occurrence Limit | $ 1,000,000 | |
|    Damage to Premises Rented to You Limit | $ 100,000 | Any One Premises |
|    Medical Expense Limit | $ 5,000 | Any One Person |
| Personal & Advertising Injury Limit | $ 1,000,000 | Any One Person or Organization |
| General Aggregate Limit | $ 2,000,000 | |
|    (Other Than Products-Completed Operations) | | |
| Products-Completed Operations Aggregate Limit | $ 1,000,000 | |

**Location of All Premises You Own, Rent or Occupy:**

*See attached "Schedule of Locations"*

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

**Policy No.:** 21-21095212 - 40

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

| CLASSIFICATION & PREMIUM |
| --- |

The Premium & Classifications are subject to change by audit.  Audit period:  Not Applicable

| Classification | Code No. | Premium Base | Rate Prem/ Ops | Rate Prod/ Comp Ops | Advance Premium Prem/ Ops | Advance Premium Prod/ Comp Ops | Other |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Illinois** | | | | | | | |
| **Location #1** | | | | | | | |
| Condominiums - residential - (association risk only) - Products-completed operations are subject to the General Aggregate Limit | 62003 | 595 Units | | | Included | | |
| Premises/Operations - NOC - Products-completed operations are subject to the General Aggregate Limit | 44444 | 8 Each | | | Included | | |
| Swimming Pools - NOC - Products-completed operations are subject to the General Aggregate Limit | 48925 | 1 See Classification Notes | | | Included | | |
| Clubs - civic, service or social - having buildings or premises owned or leased (Other than Not-For-Profit) - Products-completed operations are subject to the General Aggregate Limit | 41667 | 1 Area | | | Included | | |
| Parking - private - Products-completed operations are subject to the General Aggregate Limit | 46622 | 131,615 Area | | | Included | | |
| Buildings or Premises - bank or office - mercantile or manufacturing(Lessors risk only) (Other than Not-For-Profit) - Products-completed operations are subject to the General Aggregate Limit | 61212 | 10,000 Area | | | Included | | |

Premium for Endorsements                                                                                    **Included**

**Total Advance Premium**                                      **Included**

| FORMS ATTACHED TO THIS POLICY |
| --- |

*See attached "Schedule of Forms and Endorsements"*



Policy Number: **21-21095212 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

## Commercial General Liability

| Number | Edition | Description |
|---|---|---|
| CG DS 83 00 | 04-2010 | Commercial General Liability Declarations |
| CL CG FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| BLG PHN CY | 10-2021 | New Cyber Coverage Advisory Notice To Policyholders |
| CG 00 01 | 04-2013 | Commercial General Liability Coverage Form |
| CG 01 65 | 08-2005 | Illinois Changes - Condominiums |
| CG 02 00 | 01-2018 | Illinois Changes - Cancellation & Nonrenewal |
| CG 04 35 | 12-2007 | Employee Benefits Liability Form |
| CG 20 04 | 11-1985 | Additional Insured - Condominium Unit Owners |
| CG 20 12 | 12-2019 | Additional Insured - State Or Governmental Agency Or Subdivision Or Political Subdivision - Permits Or Authorizations |
| CG 20 13 | 12-2019 | Additional Insured - State Or Political Subdivisions - Permits Relating To Premises |
| CG 20 18 | 12-2019 | Additional Insured - Mortgagee, Assignee, Or Receiver |
| CG 21 09 | 06-2015 | Exclusion - Unmanned Aircraft |
| CG 21 47 | 12-2007 | Employment Related Practices Exclusion |
| CG 21 67 | 12-2004 | Fungi Or Bacteria Exclusion |
| CG 21 76 | 01-2015 | Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism |
| CG 21 84 | 01-2015 | Exclusion of Certified Nuclear, Biological, Chemical or Radiological Acts of Terrorism; Cap on Losses from Certified Acts of Terrorism |
| CG 21 96 | 03-2005 | Silica Or Silica - Related Dust Exclusion |
| CG 24 54 | 12-2019 | Automatic Insured Status For Newly Acquired or Formed Limited Liability Companies |
| CG 34 36 | 12-2019 | Automatic Insured Status For Newly Acquired or Formed Limited Liability Companies |
| SP 03 | 01-2014 | Duties In The Event Of Occurrence Claim Or Suit Representations |
| SP 158 | 01-2014 | Exclusion Asbestos Hazard |
| SP 161 | 01-2014 | Other Insurance |
| SP 162 | 01-2015 | Illinois Changes-Insured Contract |
| SP 189 | 01-2015 | Habitational Extension Endorsement |
| SP 195H | 04-2020 | Communicable Disease Exclusion |
| SP 354 | 07-2020 | Liberalization Clause |
| SP 361 | 01-2022 | Exclusion - Cyber Incident |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
BLG PHN CY 10 21

# NEW CYBER COVERAGE
# ADVISORY NOTICE TO POLICYHOLDERS

This Notice does not form part of your policy. No coverage is provided by this Notice nor can it be construed to replace any provision of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided. If there is any conflict between the Policy and this Notice, **THE PROVISIONS OF THE POLICY SHALL PREVAIL.**

Carefully read your policy, including the endorsements attached to your policy.

If your policy currently includes cyber coverage, effective with this policy renewal, Berkley Luxury Group is pleased to announce that we are replacing the current Cyber One and Data Compromise products that are currently part of your policy with a new cyber product solution, Cyber Suite coverage. This new Cyber Suite coverage includes all of the same coverages as the previous programs, but also includes new coverages that enhance the overall product while offering a reduction in premium.

Cyber Suite is a comprehensive insurance solution designed to help businesses respond to a full range of cyber incidents including threats of unauthorized intrusion into or interference with computers system, damage to data and systems from a computer attack and cyber-related litigation.

Cyber Suite includes the following nine (9) coverages:

- **Data Compromise Response Expenses**

  Provides coverage for specified expenses arising from a Personal Data Compromise involving Personally Identifiable Information of Affected Individuals. Affected Individuals may be customers, clients, members, owners, directors or employees of the insured entity.

- **Computer Attack**

  Provides coverage for specified expenses arising from a computer attack on the computer system.

- **Cyber Extortion**

  Coverage is provided for the cost of a professional firm hired by the insured to investigate and negotiate a cyber extortion threat – a credible threat or series of threats to launch a potential denial of service attack against an insured.

- **Misdirected Payment Fraud**

  Provides coverage for funds lost by the insured as the result of a criminal deception of the insured or the insured's financial institution to induce the insured or the financial institution to send money or divert a payment to a fraudulent destination.

- **Computer Fraud**

  Provides coverage for funds lost by the insured as a result of an unauthorized party that gains access to the insured's computer system and uses that access to enter or alter data causing money to be sent to a fraudulent destination.

- **Data Compromise Liability**

  Supplements the program by providing coverage for defense and settlement costs in the event that affected individuals sue the insured. The coverage will include defense within the limits.

Page **1** of 2

FILED DATE: 7/18/2025 12:34 PM 2025CH07484



**COMMERCIAL GENERAL LIABILITY**
**BLG PHN CY 10 21**

- **Network Security Liability**

  Provides coverage for defense and settlement costs in the event that a third party claimant sues the insured because of a network security incident.

- **Electronic Media Liability (Not available in New York)**

  Provides coverage for defense and settlement costs in the event that a third party claimant sues the insured alleging that the insured's electronic communications resulted in defamation, violation of a person's right of privacy, interference with a person's right of publicity or infringement of copyright or trademark.

- **Identity Recovery**

  Provides coverage for Identity Recovery caused by an identity theft of an identity recovery insured first discovered during the Policy Period.

Our policy typically provides $250,000 in coverage for this Cyber Suite coverage (subject to coverage sublimits and a deductible), however, higher limits may be available upon request. If your current policy includes cyber coverage at limits higher than $250,000, your Cyber Suite annual aggregate limit will match those limits. For example, if your current policy includes $500,000 in coverage for the Data Compromise and Cyber One coverages, your policy will be renewed with a $500,000 annual aggregate limit for the new Cyber Suite coverage.

Should you have any questions concerning this new Cyber Suite coverage, please contact your broker or underwriter for additional information.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

 © Insurance Services Office, Inc., 2012

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III - Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

FILED DATE: 7/18/2025 12:34 PM 2025CH07484



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** - Limits Of Insurance.

## COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods - Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of web sites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## COVERAGE C - MEDICAL PAYMENTS

**1. Insuring Agreement**

   **a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

      **(1)** On premises you own or rent;

      **(2)** On ways next to premises you own or rent; or

      **(3)** Because of your operations;

      provided that:

         **(a)** The accident takes place in the "coverage territory" and during the policy period;

         **(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

         **(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   **b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      **(1)** First aid administered at the time of an accident;

      **(2)** Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

      **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

   **a. Any Insured**

      To any insured, except "volunteer workers".

   **b. Hired Person**

      To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   **c. Injury On Normally Occupied Premises**

      To a person injured on that part of premises you own or rent that the person normally occupies.

   **d. Workers' Compensation And Similar Laws**

      To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   **e. Athletics Activities**

      To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

   **f. Products-Completed Operations Hazard**

      Included within the "products-completed operations hazard".

   **g. Coverage A Exclusions**

      Excluded under Coverage **A.**

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

         (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I - Coverage A - Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **(1)(a)** or **(b)** above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage **C**;

b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage **B**.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A**; and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1. Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

   **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

### 3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I - Coverage **A** - Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012   **CG 00 01 04 13**

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

**(1)** Equipment designed primarily for:

**(a)** Snow removal;

**(b)** Road maintenance, but not construction or resurfacing; or

**(c)** Street cleaning;

**(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

**(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.



FILED DATE: 7/18/2025 12:34 PM 2025CH07484

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

  **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

  **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

  **a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

    **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)** The providing of or failure to provide warnings or instructions.

  **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

  **a.** Means:

    **(1)** Work or operations performed by you or on your behalf; and

    **(2)** Materials, parts or equipment furnished in connection with such work or operations.

  **b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)** The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

COMMERCIAL GENERAL LIABILITY
CG 01 65 08 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CONDOMINIUMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include the following as an insured:

1. The developer in the developer's capacity as a unit owner, but only with respect to the developer's liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the developer. However, the insurance afforded with respect to the developer does not apply to liability for acts or omissions as a developer.

2. Each other unit owner and secured party of the described condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not owned solely by the unit-owner.

3. Any agent of yours, and any "employee" or agent of the management agency, while acting within the scope of their duties for you. However, no agent of yours, or agent or "employee" of the management agency is an insured for:

   a. "Bodily injury" or "personal and advertising injury":

      (1) To a co-"employee" while that co-"employee" is either in the course of his or her employment or performing his or her duties related to the conduct of your business;

      (2) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph **a.(1)** above;

      (3) To you or an employer, or if the employer is a partnership or joint venture, any partners or members or, if the employer is a limited liability company, any member;

      (4) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **a.(1)**, **(2)** or **(3)** above; or

      (5) Arising out of his or her providing or failing to provide professional health care services.

   b. "Property damage" to property:

      (1) Owned, occupied or used by,

      (2) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by,

      you or any of your "employees".

**B.** The following is added to Paragraph **8.** – **Transfer Of Rights Of Recovery Against Others To Us (Section IV – Commercial General Liability Conditions):**

We waive any rights which the Transfer Of Rights Of Recovery Against Others To Us Condition may give us against:

   a. Any unit-owner of the condominium or members of the unit-owner's household;

   b. The condominium association; and

   c. Members of the board of directors for acts or omissions within the scope of their duties for you.

The unit-owner waives any rights of subrogation under this policy against the association and the board of directors.

© ISO Properties, Inc., 2005

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 02 00 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PRODUCT WITHDRAWAL COVERAGE PART

**A. Cancellation** (Common Policy Conditions) is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing to us advance written notice of cancellation.

2. We may cancel this Policy by mailing to you, at your last mailing address known to us, written notice stating the reason for cancellation. Proof of mailing will be sufficient proof of notice. If we cancel:

   a. For nonpayment of premium, we will mail the notice at least 10 days prior to the effective date of cancellation.

   b. For a reason other than nonpayment of premium, we will mail the notice at least:

      (1) 30 days prior to the effective date of cancellation if the Policy has been in effect for 60 days or less.

      (2) 60 days prior to the effective date of cancellation if the Policy has been in effect for more than 60 days.

3. If this Policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The Policy was obtained through a material misrepresentation;

   c. Any insured has violated any of the terms and conditions of the Policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer that provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the insurance laws of this State.

4. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this Policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund will be less than pro rata. The cancellation will be effective even if we have not offered a refund.

CG 02 00 01 18 © Insurance Services Office, Inc., 2017 Page 1 of 2



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification of nonrenewal will also be sent to your broker, if known, or agent of record, if known. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

© Insurance Services Office, Inc., 2017  **CG 02 00 01 18**



POLICY NUMBER: 21-21095212-40

**COMMERCIAL GENERAL LIABILITY
CG 04 35 12 07**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYEE BENEFITS LIABILITY COVERAGE

**THIS ENDORSEMENT PROVIDES CLAIMS MADE COVERAGE.
PLEASE READ THE ENTIRE ENDORSEMENT CAREFULLY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Limit Of Insurance | | Deductible | | Premium |
|---|---|---|---|---|---|
| Employee Benefits Programs | $ 1,000,000 | each employee | $ 1,000 | each employee | Included |
| | $ 1,000,000 | aggregate | | | |
| Retroactive Date: | 07/25/2012 | | | | |

**A.** The following is added to **Section I - Coverages:**

**COVERAGE  EMPLOYEE BENEFITS LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of any act, error or omission, of the insured, or of any other person for whose acts the insured is legally liable, to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply. We may, at our discretion, investigate any report of an act, error or omission and settle any "claim" or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Paragraph **D.** (Section III  Limits Of Insurance); and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

**b.** This insurance applies to damages only if:

**(1)** The act, error or omission, is negligently committed in the "administration" of your "employee benefit program";

**(2)** The act, error or omission, did not take place before the Retroactive Date, if any, shown in the Schedule nor after the end of the policy period; and

**(3)** A "claim" for damages, because of an act, error or omission, is first made against any insured, in accordance with Paragraph **c.** below, during the policy period or an Extended Reporting Period we provide under Paragraph **F.** of this endorsement.

**c.** A "claim" seeking damages will be deemed to have been made at the earlier of the following times:

**(1)** When notice of such "claim" is received and recorded by any insured or by us, whichever comes first; or

© ISO Properties, Inc., 2006

**(2)** When we make settlement in accordance with Paragraph **a.** above.

A "claim" received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

**d.** All "claims" for damages made by an "employee" because of any act, error or omission, or a series of related acts, errors or omissions, including damages claimed by such "employee's" dependents and beneficiaries, will be deemed to have been made at the time the first of those "claims" is made against any insured.

**2. Exclusions**

This insurance does not apply to:

**a. Dishonest, Fraudulent, Criminal Or Malicious Act**

Damages arising out of any intentional, dishonest, fraudulent, criminal or malicious act, error or omission, committed by any insured, including the willful or reckless violation of any statute.

**b. Bodily Injury, Property Damage, Or Personal And Advertising Injury**

"Bodily injury", "property damage" or "personal and advertising injury".

**c. Failure To Perform A Contract**

Damages arising out of failure of performance of contract by any insurer.

**d. Insufficiency Of Funds**

Damages arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program".

**e. Inadequacy Of Performance Of Investment/Advice Given With Respect To Participation**

Any "claim" based upon:

**(1)** Failure of any investment to perform;

**(2)** Errors in providing information on past performance of investment vehicles; or

**(3)** Advice given to any person with respect to that person's decision to participate or not to participate in any plan included in the "employee benefit program".

**f. Workers' Compensation And Similar Laws**

Any "claim" arising out of your failure to comply with the mandatory provisions of any workers' compensation, unemployment compensation insurance, social security or disability benefits law or any similar law.

**g. ERISA**

Damages for which any insured is liable because of liability imposed on a fiduciary by the Employee Retirement Income Security Act of 1974, as now or hereafter amended, or by any similar federal, state or local laws.

**h. Available Benefits**

Any "claim" for benefits to the extent that such benefits are available, with reasonable effort and cooperation of the insured, from the applicable funds accrued or other collectible insurance.

**i. Taxes, Fines Or Penalties**

Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state or local law.

**j. Employment-Related Practices**

Damages arising out of wrongful termination of employment, discrimination, or other employment-related practices.

**B.** For the purposes of the coverage provided by this endorsement:

**1.** All references to Supplementary Payments Coverages **A** and **B** are replaced by Supplementary Payments Coverages **A, B** and **Employee Benefits Liability.**

**2.** Paragraphs **1.b.** and **2.** of the Supplementary Payments provision do not apply.

**C.** For the purposes of the coverage provided by this endorsement, Paragraphs **2.** and **3.** of **Section II Who Is An Insured** are replaced by the following:

**2.** Each of the following is also an insured:

**a.** Each of your "employees" who is or was authorized to administer your "employee benefit program".

**b.** Any persons, organizations or "employees" having proper temporary authorization to administer your "employee benefit program" if you die, but only until your legal representative is appointed.

**c.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Endorsement.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if no other similar insurance applies to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

© ISO Properties, Inc., 2006 CG 04 35 12 07

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**b.** Coverage under this provision does not apply to any act, error or omission that was committed before you acquired or formed the organization.

**D.** For the purposes of the coverage provided by this endorsement, **Section III Limits Of Insurance** is replaced by the following:

**1. Limits Of Insurance**

**a.** The Limits of Insurance shown in the Schedule and the rules below fix the most we will pay regardless of the number of:

**(1)** Insureds;

**(2)** "Claims" made or "suits" brought;

**(3)** Persons or organizations making "claims" or bringing "suits";

**(4)** Acts, errors or omissions; or

**(5)** Benefits included in your "employee benefit program".

**b.** The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions negligently committed in the "administration" of your "employee benefit program".

**c.** Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one "employee", including damages sustained by such "employee's" dependents and beneficiaries, as a result of:

**(1)** An act, error or omission; or

**(2)** A series of related acts, errors or omissions

negligently committed in the "administration" of your "employee benefit program".

However, the amount paid under this endorsement shall not exceed, and will be subject to, the limits and restrictions that apply to the payment of benefits in any plan included in the "employee benefit program".

The Limits of Insurance of this endorsement apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations of the policy to which this endorsement is attached, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits Of Insurance.

**2. Deductible**

**a.** Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in the Schedule as applicable to Each Employee. The limits of insurance shall not be reduced by the amount of this deductible.

**b.** The deductible amount stated in the Schedule applies to all damages sustained by any one "employee", including such "employee's" dependents and beneficiaries, because of all acts, errors or omissions to which this insurance applies.

**c.** The terms of this insurance, including those with respect to:

**(1)** Our right and duty to defend any "suits" seeking those damages; and

**(2)** Your duties, and the duties of any other involved insured, in the event of an act, error or omission, or "claim"

apply irrespective of the application of the deductible amount.

**d.** We may pay any part or all of the deductible amount to effect settlement of any "claim" or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**E.** For the purposes of the coverage provided by this endorsement, Conditions **2.** and **4.** of Section IV **Commercial General Liability Conditions** are replaced by the following:

**2. Duties In The Event Of An Act, Error Or Omission, Or "Claim" Or "Suit"**

**a.** You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a "claim". To the extent possible, notice should include:

**(1)** What the act, error or omission was and when it occurred; and

**(2)** The names and addresses of anyone who may suffer damages as a result of the act, error or omission.

**b.** If a "claim" is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the "claim" or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the "claim" or "suit" as soon as practicable.

**c.** You and any other involved insured must:

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "claim" or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the "claim" or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an act, error or omission to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense without our consent.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under this endorsement, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the policy period shown in the Schedule of this insurance and that applies to an act, error or omission on other than a claims-made basis, if:

**(a)** No Retroactive Date is shown in the Schedule of this insurance; or

**(b)** The other insurance has a policy period which continues after the Retroactive Date shown in the Schedule of this insurance.

**(2)** When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of the total amount that all such other insurance would pay for the loss in absence of this insurance; and the total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limits of insurance to the total applicable limits of insurance of all insurers.

**F.** For the purposes of the coverage provided by this endorsement, the following Extended Reporting Period provisions are added, or, if this endorsement is attached to a claims-made Coverage Part, replaces any similar Section in that Coverage Part:

**EXTENDED REPORTING PERIOD**

**1.** You will have the right to purchase an Extended Reporting Period, as described below, if:

**a.** This endorsement is canceled or not renewed; or

**b.** We renew or replace this endorsement with insurance that:

**(1)** Has a Retroactive Date later than the date shown in the Schedule of this endorsement; or

**(2)** Does not apply to an act, error or omission on a claims-made basis.

**2.** The Extended Reporting Period does not extend the policy period or change the scope of coverage provided. It applies only to "claims" for acts, errors or omissions that were first committed before the end of the policy period but not before the Retroactive Date, if any, shown in the Schedule. Once in effect, the Extended Reporting Period may not be canceled.

© ISO Properties, Inc., 2006    **CG 04 35 12 07**

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**3.** An Extended Reporting Period of five years is available, but only by an endorsement and for an extra charge.

You must give us a written request for the endorsement within 60 days after the end of the policy period. The Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due.

We will determine the additional premium in accordance with our rules and rates. In doing so, we may take into account the following:

**a.** The "employee benefit programs" insured;

**b.** Previous types and amounts of insurance;

**c.** Limits of insurance available under this endorsement for future payment of damages; and

**d.** Other related factors.

The additional premium will not exceed 100% of the annual premium for this endorsement.

The Extended Reporting Period endorsement applicable to this coverage shall set forth the terms, not inconsistent with this Section, applicable to the Extended Reporting Period, including a provision to the effect that the insurance afforded for "claims" first received during such period is excess over any other valid and collectible insurance available under policies in force after the Extended Reporting Period starts.

**4.** If the Extended Reporting Period is in effect, we will provide an extended reporting period aggregate limit of insurance described below, but only for claims first received and recorded during the Extended Reporting Period.

The extended reporting period aggregate limit of insurance will be equal to the dollar amount shown in the Schedule of this endorsement under Limits of Insurance.

Paragraph **D.1.b.** of this endorsement will be amended accordingly. The Each Employee Limit shown in the Schedule will then continue to apply as set forth in Paragraph **D.1.c.**

**G.** For the purposes of the coverage provided by this endorsement, the following definitions are added to the **Definitions** Section:

**1.** "Administration" means:

**a.** Providing information to "employees", including their dependents and beneficiaries, with respect to eligibility for or scope of "employee benefit programs";

**b.** Handling records in connection with the "employee benefit program"; or

**c.** Effecting, continuing or terminating any "employee's" participation in any benefit included in the "employee benefit program".

However, "administration" does not include handling payroll deductions.

**2.** "Cafeteria plans" means plans authorized by applicable law to allow employees to elect to pay for certain benefits with pre-tax dollars.

**3.** "Claim" means any demand, or "suit", made by an "employee" or an "employee's" dependents and beneficiaries, for damages as the result of an act, error or omission.

**4.** "Employee benefit program" means a program providing some or all of the following benefits to "employees", whether provided through a "cafeteria plan" or otherwise:

**a.** Group life insurance, group accident or health insurance, dental, vision and hearing plans, and flexible spending accounts, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to those "employees" who satisfy the plan's eligibility requirements;

**b.** Profit sharing plans, employee savings plans, employee stock ownership plans, pension plans and stock subscription plans, provided that no one other than an "employee" may subscribe to such benefits and such benefits are made generally available to all "employees" who are eligible under the plan for such benefits;

**c.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

**d.** Vacation plans, including buy and sell programs; leave of absence programs, including military, maternity, family, and civil leave; tuition assistance plans; transportation and health club subsidies; and

**e.** Any other similar benefits designated in the Schedule or added thereto by endorsement.

**H.** For the purposes of the coverage provided by this endorsement, Definitions **5.** and **18.** in the **Definitions** Section are replaced by the following:

**5.** "Employee" means a person actively employed, formerly employed, on leave of absence or disabled, or retired. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**18.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – CONDOMINIUM UNIT OWNERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

WHO IS AN INSURED (Section II) is amended to include as an insured each individual unit owner of the insured condominium, but only with respect to liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**POLICY NUMBER:** 21-21095212-40

COMMERCIAL GENERAL LIABILITY
CG 20 12 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - STATE OR GOVERNMENTAL AGENCY OR SUBDIVISION OR POLITICAL SUBDIVISION - PERMITS OR AUTHORIZATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
|---|
| City of Chicago, Its Officers, Employees or Agents Department of Transportation - Driveway Permits, 121 N LaSalle St Rm 905, Chicago, IL 60602 |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following provisions:

1. This insurance applies only with respect to operations performed by you or on your behalf for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization.

   However:

   a. The insurance afforded to such additional insured only applies to the extent permitted by law; and

   b. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

2. This insurance does not apply to:

   a. "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the federal government, state or municipality; or

   b. "Bodily injury" or "property damage" included within the "products-completed operations hazard".

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 12 12 19**          © Insurance Services Office, Inc., 2018          **Page 1 of 1**

**POLICY NUMBER:** 21-21095212-40

**COMMERCIAL GENERAL LIABILITY**
**CG 20 13 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - STATE
# OR GOVERNMENTAL AGENCY OR SUBDIVISION
# OR POLITICAL SUBDIVISION - PERMITS
# OR AUTHORIZATIONS RELATING TO PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

| State Or Governmental Agency Or Subdivision Or Political Subdivision: |
|---|
| City of Chicago Dept. of Business Affairs & Consumer Protection, Business Asst. Ctr- Public Way Use Unit, 121 N. LaSalle St., Ste. 800 Chicago, IL 60602 |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

**A. Section II – Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision shown in the Schedule, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

1. The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

2. The construction, erection or removal of elevators; or

3. The ownership, maintenance or use of any elevators covered by this insurance.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

**CG 20 13 12 19**

© Insurance Services Office, Inc., 2018

**Page 1 of 1**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

POLICY NUMBER: 21-21095212-40

**COMMERCIAL GENERAL LIABILITY**
**CG 20 18 12 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MORTGAGEE, ASSIGNEE OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name(s) Of Person(s) Or Organization(s) | Designation Of Premises |
|---|---|
| Barrington Bank & Trust N.A; 9801 W Higgins Rd., 4th Floor, , Rosemont, IL 60018 | 211 E Ohio St, Chicago, IL 60611-3262 |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as mortgagee, assignee or receiver and arising out of the ownership, maintenance or use of the premises by you and shown in the Schedule.

However:

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or

2. Available under the applicable limits of insurance;

whichever is less.

This endorsement shall not increase the applicable limits of insurance.

© Insurance Services Office, Inc., 2018

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 21 09 06 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

© Insurance Services Office, Inc., 2014

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

(e) "Bodily injury" or "property damage" arising out of:

    (i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

   **(a)** Refusal to employ that person;

   **(b)** Termination of that person's employment; or

   **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a), (b),** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a), (b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

    © ISO Properties, Inc., 2006       □

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 21 76 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 21 84 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED NUCLEAR, BIOLOGICAL, CHEMICAL OR RADIOLOGICAL ACTS OF TERRORISM; CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism". However, this exclusion applies only when one or more of the following are attributed to such act:

**1.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**2.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**3.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

© Insurance Services Office, Inc., 2015

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**D.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© Insurance Services Office, Inc., 2015     CG 21 84 01 15

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph **2.**, Exclusions of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
CG 24 54 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTOMATIC INSURED STATUS FOR NEWLY ACQUIRED OR FORMED LIMITED LIABILITY COMPANIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **3.** under **Section II – Who Is An Insured** is replaced by the following:

**3.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

**B.** The last paragraph of **Section II – Who Is An Insured** is replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past:

**1.** Partnership or joint venture; or

**2.** Limited liability company, unless Paragraph **A.** above applies;

that is not shown as a Named Insured in the Declarations.

   © Insurance Services Office, Inc., 2018

COMMERCIAL GENERAL LIABILITY
CG 34 36 12 19

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AUTOMATIC INSURED STATUS FOR NEWLY ACQUIRED OR FORMED LIMITED LIABILITY COMPANIES

This endorsement modifies insurance provided under the following:

LIQUOR LIABILITY COVERAGE PART

**A.** Paragraph **3.** under **Section II – Who Is An Insured** is replaced by the following:

**3.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization.

However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

**b.** Coverage does not apply to "injury" that occurred before you acquired or formed the organization.

**B.** The last paragraph of **Section II – Who Is An Insured** is replaced by the following:

No person or organization is an insured with respect to the conduct of any current or past:

**1.** Partnership or joint venture; or

**2.** Limited liability company, unless Paragraph **A.** above applies;

that is not shown as a Named Insured in the Declarations.

© Insurance Services Office, Inc., 2018

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL GENERAL LIABILITY**
**SP 03 01 14**

**POLICY NUMBER:** 21-21095212-40                **ENDORSEMENT NUMBER:**

**ISSUED TO:**    The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing address
shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.**

# DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT- REPRESENTATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** Section **IV - Commercial General Liability Conditions** is amended as follows:

  **1.** Paragraph **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit** is amended as follows:

    **a.** Paragraph **b.** is deleted in its entirety and replaced by the following:

    **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received;

      **(2)** Notify us as soon as practicable; and

      **(3)** Promptly tender the defense of any claim made or "suit" to any other insurer that may have available insurance for an "occurrence" or an offense resulting in the claim or "suit."

    You must see to it that we and any other insurer receive written notice of the claim or "suit" as soon as practicable.

    **b.** The following is added at the end thereof:

    **e.** **Notice to Workers Compensation Insurer**

    Notice to the Named Insured's Workers Compensation insurer of an occurrence, offense, claim or suit, which is determined later to be covered by our insuring agreement, will not void our insuring agreement with you.  However, you must then notify us as soon as practical.

  **2.** Paragraph **c.** of paragraph **6. Representations** is deleted in its entirety and replaced by the following:

    **c.** We have issued this policy in reliance upon your representations.  However, your unintentional errors or omissions will not void our insuring agreement with you.

COMMERCIAL GENERAL LIABILITY
SP 158 01 14

**POLICY NUMBER:** 21-21095212-40        **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022

(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS HAZARD

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I - Coverage A - Bodily Injury And Property Damage Liability and Paragraph **2. Exclusions** of Section I - Coverage B - Personal And Advertising Injury Liability:

    **2. Exclusions**

    This insurance does not apply to:

    **ASBESTOS HAZARD**

    **a.** "Bodily injury," "property damage," "personal and advertising injury" or medical payments which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "asbestos hazard" on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, any "asbestos hazard," by any insured or by any other person or entity.

**B.** The following definition is added to **SECTION V - Definitions**:

"Asbestos hazard" means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

COMMERCIAL GENERAL LIABILITY
SP 161 01 14

**POLICY NUMBER:** 21-21095212-40        **ENDORSEMENT NUMBER:**

**ISSUED TO:**    The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
                                    (12:01 A.M. Standard time at your mailing
                                      address shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

# OTHER INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Paragraph **4. Other Insurance** of **Section IV - Commercial General Liability Conditions** is deleted in its entirety and replaced by the following:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Excess Insurance**

**(1)** This insurance is in excess over:

    **(a)** Any of the other insurance; whether primary, excess, contingent or on any other basis:

        **(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk, or similar coverage for "your work";

        **(ii)** That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner;

        **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

        **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion **g.** of **Section I - Coverage A - Bodily Injury And Property Damage Liability**.

    **(b)** Any other insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

    **(c)** Any other valid and collectible insurance, including its defense cost provisions. This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**b.  Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

  Includes copyrighted material of ISO Properties, Inc., with its permission  SP 161 01 14

FILED DATE: 7/18/2025 12:34 PM  2025CH07484



COMMERCIAL GENERAL LIABILITY
SP 162 01 15

POLICY NUMBER: 21-21095212-40          ENDORSEMENT NUMBER:

**ISSUED TO:**   The Grand Ohio Condominium Association

**BY:**  Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing
address shown in the Declarations.)

## THIS ENDORSEMENT CHANGES THIS POLICY.  PLEASE READ IT CAREFULLY.

# ILLINOIS CHANGES - INSURED CONTRACT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Definition **9. Insured contract** of **Section IV - Commercial General Liability Conditions** is amended to include the following at the end thereof:

   **g.**   "Insured contract" does not include your liability to a third party by reason of a claim or "suit" against you by that third party for contribution under the Illinois Joint Tortfeasor Contribution Act for damages claimed against such third party as a result of injury to your employee if you have that liability because you have waived, in a contract, your right to limit such liability to the amount of the workers compensation benefits paid for that injured employee under the Illinois Workers Compensation Act.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
SP 189 01 15

(The attaching clause needs to be completed only when the coverage is provided subsequent to preparation of the policy)

**POLICY NUMBER:** 21-21095212 -40          **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:**          07/25/2022
(12:01 A.M. Standard time at your mailing address shown in the Declarations.)

**THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.**

# HABITATIONAL EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Location # | Address of Premises |
|---|---|
| 1 | 211 E Ohio St, Chicago, Illinois,  60611-3262 |

With respect to the locations specified in the schedule above:

**SECTION I - COVERAGES** is amended to include the following at the end thereof:

**A. Sale and Disposal Liability Coverage**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of acts or omissions arising out of a "lock-out", or the sale, removal or disposal of "unit owners property" in the course of "sale and disposal operations."  We will have the right and duty to defend the insured against "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.  However, we will have no duty to defend the insured against any "suit" seeking damages for errors or omissions to which this insurance does not apply.  We may, at our discretion, investigate the circumstances of any act or omission and settle any claim or "suit" that may result.  But:

      **(1)** The amount we will pay for damages is limited as described in the **Limits Of Insurance** section.

      **(2)** Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments or settlements under this Sale And Disposal Liability Coverage.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under that Supplementary Payments provision.

   b. This insurance applies only to an act or omission which takes place in the "coverage territory" and during the policy period.

2. **Exclusions**

   This insurance does not apply to:

   a. Liability for damages which the insured is obliged to pay by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

FILED DATE: 7/18/2025 12:34 PM  2025CH07484



**b.** Liability arising out of dishonest or criminal acts by you, your "employees" or any other person to whom you may entrust such property.

**3. Supplementary Payments**

The **Supplementary Payments** provision applicable to the Bodily Injury And Property Damage Liability and Personal And Advertising Injury Liability coverage also applies to this Sale and Disposal Liability Coverage.

**4.** The following is added to the **Limits of Insurance** section.

**a.** The most we will pay for the sum of all damages because of all acts or omissions arising out of a "lock-out" or the sale, removal or disposal of "unit owners property" under the Sale and Disposal Liability Coverage is $100,000 in any annual period starting with the beginning of the policy period shown in the Declarations. This limit applies separately to each premises described in the Declarations.

**5.** The following conditions replace the **Duties In The Event Of Occurrence, Offense, Claim Or Suit** Condition under the Commercial General Liability Conditions for the Sale And Disposal Liability coverage:

**a.** If a claim is made or "suit" is brought against any insured as a result of a "lock-out" or sale of "unit owners' property" you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**b.** You, and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information.

**(3)** Cooperate with us in our investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assists us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of an action to which this insurance may apply.

**c.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

**6.** The following additional Definitions apply:

**a.** "Lock-out" means denying a "unit owner" access to the "unit owners property" or the occupancy of an apartment the "unit owner" is occupying.

**b.** "Unit owner" means anyone who is lawfully residing in a unit or apartment of a Covered Building.

A person is lawfully residing in a unit or apartment if:

**(1)** He or she is in compliance with the terms of the charter, constitution, by-laws or any other similar governing document of the named insured; and

**(2)** He or she is a permanent resident of such unit or apartment.

**c.** "Unit owners property" means "money", "securities" and other tangible property having intrinsic value that belongs to your "unit owners".

**d.** "Sale And Disposal Operations" means all activities you conduct to reclaim an apartment or storage space when a "unit owner's" maintenance payment is delinquent or unpaid.

**B. Pollution Exclusion - Limited Exception for a Short-Term Pollution Event**

**1.** The following replaces Exclusion **f.** under Paragraph **2. Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability:**

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the buildings occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured;

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(iv)** "Bodily injury" or "property damage" arising out of a "short-term pollution event" provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending. However, failure to give notice within the time prescribed shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor;

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire"; or

**(iv)** "Bodily injury" or "property damage" arising out of a short-term pollution event provided you notify us of the "short-term pollution event" as soon as practicable, but no more than fourteen (14) days after its ending. However, failure to give notice within the time prescribed shall not invalidate any claim made by the insured or by any other claimant if it shall be shown not to have been reasonably possible to give such notice within the prescribed time and that notice was given as soon as was reasonably possible.

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are per-forming operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a govern-mental authority.

**2.** The following are added to the **Definitions** Section:

    **a.** "Short-term pollution event" means a discharge, dispersal, release or escape of "pollutants" which:

        **(1)** Begins during the policy period;

        **(2)** Begins at an identified time and place;

        **(3)** Ends, in its entirety, at an identified time within forty-eight (48) hours of the beginning of the discharge, dispersal, release or escape of the "pollutants";

        **(4)** Is not a repeat or resumption of a previous discharge, dispersal, release or escape of the same pollutant from essentiality the same source within twelve (12) months of a previous discharge, dispersal, release or escape;

        **(5)** Does not originate from an "underground storage tank"; and

        **(6)** Is not heat, smoke or fumes from a "hostile fire".

        To be a "short-term pollution event", the discharge, dispersal, release or escape of "pollutants" need not be continuous. However, if the discharge, dispersal, release or escape is not continuous, then all discharges, dispersals, releases or escapes of the same "pollutants" from essentially the same source, considered together, must satisfy Provisions **(1)** through **(6)** of this definition to be considered a "short-term pollution event".

    **b.** "Underground storage tank" means any storage tank, including any attached pumps, valves or piping, buried below the surface of the ground or water, or which, at any time, had been buried under the surface of the ground or water and then subsequently exposed by any means. For the purposes of this definition, buried means that at least 10% of it is below the surface of the ground or water.

**C. Exception to the Limitation of Coverage To Designated Premises Endorsement (CG 21 44)**

If the **Limitation of Coverage to Designated Premises or Project** endorsement (**CG 21 44**) is attached to this Coverage Part, it does not apply to sums you are legally obligated to pay as damages because of "bodily injury," "property damage," "personal and advertising injury" and medical expenses arising out of:

**1.** Premises leased for your annual meeting; and

**2.** An "executive officer" while attending a trade show, exhibition or convention.

**D. Broadened Named Insured**

**1.** The Named Insured reflected on the Declarations is amended to include any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of this policy. However, coverage for any such organization will cease as of the date, during the policy period, that you no longer maintain ownership of, or majority interest in, such organization.

**2.** Paragraph **3.a.** of **Section II - Who Is An Insured** is deleted in its entirety and replaced by the following:

    **a.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, unless reported to us in writing within 180 days.

**3.** This provision **D.** does not apply to any person or organization for which coverage is excluded by endorsement.

**E. Damage To Premises Rented To You Extension**

**1.** The final paragraph of **Section I - Coverages, Coverage A - Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

    Exclusions **c.** through **n.** do not apply to "property damage" to premises rented to you, or temporarily occupied by you with permission of the owner, caused by:

    **a.** Fire;

    **b.** Explosion;

    **c.** Lightning;

    **d.** Smoke resulting from such fire, explosion, or lightning; or

    **e.** Leakage from automatic fire protective systems.

    A separate limit of insurance applies to this coverage as described in **Section III - Limits Of Insurance**.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

2. This insurance does not apply to "property damage" to premises rented to you, or temporarily occupied by you with permission of the owner, caused by:

   a. Rupture, bursting, or operation of pressure relief devices;

   b. Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water;

   c. Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

3. Paragraph **6.** of **Section III - Limits Of Insurance** is deleted in its entirety and replaced by the following:

   **6.** Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner, caused by fire, explosion, lightning, smoke resulting such fire, explosion, or lightning or leakage from automatic fire protective systems.. The Damage To Premises Rented To You Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire, explosion, lightning, smoke resulting such fire, explosion, or lightning or leakage from automatic fire protective systems, or any combination of these.

   The Damage To Premises Rented To You Limit will be the higher of:

   a. $300,000; or

   b. The amount shown on the Declarations for Damage To Premises Rented To You Limit.

4. For purposes of this coverage, paragraph **9.a.** of **Section V - Definitions** does not include that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

   a. Fire;

   b. Explosion;

   c. Lightning;

   d. Smoke resulting from such fire, explosion, or lightning; or

   e. Leakage from automatic fire protective systems

5. This provision **E.** does not apply if coverage for Damage To Premises Rented To You is excluded by endorsement.

**F. Blanket Additional Insured - Managers or Lessors of Premises**

1. **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability arising out of the ownership, maintenance or use of that part of any premises leased to you, subject to the following provisions:

2. This insurance does not apply to:

   a. Any "occurrence" which takes place after you cease to be a tenant in that premises;

   b. Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured; or

   c. Any premises for which coverage is excluded by endorsement.

3. The insurance afforded to such additional insured:

   a. only applies to the extent permitted by law; and

   b. will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

4. With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

   The most we will pay on behalf of the additional insured is the amount of insurance:

   a. Required by the contract or agreement; or

   b. Available under the applicable Limits of Insurance shown in the Declarations;

   whichever is less.

   This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**G. Blanket Additional Insured - Lessors of Leased Equipment**

1. **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and



advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such additional insured, subject to the following provisions:

**2.** This insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**3.** The insurance afforded to such additional insured:

    **a.** only applies to the extent permitted by law; and

    **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**4.** With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

The most we will pay on behalf of the additional insured is the amount of insurance:

    **a.** Required by the contract or agreement; or

    **b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**H. Blanket Additional Insured - Vendors**

**1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability for "bodily injury" or"property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following provisions:

**2.** This insurance afforded the vendor does not apply to:

    **a.** "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    **b.** Any express warranty unauthorized by you;

    **c.** Any physical or chemical change in the product made intentionally by the vendor;

    **d.** Repackaging, except when unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    **e.** Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    **f.** Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    **g.** Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor; or

    **h.** "Bodily injury" or "property damage" arising out of the sole negligence of the vendor for its own acts or omissions or those of its employees or anyone else acting on its behalf. However, this exclusion does not apply to:

        **(1)** The exceptions contained in paragraphs **2.d.** or **2.f.** above; or

        **(2)** Such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products.

**3.** This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

**4.** The insurance afforded to such additional insured:

    **a.** only applies to the extent permitted by law; and

    **b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**5.** With respect to the insurance afforded to these vendors, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

The most we will pay on behalf of the vendor is the amount of insurance:

    **a.** Required by the contract or agreement; or

FILED DATE: 7/18/2025 12:34 PM  2025CH07484

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**I. Blanket Additional Insured - Mortgagees, Assignees or Receivers**

**1.** **Section II - Who Is An Insured** is amended to include as an additional insured, any person(s) or organization(s) with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only with respect to liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you, subject to the following provisions:

**2.** This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

**3.** The insurance afforded to such additional insured:

**a.** only applies to the extent permitted by law; and

**b.** will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**4.** With respect to the insurance afforded to these additional insureds, **Section III - Limits of Insurance** is amended to include the following at the end thereof:

The most we will pay on behalf of the additional insured is the amount of insurance:

**a.** Required by the contract or agreement; or

**b.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**J. Incidental Medical Malpractice**

**1.** **Section V - Definitions** is amended as follows:

**a.** Paragraph **3.** is amended to include "incidental medical malpractice injury".

**b.** The following is added at the end thereof:

"Incidental medical malpractice injury" means bodily injury, mental anguish, sickness or disease sustained by a person, including death resulting from any of these at any time, arising out of the rendering of, or failure to render, the following services:

**(1)** Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

**(2)** The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances;

**(3)** First aid, or

**(4)** "Good Samaritan services", meaning those medical services rendered or provided in an emergency and for which no remuneration is demanded or received.

**2.** Paragraph **2.a.(1)(d)** of **Section II - Who Is An Insured**, does not apply to any registered nurse, licensed practical nurse, emergency medical technician or paramedic employed by you, but only while performing the services described in paragraph **1.b.** above and while acting within the scope of their employment by you. Any "employees" rendering "Good Samaritan services" will be deemed to be acting within the scope of their employment.

**3.** Paragraph **2.** of **Coverage A - Bodily Injury And Property Damage Liability** is amended to include the following:

Liability arising out of the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals by or with the knowledge or consent of the insured.

**4.** For the purposes of determining the applicable limits of insurance, any act or omission, together with all related acts or omissions in the furnishing of the services described in paragraph **1.b.** above to any one person, will be considered one "occurrence".

**5.** This provision **J.** does not apply if you are in the business or occupation of providing any of the services described in paragraph **1.b.** above.

**6.** The insurance provided by this provision **J.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**K. Personal Injury - Assumed By Contract**

FILED DATE: 7/18/2025 12:34 PM    2025CH07484



1. Paragraph **2.e.** of **Coverage B - Personal And Advertising Injury Liability** is deleted in its entirety and replaced by the following:

   **e. Contractual Liability**

   "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to:

   **(1)** Liability for damages that the insured would have in the absence of the contract or agreement; or

   **(2)** Liability for "personal injury," arising out of the offenses of false arrest, detention or imprisonment, undertaken in that part of the contract or agreement pertaining to your business in which you assume the "tort liability" of another. The contract or agreement must be made prior to the offense. "Tort liability" means a liability that would be imposed by law in the absence of any contract or agreement.

2. This provision **K.** does not apply if **Coverage B - Personal And Advertising Injury Liability** is excluded by endorsement.

## L. Extension of Coverage - Bodily Injury

Paragraph **3.** of **Section V - Definitions** is deleted in its entirety and replaced by the following:

3. "Bodily injury" means physical:

   **a.** Injury;

   **b.** Sickness; or

   **c.** Disease;

   sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.

## M. Injury to Co-Employee

1. It is agreed that your "employees" are insureds with respect to "bodily injury" to a co-"employee" in the course of the co-"employee's" employment by you, provided that this coverage for your "employees" does not apply to acts outside the scope of their employment by you or while performing duties unrelated to the conduct of your business.

2. Paragraphs **2.a.(1)(a), (b), (c)** and **3.a.** of **Section II - Who Is An Insured** do not apply to "bodily injury" for which insurance is provided under paragraph **1.** above.

## N. Non-Owned Watercraft

1. Paragraph **2.g.(2)** of **Coverage A - Bodily Injury And Property Damage Liability** is deleted in its entirety and replaced by the following:

   **(2)** A watercraft you do not own that is:

   **(a)** Less than 51 feet long; and

   **(b)** Not being used to carry persons or property for a charge.

2. This provision **N.** applies to any person who, with your expressed or implied consent, either uses or is responsible for the use of a watercraft.

3. The insurance provided by this provision **N.** shall be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

## O. Increased Supplementary Payments

**Supplementary Payments - Coverages A And B** is amended as follows:

1. The limit referenced in paragraph **1.b.** is increased from $250 to $2,500.

2. The limit referenced in paragraph **1.d.** is increased from $250 a day to $500 a day.

## P. Unintentional Omission

1. Paragraph **6.** of **Section IV - Commercial General Liability Conditions** is amended to include the following at the end thereof:

   The unintentional omission of, or unintentional error in, any information provided by you shall not prejudice your rights under this insurance. However, this provision **P.** does not affect our right to collect additional premium or to exercise our right of cancellation or nonrenewal in accordance with applicable state insurance laws, codes or regulations.

## Q. Additional Insured - State or Governmental Agency or Subdivision or Political Subdivision - Permits or Authorizations Relating to Premises

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

1.  **Section II - Who Is An Insured** is amended to include as an additional insured any state or governmental agency or subdivision or political subdivision with whom you have agreed to name as an additional insured, but only with respect to the following hazards for which the state or governmental agency or subdivision or political subdivision has issued a permit or authorization in connection with premises you own, rent or control and to which this insurance applies:

    a.  The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners or decorations and similar exposures; or

    b.  The construction, erection or removal of elevators; or

    c.  The ownership, maintenance or use of any elevators covered by this insurance.

    However:

2.  The insurance afforded to such additional insured:

    a.  only applies to the extent permitted by law; and

    b.  will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

3.  With respect to the insurance afforded to these additional insureds, the following is added to **Section III - Limits Of Insurance**:

    If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

    a.  Required by the contract or agreement; or

    b.  Available under the applicable Limits of Insurance shown in the Declarations;

    whichever is less.

    This endorsement shall not increase the applicable Limits of insurance shown in the Declarations.



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

**COMMERCIAL GENERAL LIABILITY**
**SP 195H 04 20**

**POLICY NUMBER:** 21-21095212-40                **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022
(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

  **2. Exclusions**

  This insurance does not apply to:

  **Communicable Disease**

  **(1)** "Bodily injury" or "property damage" arising out of the actual or alleged transmission of a "communicable disease".

  **(2)** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

   **(a)** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";

   **(b)** Testing for a "communicable disease";

   **(c)** Failure to prevent the spread of the disease; or

   **(d)** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES, COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:

  **2. Exclusions**

  This insurance does not apply to:

  **Communicable Disease**

  **(1)** "Personal and advertising injury" arising out of the actual or alleged transmission of a "communicable disease".

  **(2)** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

   **(a)** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

    **(b)** Testing for a "communicable disease";

    **(c)** Failure to prevent the spread of the disease; or

    **(d)** Failure to report the disease to authorities.

**C.** For purposes of this endorsement only, **SECTION V – DEFINITIONS** is amended to include the following:

"Communicable Disease":

    **a.** Means a disease, illness or condition that can be transmitted directly or indirectly from person-to-person, animal (including insect)-to-person, animal-to-animal (including insect), or from the inanimate environment to a human or animal, by contact, exposure, or by means of vector or fomites; and

    **b.** Includes, but is not limited to, the following and any variant(s) or mutational strains thereof: Acquired immune deficiency syndrome (AIDS) or human immunodeficiency virus (HIV, including but not limited to HIV 1 and HIV-2); human t-cell lymphotropic virus (HTVL, including but not limited to HTVL-I, HTVL-II); any hepatitis virus; severe acute respiratory syndrome (SARS) including but not limited to SARS-CoV-2 (the novel coronavirus that caused coronavirus disease 2019, COVID-19); Middle East Respiratory Syndrome (MERS, including but not limited to MERS –CoV); herpes virus; any venereal disease or sexually transmitted disease, illness or condition; Zika virus, Norovirus; any of the Ebola virus species; Chronic Wasting Disease (CWD); Escherichia coli (E.coli); Influenza (including, but not limited to, all strains and mutations of avian, human or swine flu); Measles, Methicillin-resistant Staphylococcus Aureus (MRSA); Salmonellosis; Legionnaires Disease; Transmissible Spongiform Encephalopathy (TSE) (including, but not limited to, Bovine Spongiform Encephalopathy (BSE, mad cow disease); Creutzfeldt-Jacob disease (nvCJD) including but not limited to New Variant Creutzfeldt-Jakob Disease; Gerstmann-Straussler-Scheinker syndrome (GSS); fatal familial insomnia (FFI); kuru; Tuberculosis, and West Nile Virus.



**COMMERCIAL GENERAL LIABILITY**
**SP 354 07 20**

**POLICY NUMBER:** 21-21095212-40                    **ENDORSEMENT NUMBER:**

**ISSUED TO:** The Grand Ohio Condominium Association

**BY:** Admiral Indemnity Company

**EFFECTIVE DATE OF COVERAGE:** 07/25/2022

(12:01 A.M. Standard time at your mailing
address shown in the Declarations)

## THIS ENDORSEMENT CHANGES THIS POLICY. PLEASE READ IT CAREFULLY.

# LIBERALIZATION CLAUSE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

**Liberalization Clause**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional
premium within forty-five (45) days prior to or during the policy period, the broadened coverage will
immediately apply to this Coverage Part.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL GENERAL LIABILITY
SP 361 01 22

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – CYBER INCIDENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following replaces **Exclusion 2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** and is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

**Cyber Incident**

Damages, costs and expenses, either directly or indirectly because of, caused by or arising out of:

1. Any:
   a. Unauthorized, access to, acquisition, use, collection, copying, processing, storage, dissemination, publication or disclosure of;
   b. Theft, alteration, misuse, loss, misappropriation, disruption of, or damage to; or
   c. Failure to provide access to, remove, rectify, destroy, protect or secure, including, but not limited to, failure to encrypt;

   any person's or organization's "confidential information", whether it is "electronic data" or in any other form or media.
2. The loss of, loss of use of, corruption or impairment of, damage to, disruption or destruction of, or inability to access, alter or manipulate "electronic data".
3. Any of the following:
   a. Denial of service attack on;
   b. Misappropriation, diversion, loss or misuse of; or
   c. Denial of access to or service of, interruption of service, degradation, loss of use, alteration, failure, destruction, corruption, impairment of;

   any "computer system", including any insured's or other person's or organization's "computer system".
4. Malicious code, virus or any other harmful code that:
   a. Is directed at, enacted upon or introduced into "electronic data" or any "computer system"; or
   b. Is designed to access, alter, corrupt, damage, delete, destroy, disrupt, encrypt, exploit, use, prevent or restrict access to, or otherwise disrupt the normal functioning or operation of "electronic data" or any "computer system".
5. Transfer, payment or delivery of money or any form of currency, including virtual currency, in response to a fraudulent instruction or demand.
6. Demand for a ransom payment (in money, or any form of currency, including virtual currency, or property or services), made in connection with the actual or threatened perpetuation of that which is described in paragraphs **1.** through **5.** above.

Such damages, costs or expenses are excluded regardless of any other cause or event that contributes concurrently or in any sequence to the damages, costs or expenses.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, payment card replacement costs, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or other arising out of that which is described in paragraphs **1.** through **6.** above.

This exclusion applies to any liability, damages, costs or expenses either directly or indirectly because of, caused by, or arising out of any failure (including, but not limited to, failure to timely or properly act) to notify of, disclose, prepare for, respond to, protect against, remediate, mitigate or comply with any statutory, regulatory, contractual, common law or other legal obligation relating to that described in paragraphs **1.** through **6.** above.

This exclusion applies regardless of culpability or intent, or whether the claim alleges negligence or other wrongdoing, in whole or in part, arising out of hiring, placing, managing, supervising, employing, training or monitoring of others, or the maintenance or security of any premises.

If there is any duty or obligation to defend or pay for a defense in the policy to which this endorsement is attached, the duty or obligation will not apply to any claim, suit or proceeding that alleges or is, directly or indirectly, in whole or in part, caused by, resulting from or relating to any of the above.

This exclusion does not apply to any coverage provided under endorsement **SP 350 – Cyber Suite Coverage**, if this is part of the policy.

**B.** With respect to **Section I - Coverage B – Personal and Advertising Injury Liability**, paragraph **14.e.** of the **Definitions** section does not apply.

**C.** With respect to this endorsement, the following definitions are added under **Section V – Definitions**:

    **1.** "Computer system" means:

        **a.** Any computer hardware, including but not limited to:

            **(1)** Computers;

            **(2)** Transportable, mobile or handheld devices;

            **(3)** Data storage and data processing devices;

            **(4)** Networking equipment and backup facilities, including cloud computing devices and facilities;

            **(5)** Associated input and output devices (including, but not limited to, wireless and mobile devices);

            **(6)** Any related peripheral components; or

            **(7)** Communication networks, connected to or used in connection with such computers, equipment, facilities or devices.

        **b.** Firmware and electronic instructions that direct the operation and function of a computer or devices connected to it, which enables the computer or devices to receive, process, store or send "electronic data".

    **2.** "Confidential information" means nonpublic information, confidential information, personal information or personal data, including, but not limited to:

        **a.** Non-public information about a person that allows such person to be uniquely and reliably identified or allows access to the person's financial account or medical records information.

        **b.** Patents, trade secrets, processing methods, customer or customer-related information (including, but not limited to, customer lists); or

        **c.** Business plans or records, financial information, personally identifiable information, credit or payment card information (including, but not limited to, credit, debit or stored value cards), medical or health information or any type or combination of types of the foregoing.

    **3.** "Electronic data" means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**COMMERCIAL AUTO**
**CA DS 83 00 04 10**

Issuing Company: Admiral Indemnity Company

# BUSINESS AUTO DECLARATIONS

**Policy No.:** 21-21095212 - 40
Previous Policy No.: 21-21095212-39

**ITEM ONE**

| NAMED INSURED AND ADDRESS | AGENCY NAME AND ADDRESS | 6006 |
|---|---|---|
| The Grand Ohio Condominium Association | (312)595-8135 | |
| Attn: Management Office | Alliant Mesirow Insurance | |
| 211 E Ohio St | 353 N. Clark Street, 10th Floor | |
| Chicago, IL 60611 | Chicago, IL 60654-4704 | |

**POLICY PERIOD**

The Policy Period is from 07/25/2022 to 07/25/2023 12:01 A.M. Standard Time at your Mailing Address shown above.

**Form of Business:**  Condominium or Townhouse Association

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| Premium shown is payable at inception | Included |
|---|---|

**Audit Period (If Applicable):**

**Endorsements Attached To This Policy:**

*See attached "Schedule of Forms and Endorsements"*

| Countersignature Of Authorized Representative |
|---|
| **Name:** |
| **Title:** |
| **Signature:** |
| **Date:** |

**Note** Officer's facsimile signatures may be inserted here, on the policy cover or elsewhere at the company's option.



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**Policy No.:**      21-21095212 - 40

**ITEM TWO**

**Schedule of Coverages and Covered Autos**

This policy provides only those coverages where a charge is shown in the premium column below.  Each of these coverages will apply only to those "autos" shown as covered "autos".  **"Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos Section of the Business Auto Coverage Form next to the name of the coverage.**

| Coverages & Limits | Covered Autos | Premium |
|---|---|---|
| **Liability**<br>Limit = $1,000,000 | 8, 9 | $            Included |
| **Personal Injury Protection**<br>**(Or Equivalent No-Fault Coverage)**<br>Limit = Separately Stated In Each PIP Endorsement<br>Minus $ *See Schedule* Deductible. | | $ |
| **Added Personal Injury Protection**<br>**(Or Equivalent Added No-Fault Coverage)**<br>Limit = Separately Stated In Each Added PIP Endorsement | | $ |
| **Extraordinary Medical Benefits**<br>Limit = Separately Stated In Each Extraordinary Medical Benefit<br>Endorsement | | $ |
| **Auto Medical Payments**<br>Limit = $ | | $ |
| **Medical Expense And income Loss Benefits (Virginia Only)**<br>Limit = Separately Stated In Each Medical Expense And<br>        Income Loss Benefits Endorsement | | $ |
| **Uninsured Motorists**<br>Limit = Separately Stated In Each UM Endorsement | 8, 9 | $            Included |
| **Underinsured Motorists**<br>**(When not Included In Uninsured Motorists Coverage)**<br>Limit = Separately Stated In Each UIM Endorsement | 8, 9 | $            Included |
| **Supplementary Uninsured Motorists**<br>Limit =<br>The maximum amount payable under SUM Coverage shall be<br>the policys SUM limits reduced and thus offset by motor vehicle<br>Bodily injury liability insurance policy or bond payments received<br>from, or no behalf of, any negligent party involved in the accident<br>as specified in the SUM endorsement. | | $ |
| **Physical Damage Comprehensive Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>        Minus $ *See Schedule*   Deductible For Each Covered<br>        Auto, But No Deductible Applies To Loss Caused By Fire<br>        Or Lightning.  See Item Four For Hired Or Borrowed Autos. | | $ |
| **Physical Damage Specified Causes Of Loss Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>        Minus $ *See Schedule*   Deductible For Each Covered<br>        Auto, For Loss Caused By Mischief Or Vandalism.<br>        See Item Four For Hired Or Borrowed Autos | | $ |
| **Physical Damage Collision Coverage**<br>Limit = Actual Cash Value Or Cost Of Repair, Whichever Is Less,<br>        Minus $  *See Schedule*   Deductible For Each Covered<br>        Auto.  See Item Four For Hired Or Borrowed Autos | | $ |
| **Physical Damage Towing and Labor**<br>Limit = $  *See Schedule*   For Each Disablement of a Private<br>        Passenger Auto. | | $ |
| Premium For Endorsements | | $ |
| Estimated Total Premium* | | $            Included |
| *This Policy May Be Subject to Final Audit. | | |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**Policy No.:**   21-21095212 - 40

**ITEM THREE  Schedule of Covered Autos You Own**

| Veh No. | DESCRIPTION | | | Original Cost New | Stated Amount |
|---|---|---|---|---|---|
| | Year | Model | VIN Number | | |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |
| | | | | $ | $ |

| Veh No. | CLASSIFICATION | | | | TERRITORY (Principal Garage Location) | | | |
|---|---|---|---|---|---|---|---|---|
| | Code | Radius (Miles) | Use | Size (GVW) | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| Coverages | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Veh No. | CSL Limit* | Personal Injury Protection | | Extra Med Limit* | Med Pay Limit | Medical Expense & Income Loss | Uninsured (UM) Limit* | Underinsured (UIM) Limit* | SUM Limit* |
| | | Ded | Addl | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

*Limits Shown Are In Thousands

| PREMIUMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Veh No. | CSL | Basic PIP | Addl PIP | Extra Med | Med Pay | Med Exp & Income | UM | UIM | SUM |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| | $ | $ | $ | $ | $ | $ | $ | $ | $ |

| Veh No. | PHYSICAL DAMAGE COVERAGE | | | | PHYSICAL DAMAGE PREMIUMS | | | | Total Premium |
|---|---|---|---|---|---|---|---|---|---|
| | Deductibles | | | Towing & Labor Limit | Comp | Specified Cause of Loss | Coll | Towing & Labor | |
| | Comp | Specified Cause of Loss | Coll | | | | | | |
| | | | | $ | $ | $ | $ | $ | |
| | | | | $ | $ | $ | $ | $ | |
| | | | | $ | $ | $ | $ | $ | |
| | | | | $ | $ | $ | $ | $ | |

## SCHEDULE OF LOSS PAYEES

**Veh No.        Except for Towing, All Physical Damage Loss Is Payable To You And The Loss Payee Named Below As Interests May Appear At The Time Of The Loss**

**CA DS 83 00 04 10**     Includes material copyrighted by Insurance Services Office, Inc., with its permission     **Page 3 of 6**



**Policy No.:**   21-21095212 - 40

**ITEM FOUR**

**Schedule Of Hired Or Borrowed Covered Auto Coverage And Premiums**

| | | Liability Coverage - Rating Basis, Cost Of Hire | | |
|---|---|---|---|---|
| **State** | **Estimated Cost Of Hire For Each State** | **Rate Per Each $100 Cost Of Hire** | **Factor (If Liability Coverage Is Primary)** | **Premium** |
| IL | $    500 | $ | | $    Included |
| | | Liability Coverage Rating Basis, Number Of Days (For Mobile Or Farm Equipment Rental Period Basis) | | |
| **State** | **Estimated Number Of Days Equipment Will Be Rented** | **Base Premium** | **Factor** | **Premium** |
| | | | | $ |
| | | | **Total Premium:** | $    Included |

Cost of hire means the total amount you incur for the hire of "autos" you don't own (not including "autos" you borrow or rent from your partners or "employees" or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**Physical Damage Coverage**

| State | Coverage | Limits Of Insurance | | |
|---|---|---|---|---|
| | Comprehensive | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto, But No Deductible Applies To Loss Caused By Fire Or Lightning. | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |
| | Specified Causes Of Loss | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto For Loss Caused By Mischief Or Vandalism | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |
| | Collision | Actual Cash Value Or Cost Of Repair, Whichever Is Less, Minus $                                    Deductible For Each Covered Auto. | | |
| | | **Estimated Annual Cost Of Hire** | **Rate Per Each $100 Annual Cost Of Hire** | **Premium** |
| | | $ | $ | $ |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



Policy No.:     21-21095212 - 40

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**ITEM FIVE**

**Schedule For Non-Ownership Liability**

| State | Named Insured's Business | Rating Basis | Number | Premium |
|-------|--------------------------|--------------|--------|---------|
| IL | Other Than Garage Service Operations And Other Than Social Service Agencies | Number Of Employees | 6 | $ Included |
| | | Number Of Partners | | $ |
| | Garage Service Operations | Number Of Employees Whose Principal Duty Involves The Operation Of Autos | | $ |
| | Social Service Agencies | Number Of Employees | | $ |
| | | Number Of Volunteers | | $ |
| | | | Total Premiums: | $ |

**ITEM SIX**

**Schedule For Gross Receipts Or Mileage Basis - Liability Coverage - Public Auto Or Leasing Rental Concerns**

| Location No: | | |
|--------------|--|--|
| (Check One) | Gross Receipts (Per $100) | Mileage (Per Mile) |
| Estimated Yearly: | | |
| **Rates** | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only | $ | |
| **Premiums** | | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |
| **Total Premiums** | | |
| Minimum Liability | $ | |
| Minimum Auto Medical Payments | $ | |
| Minimum Medical Expense Benefits (VA Only) | $ | |
| Minimum Income Loss Benefits (VA Only) | $ | |
| Liability | $ | |
| Auto Medical Payments | $ | |
| Medical Expense Benefits (VA Only) | $ | |
| Income Loss Benefits (VA Only) | $ | |



**Policy No.:**   21-21095212 - 40

| Location Number | Address |
|---|---|
| | |

When used as a premium basis:

**FOR PUBLIC AUTOS**

Gross Receipts means the total amount to which you are entitled for transporting passengers, mail or merchandise during the policy period regardless of whether you or any other carrier originate the transportation.  Gross Receipts does not include:

A.      Amounts you pay to railroads, steamship lines, airlines and other motor carriers operating under their own ICC or PUC permits.

B.      Advertising revenue.

C.      Taxes which you collect as a separate item and remit directly to a governmental division.

D.      C.O.D. collections for cost of mail or merchandise including collection fees.

Mileage means the total live and dead mileage of all revenue producing units operated during the policy period.

**FOR RENTAL OR LEASING CONCERNS**

Gross receipts means the total amount to which you are entitled for the leasing or rental of "autos" during the policy period and includes taxes except those taxes which you collect as a separate item and remit directly to a governmental division.

Mileage means the total of all live and dead mileage developed by all the "autos" you leased or rented to others during the policy period.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



<div style="writing-mode: vertical">FILED DATE: 7/18/2025 12:34 PM   2025CH07484</div>

**COMMERCIAL AUTO**
**CL CA FS 01 09 08**

Policy Number: **21-21095212 - 40**

# SCHEDULE OF FORMS AND ENDORSEMENTS

The following Declarations, Coverage Forms, Conditions, and Endorsements are applicable to:

### Commercial Auto

| Number | Edition | Description |
|--------|---------|-------------|
| CA DS 83 00 | 04-2010 | Business Auto Declarations |
| CL CA FS 01 | 09-2008 | Schedule of Forms and Endorsements |
| CA 00 01 | 11-2020 | Business Auto Coverage Form |
| CA 01 20 | 01-2015 | Illinois Changes |
| CA 02 70 | 01-2018 | Illinois Changes - Cancellation & Nonrenewal |
| CA 21 30 | 01-2015 | Illinois Uninsured Motorists Coverage |
| CA 21 38 | 10-2013 | Illinois Underinsured Motorists Coverage |
| CA 83 76 IL | 08-2020 | Exclusion - Communicable Disease - Illinois |
| CA 99 37 | 03-2010 | Garagekeepers Coverage |
| IL U 003 | 01-2015 | Illinois Uninsured Motorists Coverage And Underinsured Motorists Coverage Selection Rejection |



COMMERCIAL AUTO
CA 00 01 11 20

# BUSINESS AUTO COVERAGE FORM

Various provisions in this Policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A. Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the Policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the Policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the Policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the Policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the Policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this Policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |
|----|----|----|

## B. Owned Autos

1. If Symbols **1, 2, 3, 4, 5, 6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire after the policy period begins of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire after the policy period begins will be a covered "auto" for that coverage only if:

   **a.** We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   **b.** You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

3. An "auto" that is leased or rented to you without a driver, under a written agreement for a continuous period of at least six months that requires you to provide primary insurance covering such "auto", will be considered a covered "auto" you own.

## C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a registered Gross Vehicle Weight Rating of 3,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** "Loss"; or

   **e.** Destruction.

## SECTION II – COVERED AUTOS LIABILITY COVERAGE

### A. Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

**(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

**(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

**(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

**(5)** A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

**(1)** All expenses we incur.

**(2)** Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**(3)** The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**(5)** All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

**(6)** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed, we will:

**(1)** Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

**(2)** Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

**4. Employee Indemnification And Employer's Liability**

"Bodily injury" to:

**a.** An "employee" of the "insured" arising out of and in the course of:

    **(1)** Employment by the "insured"; or

    **(2)** Performing the duties related to the conduct of the "insured's" business; or

**b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

    **(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

**5. Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

**6. Care, Custody Or Control**

"Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

**7. Handling Of Property**

"Bodily injury" or "property damage" resulting from the handling of property:

**a.** Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

**b.** After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

**8. Movement Of Property By Mechanical Device**

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

**9. Operations**

"Bodily injury" or "property damage" arising out of the operation of:

**a.** Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

**b.** Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

**10. Completed Operations**

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

**a.** Work or operations performed by you or on your behalf; and

**b.** Materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

Your work will be deemed completed at the earliest of the following times:

    **(1)** When all of the work called for in your contract has been completed;

    **(2)** When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or



**(3)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

   **(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

   **(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

   **(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts if:

   **(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

   **(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

   **(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

   **(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**14. Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance or use of "unmanned aircraft".

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III – PHYSICAL DAMAGE COVERAGE

### A. Coverage

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a. Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b. Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c. Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing And Labor**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" that is a private passenger type, light truck or medium truck is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage – Hitting A Bird Or Animal – Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a. Transportation Expenses**

   We will pay up to $30 per day, to a maximum of $900, for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the Policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b. Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicates that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes of Loss only if the Declarations indicates that Specified Causes Of Loss Coverage is provided for any covered "auto"; or



(3) Collision only if the Declarations indicates that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $30 per day, to a maximum of $900.

## B. Exclusions

1. We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   **a. Nuclear Hazard**

   (1) The explosion of any weapon employing atomic fission or fusion; or

   (2) Nuclear reaction or radiation, or radioactive contamination, however caused.

   **b. War Or Military Action**

   (1) War, including undeclared or civil war;

   (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

2. We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

3. We will not pay for "loss" due and confined to:

   **a.** Wear and tear, freezing, mechanical or electrical breakdown.

   **b.** Blowouts, punctures or other road damage to tires.

   This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

4. We will not pay for "loss" to any of the following:

   **a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

   **b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

   **c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

   **d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

5. Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

   **a.** Permanently installed in or upon the covered "auto";

   **b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

   **c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

   **d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

6. We will not pay for "loss" to a covered "auto" due to "diminution in value".

## C. Limits Of Insurance

1. The most we will pay for:

   **a.** "Loss" to any one covered "auto" is the lesser of:

   (1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

   (2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

b. All electronic equipment that reproduces, receives or transmits audio, visual or data signals in any one "loss" is $1,000, if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

(2) Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

(3) An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D. Deductible**

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations prior to the application of the Limit Of Insurance, provided that:

**1.** The Comprehensive or Specified Causes Of Loss Coverage deductible applies only to "loss" caused by:

a. Theft or mischief or vandalism; or

b. All perils.

**2.** Regardless of the number of covered "autos" damaged or stolen, the maximum deductible applicable for all "loss" in any one event caused by:

a. Theft or mischief or vandalism; or

b. All perils,

will be equal to five times the highest deductible applicable to any one covered "auto" on the Policy for Comprehensive or Specified Causes Of Loss Coverage. The application of the highest deductible used to calculate the maximum deductible will be made regardless of which covered "autos" were damaged or stolen in the "loss".

## SECTION IV – BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

**A. Loss Conditions**

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this Policy unless there has been full compliance with the following duties:

a. In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

(1) How, when and where the "accident" or "loss" occurred;

(2) The "insured's" name and address; and

(3) To the extent possible, the names and addresses of any injured persons and witnesses.

b. Additionally, you and any other involved "insured" must:

(1) Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2) Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

© Insurance Services Office, Inc., 2019
CA 00 01 11 20



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

(4) Authorize us to obtain medical records or other pertinent information.

(5) Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment, you must also do the following:

(1) Promptly notify the police if the covered "auto" or any of its equipment is stolen.

(2) Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

(3) Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

(4) Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this Policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment – Physical Damage Coverages**

At our option, we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee – Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

(1) Excess while it is connected to a motor vehicle you do not own; or

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph a. above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this Policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this Policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the Policy.

**7. Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.** During the policy period shown in the Declarations; and

**b.** Within the coverage territory.

The coverage territory is:

**(1)** The United States of America;

**(2)** The territories and possessions of the United States of America;

**(3)** Puerto Rico; and

**(4)** Canada; and

**(5)** Anywhere else in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico or Canada, or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8. Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V – DEFINITIONS**

**A.** "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.** "Auto" means:

**1.** A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

**1.** Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or



2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. That are, or that are contained in any property that is:

(1) Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

(2) Otherwise in the course of transit by or on behalf of the "insured"; or

(3) Being stored, disposed of, treated or processed in or upon the covered "auto";

b. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

(1) The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

(2) The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(a) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(b) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

E. "Diminution in value" means the actual or perceived loss in market value or resale value which results from a direct and accidental "loss".

F. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

G. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

H. "Insured contract" means:

1. A lease of premises;

2. A sidetrack agreement;

3. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

4. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

6. That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

An "insured contract" does not include that part of any contract or agreement:

a. That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

b. That pertains to the loan, lease or rental of an "auto" to you or any of your "employees", if the "auto" is loaned, leased or rented with a driver; or

c. That holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

I. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

J. "Loss" means direct and accidental loss or damage.

K. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. Vehicles maintained for use solely on or next to premises you own or rent;

3. Vehicles that travel on crawler treads;

4. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

a. Power cranes, shovels, loaders, diggers or drills; or

b. Road construction or resurfacing equipment such as graders, scrapers or rollers;

5. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

a. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

b. Cherry pickers and similar devices used to raise or lower workers; or

6. Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a. Equipment designed primarily for:

(1) Snow removal;

(2) Road maintenance, but not construction or resurfacing; or

(3) Street cleaning;

b. Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c. Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M. "Property damage" means damage to or loss of use of tangible property.

N. "Suit" means a civil proceeding in which:

1. Damages because of "bodily injury" or "property damage"; or

2. A "covered pollution cost or expense";

to which this insurance applies, are alleged.



"Suit" includes:

**a.** An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

**O.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**P.** "Trailer" includes semitrailer.

**Q.** "Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



COMMERCIAL AUTO
CA 01 20 01 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES

For a covered "auto" licensed or principally garaged in Illinois, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **1.b.(3)** of the **Who Is An Insured** provision does not apply.

2. The **Limit Of Insurance** provision applies except that we will apply the Covered Autos Liability Coverage limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident";

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $20,000 for "property damage" caused by any one "accident".

   This provision will not change our total Limit of Insurance for Covered Autos Liability Coverage.

**B. Changes In Physical Damage Coverage**

Paragraph **3.** of the **Limits Of Insurance** provision is replaced by the following:

3. We may deduct for betterment if:

   a. The deductions reflect a measurable decrease in market value attributable to the poorer condition of, or prior damage to, the vehicle.

   b. The deductions are for prior wear and tear, missing parts and rust damage that are reflective of the general overall condition of the vehicle considering its age. In this event, deductions may not exceed $500.

**C. Changes In Conditions**

The **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by the addition of the following:

Covered Autos Liability Coverage provided by this Coverage Form for any "auto" you do not own is primary if:

1. The "auto" is owned or held for sale or lease by a new or used vehicle dealership;

2. The "auto" is operated by an "insured" with the permission of the dealership described in Paragraph **1.** while your "auto" is being repaired or evaluated; and

3. The Limit of Insurance for Covered Autos Liability Coverage under this Policy is at least:

   a. $100,000 for "bodily injury" to any one person caused by any one "accident";

   b. $300,000 for "bodily injury" to two or more persons caused by any one "accident"; and

   c. $50,000 for "property damage" caused by any one "accident".

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



COMMERCIAL AUTO
CA 02 70 01 18

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**Cancellation**

1. The first Named Insured shown in the Declarations may cancel this Policy by mailing us advance written notice of cancellation.

2. When this Policy is in effect 61 days or more or is a renewal or continuation policy, we may cancel only for one or more of the following reasons by mailing you written notice of cancellation, stating the reasons for cancellation.

   **a.** Nonpayment of premium.

   **b.** The Policy was obtained through a material misrepresentation.

   **c.** Any "insured" has violated any of the terms and conditions of the Policy.

   **d.** The risk originally accepted has measurably increased.

   **e.** Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured.

   **f.** A determination by the Director of Insurance that the continuation of the Policy could place us in violation of the Illinois insurance laws.

3. If we cancel for nonpayment of premium, we will mail you at least 10 days' written notice.

4. If this Policy is cancelled for other than nonpayment of premium and the Policy is in effect:

   **a.** 60 days or less, we will mail you at least 30 days' written notice.

   **b.** 61 days or more, we will mail you at least 60 days' written notice.

5. If this Policy is cancelled, we will send you any premium refund due. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. The effective date of cancellation stated in the notice shall become the end of the policy period.

7. Our notice of cancellation will state the reason for cancellation.

8. We will mail our cancellation notice to you at your last address known to us. Proof of mailing will be sufficient proof of notice.

9. Notification of cancellation will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy.

**B.** The following is added and supersedes any provision to the contrary:

**Nonrenewal**

If we decide not to renew or continue this Policy, we will mail you written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. Proof of mailing will be sufficient proof of notice. Notification will also be sent to your broker, if known, or agent of record, if known, and to the loss payee listed on the Policy. If we offer to renew or continue and you do not accept, this Policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this Policy will end on the effective date of that insurance.

POLICY NUMBER: CPP 21-21095212 - 40

**COMMERCIAL AUTO**
**CA 21 30 01 15**

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:**   The Grand Ohio Condominium Association |
| **Endorsement Effective Date:**   07/25/2022 |

## SCHEDULE

| |
|---|
| **Limit Of Insurance: $**   1,000,000                                    **Each "Accident"** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

2. Any judgment for damages arising out of a "suit" brought without our written consent is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

    c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

    d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

    a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**CA 21 30 01 15**                    © Insurance Services Office, Inc., 2014                    **Page 1 of 4**

b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability under the Coverage Form.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. Any claim settled without our consent.

2. The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

3. "Bodily injury" sustained by:

   a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form;

   b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Uninsured Motorists Coverage under this Coverage Form; or

   c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Uninsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

4. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

5. Punitive or exemplary damages.

6. "Bodily injury" arising directly or indirectly out of:

   a. War, including undeclared or civil war;

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

   We will apply the limit shown in the Declarations to first provide the separate limits required by the Illinois Safety Responsibility Law as follows:

   a. $25,000 for "bodily injury" to any one person caused by any one "accident"; and

   b. $50,000 for "bodily injury" to two or more persons caused by any one "accident".

   This provision will not change our total limit of liability.

2. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form, Medical Payments Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

   We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

   We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

## E. Changes In Conditions

The **Conditions** are changed for Uninsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced in the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all Coverage Forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

 © Insurance Services Office, Inc., 2014 CA 21 30 01 15

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

**c.** If the coverage under this Coverage Form is provided:

**(1)** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

**(2)** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

**a.** Promptly notify the police if a hit-and-run driver is involved; and

**b.** Promptly send us copies of the legal papers if a "suit" is brought.

**3. Legal Action Against Us** is replaced by the following:

**Legal Action Against Us**

**a.** No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

**b.** Any legal action against us must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply to an "insured" if, within two years after the date of the "accident", arbitration proceedings have commenced in accordance with the provisions of this Coverage Form.

**4. Transfer Of Rights Of Recovery Against Others To Us** does not apply.

**5.** The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

**Arbitration**

**a.** If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages, then the disagreement will be arbitrated. If the "insured" requests, we and the "insured" will each select an arbitrator. The two arbitrators will select a third. If the arbitrators are not selected within 45 days of the "insured's" request, either party may request that arbitration be submitted to the American Arbitration Association. We will bear all the expenses of the arbitration except when the "insured's" recovery exceeds the minimum limit specified in the Illinois Safety Responsibility Law.

If this occurs, the "insured" will be responsible for payment of his or her expenses and an equal share of the expenses of the third arbitrator up to the amount by which the "insured's" recovery exceeds the statutory minimum.

**b.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives.

**c.** If arbitration is submitted to the American Arbitration Association, then the American Arbitration Association rules shall apply to all matters except medical opinions. As to medical opinions, if the amount of damages being sought:

**(1)** Is equal to or less than the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then the American Arbitration Association rules shall apply.

**(2)** Exceeds the minimum limit for bodily injury liability specified by the Illinois Safety Responsibility Law, then rules of evidence that apply in the circuit court for placing medical opinions into evidence shall apply.



In all other arbitration proceedings, local rules of law as to arbitration procedure and evidence will apply.

**d.** If the arbitration involves three arbitrators, a decision agreed to by two of the arbitrators will be binding for the amount of damages not exceeding the lesser of either:

    **(1)** $75,000 for "bodily injury" to any one person/$150,000 for "bodily injury" to two or more persons caused by any one "accident"; or

    **(2)** The Limit Of Uninsured Motorists Insurance shown in the Schedule or Declarations.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Uninsured motor vehicle" means a land motor vehicle or "trailer":

    **a.** For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

**b.** For which an insuring or bonding company denies coverage or is or becomes insolvent; or

**c.** That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an "insured", a covered "auto" or a vehicle an "insured" is "occupying". If there is no physical contact with the hit-and-run vehicle, the facts of the "accident" must be proved.

However, "uninsured motor vehicle" does not include any vehicle:

**a.** Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law;

**b.** Owned by a governmental unit or agency; or

**c.** Designed for use mainly off public roads while not on public roads.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



POLICY NUMBER: CPP 21-21095212 - 40

**COMMERCIAL AUTO**
**CA 21 38 10 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS UNDERINSURED MOTORISTS COVERAGE

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Illinois, this endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** The Grand Ohio Condominium Association | |
| **Endorsement Effective Date:** 07/25/2022 | |

**SCHEDULE**

| | |
|---|---|
| **Limit Of Insurance: $** 1,000,000 | Each "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Coverage**

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle".

2. We will pay only after all liability bonds or policies have been exhausted by payment of judgments or settlements, unless:

    a. We have been given prompt written notice of a "tentative settlement" and decide to advance payment to the "insured" in an amount equal to that "tentative settlement" within 30 days after receipt of notification; or

    b. We and an "insured" have reached a "settlement agreement".

3. Any judgment for damages arising out of a "suit" brought without written notice to us is not binding on us.

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

1. An individual, then the following are "insureds":

    a. The Named Insured and any "family members".

    b. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

c. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability Coverage under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability Coverage under the Coverage Form.

d. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

b. Anyone else "occupying" an "auto" you do not own who is an "insured" for Covered Autos Liability Coverage under the Coverage Form, but only at times when that person is an "insured" for Covered Autos Liability Coverage under the Coverage Form.

c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

## C. Exclusions

This insurance does not apply to any of the following:

1. The direct or indirect benefit of any insurer under any workers' compensation, disability benefits or similar law.

2. "Bodily injury" sustained by:

a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form;

b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage under this Coverage Form; or

c. Any "family member" while "occupying" or when struck by any vehicle owned by the Named Insured that is insured for Underinsured Motorists Coverage on a primary basis under any other Coverage Form or policy.

3. Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

4. Punitive or exemplary damages.

5. "Bodily injury" arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limit Of Insurance

1. Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Underinsured Motorists Coverage shown in this endorsement.

2. Except in the event of a "settlement agreement", the Limit of Insurance for this coverage shall be reduced by all sums paid or payable:

a. By or for anyone who is legally responsible, including all sums paid under this Coverage Form's Covered Autos Liability Coverage.

b. Under any workers' compensation, disability benefits or similar law. However, the Limit of Insurance for this coverage shall not be reduced by any sums paid or payable under Social Security disability benefits.

c. Under any automobile medical payments coverage.

3. In the event of a "settlement agreement", the maximum Limit of Insurance for this coverage shall be the amount by which the Limit of Insurance for this coverage exceeds the limits of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

4. No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage form.



FILED DATE: 7/18/2025 12:34 PM    2025CH07484

### E. Changes In Conditions

The Conditions are changed for Underinsured Motorists Coverage as follows:

1. **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

   If there is other applicable insurance available under one or more policies or provisions of coverage:

   a. The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any Coverage Form or policy providing coverage on either a primary or excess basis.

   b. Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible underinsured motorists insurance providing coverage on a primary basis.

   c. If the coverage under this Coverage Form is provided:

      (1) On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on a primary basis.

      (2) On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

   a. Give us written notice of a "tentative settlement" and allow us to advance payment in an amount equal to that settlement within 30 days after receipt of notification to preserve our rights against the owner or operator of the "underinsured motor vehicle".

   b. File "suit" against the owner or operator of the "underinsured motor vehicle" prior to the conclusion of a "settlement agreement". Such "suit" cannot be abandoned or settled without giving us written notice of a "tentative settlement" and allowing us 30 days to advance payment in an amount equal to that settlement to preserve our rights against the owner or operator of the "underinsured motor vehicle".

   c. Promptly send us copies of the legal papers if a "suit" is brought.

3. **Legal Action Against Us** is replaced by the following:

   **Legal Action Against Us**

   a. No one may bring a legal action against us under this Coverage Form until there has been full compliance with all the terms of this Coverage Form.

   b. Any legal action against us under this Coverage Form must be brought within two years after the date of the "accident". However, this Paragraph **3.b.** does not apply if, within two years after the date of the "accident":

      (1) Arbitration proceedings have commenced in accordance with the provisions of this Coverage Form; or

      (2) The "insured" has filed an action for "bodily injury" against the owner or operator of an "underinsured motor vehicle", and such action is:

         (a) Filed in a court of competent jurisdiction; and

         (b) Not barred by the applicable state statute of limitations.

   In the event that the two-year time limitation identified in this condition does not apply, the applicable state statute of limitations will govern legal action against us under this Coverage Form.

4. The following is added to **Transfer Of Rights Of Recovery Against Others To Us:**

   Transfer Of Rights Of Recovery Against Others To Us does not apply to damages caused by an "accident" with an "underinsured motor vehicle" if we:

   a. Have been given written notice of a "tentative settlement" between an "insured" and the insurer of an "underinsured motor vehicle"; and

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

b. Fail to advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of the notice.

If we advance payment to the "insured" in an amount equal to the "tentative settlement" within 30 days after receipt of notice:

a. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

b. We will also have a right to recover the advanced payment.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**5.** The following conditions are added:

**Reimbursement And Trust**

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

However, in the event of a "settlement agreement", we shall be entitled to recover only for amounts which exceed the limit of bodily injury liability bonds or policies applicable to the owner or operator of the "underinsured motor vehicle".

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "underinsured motor vehicle" or do not agree as to the amount of damages that are recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

**F. Additional Definitions**

As used in this endorsement:

**1.** "Family member" means a person related to an individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household, including a ward or foster child.

**2.** "Occupying" means in, upon, getting in, on, out or off.

**3.** "Settlement agreement" means we and an "insured" agree that the "insured" is legally entitled to recover, from the owner or operator of the "underinsured motor vehicle", damages for "bodily injury" and, without arbitration, agree also as to the amount of damages. Such agreement is final and binding regardless of any subsequent judgment or settlement reached by the "insured" with the owner or operator of the "underinsured motor vehicle".

**4.** "Tentative settlement" means an offer from the owner or operator of the "underinsured motor vehicle" to compensate an "insured" for damages incurred because of "bodily injury" sustained in an accident involving an "underinsured motor vehicle".

**5.** "Underinsured motor vehicle" means a land motor vehicle or "trailer" for which the sum of all liability bonds or policies at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged, but that sum is either less than the Limit of Insurance of this coverage or reduced by payments to other persons resulting from the same "accident" to an amount less than the Limit of Insurance of this coverage. However, "underinsured motor vehicle" does not include any vehicle:

a. Owned or operated by any self-insurer under any applicable motor vehicle law.

b. Owned by a governmental unit or agency.

c. Designed for use mainly off public roads while not on public roads.

d. Which is an "uninsured motor vehicle".



COMMERCIAL AUTOMOBILE
CA 83 76 IL 08 20

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - COMMUNICABLE DISEASE - ILLINOIS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**A.** The following exclusion is added to Section **II - Covered Autos Liability Coverage**, **B. Exclusions**:

**B. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a "communicable disease".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a "communicable disease";

**b.** Testing for a "communicable disease";

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** For purposes of this Endorsement only, the following definition is added to this Policy:

"Communicable Disease" means:

**1.** A disease, illness or condition that can be transmitted directly or indirectly from person-to-person, animal (including insect)-to-person, animal-to-animal (including insect), or from the inanimate environment to a human or animal, by contact, exposure, or by means of vector or fomites; and

**2.** Includes, but is not limited to, the following and any variant(s) or mutational strains thereof: Acquired immune deficiency syndrome (AIDS) or human immunodeficiency virus (HIV, including but not limited to HIV 1 and HIV-2); human t-cell lymphotropic virus (HTVL, including but not limited to HTVL-I, HTVL-II); any hepatitis virus; severe acute respiratory syndrome (SARS) including but not limited to SARS-CoV-2 (the novel coronavirus that caused coronavirus disease 2019, COVID-19); Middle East Respiratory Syndrome (MERS, including but not limited to MERS –CoV); herpes virus; any venereal disease or sexually transmitted disease, illness or condition; Zika virus, Norovirus;  any of the Ebola virus species; Chronic Wasting Disease (CWD); Escherichia coli (E.coli); Influenza (including, but not limited to, all strains and mutations of avian, human or swine flu); Measles, Methicillin-resistant Staphylococcus Aureus (MRSA); Salmonellosis; Legionnaires Disease;  Transmissible Spongiform Encephalopathy (TSE) (including, but not limited to, Bovine Spongiform Encephalopathy (BSE, mad cow disease); Creutzfeldt-Jacob disease (nvCJD) including but not limited to  New Variant Creutzfeldt-Jakob Disease; Gerstmann-Straussler-Scheinker syndrome (GSS); fatal familial insomnia (FFI); kuru; Tuberculosis, and West Nile Virus.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

COMMERCIAL AUTO
CA 99 37 03 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GARAGEKEEPERS COVERAGE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
TRUCKERS COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| | |
|---|---|
| **Named Insured:** The Grand Ohio Condominium Association | |
| **Endorsement Effective Date:** 07/25/2022 | |

## SCHEDULE

| Location Number | Address Where You Conduct Garage Operations | |
|---|---|---|
| 1 | 211 E Ohio St Chicago, IL 60611-3262 | |

| Coverages | Limit Of Insurance And Deductible | | Premium |
|---|---|---|---|
| Comprehensive | $ | **Limit Of Insurance** | $ |
| | $ | **Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism** | |
| | $ | **Maximum Deductible For Loss Caused By Theft Or Mischief Or Vandalism In Any One Event** | |
| | | **OR** | |
| | $ | **Limit Of Insurance** | |
| | $ | **Deductible For All Perils For Each Customer's Auto** | |
| | $ | **Maximum Deductible For All Loss In Any One Event** | |

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

| Specified Causes Of Loss | $ | Limit Of Insurance | $ |
|---|---|---|---|
| | $ | Deductible For Each Customer's Auto For Loss Caused By Theft Or Mischief Or Vandalism | |
| | $ | Maximum Deductible For Loss Caused By Theft Or Mischief Or Vandalism In Any One Event | |
| | | OR | |
| | $ | Limit Of Insurance | |
| | $ | Deductible For All Perils For Each Customer's Auto | |
| | $ | Maximum Deductible For All Loss In Any One Event | |
| Collision | $ | Limit Of Insurance | $ |
| | $ | Deductible For Each Customer's Auto | |

© Insurance Services Office, Inc., 2009     CA 99 37 03 10

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

| Total Premium For All Locations | $ Included |
|---|---|

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

## DIRECT COVERAGE OPTIONS

Indicate below with an "X" which, if any, Direct Coverage Option is selected.

☐ **EXCESS INSURANCE**

If this box is checked, Garagekeepers Coverage remains applicable on a legal liability basis. However, coverage also applies without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" on an excess basis over any other collectible insurance regardless of whether the other insurance covers your or any other "insured's" interest or the interest of the "customer's auto's" owner.

☐ **PRIMARY INSURANCE**

If this box is checked, Garagekeepers Coverage is changed to apply without regard to your or any other "insured's" legal liability for "loss" to a "customer's auto" and is primary insurance.

**A.** This endorsement provides only those coverages:

**1.** Where a Limit of Insurance and a premium are shown for that coverage in the Schedule; and

**2.** For the location shown in the Schedule.

**B. Coverage**

**1.** We will pay all sums the "insured" legally must pay as damages for "loss" to a "customer's auto" or "customer's auto" equipment left in the "insured's" care while the "insured" is attending, servicing, repairing, parking or storing it in your "garage operations" under:

**a. Comprehensive Coverage**

From any cause except:

**(1)** The "customer's auto's" collision with another object; or

**(2)** The "customer's auto's" overturn.

**b. Specified Causes Of Loss Coverage**

Caused by:

**(1)** Fire, lightning or explosion;

**(2)** Theft; or

**(3)** Mischief or vandalism.

**c. Collision Coverage**

Caused by:

**(1)** The "customer's auto's" collision with another object; or

**(2)** The "customer's auto's" overturn.

**2.** We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "loss" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements.

**3. Who Is An Insured**

The following are "insureds" for "loss" to "customer's autos" and "customer's auto" equipment:

**a.** You.

**b.** Your partners (if you are a partnership), or members (if you are a limited liability company), "employees", directors or shareholders while acting within the scope of their duties as such.

**4. Coverage Extensions**

The following applies as Supplementary Payments. We will pay for the "insured":

**a.** All expenses we incur.

**b.** The costs of bonds to release attachments in any "suit" against an "insured" we defend, but only for bond amounts within our Limit of Insurance.

**c.** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

**d.** All costs taxed against the "insured" in any "suit" against an "insured" we defend.

**e.** All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against an "insured" we defend; but our duty to pay interest ends when we have paid, offered to pay, or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance

© Insurance Services Office, Inc., 2009

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

## C. Exclusions

1. This insurance does not apply to any of the following:

   **a. Contractual Obligations**

   Liability resulting from any contract or agreement by which the "insured" accepts responsibility for "loss". But this exclusion does not apply to liability for "loss" that the "insured" would have in the absence of the contract or agreement.

   **b. Theft**

   "Loss" due to theft or conversion caused in any way by you, your "employees" or by your shareholders.

   **c. Defective Parts**

   Defective parts or materials.

   **d. Faulty Work**

   Faulty "work you performed".

2. We will not pay for "loss" to any of the following:

   **a.** Tape decks or other sound reproducing equipment unless permanently installed in a "customer's auto".

   **b.** Tapes, records or other sound reproducing devices designed for use with sound reproducing equipment.

   **c.** Sound receiving equipment designed for use as a citizens' band radio, two-way mobile radio or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the "customer's auto" manufacturer for the installation of a radio.

   **d.** Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment.

3. We will not pay for "loss" caused by or resulting from the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss":

   **a.** War, including undeclared or civil war;

   **b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   **c.** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## D. Limits Of Insurance And Deductibles

1. Regardless of the number of "customer's autos", "insureds", premiums paid, claims made or "suits" brought, the most we will pay for each "loss" at each location is the Garagekeepers Coverage Limit of Insurance shown in the Schedule for that location. Prior to the application of this limit, the damages for "loss" that would otherwise be payable will be reduced by the applicable deductibles for "loss" caused by:

   **a.** Collision; or

   **b.** With respect to Garagekeepers Coverage Comprehensive or Specified Causes Of Loss Coverage:

      **(1)** Theft or mischief or vandalism; or

      **(2)** All perils.

2. The maximum deductible stated in the Schedule for Garagekeepers Coverage Comprehensive or Specified Causes of Loss Coverage is the most that will be deducted for all "loss" in any one event caused by:

   **a.** Theft or mischief or vandalism; or

   **b.** All perils.

3. Sometimes to settle a claim or "suit", we may pay all or any part of the deductible. If this happens you must reimburse us for the deductible or that portion of the deductible that we paid.

## E. Additional Definitions

As used in this endorsement:

1. "Customer's auto" means a land motor vehicle, "trailer" or semitrailer lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A "customer's auto" also includes any such vehicle left in your care by your "employees" and members of their households, who pay for services performed.

2. "Loss" means direct and accidental loss or damage and includes any resulting loss of use.

 © Insurance Services Office, Inc., 2009 CA 99 37 03 10

3. "Garage operations" means the ownership, maintenance or use of locations for the purpose of a business of selling, servicing, repairing, parking or storing "customer's autos" and that portion of the roads or other accesses that adjoin these locations. "Garage operations" also includes all operations necessary or incidental to the performance of garage operations.

4. "Work you performed" includes:

   a. Work that someone performed on your behalf; and

   b. The providing of or failure to provide warnings or instructions.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484



IL U 003 01 15

# ILLINOIS UNINSURED MOTORISTS COVERAGE AND UNDERINSURED MOTORISTS COVERAGE SELECTION/REJECTION

| Policy Number: 21-21095212 - 40 | Policy Effective Date: 07/25/2022 |
|---|---|
| **Company:**<br>Admiral Indemnity Company | **Producer:** 6006<br>Alliant Mesirow Insurance |
| **Applicant/Named Insured:**<br>The Grand Ohio Condominium Association | |

Illinois law permits you to make certain decisions regarding Uninsured Motorists Coverage and Underinsured Motorists Coverage. This document describes these coverages and the options available.

You should read this document carefully and contact us or your agent if you have any questions regarding Uninsured Motorists Coverage and Underinsured Motorists Coverage and your options with respect to these coverages.

This document includes general descriptions of coverage. However, no coverage is provided by this document. You should read your policy and review your Declarations page(s) and/or Schedule(s) for complete information on the coverages you are provided.

Please indicate your choice from **A.** and **B.** by initialing next to the appropriate item(s) and signing below.

**A. Bodily Injury Uninsured And Underinsured Motorists Coverages**

**Bodily Injury Uninsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury caused by an automobile accident. Also included are damages due to bodily injury that result from an automobile accident with a hit-and-run vehicle whose owner or operator cannot be identified.

**Bodily Injury Underinsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury caused by an automobile accident.

Every automobile liability policy must include Bodily Injury Uninsured Motorists Coverage at limits equal to your limits for Bodily Injury Liability Coverage or Combined Single Limit for Liability Coverage except as described below.

If your Bodily Injury Liability Coverage limits exceed $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident, you may select limits that are lower than your Bodily Injury Liability Coverage limits or Combined Single Limit for Liability Coverage for your Bodily Injury Uninsured Motorists Coverage BUT you may not select Bodily Injury Uninsured Motorists Coverage limits less than $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident.

Underinsured Motorists Coverage will be provided to you ONLY IF your Bodily Injury Uninsured Motorists Coverage limits are greater than $25,000 for each person/$50,000 for each accident or a Combined Single Limit of $50,000 for each accident. When provided, your Bodily Injury Underinsured Motorists Coverage limits will be equal to your Uninsured Motorists Coverage limits.

FILED DATE: 7/18/2025 12:34 PM 2025CH07484

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

Please indicate your choice by initialing next to the appropriate item(s) if you are selecting Uninsured Motorists Coverage at limits less than the Bodily Injury Liability limits of your policy.

| (Initials) | **I reject Bodily Injury Uninsured Motorists Coverage at limits equal to my Bodily Injury Liability Coverage (split limits) or Combined Single Limit for Liability Coverage and I select the following lower limits.** | | | |
|---|---|---|---|---|
| _____ | | | | |
| **(Choose one):** | | | | |
| **(Initials)** | **Split Limits** | **OR** | **(Initials)** | **Combined Single Limit** |
| _____ | $  **25,000/50,000\*** | | _____ | $  **50,000\*** |
| _____ | **50,000/100,000** | | _____ | **100,000** |
| _____ | **100,000/300,000** | | _____ | **250,000** |
| _____ | **250,000/500,000** | | _____ | **300,000** |
| _____ | **500,000/1,000,000** | | _____ | **350,000** |
| _____ | $ _____ <br> **(Other)** | | _____ | **500,000** |
| | | | _____ | **1,000,000** |
| | | | _____ | $ _____ <br> **(Other)** |

**\*IF YOU CHOOSE THIS LIMIT, BODILY INJURY UNDERINSURED MOTORISTS COVERAGE WILL NOT BE PROVIDED.**

**B. Notice Of Availability Of Property Damage Uninsured Motorists Coverage**

**Property Damage Uninsured Motorists Coverage** provides insurance protection to an insured for compensatory damages which the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of injury to or destruction of a covered auto caused by an automobile accident. However, Property Damage Uninsured Motorists Coverage is available only for autos for which you have not purchased Collision Coverage.

© Insurance Services Office, Inc., 2014   **IL U 003 01 15**




FILED DATE: 7/18/2025 12:34 PM   2025CH07484

Please indicate your choice by initialing next to the appropriate item(s) below.

| (Initials) | |
|---|---|
| _____ | **I select Property Damage Uninsured Motorists Coverage at a limit of $15,000 for the following vehicle(s).** |
| | **(Specify Year/Make/Model):** |
| | _____ |
| | _____ |
| | _____ |
| | _____ |
| | **Premium: $** |
| _____ | **I reject Property Damage Uninsured Motorists Coverage.** |

_____          _____

**Signature Of Applicant/Named Insured**                          **Date**

**IL U 003 01 15**                    © Insurance Services Office, Inc., 2014                    **Page 3 of 3**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

**THIS POLICY CONSISTS OF:**

_____   **DECLARATIONS**

_____   **COMMON POLICY CONDITIONS**

_____   **ONE OR MORE COVERAGE PARTS.  A COVERAGE PART CONSISTS OF:**

☐  ONE OR MORE COVERAGE FORMS

☐  APPLICABLE FORMS AND ENDORSEMENTS

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*Secretary*                                          *President and CEO*



FILED DATE: 7/18/2025 12:34 PM   2025CH07484

June 3, 2025

**VIA EMAIL AND U.S. MAIL**

Angel Worlds
FirstService Residential
303 East Wacker Drive, Suite 1900
Chicago, IL 60601
Angel.Worlds@fsresidential.com

> Re:   *Herrerra v. CSR Roofing Contractors, Inc. et al.* - Case No. 2024L012957 in the
> Circuit Court of Cook County, Illinois
> Insured:      The Grand Ohio Condominium Association
> Policy No.:   21- 21095212-40
> Claim No.:    2054036

Dear Ms. Worlds:

This will provide Admiral Indemnity Company's ("Admiral") coverage position regarding coverage for FirstService Residential Illinois ("FSR")[1] in relation to the claims asserted by Juan Herrerra ("Plaintiff"). Plaintiff's claims have been asserted in the lawsuit styled *Herrerra v. CSR Roofing Contractors, Inc. et al*., pending as Case No. 2024L012957 in the Circuit Court of Cook County, Illinois (the "Herrerra Lawsuit"). FSR has requested insurance coverage in relation to the Herrerra Lawsuit under an insurance policy issued by Admiral to The Grand Ohio Condominium Association ("GOCA"). FSR bases its request for coverage on its role as the property manager for the property located at 211 E. Ohio Street in Chicago, Illinois (the "Property").

For the reasons explained below, based upon our review of the available claim-related information and the terms of the pertinent insurance policy, Admiral has determined that any coverage available to FSR in relation to the Herrerra Lawsuit under the insurance policy issued to GOCA applies in excess of the coverage afforded to FSR under its own insurance policy with Westfield Insurance Company. Accordingly, Admiral will not agree to defend FSR in relation to the Herrerra Lawsuit at this time, but will continue to investigate this claim and FSR's request for insurance coverage under a reservation of rights for the reasons explained below.

**I.      Factual Background**

---

[1] As mentioned below, while Plaintiff originally sued FirstService Residential, Plaintiff's Second Amended Complaint substituted FirstService Residential Illinois as a defendant in place of FirstService Residential.

301 Route 17 North, Suite 900  |  Rutherford, NJ 07070  |  201.518.2500  | berkleyluxurygroup.com

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

### A.     The Herrera Lawsuit

The Herrerra Lawsuit was initiated on November 18, 2024 with the filing of Plaintiff's original Complaint at Law.  As originally filed, Plaintiff named CSR Roofing Contractors, Inc., GOCA, and FirstService Residential as defendants in his Complaint at Law.  Plaintiff filed a First Amended Complaint at Law on January 15, 2025. Through the First Amended Complaint, Plaintiff added claims against two more contractor defendants, Superior Service of Chicago, Inc. and Superior Service Window Cleaning, Inc.

Admiral has learned that Plaintiff filed a Second Amended Complaint at Law on May 9, 2025.  Through the Second Amended Complaint, Plaintiff added claims against one more contractor defendant, Superior Service Solutions, Inc.  Plaintiff also amended his claim against FirstService Residential, substituting FirstService Residential Illinois as a defendant in place of FirstService Residential.

Plaintiff alleges that, on or about January 21, 2023, he was working on the water heaters and boilers on the roof of the Property while in the course  and scope of his employment by GOCA. It is claimed that GOCA and/or FSR failed to provide the roof a proper drainage cover or a cap to cover the wires which would allow Plaintiff to safely move around the maintenance zone, and instead left the wires in disarray, where Plaintiff was then caused to fall.  GOCA and/or FSR were allegedly responsible for the placement, installation, and otherwise securing of the water heaters, boilers, work site, work zone, drainage, and wires located on the Property.  Plaintiff alleges that GOCA and/or FSR had notice and knowledge of the improperly installed, unsecured, and malfunctioning water heaters and boilers, drainage, unsafe work site/zone, and uncovered wires located on the roof on the south side of the Property that presented a slip/trip hazard(s).

In addition to stating claims against GOCA and FSR, Plaintiff's complaints stated negligence claims against the contractor defendants based on similar allegations relating to the placement, installation, and otherwise securing of the water heaters, boilers, work site, work zone, drainage, and wires located on the Property.  Through such causes of action, Plaintiff seeks judgments against each of the contractor defendants in an amount in excess of $50,000.

Each of Plaintiff's complaints have included a Count VI which stated a cause of action against FSR based on its alleged negligence.  It is claimed that, on or about January 21, 2023, FSR owned, leased, operated, managed, maintained, was contracted to do work at, controlled, and possessed the Property.     FSR also allegedly designed, manufactured, produced, owned, maintained, serviced, installed, repaired, constructed, contracted or was responsible for the water heaters, boilers, drainage, work site, work, and wires, being done on the roof over the south side of the Property.  Plaintiff claims that, as an employee of GOCA, he was authorized and lawfully upon the Property on that date.  Plaintiff alleges that FSR knew or should have known, about previous deficiencies to the roof or general issues pertaining to functionality and safety of the roof over the south side of the Property.  Plaintiff claims that FSR's alleged negligent acts or omissions caused him to become greatly bruised and injured.  Plaintiff claims that bones, tissues, muscles and ligaments were torn, strained and injured. Plaintiff claims that: the alleged injuries will result in Plaintiff's permanent disability Plaintiff; the alleged injuries caused the Plaintiff to experience the loss of his normal enjoyment of life; Plaintiff suffered pain, shock, and became sick and

disabled during which time he was caused to expend a considerable sum of money for medicines and medical care and attention; Plaintiff will, in the future, be obligated to pay out and expend large sums of money for care and attention; and that he lost time and money from his employment as a result of the injury. Through Count VI, Plaintiff seeks a judgment against FSR in an amount in excess of $50,000.

The Second Amended Complaint includes Count VII, a new cause of action against FSR based on "construction negligence." It is claimed that, on or about January 21, 2023, FSR owned and/or was in charge of construction, repairs, and upkeep of the Property. It is claimed that FSR participated in coordinating the work being done and designated various work methods, maintained and/or checked work progress and/or participated in the scheduling of the work and the inspection of the work. Plaintiff alleges that FSR had a duty to exercise reasonable care in the erection, construction, placement, removal and/or upkeep of the drainage covers or caps to cover the wires for the drainage located on the roof of the Property for the Plaintiff and others. Plaintiff claims that FSR's alleged negligent acts or omissions: caused him to suffer diverse injuries, both internally and externally, of a permanent and lasting nature; caused him to suffer pain in body and mind; caused him to expend large sums of money for medical care, treatment and services in endeavoring to be cured of said injuries; caused Plaintiff to suffer acute and prolonged physical and mental pain and suffering; caused him to suffer permanent disfigurement and/or disability; caused him to experience in the loss of a normal life; caused him to lose time from his employment, thereby incurring losses of large sums of money; and caused him to be prevented from attending to his usual affairs and duties. Through Count VII, Plaintiff seeks a judgment against FSR in an amount in excess of $50,000.

## B.     The Management Agreement

Admiral has been provided with a copy of a May 2019 Management Agreement between GOCA (the "Association") and FSR (the "Agent") concerning the management and operation of the Property. Provision 11 of the Management Agreement pertains to the parties' respective obligations concerning the purchase and maintenance of insurance coverage, including through the following language (quoted in part):

> 11.     **General Indemnity Insurance.** The Board and Association shall carry general indemnity insurance and employment practice liability insurance that shall protect, indemnify, defend and hold Agent (and its employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies) harmless from and against any and all loss, assessments, obligations, debts, fees, fines, penalties, demands, injuries, charges, expenses (including, but not limited to, fees and expenses of attorneys, expert witnesses, architects, engineers and other consultants), interest, judgments, costs, claims, damages, liabilities, liens, other claims, suits and/or the like of any and every kind, nature and description whatsoever, including all indemnities referenced above in Paragraph 10, and in any way involving, arising from or out of, relating to or in connection with any claims, suits, causes of action and actions involving the Board, the Association or the Owners.

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

If applicable, the Association shall procure and carry, at its own expense, without any gaps in coverage, for the term of this Agreement and any renewal of this Agreement, general indemnity insurance, employment practice liability insurance, boiler and machinery insurance, property insurance, comprehensive general liability insurance, comprehensive public liability insurance, elevator liability insurance (if elevators are part of the equipment of the Condominium or Property), fidelity and workers' compensation insurance, any insurance policy necessary to cover the indemnification obligations outlined above in Paragraphs 10(a), (b) and (c) and directors and officers insurance (collectively, the "Complete Insurance Coverage") adequate to protect the interests of the Agent, Board, and Association, and in compliance with the requirements of the Declaration, By-Laws, this Agreement and the Act. All such insurance shall include the Agent and the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies as additional named insureds. The Complete Insurance Coverage shall be adequate to protect the Agent's interests and the interests of the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies and the Complete Insurance Coverage shall be in the form, substance and amounts reasonably satisfactory to the Agent. The Complete Insurance Coverage must be issued with a waiver of subrogation in favor of the Agent and the Agent's employees, agents, members, officers, directors, stockholders, affiliated and related agents and affiliated and related companies. The Association shall furnish certificates of insurance for the Complete Insurance Coverage and all required insurance under this Agreement, the Declaration, By-Laws and the Act within thirty (30) days from the date of this Agreement.

The company with which the insurance is placed shall be given a policy holder rating of not less than A VII using the most recent edition of the A.M. Best Company's Key Rating Guide and a financial category rating of not less than Class X by the A.M. Best Company and shall be placed with companies qualified to do business within the state where the Condominium is located. Copies of all insurance policies or certificates of insurance shall be provided to Agent. If the Association fails to place and maintain insurance for Agent as herein provided, the Agent may, but is not obligated to, obtain such insurance, charge the Association for same, and make payment from the funds of the Association.

\*    \*    \*

## C.    The Westfield Policy

Admiral has been provided with a copy of Policy No. CMM 7 456 871, issued to FSR for the policy period of February 28, 2022 to February 28, 2023 (the "Westfield Policy"). The Westfield Policy was in effect on the date of the incident alleged in the Herrera Lawsuit.

Upon review, it appears that the Westfield Policy affords commercial general liability coverage subject to limits of liability of $1 million per occurrence and a $2 million general

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

aggregate limit. According to the Commercial General Liability Coverage Form (Form CG 00 01 04 13), the Westfield Policy affords coverage for "bodily injury" that occurs during the policy period and is caused by an "occurrence." Further, pursuant to terms of the insuring agreement to Coverage A, Westfield will have the right and duty to defend FSR against any "suit" seeking those damages.

The coverage afforded by the Westfield Policy may be impacted by "other insurance" provision stated on Form CG 00 01 04 13. As stated in relevant part, that provision contains language that puts the Westfield coverage in an excess position where FSR is covered on another policy as an "additional insured". There is no language in the Westfield Policy, however, which provides that the Westfield coverage is to apply as excess coverage in relation to all other coverage that owes a defense to FSR.

Admiral has asked FSR to confirm that it has provided notice of the Herrerra Lawsuit to Westfield and that FSR advise Admiral of Westfield coverage position. To date, FSR has neither confirmed that Westfield has been notified of the Herrerra Lawsuit nor advised Admiral of Westfield's coverage position.

## II.     The Admiral Policy

Coverage for the Herrerra Lawsuit has been evaluated under Policy No. 21-21095212-40, issued to GOCA for the policy period of July 25, 2022 to July 25, 2023 (the "Admiral Policy"). The Admiral Policy affords commercial general liability coverage subject to limits of liability of $1 million per occurrence and a $2 million general aggregate limit. FirstService Residential is listed as the property manager in the Managing Agent Schedule.

According to the Commercial General Liability Coverage Form (Form CG 00 01 04 13), the words "you" and "your" refer to the Named Insured shown in the Declarations [GOCA], and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to Admiral. The word "insured" means any person or organization qualifying as such under Section II - Who Is An Insured. Other words and phrases that appear in quotation marks have special meaning. Refer to Section V - Definitions.

Pursuant to the Commercial General Liability Coverage Form contained in the Admiral Policy, coverage for **"bodily injury"** is afforded under Coverage A through the following language (quoted in pertinent part):

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     **Insuring Agreement**

   a.     **We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"**

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

\*      \*      \*

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory",

(2)  The "bodily injury" or "property damage" occurs during the policy period; and

\*      \*      \*

Per the above, the coverage afforded under Coverage A of the Admiral Policy applies to damages because of **"bodily injury"** caused by an **"occurrence."** Such terms are defined in the Admiral Policy as follows:

3.  "Bodily injury" means physical:
    a.  Injury;
    b.  Sickness; or
    c.  Disease;
    sustained by a person, including resulting death, humiliation, mental anguish, mental injury or shock at any time. All such loss shall be deemed to occur at the time of the physical injury, sickness or disease that caused it.[2]

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

A party's eligibility to seek coverage as an insured under the Admiral Policy is determined through **"Who Is An Insured"** provision which reads in pertinent part as follows:

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

\*      \*      \*

---

[2] As amended by Form SP 189 01 15.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

    d.      An organization other than a partnership, joint venture, or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

        *      *      *

2.      Each of the following is also an insured:

        *      *      *

    b.      Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

        *      *      *

Coverage obligations under the Admiral Policy may also be affected by an insured's performance of its notice and reporting obligations, as required by the following language (as modified by Form SP 03 01 14) (quoted in pertinent part):

2.      **Duties In The Event Of Occurrence, Offense, Claim or Suit**

    a.      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
        (1)    How, when and where the "occurrence" or offense took place;
        (2)    The names and addresses of any injured persons and witnesses; and
        (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.
    b.      If a claim is made or "suit" is brought against any insured, you must:
        (1)    Immediately record the specifics of the claim or "suit" and the date received; and
        (2)    Notify us as soon as practicable; and
        (3)    Promptly tender the defense of any claim made or "suit" to any other insurer that may have available insurance for an "occurrence" or an offense resulting in the claim or "suit"
      You must see to it that we and any other insurer receive written notice of the claim or "suit" as soon as practicable.
    c.      You and any other involved insured must:
        (1)    Immediately send us copies of any demands, notices,

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

summonses or legal papers received in connection with the claim or "suit";

(2)  Authorize us to obtain records and other information;

(3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

*     *     *

Admiral's coverage obligations under the Admiral Policy may be impacted by the availability of other insurance coverage that applies to the Herrerra Lawsuit pursuant to following language (as modified by Form SP 161 01 14):

4.  **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a.  **Excess Insurance**

(1)  This insurance is in excess over:

*     *     *

(c)  Any other valid and collectible insurance, including its defense cost provisions. This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply.

(2)  When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Page 8 of 12

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    (a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    (b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**b.** **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**III.** **Coverage Analysis**

    **A.** **Analysis of FSR's Eligibility for Coverage**

Admiral understands that FSR was acting as the property manager for the Property on the date of the incident alleged in the Herrerra Lawsuit. Further, as detailed above, FSR is identified as the Managing Agent in the Managing Agent Schedule in the Admiral Policy. Pursuant to the language of the **"Who Is An Insured"** provision, coverage may be available to FSR as an insured while it was acting as GOCA's property or real estate manager.

The allegations in the Herrerra Lawsuit appear to base the claims against FSR on alleged acts or omissions that would only have occurred while it was acting as GOCA's property manager. As a result, it appears that FSR is eligible to seek coverage as an insured under the Admiral Policy in relation to the claims alleged in the Herrerra Lawsuit.

    **B.** **Any Coverage Provided by the Admiral Policy will Apply in Excess of the Coverage Provided to FSR by the Westfield Policy**

As noted above, the Westfield Policy also affords coverage for FSR coverage for "bodily injury" caused by an "occurrence." Further, the Westfield Policy confirms that Westfield will have a duty to defend FSR against any "suit" seeking those damages. Finally, the Westfield Policy was in effect on the date of the alleged incident at issue in the Herrerra Lawsuit.

As also noted above, the Admiral Policy contains language in its "**other insurance**" provision which provides that the insurance afforded by the Admiral Policy applies in excess of "**[a]ny other valid and collectible insurance, including its defense cost provisions.**" Further, coverage under the Admiral Policy "…**shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply**."

Upon comparison of the terms of the Westfield Policy with Plaintiff's allegations, Admiral believes that coverage is available to FSR under the Westfield Policy in relation to the Herrerra Lawsuit and, therefore, that Westfield owes FSR a defense in relation to that matter. Accordingly, based on the "**other insurance**" provision in the Admiral Policy, any coverage available under the Admiral Policy to FSR in relation to the Herrerra Lawsuit is specifically excess of the Westfield Policy and its duty to defend FSR in relation to the Herrerra Lawsuit

The Westfield Policy has an "other insurance" provision which, in pertinent part, means that the Westfield coverage will be excess where FSR is eligible for coverage as an "additional insured" under another policy. Here, FSR is not covered on the Admiral Policy as an "additional insured". Rather, FSR is entitled to seek coverage as an insured pursuant to the "**Who Is An Insured**" provision in the Admiral Policy. Accordingly, language in the Westfield Policy concerning coverage in excess over "additional insured" coverage does not apply. Further, unlike the Admiral Policy, there is no language in the Westfield Policy placing the Westfield coverage in an excess position where another insurer owes a duty to defend FSR. Thus, when comparing the language of the two policies, the language in the Admiral Policy places Admiral's coverage in an excess position and the language of the Westfield Policy does not.

It is Admiral's position that the Westfield Policy qualifies as other valid and collectible insurance for FSR in relation to the Herrerra Lawsuit and, therefore, the Admiral Policy applies, if at all, only in excess of the coverage afforded by the Westfield Policy. Accordingly, Admiral does not presently owe a duty to defend FSR in relation to the Herrerra Lawsuit. As a result, Admiral will continue to investigate this claim under a reservation of rights as to FSR's alleged liability and Admiral's potential coverage obligation to FSR.

C. **Coverage is Afforded only for Damages Qualifying as "Bodily Injury" Caused by an "Occurrence"**

Plaintiff claims that FSR's alleged negligent acts or omissions caused him to become greatly bruised and injured. Plaintiff claims that bones, tissues, muscles and ligaments were torn, strained and injured, that he has experienced the loss of his normal enjoyment of life; that he has pain, shock, and became sick and disabled; that he has incurred considerable medical costs; and that he lost time and money from his employment as a result of the injury.

Page 10 of 12

Under Coverage A, the Admiral Policy provides coverage for **"bodily injury"** caused by an **"occurrence."** Pursuant to the definition of "bodily injury", for coverage to apply there must be some form of physical injury to Plaintiff and, in that event, coverage for his injuries may also include coverage for any resulting mental anguish, mental injury, or shock. To the extent that Plaintiff does seek damages based on actual physical injury or physical sickness, those damages as well as damages arising from claimed pain and suffering and mental distress may qualify as damage because of "bodily injury" for purposes of the Admiral Policy. Pending further investigation of Plaintiff's claim, Admiral reserves the right to deny coverage for any damages suffered by Plaintiff which do not qualify as damages because of "bodily injury" caused by an "occurrence".

### D. Duty to Cooperate

As indicated above, Admiral believes that coverage is available to FSR under the Westfield Policy in relation to the Herrerra Lawsuit and, therefore, that Westfield owes FSR with a defense in relation to that matter. Admiral has asked FSR to confirm that it has provided notice of the Herrerra Lawsuit to Westfield. Admiral has also asked that FSR advise of Westfield's coverage position, including as to its agreement to defend FSR in relation to the Herrerra Lawsuit. FSR has not confirmed that Westfield has been notified of the Herrerra Lawsuit. Nor has FSR advised Admiral of Westfield's coverage position.

As noted above, coverage under the Admiral Policy may be impacted by an insured's performance of its notice and reporting obligations. Included in the obligations owed by an insured is its obligation to cooperate with Admiral in the investigation or settlement of the claim or defense against the "suit". Admiral reserves the right to assert that FSR has breached its obligation to cooperate with Admiral to the extent that it does not confirm that it notified Westfield of the Herrerra Lawsuit and does not inform Admiral of Westfield's coverage position.

### IV. Conclusion

Based on a comparison of the allegations stated in Plaintiff's complaints, the language of the Management Agreement, and the terms of the Admiral Policy and Westfield Policy , Admiral has determined any coverage available to FSR under the Admiral Policy applies in excess of the coverage, including the duty to defend, owed to FSR under the Westfield Policy. Accordingly, Admiral does not presently owe a duty to defend FSR in relation to the Herrerra. Therefore, Admiral will continue to investigate this claim under a reservation of rights as to FSR's alleged liability and Admiral's potential coverage obligation to FSR, including the right to file a declaratory judgment lawsuit seeking a declaration regarding Admiral's coverage obligations to FSR in relation to the Herrerra Lawsuit.

It is Admiral's understanding that FSR is being represented by counsel in the Herrerra Lawsuit. As an insurer potentially providing excess coverage to FSR in relation to that matter, Admiral requests that FSR and its defense counsel keep Admiral apprised of the status of the Herrerra Lawsuit and of FSR's litigation and defense strategy with respect to same.

FILED DATE: 7/18/2025 12:34 PM    2025CH07484

Admiral's position is based on information available to date.  There may be other coverage issues that are not yet apparent.  Admiral does not intend to waive any coverage issue, and by discussing certain policy provisions in this letter, Admiral shall not be deemed to have waived any aspect of the Admiral Policy.  Admiral reserves the right to rely on all provisions of the Admiral Policies, to update its coverage position at any time, and to disclaim coverage in whole or in part. If you have additional information that may affect coverage issues, or if you feel that we have misunderstood the facts, please forward such information to us at your earliest convenience.

If you have any questions or concerns with any of the above or wish to discuss this matter further, please do not hesitate to contact me.

Very truly yours,

**BERKLEY LUXURY GROUP**

Robert Buchert
Assistant Vice President, Liability Claims
201-518-2517 - Office
866-336-3393 - Fax
rbuchert@berkleyluxurygroup.com


cc:     **Via Email**

        Nancy Ayers
        Alliant Insurance Services, Inc.
        nancy.ayers@alliant.com

Page 12 of 12

FILED DATE: 7/18/2025 12:34 PM   2025CH07484

# Exhibit

**From:** Buchert, Robert <rbuchert@berkleyluxurygroup.com>
**Sent:** Tuesday, May 6, 2025 3:15 PM
**To:** Angel Worlds <Angel.Worlds@fsresidential.com>; Maia Bartee <Maia.Bartee@fsresidential.com>; Nancy Ayers <nancy.ayers@alliant.com>; Alex Wade <Alex.Wade@fsresidential.com>; Shazia Sirajuddin <Shazia.Sirajuddin@fsresidential.com>
**Cc:** Brian Butler <Brian.Butler@fsresidential.com>; LaToyia Pierce <LaToyia.Pierce@fsresidential.com>; Sean Gaynor <Sean.Gaynor@firstservicefinancial.com>; Bruce Slayter <Bruce.Slayter@alliant.com>
**Subject:** RE: Claim # 2054036 Herrerra v. CSR Roofing Contractors, Inc., Grand Ohio Condo Association, et al. - Case No. 2024L012957 [EXTERNAL]

Thanks Angel.

We have compared the terms in the attached Admiral Policy with those of the Westfield Policy. It appears that the Admiral Policy is to apply in excess of any coverage, including the defense obligation, owed to FSR under other available coverage. I do not see any comparable language in the Westfield Policy. Accordingly, per the terms found on Form SP 161 01 14 (quoted below in pertinent part), the coverage afforded to FSR under the Admiral Policy applies in excess of the coverage owed by Westfield:

4. Other Insurance
If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
a. Excess Insurance
(1) This insurance is in excess over:

***
(c) Any other valid and collectible insurance, including its defense cost provisions. This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply.

(2) When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.
(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
(b) The total of all deductible and self-insured amounts under all that other insurance.

At your convenience, please confirm that FSR has provided notice of this matter to Westfield. Please also advise of Westfield's response and/or agreement to defend FSR.

Bob

**Robert Buchert**
Assistant Vice President, Liability Claims
301 Route 17 North, Suite 900, Rutherford, NJ 07070
Phone: (201) 518-2517 | Fax: (866) 336-3393
rbuchert@berkleyluxurygroup.com | berkleyluxurygroup.com

B]G    **Berkley** Luxury Group

FILED DATE: 7/18/2025 12:34 PM    2025CH07484



## WESTFIELD™

June 11, 2025

Robert Buchert
rbuchert@berkleyluxurygroup.com
Berkley Luxury Group
Assistant Vice President, Liability Claims
301 Route 17 North, Suite 900
Rutherford, NJ 07070

| | | |
|---|---|---|
| Re: | Your Claim No.: | 2054036 |
| | Case Name: | *Herrera v. CSR Contractors, et al.* |
| | Our Insured: | FirstService Residential |
| | WF Claim #: | 0002646088 |
| | Claimant: | Juan Herrera |
| | Court No.: | Cook County/ 2024L012957 |

Dear Mr. Buchert,

Westfield Insurance Company ("Westfield") has been authorized by Westfield's named insured FirstService Residential Illinois, Inc.'s ("FirstService") to tender the matter captioned *Juan Herrera v. FirstService*, which is currently pending in the Circuit Court of Cook County, Illinois, Cause No. 2024 L 12957 ("Underlying Action") for defense and indemnity on a primary basis to Admiral Insurance Company ("Admiral"). This is a targeted tender pursuant to Illinois law.

Admiral has acknowledged that FirstService is an additional insured on Policy No. 21-21095212 issued to the Grand Ohio Condominium Association with general liability limits of $1,000,000 for each occurrence and a general aggregate limit of $2,000,000 for Mr. Herrera's claim. Admiral further acknowledged that it had a duty to defend FirstService in this matter in a May 6, 2025, e-mail from you to Maia Bartee. Admiral then erroneously claimed that its policy was excess over the Westfield policy for Mr. Herrera's claim based on the Other Insurance clause in the Admiral policy. On that same date, FirstService advised you that Admiral's position was in error and that Admiral owed FirstService a defense on primary basis. Further, your position was taken without consideration of the terms of the Westfield policy issued to FirstService.

We advise you that the Westfield policy contains an Other Insurance clause which clearly makes the Admiral policy primary for Mr. Herrera's claims. The Other Insurance clause states that Westfield's policy is excess to "[a]ny other primary insured available to you covering liability for damages arising out of the premises or operations *** for which you have been added as an additional insured." Here, FirstService is insured as an additional insured on a primary basis on the Admiral policy as you have already acknowledged.

Admiral is obligated to defend and indemnify FirstService on a primary basis and, under the target tender doctrine, Westfield, on behalf of FirstService, requests that Admiral immediately accept its obligation and assume the defense of FirstService without contribution from FirstService's insurers.

One Park Circle | P.O. Box 5001
Westfield Center, OH 44251-5001
westfieldinsurance.com | 800.243.0210



**WESTFIELD**™

We thank you for your consideration of this matter and look forward to Admiral promptly accepting its obligations to First Service. Please advise us of a response within 10 days.

Sincerely,


Brad Klimek, AIC
Casualty Litigation Claims Specialist
Westfield Insurance Company