**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FIRST SERVICE RESIDENTIAL ILLINOIS, INC. and WESTFIELD INSURANCE COMPANY, | ) | |
| Plaintiffs, | ) | Case No.: 1:25-CV-13640 |
| v. | ) | Hon. LaShonda A. Hunt |
| ADMIRAL INDEMNITY COMPANY, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE TO ADMIRAL INDEMNITY COMPANY'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c) AND MEMORANDUM IN SUPPORT OF PLAINTIFFS' CROSS MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P. 12(c) AS TO PLAINTIFF'S COMPLAINT AND ADMIRAL'S FIRST AFFIRMATIVE DEFENSE**

Now come the Plaintiffs, FIRST SERVICE RESIDENTIAL ILLINOIS, INC. and WESTFIELD INSURANCE COMPANY, through their attorneys LINDSAY, PICKETT & POSTEL, LLC, and for their Response to Admiral Indemnity Company's Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12 (c) and Memorandum in Support of Plaintiffs' Cross Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12 (c), state as follows:

## INTRODUCTION

Admiral Insurance Company ("Admiral") vexatiously and unreasonably denied First Service Residential Illinois, Inc.'s ("FirstService") targeted tender of the action captioned *Juan E. Herrera v. CSR Roofing Contractors, Inc., et al.*, Cause No. 2024 L 12957 pending in the circuit court of Cook County, Illinois (the "*Herrera* action") to Admiral for defense and indemnification on a primary basis without contribution from FirstService's own insurer Westfield Insurance Company ("Westfield"). There is no *bona fide* dispute in this case concerning FirstService's

targeted tender. Admiral's only argument, that its "other insurance" clause defeats FirstService's targeted tender, was rejected by the Illinois Supreme Court 25 years ago in *John Burns Construction Co. v. Indiana Ins. Co.*, 189 Ill.2d. 570, 574-76, 727 N.E.2d 211, 215-16 (2000) and has been rejected by numerous Illinois courts since. In *Burns*, the Illinois Supreme Court held that where there is a targeted tender by an insured, the "other insurance" clauses at issue are irrelevant because the non-tendered policy has been deselected and is not "available." *Burns,* 189 Ill.2d at 577–78, 727 N.E.2d 211, 216-17; *N. River Ins. Co. v. Grinnell Mut. Reinsurance Co.,* 369 Ill. App. 3d 563, 575, 860 N.E.2d 460, 471 (Ill.App.Ct. 2006) ("[t]he purpose of an "other insurance" clause is to provide a method of apportioning coverage among triggered concurrent policies and if a policy is not triggered, the "other insurance" clause does not matter"); *Richard Marker Associates v. Pekin Ins. Co.*, 318 Ill. App. 3d 1137, 1143, 743 N.E.2d 1078, 1082 (Ill.App.Ct. 2001) ("[t]he insured's right to choose encompasses the right to deactivate coverage with an insurer previously selected for purposes of invoking exclusive coverage with another insurer") *citing Alcan United, Inc. v. W. Bend Mut. Ins. Co*., 303 Ill. App. 3d 72, 81, 707 N.E.2d 687, 693 (Ill.App.Ct. 1999) ("[t]he insured still must be given the right to determine whether it wishes to invoke its rights to such other coverages before those coverages become accessible under the "other insurance" provision of a triggered policy").

Admiral offers no relevant or controlling authority for this court to reject 25 years of precedent and to enforce the "other insurance" clause in Admiral's policy. While Admiral directs this court to two unpublished and nonprecedential decisions, neither *American Nat's Property & Cas. v. Charter Oak Fire Ins. Co*., 2025 IL (1st) 232422-U nor *River Village I, LLC v. Central Ins. Companies*, 396 Ill.App.3d 480, 919 N.E.2d 426 (2009) are relevant.[1] In both cases, the

[1] It should be noted that *River Village* predates the amendment to Ill. Sup. Ct. R. 23 and cannot be cited even for persuasive purposes.

determinative issue was whether the disputed policy provided primary coverage to the additional insured at all, not whether a targeted insurer could avoid a target tender by operation of an "other insurance" clause in its policy. In both cases, the additional insured failed to prove they were entitled to primary coverage under the disputed policy, and the court rejected the targeted tenders on this basis. The cases do not help Admiral.

For these reasons, as discussed more fully below, Admiral's motion for judgment on the pleadings should be denied, and Defendants' cross motion should be granted.

## BACKGROUND

### A. The Underlying Action.

Juan Herrera sued FirstService in the action captioned *Juan E. Herrera v. CSR Roofing Contractors, Inc., et al.*, Cause No. 2024 L 12957 pending in the circuit court of Cook County, Illinois. (Doc. 1-1 at p. 15). The *Herrera* action is pending on a First Amended Complaint, filed January 15, 2025. (*Id.*). Herrera claims that on January 21, 2023, he was injured while working on the roof of a building owned by Admiral's named insured the Grand Ohio Condominium Association. *Id*. Herrera claims he tripped while working on the roof due to FirstService's negligence. *Id*.

### B. The Admiral Policy.

Admiral issued a commercial package policy which contains commercial general liability coverage to Grand Ohio as named insured under policy CPP 21-21095212-40. The policy had a policy period of July 25, 2022, to July 25, 2023. (Doc. 14-1). Admiral does not dispute that FirstService an insured under the Admiral policy for the *Herrera* action. (Doc. 15 at p. 3). The Admiral policy contains the following "other insurance" provision:

**4. Other Insurance**

> If other collectible insurance valid and is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
>
> **a. Excess Insurance**
>
> **(1)** This insurance is in excess over:
>
> * * * * *
>
> **(c)** Any other valid and collectible insurance, including its defense cost provisions. This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply.

(Doc. 14-1 at p. 171).

### C. Admiral Takes a Coverage Position Directly Contrary Illinois Law and Refuses to Defend First Service.

FirstService unequivocally tendered its defense of the underlying matter to Admiral on a targeted basis. On May 6, 2025, Admiral advised it was refusing to defend FirstService in the *Herrera* action based on the application of the "other insurance" clause in its policy. (Doc. 1-1 at p. 301). Admiral issued a formal coverage opinion on June 3, 2025. (Doc 1-1 at p. 208). Following Admiral's continued refusal to defend, FirstService and Westfield filed this action in state court, which Admiral subsequently removed to this court.

## ARGUMENT

Admiral's motion for judgment on the pleadings should be denied, and the cross motion should be granted.

FirstService, an insured under both its own Westfield policy and Admiral's policy on a primary basis for the *Herrera* action, had the "paramount" right to select coverage under the Admiral policy via a targeted tender. *Legion Ins.*, 354 Ill. App. 3d at 703, 822 N.E.2d at 4-5 (Ill.App.Ct. 2004) citing *Burns*, 189 Ill.2d. at 574-76, 727 N.E.2d at 215-16. When FirstService targeted Admiral, it deactivated coverage under the Westfield policy for the *Herrera* action. Admiral, as the targeted insurer, had the sole responsibility to defend and indemnity FirstService

and it cannot seek equitable contribution from Westfield. *Legion Ins*., 354 Ill.App.3d at 704, 822 N.E.2d at 5 citing *Chicago Hospital Risk Pooling Program v. Illinois State Medical Inter–Insurance Exchange,* 325 Ill.App.3d 970, 976, 758 N.E.2d 353, 357 (2001), citing *Burns,* 189 Ill.2d at 578, 727 N.E.2d at 217.

Admiral, taking a position at odds with Illinois law, attempts to argue to the contrary. First, Admiral claims that its policy is excess over the Westfield policy by operation of the "other insurance" clause in its policy. Admiral then concludes that FirstService's targeted tender was improper because the Admiral and Westfield policies do not provide concurrent primary coverage for the *Herrera* action. Admiral's position was explicitly rejected by the Illinois Supreme Court in *Burns* and is contrary to 25 years of controlling Illinois precedent since. Under *Burns* and its progeny, once FirstService target tendered the *Herrera* action to Admiral and deselected the Westfield policy, Admiral's "other insurance" clause became irrelevant. *Burns,* 189 Ill.2d at 577-78, 727 N.E.2d 211; *N. River Ins. Co.,* 369 Ill. App. 3d at 575, 860 N.E.2d at 471; *Richard Marker*, 318 Ill. App. 3d at 1143, 743 N.E.2d at 1078 citing *Alcan United*, 303 Ill. App. 3d at 81, 707 N.E.2d at 693. Despite 25 years of controlling precedent holding that Admiral must defend FirstService and cannot seek contribution from Westfield, Admiral now asks this court to reach the opposite conclusion. Admiral's position should be rejected as it has no support in Illinois law.

**A. Admiral's Cited Authority Does Not Support its Argument.**

Admiral first directs this court to *American Nat's Property & Cas. v. Charter Oak Fire Ins. Co*., 2025 IL (1st) 232422-U. However, the *Charter Oak* court never reached the issue presented here, that is, whether a court should compare "other insurance" clauses where a party is an insured on two primary policies and has specifically targeted one to the exclusion of the other. Rather,

*Charter Oak* involved a determination of whether the targeted policy provided primary insurance to the additional insured in the first place.

The insurance coverage dispute in *Charter Oak*, like this case, arose out of a personal injury claim. In *Charter Oak*, an employee of an air conditioning company, Condenser People, Inc., hired to service air conditioners on the roof of a building owned by Esplanade at Locust Point – 1 Limited Partnership (Esplanade) and managed by Hamilton Partners, Inc. ("Hamilton"), was injured when he fell through a skylight. *Charter Oak*, 2025 IL App (1st) 232422-U at ¶¶4-8. American National Property & Casualty ("ANPAC") issued a policy to Condenser People. Hamilton, the property manager for Esplanade, qualified as an additional insured on the ANPAC policy. Hamilton target tendered the underlying action to ANPAC, which rejected the tender. The dispute in that case was not whether the "other insurance" clause in the ANPAC policy rendered it excess to Charter Oak policy issued to Hamilton. Rather, the issue was whether the ANPAC policy provided primary coverage to Hamilton at all.

The ANPAC policy contained an endorsement titled "Primary and Noncontributory Insurance." The endorsement provided: "Where required by written contract or agreement, this insurance is primary and/or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and/or noncontributory, whichever applies, with this insurance." *Id*. at ¶9. The parties conceded that there was no written contract requiring the ANPAC policy to be primary for Hamilton. *Id*. at ¶9, ¶65. In fact, the appellate court noted when discussing coverage available to Hamilton: "While Hamilton could have required primary coverage from ANPAC in a written contract or agreement, it did not do so." *Id*. at ¶66. The appellate court agreed with the trial court's finding that absent a written contract requiring that Hamilton be insured on a primary basis, the ANPAC policy did not provide "full

primary insurance coverage" to Hamilton and only provided excess coverage. *Id*. at ¶¶43, 66. Based on the finding that the ANPAC policy provided excess and not primary coverage to Hamilton, Hamilton could not target tender the ANPAC policy because it did not provide concurrent primary coverage with Hamilton's Charter Oak policy. *Id*.

*Charter Oak* focused on the lack of a written contract requiring Condenser People to provide primary insurance for Hamilton, a condition to ANPAC's obligation to provide primary coverage to any additional insured under its policy: "As to Charter Oak's policy, the "other insurance" provision states, in pertinent part, that the policy is excess to "[a]ny other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement." As noted above, however, the other insurance available to Hamilton—*i.e.*, based on its status as an additional insured under the ANPAC policy—was not primary. While Hamilton could have required primary coverage from ANPAC in a written contract or agreement, it did not do so." *Id*. at ¶66.

*Charter Oak* does not address the issue in this dispute, that is, whether a court should consider the "other insurance" clause in the Admiral policy to render Admiral's primary policy excess to another primary policy for purposes of defeating a targeted tender.

Here, Admiral has conceded that its policy and the Westfield policy provide initial concurrent primary coverage for the *Herrera* action by acknowledging that FirstService is an insured. As made clear by the Illinois Supreme Court in *Burns*, once FirstService made a targeted tender the "other insurance" in the Admiral policy is rendered irrelevant. *Burns,* 189 Ill.2d at 577–78, 727 N.E.2d 211; *see also N. River Ins. Co.,* 369 Ill. App. 3d at 575, 860 N.E.2d at 471; *Richard Marker*, 318 Ill. App. 3d at 1143, 743 N.E.2d at 1078. Because FirstService is a primary insured

under both the Admiral and Westfield policies, it has the paramount right to choose the Admiral policy to provide such coverage and to deactivate the Westfield policy. Admiral's denial of the targeted tender forcing FirstService to litigate an issue that was resolved by our Supreme Court 25 years ago is vexatious and unreasonable.

The second case relied on by Admiral, *River Village I, LLC v. Central Ins. Companies*, 396 Ill.App.3d 480, 919 N.E.2d 426 (2009), does not support Admiral's position for identical reasons. *River Village* involved the same issue as *Charter Oak*. In *River Village*, River Village was the general contractor on a building project. Harleysville insured River Village. River Village contracted with First Choice Drywall to perform subcontracting work at the project site. The contract between First Choice and River Village required First Choice to name River Village as an additional insured on its policy. The contract did not specify what type of insurance, primary or excess, First Choice was to obtain for River Village. *River Village*, 396 Ill.App.3d at 482, 919 N.E.2d at 428. Pursuant to the contract, First Choice added River Village to a policy issued by Central Insurance Companies. Like the ANPAC policy at issue in *Charter Oak*, the Central Insurance policy contained an endorsement that limited when a policy would serve as primary insurance for an additional insured to situations where there was a contract specifically requiring that the insurance be primary:

> "Any coverage provided hereunder shall be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing."

*Id*. at 482-83, 919 N.E.2d at 428. The policy contained the same requirement in an amended "other insurance" clause added to the policy and applicable only to additional insureds. The "other insurance" clause stated that as to an additional insured, the policy would be excess over "[a]ny other valid and collectible insurance available to the additional insured whether primary, excess,

contingent or on any other basis unless a contract specifically requires that this insurance be either primary or primary and noncontributing." *Id*.

An employee of First Choice was injured while working on the project. River Village targeted tendered the claim Central Insurance. Central Insurance did not respond. River Village issued a second targeted tender letter. River Village then filed a declaratory judgment action claiming its targeted tender was valid and that Central Insurance owed it a defense and indemnification for the employee's injuries. The trial court found the targeted tender was invalid. The trial court concluded that the Central Insurance policy was excess over River Village's Harleysville policy because the condition to coverage in the Central Insurance policy, the existence of a contract requiring that First Choice provide primary insurance for River Village, had not been met. *Id*. at 485. The appellate court affirmed.

The appellate court agreed that the targeted tender to Central Insurance was invalid because it was clear the Central Insurance policy was excess to River Village's Harleysville policy. The court, like the *Charter Oak* court, found that the requirement in the policy that there must be a written contract requiring Central Insurance's insured to provide an additional insured primary coverage was a valid condition to any additional insured receiving primary coverage:

> As noted earlier, the Central policy contains an "other insurance" excess provision, namely, paragraph 4.b.2), which is similar to that found in *State Automobile.* Again, that provision mandates that Central's insurance is excess over:
>
> > "Any other *valid and collectible* insurance available to [River Village] whether primary, excess, contingent or on any other basis *unless a contract specifically requires that this insurance be either primary or primary and noncontributing*." (Emphasis added.)
>
> The words in this provision are clear and unambiguous: unless there is a contract specifically requiring that Central's insurance be primary, its coverage of River Village is only excess over and above any other insurance River Village would be able to collect in the event of a loss.

*Id*. at 490-91.

In both *Charter Oak* and *River Village*, the court refused to allow an additional insured to use a targeted tender to create primary coverage where it otherwise did not exist because the named insured had not agreed in a contract to provide the additional insured primary coverage. This is not the issue in this dispute. Additionally, the Admiral policy does not contain the language that was at issue in either *Charter Oak* or *River Village*. Neither case is helpful other than under the broad context that some court applied Illinois law to reject a targeted tender at some point in an unpublished decision and mentioned the term "other insurance." These decisions certainly do not support Admiral's position that the Admiral policy is excess over a targeted tender by FirstService, a position that is directly contrary to Illinois law and the policy language in Admiral's policy as that language has been interpreted through the lens of *Burns*.

**B. Admiral's Policy Language Does Not Support its Position.**

Admiral's "Other Insurance" clause does not support Admiral's argument. The Admiral policy states, in pertinent part, that "If <u>other valid and collectible insurance is available to the insured</u> for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows: … **(1)** This insurance is in excess over: … "[a]ny other valid and collectible insurance, including its defense cost provisions. This insurance shall be specifically excess of any other policy by which another insurer has a duty to defend a "suit" for which this insurance may also apply." (emphasis added). Under *Burns* and its progeny, this "other insurance" clause is irrelevant. Once FirstService targeted the Admiral policy, the Westfield policy became "unavailable" for purpose of Admiral's other insurance clause. There was no "other valid and collectible insurance available" to FirstService. Only the targeted Admiral policy is available. Admiral's argument that its policy requires a finding its policy is excess is not supported by its

own policy. Under Illinois law, once FirstService targeted the Admiral policy, the "other insurance" clause is to be ignored because the non-triggered Westfield policy no longer has to respond to the claim. *Burns,* 189 Ill.2d at 577–78, 727 N.E.2d 211; *N. River Ins. Co.,* 369 Ill. App. 3d at 575, 860 N.E.2d at 471; *Richard Marker*, 318 Ill. App. 3d at 1143, 743 N.E.2d at 1078.

## CONCLUSION

Illinois courts have maintained for 25 years that where two policies initially provide concurrent coverage; the insured enjoys a paramount right to choose one policy over the other to cover a claim via a targeted tender. When the insured makes a targeted tender, such as FirstService did in this case, the "other insurance" clause in the targeted policy, here the Admiral policy, is irrelevant because the non-selected policy is no longer available to provide coverage for the claim. Admiral has not offered any authority for this court to find differently in this case. Admiral is obligated to defend and indemnify FirstService in the *Herrera* action on a primary basis without contribution from Westfield. Admiral's refusal to do so is vexatious and unreasonable. For these reasons, Admiral's motion for judgment on the pleadings should be denied and Plaintiffs' motion should be granted.

Respectfully submitted,

**LINDSAY, PICKETT & POSTEL, LLC**

By: */s/ Peter G. Syregelas*
*For the Plaintiffs First Service Residential Illinois, Inc., and Westfield Insurance Company*

Peter G. Syregelas
psyregelas@lpplawfirm.com
312-970-5661
David N. Larson
dlarson@lpplawfirm.com
312-800-6009
**LINDSAY, PICKETT & POSTEL, LLC**
200 W. Madison St., Suite 3850

Chicago, Illinois 60606
*Attorneys for Plaintiffs*